ORIGINAL

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2008 OCT 17  PM 2: 55

CLERK OF COURT

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
               :

AMERICAN AIRLINES, INC.,
4333 Amon Carter Blvd.
Fort Worth, Texas 76155,

            Plaintiff,

    -vs.-

YAHOO! INC.,
701 First Avenue
Sunnyvale, California 94089,

and

OVERTURE SERVICES, INC. d/b/a YAHOO!
SEARCH MARKETING,
74 North Pasadena Avenue, 3rd Floor
Pasadena, California 91103,

           Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

**4-0 8CV - 626 - A**

Civil Action No. _____

**COMPLAINT**

Plaintiff American Airlines, Inc. ("American Airlines"), by and through its counsel,

for its Complaint against Yahoo! Inc., and Overture Services, Inc. d/ b/a Yahoo! Search

Marketing (together with Yahoo! Inc., "Yahoo!" or "Defendants"), alleges as follows.

## NATURE OF THE ACTION

1.  This lawsuit relates to the use of trademarks on the Internet, particularly Defendants' unauthorized use of the world-famous trademarks and service marks that identify American Airlines to Internet users.  The fundamental purpose of trademark law, in the bricks-and-mortar world and on the Internet, is to protect consumers from being confused as to the source or affiliation of the products or services that they seek to buy.  In order to assist consumers in making informed purchasing decisions, trademark law encourages companies to develop brand names to differentiate their products and services within the marketplace.  This is accomplished by legally limiting a brand's use to the brand's owner.  This legal protection fully applies in the context of the Internet.

2.  Unfortunately, some individuals and entities attempt to take advantage of consumers by marketing their products or services using the brands of others.  In effect, they seek to free ride on the reputation and goodwill of another's brand.  Because of the ease and low cost of setting up a website and the speed with which Internet transactions occur, this has become a particular problem in connection with consumer purchases of goods and services on the Internet.  This lawsuit involves exactly such a situation -- efforts by certain companies to free ride on American Airlines' brands.  The Defendants have knowingly encouraged these infringements and have provided these companies with the technological tools to carry out these efforts.

3.  Defendants own and operate one of the world's largest Internet "search engines," constituting a significant share of the search engine market.  A search engine is a computer program that allows computer users to search the World Wide Web for websites containing particular content.  Defendants' search engine is available not only on their own website

(www.yahoo.com), but also through other popular websites that use Defendants' search engine.

4. To use Defendants' search engine, a World Wide Web user ("web user") need only type in a few descriptive words and hit the "enter" key (or click on Yahoo!'s "Web Search" button) to receive a list of web pages that Defendants identify as relevant to the search requested. Web users may then visit these web pages by clicking on the hyperlinks ("links") that Defendants provide. Defendants maintain and, on information and belief, many consumers believe that the search results that Defendants provide are the product of an objective formula or algorithm that produces "natural" or "organic" results, *i.e.*, unpaid web listings.

5. Defendants, however, have not provided Internet users with only such objective "natural" results. Without authorization or approval from American Airlines, Defendants have sold to third parties the right to use the trademarks and service marks of American Airlines ("American Airlines Marks") or words, phrases, or terms confusingly similar to those marks, as "keyword" triggers that cause paid advertisements -- referred to as "Sponsor Results" -- to appear above or along side the "natural results." In many cases, the text of these "Sponsor Results" also included American Airlines Marks or terms confusingly similar to those marks. Thus, when consumers entered one of the American Airlines Marks into Defendants' search engine to search or navigate the World Wide Web, instead of being directed to American Airlines' websites, Defendants' "Sponsor Results" may instead have misdirected them to:    (i) websites of airlines that compete with American Airlines; (ii) websites that sell air travel not only on American Airlines, but also on a variety of airlines

that compete with American Airlines; or (iii) websites that are entirely unrelated to American Airlines.

6.   American Airlines does not bring this lawsuit lightly.  American Airlines has long been and remains a strong supporter of the Internet and the promise that it holds for consumers and society as a whole. That said, Defendants' search engine is being used by Defendants and third parties to mislead consumers and misappropriate the American Airlines Marks by using them as "keyword" triggers to paid advertisements and by using them within the text of paid advertisements.  Moreover, Defendants appear to have the ability to structure and configure their programming to stop this misuse of the American Airlines Marks because they have already implemented procedures with respect to European Internet users that prevent the misuse of trademarks.  Defendants, however, have chosen not to implement these procedures for Internet users in the United States to the detriment of consumers and American Airlines.  Accordingly, American Airlines has reluctantly been compelled to file this lawsuit to protect consumers and the American Airlines Marks.

## THE PARTIES

7.   Plaintiff American Airlines, Inc. is a Delaware Corporation with its principal place of business at 4333 Amon Carter Boulevard, Fort Worth, Texas 76155.

8.   Upon information and belief, Yahoo! Inc. is a corporation organized under the laws of the State of Delaware with a principal place of business in Sunnyvale, California.   In addition, on information and belief, Yahoo! advertises, solicits clients, leases office space, and conducts substantial amounts of business in the State of Texas and within this District.

9.   Upon information and belief, Overture Services, Inc. is a subsidiary of Yahoo! Inc. and is organized under the laws of the State of Delaware with a principal place of business in

Pasadena, California.  In addition, on information and belief, Overture Services Inc. is a full participant in Yahoo!'s practices and conduct of business in the State of Texas and within this District that is relevant to the subject matter of this Complaint.

## JURISDICTION AND VENUE

10.     This action arises in part under the Lanham Act, 15 U.S.C. §§ 1114 and 1125. This Court has federal question jurisdiction over these claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a), and 1338(b).  This Court has supplemental jurisdiction over the Texas State law claims pursuant to 28 U.S.C. § 1367(a) because those claims are so closely related to the federal claims brought herein as to form part of the same case or controversy.

11.     Defendants are subject to personal jurisdiction in the State of Texas pursuant to TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041-.045 because, on information and belief, Defendants practice the unlawful conduct complained of herein, in part, within this District; because the unlawful conduct complained of herein causes injury, in part, within this District; because Defendants regularly do or solicit business, rent or lease office space within this District, engage in other persistent courses of conduct and/or derive substantial revenue from goods and/or services used or consumed within this District; and because Defendants regularly and systematically direct electronic activity into the State of Texas with the manifested intent of engaging in business within this District, including the creation, hosting, and offering of fully interactive websites, advertising, e-mail, and other Internet-related services to web users within this District, as well as entry into contracts with residents of this District.

12.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims herein occurred in this District.

13.     Venue is also proper in this District under 28 U.S.C. §§ 1391(b)(1) and (c) because Defendants are corporations whose contacts would be sufficient to subject them to personal jurisdiction if this District were a separate state, as alleged above in this Complaint.

## FACTUAL BACKGROUND

### The Internet And The World Wide Web

14.     The Internet is a global network of millions of interconnected computers.  The World Wide Web is a portion of the Internet especially well-suited to displaying images and sound as well as text. Much of the information on the World Wide Web is stored in the form of web pages, which can be accessed through a computer connected to the Internet (available through commercial Internet service providers or "ISPs"), and viewed using a computer program called a "browser," such as Microsoft Internet Explorer. "Websites" are locations on the World Wide Web containing a collection of web pages.  A web page is identified by its own unique Uniform Resource Locator ("URL") or "web address" (*e.g.*, <http://www.aa.com>), which ordinarily incorporates the website's "domain name" (*e.g.*, "AA.com").  Because URLs and domain names are not case-sensitive, URLs and domain names that contain capital letters are functionally the same as those that do not.

### American Airlines and the American Airlines Marks

15.     American Airlines is the world's largest airline.  Together with its affiliates, American Airlines serves 250 cities in over forty countries, with more than 4,000 daily flights

6



in over 1,000 aircraft. American Airlines' Web site, AA.com, provides users with easy access to check and book fares, plus personalized news, information, and travel offers.

16.    American Airlines has a rich history. For almost eighty years American Airlines has developed global name-recognition and goodwill, and has become a household name.

17.    American Airlines draws its roots from scores of aviation companies founded in the 1920s. The Aviation Corporation was formed in 1928 to acquire many of these young aviation companies.   In 1930, The Aviation Corporation's airline subsidiaries were incorporated into American Airways, Inc.  In 1934, American Airways became American Airlines, Inc.

18.    On June 25, 1936, American Airlines was the first airline to fly the Douglas DC-3 in commercial service.  On Feb. 16, 1937, American Airlines carried its one-millionth passenger.  American Airlines began trading on the New York Stock Exchange on June 10, 1939.  By the end of the decade, American Airlines was the nation's number one domestic air carrier in terms of revenue passenger miles.

19.    In 1981, American Airlines introduced the "AAdvantage" travel awards program, a revolutionary marketing program to reward frequent fliers.

20.    In 1984, American Airlines introduced the American Eagle system, a network of regional airlines offering high-level service from small communities to large cities through connections to and from American Airlines.

21.    In 1995, American Airlines launched its World Wide Web site, AA.com, which is now available on the Internet at <www.aa.com>, <www.americanairlines.com>, and other URLs.  American Airlines offers information about its products and services through

AA.com, as well as the opportunity to purchase such products and services and perform many other travel-related functions such as checking in and purchasing upgrades.

22.    To preserve and enhance its trademark rights, American Airlines has obtained numerous federal trademark registrations for many of its American Airlines Marks, the overwhelming majority of which have been in continuous use for more than five years and are therefore considered "incontestable" pursuant to 15 U.S.C. § 1115(b), including but not limited to:

- **AMERICAN AIRLINES**, U.S. Registration Nos. 514,294 and 1,845,693 (both stylized form). Registered, respectively, on August 23, 1949 for "air transport of passengers and freight," based on first use in commerce in 1934; and on April 26, 1994, for "clothing; namely, men's, women's and children's shirts, T-shirts, caps, pants, jackets, shorts, sweat pants and sweatshirts," based on first use in commerce in 1987.

- **AMERICANAIRLINES**, U.S. Registration No. 1,833,817 (stylized form). Registered on May 3, 1994 for "note paper, memo pads, writing paper, envelopes, date books, calendars, diaries, playing cards and writing instruments; namely, pens and pencils," based on first use in commerce in 1987.

- **AMERICAN EAGLE**, U.S. Registration No. 1,388,600. Registered on April 1, 1986, for "passenger and freight air travel services," based on first use in commerce in 1984.

- **AA**, U.S. Registration No. 514,292. Registered on August 23, 1949, for "air transport of passengers and freight," based on first use in commerce in 1935.

- **A A**, U.S. Registration Nos. 1,895,142, 1,905,580, and 2,695,030 (all in stylized form). Registered, respectively, on May 23, 1995, for "beverage containers; namely, mugs, porcelain mugs, porcelain tankards and beverage glassware," based on first use in commerce in 1993; on July 18, 1995, for "breastpins, brooches, precious metal money clips, and tie clips," based on first use in commerce in 1993; and on March 11, 2003, for "providing an arena facility for sports, entertainment, tradeshows, exhibitions and conventions," based on first use in commerce in 2000.

- **AA.COM**, U.S. Registration No. 2,339,639. Registered on April 11, 2000, for "transportation of passengers and cargo by air," based on first use in commerce in 1998.

- **AMERICAN AIRLINES CENTER**, U.S. Registration No. 2,438,218. Registered on March 27, 2001, for "promoting the goods, services and events of others of others by placing advertising on the radio, TV, newspapers, magazines, flyers, brochures, pamphlets, billboards and on a global computer network," and for entertainment services, namely, providing an arena facility for sports, entertainment, trade shows, exhibitions and conventions," based on first use in commerce in 1999.

- **AADVANTAGE**, U.S. Registration No. 2,187,483. Registered on September 8, 1998, for "providing air transportation services featuring a program of bonus flights for frequent travelers," and for "promoting the goods and services of others by means of an incentive awards programs, whereby purchase points are awarded for purchase made from vendor subscribers, which can then be redeemed for merchandise and travel," based on first use in commerce in 1981.

- **AMERICAN CONNECTION**, U.S. Registration No. 2,199,596. Registered on October 27, 1998, for "transportation of passengers and cargo by air," based on first use in commerce in 1997.

23. American Airlines has common law rights to the American Airlines Marks in Texas by virtue of the marks' eligibility for protection and American Airlines' status as senior user of the marks.

24. The American Airlines Marks are unique and famous distinctive designations of the source of American Airlines' various air transportation and other services.

25. American Airlines has invested hundreds of millions of dollars in worldwide advertising and marketing in order to build the fame, reputation, and goodwill of the American Airlines Marks. American Airlines advertises through a variety of media, including television, radio, newspapers, direct mail, and in telephone directories across the country.

26. American Airlines also promotes its products and services on the Internet, via its own websites and through advertising on the websites of third parties.

27. Through American Airlines' actions, and because of widespread and favorable public acceptance and recognition, the American Airlines Marks have become distinctive designations of the source of origin of American Airlines' goods and services. The American



Airlines Marks have become uniquely associated with, and hence identify, American Airlines. These marks are assets of incalculable value as symbols of American Airlines, its quality goods and services, and its goodwill.

28.     Accordingly, the American Airlines Marks have developed secondary meaning.

29.     The American Airlines Marks have become "famous" within the meaning of the dilution provisions of the Lanham Act, 15 U.S.C. § 1125(c).  For example, as a result of American Airlines' extensive advertising and promotional efforts and its continuous use of the core service marks "American Airlines" and "AA.com," American Airlines has, on information and belief, attained some of the highest levels of brand recognition among air travelers.

30.     On AA.com and other affiliated websites, American Airlines allows consumers to find and purchase flights to locations around the world.  The American Airlines websites allow consumers to plan for business trips, vacations, weddings, meetings, and other events, as well as learn about and take advantage of American Airlines' incentive and promotional programs.

31.     American Airlines conducts a substantial amount of its business over the Internet and has made a sizeable investment in the development of its online business.  It is generally more beneficial for American Airlines when consumers purchase their travel directly through American Airlines.  Among other reasons, this is because when consumers book their flights through AA.com, it assists American Airlines in conveying important information to its customers, in developing a direct relationship and future business with its customers, and often in minimizing costs associated with various transactions.

**Defendants' Search Engine**

32.    Web users who are searching for a specific company product or information, but who do not know the exact domain name or website address at which it may be found, may use an internet "search engine" to locate websites, whether through a home computer, a laptop, certain cellular telephones, or other mobile communications devices.  In fact, many Internet users prefer to navigate the Internet by typing phrases and even URLs into search engines rather than type a URL into an Internet browser's address bar.  A search engine, such as Defendants', purportedly checks the terms entered into it against its databases and applies a formula or algorithm to produce a search results page that lists the websites that may relate to the customer's search terms.  It then provides links to those websites.

33.    Defendants claim, and upon information and belief most web users who perform searches with Defendants' Internet search engine believe, that the results given by this search engine are determined by a "natural" or "organic" system that lists results in order of objective relevance to the search terms input into the search engine, with the most relevant websites appearing at the top.  According to Yahoo!, "Yahoo! strives to provide the best search experience on the Web by directing searchers to high-quality and relevant web content in response to a search query."[1]

34.    On information and belief, among other kinds of searches, Defendants encourage consumers to use their websites to find other websites that offer particular products and services.

---

[1]  *See* http://help.yahoo.com/l/us/yahoo/search/basics/basics-18.html (visited Oct. 7, 2008).

35.    By using Defendants' Internet search engine, web users are identifying to Defendants the subjects in which they are interested, the companies that they seek, or the goods or services they wish to buy. This allows Defendants to obtain a significant percentage of their profits from "contextual" or "search" advertising, which allows companies to place their advertising in front of consumers who have already identified themselves as interested in particular products or services.

36.    When a web user carries out an Internet search using Defendants' search engine, Defendants not only provide the web user with purportedly objective "natural" results, but also display a list of similarly formatted "Sponsor Results" above, below and alongside their purportedly objective "natural" search results.

37.    On information and belief, the selection and placement of these Sponsor is substantially influenced by the amount of money the sponsors of these links offer to pay Defendants.

38.    Defendants' use of the American Airlines Marks or terms confusingly similar thereto in order to display Sponsor Results falsely communicates to consumers that Defendants' advertisers are official American Airlines affiliates, or that American Airlines sponsors or endorses Defendants' advertisers. In many cases, Defendants exacerbate this confusion by publishing text in the Sponsor Results that makes further confusing use of the American Airlines Marks.

39.    Further, when some web users click on the links that Defendants' advertisers pay to place alongside their purportedly objective "natural" results in order to seek information about American Airlines' services, they are likely to be deceived into believing that they will be provided with official information about American Airlines' flights and other

services directly from American Airlines.  On information and belief, however, some of these links and the websites to which they lead provide no such information.  In fact, in some instances, some of these links lead to websites that offer the services of American Airlines' competitors, whether or not they also offer American Airlines' own services.

40.    Defendants' unauthorized use in commerce of the American Airlines Marks generates profits for Defendants and their advertisers that are directly attributable to their unauthorized exploitation of the value and name recognition associated with the American Airlines Marks.

### Yahoo!'s Search Engine-Based Keyword Advertising Program

41.    Yahoo!'s search engine is available, among other places, through its website located at www.yahoo.com.  It also licenses its search engine to other popular websites, such as www.abc.com, www.cnn.com and www.sportsillustrated.com.  In addition, Yahoo! invites consumers to affix a "Yahoo! Toolbar" at the top of Internet users' Internet browsers that allows these users to conduct Yahoo! searches even when they are not currently visiting a website that features Yahoo!'s search engine.[2]  In addition, Yahoo! encourages users to download its Yahoo! Go program and other similar programs for mobile communications devices such as cellular telephones, BlackBerry devices, Palm products, and Apple iPhones, and markets the ability to advertise to these devices through Yahoo! Mobile Ad Services.[3]

42.    Yahoo! offers a program called "Yahoo! Sponsored Search" that displays advertisements to users of Yahoo!'s search engine in the form of "Sponsor Results."  Yahoo!

---

[2]  *See* http://toolbar.yahoo.com/ (visited Oct. 7, 2008).

[3]  *See* http://mobile.yahoo.com/business/advertiser (visited Oct. 7, 2008).

offers advertisers the ability to select certain "keywords" and, even suggests keywords to advertisers, that will trigger a Sponsor Result linking to the advertiser's chosen website, which Yahoo! will display alongside the purportedly objective "natural" search results.

43.    Yahoo! has described keyword triggers as "a powerful way for customers to find [an advertiser's] website because users are actively searching for the products or services [the advertiser] offer[s]. With Yahoo! Sponsored Search, [an advertiser's] listings can appear prominently in search results on the web's top portals and search engines."[4]

44.    In addition, Defendants on their own designate additional keywords that their advertisers have not chosen to buy to trigger their "Sponsor Results." Through a program that Defendants refer to as "Advanced Match," Defendants designate their own secret list of terms in order to trigger "Sponsor Results" for advertisers when consumers use those search terms in the Yahoo! search engine. Defendants tell their advertisers that this Advanced Match program provides them with "a wider range of relevant keywords" or "a broader range of searches related to your keywords, titles, descriptions, and/or web content."[5] On information and belief, in most cases, Defendants do not disclose to their advertisers the list of Advanced Match terms that may trigger the publication of their Sponsor Result advertisements. Furthermore, Defendants set Advanced Match as the default setting for all of its advertisers and requires advertisers to opt out of Advanced Match in order to stop its use.

---

[4] *See* http://us.i1.yimg.com/us.yimg.com/i/us/cn/srch/hssw.swf (quoted language in audio track) (visited Oct. 7, 2008)

[5] *See, respectively,* http://help.yahoo.com/l/us/yahoo/ysm/sps/optimize/sales/sales_cam_setup.html; http://help.yahoo.com/l/us/yahoo/ysm/sps/training/takeaways/keywords_takeaways.html (both visited Oct. 7, 2008).

45.    On information and belief, Yahoo! charges its advertisers each time a web user clicks on a keyword-triggered Sponsor Result that appears on Yahoo!'s "results" page.

46.    These Sponsor Results are not meaningfully or conspicuously identified to consumers as paid third-party advertisements.   Most often, Yahoo! posts its "Sponsor Results" advertisements in a color, typeface, and font size that is not sufficiently different from the results that Yahoo!'s purportedly "natural" search system generates and, to the extent that consumers do detect a difference, many consumers believe Yahoo! to be highlighting for them the result that it has objectively determined to be the most relevant to their search as determined by Defendants' purportedly unprejudiced system for determining the websites most relevant to a given search.   On information and belief, even the designation of these keyword-triggered advertisements as "Sponsor Results" is confusing to many consumers, because Yahoo! does not inform consumers who has done the "sponsoring."

47.    On information and belief, in a substantial portion of searches, Yahoo!'s Sponsored Search program makes four distinct uses of keywords on behalf on an advertiser. First, Yahoo! uses the keywords selected by advertisers to trigger the Sponsor Result advertisement. Second, Yahoo! suggests additional keyword to advertisers that the advertiser had not previously chosen. Third, Yahoo! selects its own keywords to trigger the Sponsor Result advertisements of its advertisers through its Advanced Match program.   Fourth, Yahoo! sometimes publishes the keyword as part of the advertisement itself.

48.    Moreover, Defendants also use the keywords that they sell to their advertisers to determine the placement of additional advertisements through Yahoo!'s "Content Match" program.  According to Yahoo!, the placement of these Content Match advertisements "can

be determined by the relevance of [their advertisers'] keyword(s) to the . . . content" of the page where the ads will be displayed.[6]

49.    On information and belief, Defendants also employ other advertising programs that utilize similar types of keywords, including but not limited to the American Airlines Marks or terms confusingly similar thereto, to cause advertisements to appear on websites across the Internet or on mobile communications devices that themselves display the American Airlines Marks or terms confusingly similar thereto.  On information and belief, many of these advertisements lead Internet users to websites that are not American Airlines websites and often to websites that compete with American Airlines.

### Yahoo!'s Unwillingness To Refrain From Trademark Infringement

50.    On information and belief, Yahoo! has adopted a trademark policy for its Sponsored Search program (Yahoo!'s "trademark policy") that "requires advertisers to agree that their search terms, their listing titles and descriptions, and the content of their Web sites do not violate the trademark rights of others."[7]

51.    Yahoo!'s trademark policy is manifestly deficient.

(a)    First, Yahoo! does not make an affirmative commitment to restrict advertisements that create a likelihood of consumer confusion.    Instead, Yahoo! merely states its willingness to "review the advertiser's listing for compliance with our

---

[6] *See* http://help.yahoo.com/l/us/yahoo/ysm/sps/start/overview_cm.html (visited Oct. 7, 2008).

[7] *See* http://searchmarketing.yahoo.com/legal/trademarks.php; *see also* http://searchmarketing.yahoo.com/legal/lsstrademarks.php (discussing procedure for trademark complaints related to Yahoo! "Local Sponsored Search Listings") (both visited Oct. 7, 2008).

relevancy guidelines and, if appropriate, Yahoo! Search Marketing will remove the advertiser's listing or the content of the listing's title or description will be modified."[8]

(b)     Second, even if Yahoo! made a more binding commitment to refrain from publishing advertisements that infringe, its policy still puts the onus on the trademark owner to identify and complain about each infringing use, disclaiming responsibility for the advertisements that it publishes on *its own website*.  Because the content of Yahoo!'s website is constantly changing, however, it is effectively impossible for even the most vigilant owner of a mark to detect all infringing uses on Yahoo!'s website.

(c)     Third, on information and belief, Yahoo! bases the placement of its "Sponsor Results" on the amount of money that an advertiser has paid rather than on any objective relevancy evaluation.  This requires trademark holders like American Airlines to bid enough to secure sufficiently prominent placement for their own, authorized Sponsor Results rather than yield the most prominent positions to unauthorized third parties.

(d)     Fourth, on information and belief, Yahoo! knows in many cases that the advertiser's representation that it is not violating the trademark rights of American Airlines is false.

52.     On information and belief, Yahoo! has the ability to refrain from making infringing use of proprietary marks as part of its keyword-triggered advertising program. Specifically, on information and belief, Yahoo! could reasonably prevent trademarks, service marks, and terms confusingly similar thereto from being used as keyword triggers or in the text of Sponsor Results advertisements.

---

[8] *See* http://searchmarketing.yahoo.com/legal/trademarks.php (visited Oct. 7, 2008).

53.    In contrast to its practices with respect to the use of trademarks in the United States, on information and belief, Yahoo! takes steps to prevent advertisers in many countries *outside* the United States from using as keywords the trademarks of others.

54.    Yahoo! has even stated that it anticipates trademark infringement lawsuits because of its decision to allow its advertising customers to use trademarks to trigger the delivery of Sponsor Results.  In its 2005 Form 10-K, Yahoo! stated as follows:

> [T]hird parties have made, and may continue to make, trademark infringement and related claims against us over the display of search results triggered by search terms that include trademark terms.  A court in France has held us liable for displaying search results triggered by certain trademark terms....

(Yahoo! 10-K, p. 21).

### Yahoo!'s Unauthorized Use Of The American Airlines Marks

55.    American Airlines has not given Yahoo! any permission, authority, or license to use or sell the right to use the American Airlines Marks for the promotion of the goods and services of any third parties, either directly or indirectly.

56.    Nevertheless, on information and belief, Yahoo! has in fact sold to third-party advertisers and encouraged  the use of the American Airlines Marks or terms confusingly similar thereto as part of Yahoo!'s search engine-based advertising program.  As a result, Yahoo!'s programming utilizes the expressed interest of Internet users in the American Airlines Marks to trigger advertisements to websites that are not American Airlines websites, some of which even compete with American Airlines.  In fact, many of Yahoo!'s Sponsor Results are expressly designed to draw consumers away from American Airlines' websites.

57.    Moreover, Yahoo!'s use of American Airlines Marks within the text that Yahoo! posts as a part of some Sponsor Results further misleadingly communicates to

consumers that such links are endorsed or sponsored by American Airlines or its affiliates, or
that such links lead to websites that are official American Airlines websites.

58.    As a part of the process of triggering "Sponsor Results," Yahoo! offers the
ability to and encourages its advertisers to purchase as keyword triggers the trademarks and
service marks of others, as well as words, phrases, and terms confusingly similar to those
trademarks and service marks.  Thus, a consumer searching for American Airlines websites
using Yahoo!'s search engine might be shown a Sponsor Result unrelated to American
Airlines that was displayed because a third-party advertiser purchased an American Airlines
Mark or a term confusingly similar thereto as a keyword trigger.  A statistically significant
number of consumers are likely to believe falsely that it was American Airlines who
"sponsored" the link that appears alongside the purportedly "natural" search engine results.

59.    On information and belief, Yahoo! similarly causes confusion when
Defendants select American Airlines Marks to trigger the publication of Sponsor Result
advertisements in response to searches for the American Airlines Marks or confusingly
similar terms through Yahoo!'s Advanced Match program.

60.    On information and belief, a significant portion of the "Sponsor Results" for
which Yahoo! uses the American Airlines Marks or terms confusingly similar thereto as
keyword triggers link Internet users to:  (i) websites of airlines that compete with American
Airlines; (ii) websites that sell air travel not only on American Airlines, but also on a variety
of airlines that compete with American Airlines; and/or (iii) websites that are entirely
unrelated to American Airlines.  American Airlines has not sponsored these Sponsor Results
or otherwise authorized Yahoo! to sell the right to use the American Airlines Marks in
commerce to draw web users to these websites.  Nevertheless, these unauthorized Sponsor

Results appear in close and confusing proximity to both the listings generated by Yahoo!'s purportedly "natural" system and the Sponsor Result that Yahoo! forces American Airlines itself to purchase to reduce the likelihood that Internet users will be diverted to other websites. Many of these "Sponsor Results" use American Airlines Marks in whole or in part within the text of the Sponsor Results themselves.

61.    For example, below is a true and accurate screen shot of Yahoo!'s website, which show the results pages that appeared when a web user performed an Internet search for the American Airlines Mark "American Airlines" (U.S. Reg. Nos. 514,294 and 1,845,693). In addition to Yahoo!'s "natural" search results listed on the left of the screen, Yahoo! also listed in close proximity Sponsor Results to various websites. American Airlines Marks or terms confusingly similar to the American Airlines Marks appeared in the text of certain Sponsor Results even though the websites linked to these Sponsor Results are not American Airlines websites, some of which even compete with American Airlines. American Airlines has not sponsored any of the unauthorized Sponsor Results that appear below on the right or otherwise authorized Yahoo! to sell the right to use the American Airlines Marks in commerce to draw web users to these websites.



62.    For another example, below is a true and accurate screen shot of Yahoo!'s website, which show the results pages that appeared when a web user performed an Internet search for the American Airlines Mark "American Airlines".    In addition to Yahoo!'s "natural" search results listed on the left of the screen, Yahoo! also lists in close proximity A Sponsor Result for LowFares.com.  The text of the LowFares.com Sponsor Result blatantly uses the actual American Airlines Mark "American Airlines," even though LowFares.com is not a American Airlines website, is not authorized to use any American Airlines Marks in this fashion, and sells services that compete directly with American Airlines.  American Airlines has not sponsored this Sponsor Result or otherwise authorized Yahoo! to sell the right to use the American Airlines Marks in commerce to draw web users to this websites.



63.    In fact, some of the "Sponsor Results" that Yahoo! posts based on Internet searches for the American Airlines Marks or terms confusingly similar thereto do not even provide consumers with the opportunity to purchase services or products offered by American Airlines.  For example, below is a true and accurate screen shot of Yahoo! search results for "aa com," which incorporates the American Airlines Mark "AA" (U.S. Reg. No. 514,292) and is a confusingly similar variant of the American Airlines Mark "AA.com" (U.S. Reg. No. 2,339,639).  When this phrase was entered into Yahoo!'s search engine, Yahoo! provided Sponsor Results in response that include an ad whose title is "Aa. Com Aadvantage Quotes" for a company called Calibex which sells mortgage products and not airline tickets.  The title of this Sponsor Result makes use of the following American Airlines Marks or terms that are confusingly similar thereto:   "AA" (U.S. Reg. No. 514,292), "AA.com" (U.S. Reg. No. 2,339,639) and "AAdvantage" (U.S. Reg. No. 2,187,483).



64.    In fact, some of the "Sponsor Results" that Yahoo! posts based on Internet searches for the American Airlines Marks or terms confusingly similar thereto do not even provide consumers with the opportunity to purchase services or products offered by American Airlines.  For example, below is a true and accurate screen shot of Yahoo! search results for "americanairlinescenter.com," which incorporates the American Airlines Mark "American Airlines Center" (U.S. Reg. No. 2,438,218) and is a confusingly similar variant of the American Airlines Mark "American Airlines" (U.S. Reg. Nos. 514,294 and 1,845,693). When this phrase was entered into Yahoo!'s search engine, Yahoo! provided Sponsor Results in response that include ads whose titles are "American Airlines Center Tickets" and "Americanairlinescenter.  The titles of these Sponsor Result makes use of the same American Airlines Marks.



65.     Further, some of Yahoo!'s "Sponsor Results" are for companies that are in direct competition with American Airlines.  For example, below is a true and accurate screen shot of Yahoo! search results for "aa flights," a phrase that conspicuously incorporates the famous American Airlines Mark "AA" (U.S. Reg. No. 514,292).   When this phrase was entered into Yahoo!'s search engine, Yahoo! not only provided Sponsor Results that include the mark AA in the text of certain Sponsor Results, but also provided a Sponsor Result linking to Delta Air Lines, one of American Airlines' direct competitors.



66.    By contrast, Yahoo! apparently has a different policy with respect to its own trademarks.   On information and belief, Yahoo! tries to prevent at least one of its own trademarks from being used as a keyword trigger.

67.    Thus, on information and belief, Yahoo! allows the use of American Airlines Marks and terms confusingly similar thereto as keywords in its search engine-based advertising program, although that program is flexible enough to prevent many, if not all, such uses.

68.    Further, Yahoo! has actively encouraged advertisers to use trademarks, service marks, and terms confusingly similar thereto as keyword triggers.   During the limitations period, Yahoo!'s Sponsored Search program has featured a "Keyword Selector Tool" to assist advertisers in finding keywords "related" to those the advertiser has already selected.   For example, when the term "airline" was submitted, Yahoo! offered a number of related terms

for purchase as keywords, including the infringing term "american airline," which is confusingly similar to the American Airlines Mark "American Airlines." Below is a true and accurate screen shot showing a portion of the web page displayed by Yahoo! when a web user requested keywords related to the word "airline."



69.     Moreover, if an advertiser selected an American Airlines Mark such as "AA.com" (U.S. Reg. No. 2,339,639) as a keyword trigger, Yahoo! similarly invited the advertiser also to purchase as keyword triggers scores of other terms that incorporate the mark "AA.com" and/or other American Airlines Marks or confusingly similar variations on those marks, including but not limited to "aa.com airline american," "aa.com aadvantage," "aa.com advantage," "aa.com admiralsclub," "aa.com code discount," and "aa.com espanol." Below are two true and accurate screen shots showing portions of the same web page that was displayed by Yahoo! when a web user requested "related keywords" to the term "AA.com."



## Keyword Selector Tool

Not sure what search terms to bid on?
Enter a term related to your site and we will show you:

- **Related searches** that include your term
- **How many times** that term was searched on last month

**Get suggestions for:** (may take up to 30 seconds)

`AA%2Ecom`

**Note:** All suggested search terms are subject to our standard editorial review process.

### Searches done in November 2006

| Count | Search Term |
|-------|-------------|
| 223364 | aa.com |
| 969 | aa.com totheworld |
| 951 | aa.com jetnet |
| 650 | aa.com code discount |
| 599 | aa.com espanol |
| 518 | aa.com airline american |
| 501 | aa.com offer |
| 397 | aa.com holiday2006 |
| 268 | aa.com checkpoint |
| 264 | aa.com aadvantage |
| 262 | aa.com shorthops |
| 256 | aa.com español |
| 254 | aa.com airportexpectations |
| 228 | 500 aa.com |
| 207 | aa.com account |
| 207 | aa.com account |
| 195 | aa.com scratchmatchwin |
| 171 | aa.com refunds |
| 162 | aa.com travelinfo |
| 116 | aa.com checkin |
| 106 | aa.com ammrail |
| 101 | aa.com advantage |
| 91 | aa.com gate |
| 89 | aa.com traavelperks |
| 86 | aa.com reservation |
| 82 | aa.com search |
| 80 | aa.com baggageinfo |
| 80 | aa.com elitrerewards |
| 72 | aa.com bonus |
| 65 | aa.com hostname |
| 65 | aa.com promo |
| 64 | aa.com oo |
| 63 | aa.com world |
| 62 | aa.com check flight in |
| 57 | aa aa.com reservation |
| 57 | aa.com admiralsclub |
| 52 | aa.com jet net |
| 47 | 1 aa.com |
| 47 | aa.com american. airlines |
| 47 | aa.com ! |
| 46 | aa.com check in |
| 45 | aa.com customerrelations |
| 44 | aa.com vv |
| 38 | aa.com travelperks |

70.     Yahoo! also used another tool linked to its website that similarly encouraged advertisers to "Consider adding [additional] keywords."  For example, if an advertiser selects the American Airlines Marks "American Airlines" (U.S. Reg. Nos. 514,294, and 1,845,693), "AA.com" (U.S. Reg. No. 2,339,639), and "AAdvantage" (U.S. Reg. No. 2,187,483), Yahoo! similarly invites the advertiser also to purchase as keyword triggers scores of other terms that incorporate these or other American Airlines Marks or confusingly similar variations on those marks, including but not limited to "american airline ticket," "american airline flight," "aa web site," "american airline home," and "american airline air fare."  Below are two true and accurate screen shots showing portions of the same web page that was displayed by Yahoo! when a web user asked to "find keywords" using the terms "American Airlines," "AA.com," and "AAdvantage."



71.    In addition, on information and belief, Defendants or their agents have encouraged advertisers to use the American Airlines Marks either as keywords or in the text of a Sponsored Link result through their search engine "optimization" programs or through other marketing efforts that were designed to induce advertisers to refine or increase their participation in Defendants' search engine advertising programs.

72.    On information and belief, Yahoo!'s specific use of the American Airlines Marks in its advertising programs allows Yahoo! and its advertisers to benefit financially from and trade off American Airlines' goodwill and reputation without incurring the expense that American Airlines has incurred in building up its popularity, name recognition, and brand loyalty.    Through these practices, Yahoo! intentionally traffics in the infringement and dilution of the American Airlines Marks, falsely represents or confusingly suggests to consumers a connection to American Airlines that does not exist, and unfairly competes with

American Airlines.  These practices cause consumer confusion, erode the distinctiveness of the American Airlines Marks, and cause American Airlines to lose, in part, control over the commercial use of the American Airlines Marks by placing such control in the hands of Yahoo! and its advertisers.

73.    On information and belief, Yahoo!'s advertising programs encouraged confusing uses of American Airlines Marks in the text of the Sponsor Result advertisements that Yahoo! publishes on its search results page and in other Yahoo! advertising on the Internet, although Yahoo! has the technical capability to prevent many, if not all, such uses if Yahoo! wanted to do so.

74.    On information and belief, Yahoo!'s advertisers have used Yahoo!'s programming to create "Sponsor Results" and other advertisements that either use terms that are confusingly similar to the American Airlines Marks or are formatted in ways that are likely to cause confusion with American Airlines and/or with the American Airlines Marks. Because of the constantly changing nature of Yahoo!'s website, though, American Airlines requires discovery to ascertain the extent and nature of such confusing advertisements.

75.    On information and belief, Yahoo! may also have other advertising programs, including but not limited to Yahoo!'s "Content Match" program, that similarly make commercial use of American Airlines Marks or terms confusingly similar thereto in order to trigger other types of advertisements.  On information and belief, in at least some of these instances, the text of the advertisements may also make use of American Airlines Marks or terms confusingly similar thereto.

76.    In sum, Yahoo!'s unreasonably ineffective trademark policy constitutes, in practice, use in commerce of the registered and common law trademarks of other companies,

including American Airlines, with full knowledge that consumers are likely to be confused and lured away from the websites that they intended to visit, and with the goal of financially benefiting Yahoo! to the detriment of American Airlines and other trademark and service mark owners.

### Consumer Confusion and Harm to American Airlines

77.    On information and belief, Defendants charge advertisers a fee every time a web user clicks on a keyword-triggered "Sponsor Result."

78.    On information and belief, many web users who enter one of the American Airlines Marks into Defendants' search engine and who then view a Sponsor Result containing a third-party advertisement will follow the Sponsor Result to a third-party website in the belief that the website is owned by or affiliated with American Airlines, and then give their business to the third-party advertiser.

79.    Upon information and belief, many web users who are presented with such Sponsor Results to third-party advertiser websites are not aware that the third-party advertiser may have no affiliation with American Airlines and/or may not be an authorized provider of American Airlines products and services.  Defendants' misappropriation of the American Airlines Marks as keyword triggers and their use of terms confusingly similar to American Airlines Marks in the Sponsor Result text are therefore likely to cause confusion in the marketplace for air transportation services.  This confusion is particularly likely because the third-party advertiser Sponsor Results often appear in the same context as, and often above, below or along the side of, Sponsor Results to genuine American Airlines websites.

80.    Even if web users realize that a given website is not affiliated with American Airlines, once they reach it, the damage to American Airlines has already been done.  A



statistically significant percentage of such consumers are likely either to stay at the third-party advertiser's website or to discontinue their search for American Airlines' websites. Web users may also associate the quality of the goods and services offered on the third-party advertiser's website with those offered by American Airlines, and if dissatisfied with such goods and services, may decide to avoid American Airlines' goods and services in the future.

81. In fact, because of the dominant role of Defendants' search engine in consumers' Internet usage and habits, Defendants effectively force American Airlines to purchase the rights to have official American Airlines advertisements appear when Internet users search the web for the American Airlines Marks. In other words, Defendants have set up a system wherein American Airlines and others are, *de facto*, forced to pay Defendants to reduce the likelihood that consumers will be confused by Defendants' own practices. This need to reduce the extent of consumer confusion caused by Defendants' policies has cost and, unless enjoined, will continue to cost American Airlines millions of dollars. Even when American Airlines purchases from Defendants these rights, though, Defendants are still able to misappropriate American Airlines' rights by selling these same rights to third parties at the same time.

82. Although the above examples are illustrative of the problems created by Defendants, they by no means describe all the ways in which Defendants' uses of the American Airlines Marks are likely to confuse consumers. Because of the fluid nature of the way Defendants' programming uses the American Airlines Marks and displays advertising based on those marks, Defendants either are misleading or will mislead consumers in innumerable different ways. Accordingly, it is impossible for American Airlines to cure this problem merely by pursuing remedies against Defendants' advertisers alone.

83.    Among other things, the following facts and circumstances support the conclusion that Defendants' use in commerce of the American Airlines Marks is likely to cause consumer confusion:

A.    The American Airlines Marks have acquired exceptionally strong secondary meaning over the course of the last century.

B.    Defendants use the actual American Airlines Marks or terms confusingly similar thereto as keyword triggers and in advertisement text.

C.    Third-party advertisers on whose behalf Defendants use the American Airlines Marks or terms confusingly similar thereto generally sell services closely related to the air transportation services provided by American Airlines, and in many cases are in direct competition with American Airlines.

D.    Defendants and their third-party advertisers use the same marketing channels or parallel marketing channels as American Airlines -- namely, the World Wide Web, and in particular, the context of internet searching.

E.    On information and belief, purchasers are likely to exercise a minimal degree of care in the context of Internet searching generally and in choosing air transportation services online in particular.

F.    On information and belief, consumers have actually been confused as a result of Defendants' conduct.

G.    Defendants began using the American Airlines Marks or terms very similar to the marks after they were registered and after they became famous and distinctive.    On information and belief, Defendants did so with full

knowledge of American Airlines' rights in the American Airlines Marks. In fact, on information and belief, it is Defendants' specific intent to use the American Airlines Marks as set forth in this complaint to profit from consumer's association of the American Airlines Marks with American Airlines.

84.     On information and belief, many of the third parties to whom Defendants sell or offer the right or ability to use the American Airlines Marks or terms confusingly similar thereto, or on whose behalf Defendants use such marks or terms, do not use such marks or terms to identify or describe American Airlines, its services, or companies affiliated with it.

## I.

### FIRST CLAIM FOR RELIEF
### FOR FEDERAL TRADEMARK/SERVICE MARK INFRINGEMENT

85.     Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

86.     The American Airlines Marks are valid, federally registered trademarks and service marks entitled to protection under the Lanham Act.

87.     Defendants have used the American Airlines Marks in commerce in a number of ways as part of their search engine-based, keyword-triggered advertising programs, including (but not limited to) the following: (i) by allowing and/or encouraging third-party advertisers to bid on the American Airlines Marks, or terms confusingly similar thereto, and pay Defendants to use such marks or terms to trigger the display of Sponsor Result advertisements that link to third-party advertisers' websites, which are displayed alongside purportedly "natural" search engine results; (ii) by designating the American Airlines marks to serve as keyword triggers for the Sponsor Result advertisements of Defendants' advertisers

even when such advertisers have not themselves chosen the American Airlines Marks through Defendants' Advanced Match program; (iii) by causing such Sponsor Result advertisements to appear when web users have specifically attempted to find or access one of American Airlines' websites, with the express purpose of causing web users to visit websites other than those affiliated with American Airlines, (iv) by including American Airlines Marks in Defendants' proprietary directories of terms that trigger Sponsor Result advertisements; (v) by causing Sponsor Result advertisements to appear in close proximity to American Airlines Marks and links to legitimate American Airlines-related websites; and (vi) by causing American Airlines Marks or terms confusingly similar to American Airlines Marks to appear in the text of advertisements that are designated as "Sponsor Results."

88.    Defendants' unauthorized and intentional use of the American Airlines Marks or terms confusingly similar thereto in connection with their search engine-based advertising programs infringes on American Airlines' exclusive rights in its federally registered marks and is likely to cause confusion, mistake or deception as to the source of the services offered by Defendants and their advertisers.  Such use is also likely to cause confusion as to whether American Airlines is sponsoring, has authorized or is somehow affiliated with Defendants' sale of the American Airlines Marks or terms confusingly similar thereto, or with the products or services offered through the Sponsor Results that Defendants intentionally post alongside purportedly objective "natural" results from Internet searches for American Airlines Marks.

89.    Consumers are likely to be initially confused into believing that clicking on Defendants' keyword-triggered Sponsor Results will lead to American Airlines' websites or to information about American Airlines or its services.

90.    Even after accessing the websites associated with keyword-triggered "results," consumers are likely to be confused into believing that those websites and the information they contain are associated with, sponsored by, operated by, or otherwise formally affiliated with or supported by American Airlines when that is not the case.

91.    Defendants' unauthorized and intentional use of the registered American Airlines Marks and terms confusingly similar thereto in connection with their search engine-based advertising programs constitutes trademark infringement in violation of Sections 32(1) and 43(a) of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a).

92.    Defendants' infringement of the American Airlines Marks is willful and reflects Defendants' intent to trade on the goodwill and strong brand recognition associated with the American Airlines Marks.

93.    Defendants' infringement has damaged American Airlines in an amount to be determined at trial.

94.    Defendants' infringement has caused and, unless restrained by this Court, will continue to cause American Airlines irreparable injury.

95.    American Airlines has no adequate remedy at law for Defendants' infringement.

## II.

### SECOND CLAIM FOR RELIEF
### FOR CONTRIBUTORY TRADEMARK/SERVICE MARK INFRINGEMENT
### UNDER THE LANHAM ACT

96.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

97.    With full knowledge of American Airlines' rights in the American Airlines Marks, Defendants have sold to third-party advertisers the rights to use the American Airlines Marks or terms confusingly similar thereto as a part of Defendants' search engine-based advertising programs.   In this context, the third-party advertisers' use of the American Airlines Marks or terms confusingly similar thereto is likely to cause confusion among consumers, and constitutes infringement of American Airlines' rights in the American Airlines Marks.

98.    In particular, the use of the American Airlines Marks or terms confusingly similar thereto in Defendants' search engine in order to trigger the display Sponsor Results that link to the websites of third-party advertisers alongside purportedly "natural" results is likely to deceive or cause confusion among web users as to whether American Airlines is the source of (or is sponsoring or affiliated with) the products and services offered on the third-party advertisers' websites.

99.    Alternatively, the use of American Airlines Marks or terms confusingly similar thereto within the text of Sponsor Result advertisements by third-party advertisers is likely to deceive or cause confusion among web users as to whether American Airlines is the source of (or is sponsoring or affiliated with) the products and services offered on the third-party advertisers' websites.

100.    Through their sale of the American Airlines Marks and terms confusingly similar thereto to third-party advertisers, Defendants provide such third-party advertisers with aid and material contribution to the third-party advertisers' violations of the Lanham Act, 15 U.S.C. §§ 1114 and 1125(a).

101.    Defendants are therefore contributorily liable for the infringing use of the American Airlines Marks by the third-party advertisers who use the American Airlines Marks to trigger the display of links to their websites.

102.    Defendants' contributory infringement is willful and reflects Defendants' intent to trade on the good will and strong brand recognition associated with the American Airlines Marks.

103.    American Airlines has been damaged by Defendants' contributory infringement in an amount to be determined at trial.

104.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

105.    American Airlines has no adequate remedy at law for the foregoing wrongful conduct.

### III.

### THIRD CLAIM FOR RELIEF
### FOR VICARIOUS TRADEMARK/SERVICE MARK INFRINGEMENT
### UNDER THE LANHAM ACT

106.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

107.    Defendants have the right and ability to control the use of the American Airlines Marks or terms confusingly similar to the American Airlines Marks in their search engine-based advertising programs.

108.    Third-party advertisers' use of the American Airlines Marks or terms confusingly similar thereto as keyword triggers in Defendants' search engine-based

advertising programs is likely to cause confusion among consumers, and constitutes infringement of American Airlines' rights in the American Airlines Marks.

109.    Third-party advertisers' use of the American Airlines Marks or terms confusingly similar thereto in the text of Sponsor Result advertisements is likely to cause confusion among consumers, and constitutes infringement of American Airlines' rights in the American Airlines Marks.

110.    Defendants receive a direct financial benefit from the third-party advertisers' unauthorized use of the American Airlines Marks or terms confusingly similar thereto.

111.    Defendants are therefore vicariously liable for the infringing use of the American Airlines Marks by third-party advertisers.

112.    American Airlines has been damaged by Defendants' vicarious infringement in an amount to be determined at trial.

113.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

114.    American Airlines has no adequate remedy at law for the foregoing wrongful conduct.

**IV.**

**FOURTH CLAIM FOR RELIEF
FOR FALSE REPRESENTATION UNDER THE LANHAM ACT**

115.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

116.    Defendants' use of the American Airlines Marks or terms confusingly similar thereto as keyword triggers in their search engine-based advertising programs conveys the misleading commercial impression to the public that the third-party advertisers listed as

Sponsor Results alongside purportedly "natural" results, or their products or services, are approved, endorsed or sponsored by American Airlines, or are otherwise affiliated with or supported by American Airlines.

117.    Defendants' use of the American Airlines Marks or terms confusingly similar thereto in the text of Sponsor Result advertisements conveys the misleading commercial impression to the public that the third-party advertisers listed as Sponsor Results are approved, endorsed or sponsored by American Airlines, or are otherwise affiliated with or supported by American Airlines.

118.    Each of these misleading uses of the American Airlines Marks constitutes a false designation of origin and false description and representation, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

119.    Defendants' false representations are willful and reflect Defendants' intent to trade on the goodwill and strong brand recognition associated with the American Airlines Marks.

120.    Defendants' false representations have damaged American Airlines in an amount to be determined at trial.

121.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

122.    American Airlines has no adequate remedy at law for Defendants' false representations.

## V.

## FIFTH CLAIM FOR RELIEF
## FOR DILUTION UNDER THE LANHAM ACT

123.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

124.    Defendants' use of the American Airlines Marks or terms confusingly sir thereto as keyword triggers in their search engine-based advertising programs has less and will continue to lessen the capacity of American Airlines' famous and distin American Airlines Marks to distinguish American Airlines' products and services from t of others, and has diluted the distinctive quality of the famous and nationally recogr American Airlines Marks.

125.    Defendants' use of the American Airlines Marks or terms confusingly similar thereto in the text of Sponsor Result advertisements has lessened and will continue to lessen the capacity of American Airlines' famous and distinctive American Airlines Marks to distinguish American Airlines' products and services from those of others, and has diluted the distinctive quality of American Airlines' famous and nationally recognized American Airlines Marks.

126.    On information and belief, Defendants have derived and continue to derive substantial revenue and profits from the past and ongoing dilution of the American Airlines Marks as a result of their unauthorized uses of the American Airlines Marks and terms confusingly similar thereto.

127.    Defendants' use of the American Airlines Marks constitutes dilution in violation of Section 43(c) of the Lanham Act 15 U.S.C. § 1125(c).

128.    Defendants' dilution of the American Airlines Marks has caused American Airlines damage in an amount to be determined at trial.

129.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

130.    American Airlines has no adequate remedy at law for Defendants' dilution of the American Airlines Marks.

## VI.

### SIXTH CLAIM FOR RELIEF
### FOR TRADEMARK INFRINGEMENT UNDER TEXAS LAW

131.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

132.    American Airlines has common law rights to the American Airlines Marks in Texas by virtue of the marks' eligibility for protection and American Airlines' status as senior user of the marks.

133.    Defendants' acts as described above constitute common law infringement of the famous American Airlines Marks, resulting in irreparable injury to American Airlines.

134.    American Airlines has no adequate remedy at law for Defendants' infringement of its common law trademark rights.

## VII.

### SEVENTH CLAIM FOR RELIEF
### FOR TRADEMARK DILUTION UNDER TEXAS LAW

135.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

136.    American Airlines has common law rights under Texas law to the American Airlines Marks.

137.    Defendants' acts as described above constitute dilution and dilute the distinctive quality of the famous American Airlines Marks, resulting in damage to American Airlines, to its business reputation, to the uniqueness and individuality of the American Airlines Marks, and to the substantial business and goodwill symbolized by the American Airlines Marks in violation of Texas's Anti-Dilution Statute, TEX. BUS. & COM. CODE § 16.29.

138.    American Airlines has no adequate remedy at law for Defendants' dilution of its common law trademark rights.

## VIII.

### EIGHTH CLAIM FOR RELIEF
### FOR UNFAIR COMPETITION UNDER TEXAS LAW

139.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

140.    Defendants' acts as described above violate Texas's unfair competition law.

141.    As a result of Defendants' conduct, American Airlines will continue to suffer damage to its reputation because of consumer confusion as to the origin or sponsorship of the products and services advertised through Defendants' websites.

142.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

143.    American Airlines has no adequate remedy at law for Defendants' unfair competition.

## IX.

### NINTH CLAIM FOR RELIEF
### MISAPPROPRIATION UNDER TEXAS LAW

144.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

145.    American Airlines has created the goodwill, value, secondary meaning, and popularity of the American Airlines Marks through extensive time, labor, skill, and money.

146.    Defendants use the American Airlines Marks to compete with American Airlines, thereby gaining a special advantage and a "free ride" in that competition because Defendants are not and have not been burdened with the expense incurred by the American Airlines in developing the goodwill, value, secondary meaning, and popularity of the American Airlines Marks.

147.    As a result of Defendants' conduct, American Airlines has been and will continue to be commercially damaged because of consumer confusion as to the origin or sponsorship of the products and services advertised through Defendants' websites.

148.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

149.    American Airlines has no adequate remedy at law for Defendants' misappropriation of the American Airlines Marks.

## X.

### TENTH CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH CONTRACT

150.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

151.    American Airlines has valid contractual relationships with its authorized distributors, including certain online travel agencies and global distribution systems. Among other reasons, these contractual relationships are highly valuable to American Airlines because such distributors agree not to "purchase, use, or register any domain names or keywords or search terms that are identical or similar to, or contain (in whole or in part), any of the American [Airlines] Marks." These contractual relations are set forth in the American Airlines, Inc. Addendum to the Airlines Reporting Corporation ("ARC") Agreement.

152.    On information and belief, Defendants had knowledge of the existence of these contractual relations between American Airlines and its authorized distributors, including certain online travel agencies and global distribution systems.

153.    Defendants' use of American Airlines Marks and terms confusingly similar thereto in connection with its search engine-based advertising programs, specifically "Sponsored Links" and the "AdWords" program, interferes with American Airlines' valid contractual relations with its authorized distributors. On information and belief, Defendants' conduct has hindered, precluded, or lessened the benefits to American Airlines of those relationships, all without legal justification or excuse. In particular, on information and belief, Defendants have actively or effectively induced American Airlines' distributors to breach their obligations under the American Airlines, Inc. Addendum to the ARC Agreement to refrain from purchasing, using, or registering any keywords or search terms that are identical or similar to, or contain (in whole or in part), any of the American Airlines Marks.

154.    Defendants acted with a conscious desire to hinder, interfere with, change, and burden these relationships or knew that such was certain or substantially certain to occur as a result of their conduct.

155.    Defendants' tortious interference with contractual relations has caused American Airlines damage in an amount to be determined at trial. For example and without limitation, Defendants have been unjustly enriched through its unlawful and unauthorized sales of the American Airlines Marks.

156.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

157.    American Airlines has no adequate remedy at law for Defendants' tortious interference with contract.

## XI.

### ELEVENTH CLAIM FOR RELIEF
### MONEY HAD AND RECEIVED

158.    Plaintiff repeats and realleges each and every allegation in the foregoing paragraphs as if fully set forth herein.

159.    American Airlines is the owner of all right and title to the American Airlines Marks. As a result, American Airlines possesses the exclusive right, inter alia, to use, license, sell, and/or authorize the use of the American Airlines Marks.

160.    Contrary to American Airlines' exclusive rights, Defendants make commercial use and sell the right to make commercial use of the American Airlines Marks by allowing and/or encouraging third-party advertisers to bid on the American Airlines Marks, or terms confusingly similar thereto, and to pay Defendants to use such marks or terms to trigger the display of Sponsored Link advertisements. Defendants also receive a direct financial benefit from the third-party advertisers' unauthorized use of the American Airlines Marks or terms confusingly similar thereto.

161.    In addition, because of the dominant role of Defendants' search engine in consumers' Internet usage and habits, Defendants have effectively forced American Airlines to pay Defendants for the "rights" to have official American Airlines advertisements appear when Internet users search the web for the American Airlines Marks.

162.    As a result of its unlawful and unauthorized conduct, Defendants have obtained money from its advertisers and American Airlines by undue advantage, and hold money that in equity and good conscience belongs to American Airlines.

163.    American Airlines has been, and absent injunctive relief will continue to be, irreparably harmed by Defendants' actions.

164.    American Airlines has no adequate remedy at law for Defendants' conduct.

WHEREFORE, American Airlines prays for judgment in its favor and against Defendants as follows:

A.    Preliminarily and permanently enjoining Defendants and their officers, directors, partners, agents, subcontractors, servants, employees, representatives, franchisees, licensees, subsidiaries, parents, and related companies or entities, and all others acting in concert or participation with them from:

- directly or indirectly selling or offering for sale the American Airlines Marks or other terms confusingly similar to the American Airlines Marks for use in their search engine-based advertising programs to anyone other than American Airlines or its authorized licensees;

- continuing to post advertisements for particular third parties explicitly because Internet users have run a search on Defendants' search engines using search terms that are identical or confusingly similar to the American Airlines Marks;

- continuing to post paid or keyword-triggered search engine results that falsely communicate to consumers that such links are endorsed, sponsored, or supported by American Airlines or formally affiliated with American Airlines;

- infringing, or causing any other entity to infringe the American Airlines Marks;

- unfairly competing with American Airlines in any manner whatsoever; and

- making any use of the American Airlines Marks and/or terms confusingly similar thereto unless specifically authorized by American Airlines.

B.    Directing an accounting to determine all gains, profits, savings and advantages obtained by Defendants as a result of their wrongful actions;

C.    Awarding restitution to American Airlines of all gains, profits, savings and advantages obtained by Defendants as a result of their wrongful actions;

D.      Awarding American Airlines all damages caused by Defendants' wrongful actions;

E.      Awarding American Airlines treble the amount of its damages, together with the costs of this suit, including reasonable attorneys' fees and expenses and prejudgment interest, pursuant to 15 U.S.C. § 1117 and all other applicable provisions and principles of federal and Texas law;

F.      Awarding American Airlines an amount sufficient to conduct a corrective advertising campaign to dispel the effects of Defendants' wrongful conduct and confusing and misleading advertising;

G.      Directing Defendants to post on their websites corrective advertising in a manner and form to be established by the Court;

H.      Directing Defendants to file with this Court and serve on American Airlines within thirty (30) days after the service of the injunction, a report in writing, under oath, that describes in detail the manner and form in which Defendants have complied with the orders of this Court;

I.      Awarding American Airlines punitive damages in an amount sufficient to deter other and future similar conduct by Defendants and others; and

J.      Granting American Airlines such other and further relief as the Court may deem just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all causes of action triable by jury.

DATED: October 17, 2008

Dee J. Kelly
Dee J. Kelly, Jr.
Lars L. Berg
KELLY HART & HALLMAN LLP
201 Main Street
Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

*Attorneys for Plaintiff American Airlines, Inc.*

Of Counsel:

Frederick Brown
George A. Nicoud III
Jason Stavers
GIBSON, DUNN & CRUTCHER LLP
One Montgomery St., Suite 3100
San Francisco, CA 94104
Phone: (415) 393-8200
Fax: (415) 986-5309

Howard S. Hogan
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**Civil Filing Notice - Fort Worth Division**

---

CIVIL ACTION NO: _____ 4-08CV-626-A _____

This case has been assigned to District Judge: _____

(Complete if applicable)
TRANSFERRED FROM: _____    DATE FILED: _____

---

Civil cases are assigned to a judge by random draw. A docket clerk for each judge maintains the recording of documents filed with the Clerk. A complete list of phone numbers for both the judges' chambers and the docket clerks is provided.

| Judge | Court Settings | Pleadings Filed |
|---|---|---|
| (A)  Judge John H. McBRYDE | (817)850-6650 | (817)850-6611 |
|     Even Cases: 850-6652   Odd Cases: 850-6653 | | |
| (Y)  Judge Terry R. MEANS | (817)850-6673 | (817)850-6612 |
| (BE) Magistrate Judge Charles BLEIL | (817)850-6690 | (817)850-6697 |

For access to local rules, attorney admission information, frequently asked questions, common forms, filing instructions, and records information, please visit our web site at **www.txnd.uscourts.gov**. To speak to someone in the district clerk's office, please call (817) 850-6601.

To receive electronic access to court docket sheets and filed documents, contact the PACER Service Center at **www.pacer.pcs.uscourts.gov** or by phone at 1-800-676-6856 for a log-in and password.

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.    (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

RECEIVED
U.S. DISTRICT COURT
NORTHERN DIST TX

## I. (a) PLAINTIFFS
American Airlines, Inc.

## DEFENDANTS
Yahoo! Inc. and
Overture Services, Inc. d/b/a
Yahoo! Search Marketing

2008 OCT 17 PM 2:55

CLERK OF COURT

**(b)** County of Residence of First Listed Plaintiff    Tarrant
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant    Sunnyvale, CA
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Attorneys (If Known)

4-08CV-626-A

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff

☒ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government Defendant

☐ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | **IMMIGRATION** | | ☐ 900Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - Alien Detainee | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | ☐ 465 Other Immigration Actions | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☒ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
15 USC Section 1114 and 1125
Brief description of cause:
Trademark Infringement

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE    John McBryde
DOCKET NUMBER  4-07-CV-487-A

DATE  10.17.08
SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # FW7135    AMOUNT 350    APPLYING IFP    JUDGE  A    MAG. JUDGE