American Airlines, Inc. v. Yahoo! Inc. et al                                                                    Doc. 43

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,

         Plaintiff,

-v.-

YAHOO! INC. and OVERTURE SERVICES, INC.
d/b/a YAHOO! SEARCH MARKETING,

         Defendants.

No. 4:08-CV-626-A

# PLAINTIFF AMERICAN AIRLINES, INC.'S
# MOTION TO COMPEL DISCOVERY AND BRIEF IN
# SUPPORT AND REQUEST FOR EXPEDITED CONSIDERATION

Frederick Brown (admitted *pro hac vice*)
Jason Stavers (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Montgomery St., Suite 3100
San Francisco, CA 94104
Phone: (415) 393-8200
Fax: (415) 986-5309

Howard S. Hogan (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

Dee J. Kelly
State Bar No. 11217000
Dee J. Kelly, Jr.
State Bar No. 11217250
Lars L. Berg
State Bar No. 00787072
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

*Attorneys for Plaintiff American Airlines, Inc.*

Dockets.Justia.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

I. OVERVIEW ............................................................................................................... 1

II. REQUEST FOR EXPEDITED CONSIDERATION .................................................. 2

III. CERTIFICATION ...................................................................................................... 2

IV. ARGUMENT .............................................................................................................. 2

    A. Yahoo's delay in producing electronically stored information ("ESI") unfairly prejudices American. ............................................................ 2

    B. American's overall discovery has been thwarted because Yahoo has withheld relevant, discoverable information based on improper objections. ................................................................................... 4

    C. Yahoo's intentional failure to take preservation measures for relevant documents and information likely prejudices American. ................ 7

    D. Yahoo's reliance on keyword searches to gather responsive information has resulted in Yahoo's (i) failure to produce all responsive information and (ii) production of vast amounts of irrelevant material. .............................................................................. 11

V. PRAYER ................................................................................................................... 13

# TABLE OF AUTHORITIES

**Federal Cases**

*American Rice, Inc. v. Producers Rice Mill, Inc.*,
 518 F.3d 321 (5th Cir. 2008) ..................................................................................5

*Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*,
 550 F.3d 465 (5th Cir. 2008) ..................................................................................6

*Brazos River Auth. v. GE Ionics, Inc.*,
 469 F.3d 416 (5th Cir. 2006) ................................................................................10

*Consol. Aluminum Corp. v. Alcoa, Inc.*,
 244 F.R.D. 335 (M.D. La. 2006) ..........................................................................11

*Holiday Inns, Inc. v. Airport Holiday Corp.*,
 493 F. Supp. 1025 (N.D. Tex. 1980), *aff'd*, 683 F.2d 931 (5th Cir. 1982) ..............6

*In re Seroquel Prods. Liab. Litig.*,
 244 F.R.D. 650 (M.D. Fla. 2007) ..........................................................................11

*Realnetworks, Inc. v. DVD Copy Control Ass'n*,
 No. 08-cv-04548, 2009 WL 1258970 (N.D. Cal. May 5, 2009) ..............................7

*Soweco, Inc. v. Shell Oil Co.*,
 617 F.2d 1178 (5th Cir. 1980), *cert. denied*, 450 U.S. 981 (1981) ........................6

*Waples-Platter Cos. v. General Foods Corp.*,
 439 F. Supp. 551 (N.D. Tex. 1977) ........................................................................5

*Westchester Media v. PRL USA Holdings, Inc.*,
 214 F.3d 658 (5th Cir. 2000) ..................................................................................5

**Federal Rules**

FED. R. CIV. P. 26(b)(1) .................................................................................................2

FED. R. CIV. P. 30(b)(6) ............................................................................................9, 10

FED. R. CIV. P. 37(a)(1) .................................................................................................2

# I. OVERVIEW

American sued Yahoo for trademark infringement and other related causes of action.[1] American served Yahoo with written discovery tailored to its claims and Yahoo's defenses. Yahoo failed to properly respond to American's discovery, and American filed this motion to compel for the following four reasons:

1. Yahoo's delay in producing electronically stored information ("ESI") unfairly prejudices American.

2. American's overall discovery has been thwarted because Yahoo has withheld relevant, discoverable information based on improper objections.

3. Yahoo's intentional failure to preserve relevant documents and information likely prejudices American.

4. Yahoo's reliance on keyword searches to gather responsive information has resulted in Yahoo's (i) failure to produce all responsive information and (ii) production of vast amounts of irrelevant material.

American seeks an order under Rules 26 and 37 that: (1) requires Yahoo to produce by July 24, 2009 all ESI responsive to American's discovery requests; (2) overrules Yahoo's discovery objections (as detailed below) and requires Yahoo to produce by July 31, 2009 any material withheld based on the overruled objections; (3) permits American additional interrogatories and depositions to be taken at Yahoo's cost to explore the full extent of Yahoo's destruction of relevant information; and (4) requires Yahoo to conduct (i) searches for responsive information through human review and produce all responsive information by July 31, 2009 and (ii) a human review of previously produced material to eliminate nonresponsive and irrelevant materials by July 31, 2009.

---

[1] American Airlines, Inc is the plaintiff, and the defendants are Yahoo! Inc. and Overture Services, Inc. (together "Yahoo"). The background of Yahoo's conduct and all of American's claims are detailed in the complaint.

## II. REQUEST FOR EXPEDITED CONSIDERATION

American respectfully requests that the Court shorten the time for Yahoo to respond to this motion to three business days so that American has a fair opportunity to comply with the Court's scheduling order, which requires expert designations and disclosures by August 7, 2009 and sets a discovery closing date of November 16, 2009. Three business days should be sufficient because the issues raised in this motion have been discussed by the parties at length in several meet-and-confer sessions (details below). Without the requested relief, American will be severely prejudiced in (i) preparing its expert reports, (ii) opposing Yahoo's anticipated motion for summary judgment, and (iii) proving its case at trial.

## III. CERTIFICATION

American certifies that, in compliance with FED. R. CIV. P. 37(a)(1), it has in good faith conferred in person (two times), by correspondence (over a dozen letters), and by phone (several times) with counsel for Yahoo on several occasions over many weeks in an effort to resolve the issues that are the subject of this motion and obtain the discovery without court action. Those efforts failed.

## IV. ARGUMENT

American is entitled to discover any non-privileged matter that is relevant to its claims or Yahoo's defenses. See FED. R. CIV. P. 26(b)(1). But Yahoo has failed and refuses to provide the required information.

### A. Yahoo's delay in producing electronically stored information ("ESI") unfairly prejudices American.

There can be no question that this case is rooted in Yahoo's electronic data. Yahoo has acknowledged as that it needs electronic data to defend its case, App. 6-7, even though the vast majority of this information is in *Yahoo's* possession, not American's. This is because *Yahoo* is

the only entity capable of recording information about the visits of Internet users to *Yahoo's* website, their behavior in clicking on the links that *Yahoo* confusingly displays, and the profits that *Yahoo* has obtained from such diversions. *See, e.g.,* App. 162, l. 2 – App. 163, l. 6; App. 165, l. 23 – App. 166, l. 7; App. 167, ll. 6-12; App. 168, l. 13 – App. 169, l. 20; App. 170, ll. 4-25.

A substantial amount of Yahoo's trademark infringement occurred between January 2007 and September 2007, but Yahoo has not produced all of the ESI for that time period. App. 74, n.2. Although Yahoo has produced the same type of ESI for periods immediately before and after the time period of the missing ESI, Yahoo insists that it will take months to produce the rest because it is not readily available. Yahoo claims that the ESI is not readily available because it was transferred to back-up tapes where Yahoo says it is difficult to access. *Id.* But if there is some difficulty, Yahoo has only itself to blame because that ESI was, until recently, on servers where it was readily accessible. Yahoo has known for over six months that American sought this information.[2] Yet Yahoo continued to transfer the data through approximately March 22, 2009, well after the complaint was filed and after formal discovery was served, making it virtually certain that Yahoo would not be able to produce this data on time. App. 227, l. 3 – App. 228,

---

[2] To facilitate Yahoo's preserving and production of information, American's counsel met with Yahoo's counsel in November 2008 and provided Yahoo's counsel with a detailed list of the information it would seek once discovery was allowed to commence. App. 8-9. American then formally requested this information as soon as discovery commenced. App. 13-14; App. 20-21; App. 25-26. Despite the long lead time given to Yahoo to gather responsive information, Yahoo did not begin to collect the ESI until May 2009—three months after the information was formally requested in discovery in February 2009 and nearly six months after American gave Yahoo notice following the court-ordered face-to-face meeting in November 2008 that American would seek such information in discovery. App. 219, l. 16 – App. 222, l. 3; App. 223, l. 4 – App. 224, l. 6; App. 225, l. 15 – App. 226, l. 10; App. 236, ll. 15-24.

l. 4. Accordingly, Yahoo has no legitimate excuse for the delay. American needs the ESI now for its expert to use to prepare his report due on August 7, 2009.

### B. American's overall discovery has been thwarted because Yahoo has withheld relevant, discoverable information based on improper objections.

Yahoo made sweeping and improper relevance objections and unsubstantiated burden objections to American's discovery. Yahoo is withholding information based on these objections . The objections cannot be squared with the allegations in American's complaint or Yahoo's answer and should be overruled.

*1. Yahoo's System of Exploiting Trademarks is Relevant.*

American seeks discovery related to how Yahoo's search advertising business operates and the impact that it has had on the trademarks of American and others, all of whom American believes are equally abused by Yahoo's system of selling the trademarks of others as keywords. The following requests for production seek such information:

> Request No. 11 seeks the financial results Yahoo obtains from bids on trademark keywords.
>
> Request Nos. 32, 39, 41, 67 seek information about how Yahoo encourages its customers to bid on the trademarks for which Yahoo has no license.
>
> Request No. 36 seeks evidence that Yahoo's search advertising causes confusion.
>
> Request Nos. 33-35, 37, 38, 44-46, 59-61, 63, 64, 71 and 72 seek information pertaining to Yahoo's awareness of its trademark violations and communications with trademark holders.

App. 13-24; App. 29-36. Additionally, interrogatory 8 seeks to determine whether Yahoo has encouraged its advertisers to buy or use the trademarks of others. App. 38-40.

Yahoo lodged boilerplate relevance objections to all of these requests and refuses to (i) produce documents responsive to these requests and (ii) fully respond to interrogatory 8. *See*

4

*e.g.,* App. 67-69; App. 80-81; App. 85. The information sought is relevant for at least five reasons:

1. As alleged in the complaint, Yahoo has consistently encouraged its advertisers to select—and buy from Yahoo the right to use—the trademarks of others. *See* Compl. ¶ 36-38; App. 172 (page from presentation that Yahoo provided to American as one of its advertisers, noting that "[t]hird-party advertisers" are "allowed to bid on brand terms"). Yahoo's systematic acts in encouraging its advertisers to use the trademarks of others not only make it more likely that Yahoo also encouraged its advertisers to use American's marks, but they also led directly to the specific infringements of American's marks at issue in this case.

2. American contends that Yahoo's use of trademarks in its paid search program confuses consumers, and any evidence of confusion involving any trademark in the context of Yahoo's search business would make it more probable that consumers have experienced the same sort of confusion in connection with American's trademarks. In fact, the limited discovery that Yahoo has produced reveals Yahoo *has* received complaints and evidence from third parties demonstrating that when Internet users type a trademark into the Yahoo search engine, they expect to receive links to the trademark owner's website and are often diverted when Yahoo sells the placement of those links to the highest bidder. *See, e.g.,* App. 238 (slide from Yahoo presentation regarding consumer complaints); App. 240 (slide from Yahoo presentation regarding consumer confusion with Yahoo's search results). Moreover, Yahoo has been aware for years that its system leads to confusion among consumers about their search results. *See* App. 241-242; App. 243-244. Yahoo cannot hide evidence of this confusion just because it does not happen to relate to one of American's marks, because such confusion also provides direct evidence that the same type of exploitation and confusion is occurring with respect to American's marks. *See Waples-Platter Cos. v. General Foods Corp.*, 439 F. Supp. 551, 582 (N.D. Tex. 1977) ("Because of the difficulty in obtaining proof of actual confusion, any proof of actual confusion is significant in showing that the likelihood of confusion exists.").

3. Yahoo's correspondence and records of its exploitation of non-party trademarks would also demonstrate the extent of Yahoo's knowledge and intent concerning the legal defects in its advertising programs. It is a matter of well-settled Fifth Circuit law that the defendant's intent "is a critical factor" considered in determining the ultimate issue of likelihood of confusion, because "if the mark was adopted with the intent of deriving benefit from the reputation of the plaintiff, that fact alone may be sufficient to justify the inference that" confusion is likely. *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 332 (5th Cir. 2008). And because courts and juries must "exhaustively review[ the] evidence" of likelihood of confusion, *see Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 666 (5th Cir. 2000), it is entirely improper to deny American such evidence at the discovery stage.

4. Evidence of Yahoo's intent is also important in assessing damages. The Fifth Circuit has specifically described the defendant's intent as an important factor in deciding whether an award of defendant's profits is appropriate. *See American Rice, Inc.*, 518 F.3d at 338 (affirming award of profits where "the defendant had the intent to confuse or deceive"). In addition, an award of treble damages and attorneys' fees may be appropriate under the Lanham

Act in cases of willful infringement. *See Holiday Inns, Inc. v. Airport Holiday Corp.*, 493 F. Supp. 1025, 1028 (N.D. Tex. 1980) ("Full knowledge of the proprietary nature of a mark and the infringement and misuse of the mark is the height of flagrancy and willful conduct for which a maximum award should be made."), *aff'd*, 683 F.2d 931, 935 (5th Cir. 1982). American has specifically alleged that Yahoo's conduct has been willful and intentional. *See, e.g.*, Compl. ¶¶ 92, 102, 119.

5. Evidence of Yahoo's conduct with respect to non-parties' trademarks is *also* relevant to the affirmative defenses identified in Yahoo's own answer. In particular, Yahoo's "nominative use" defense (Ans. Second Defense) and "fair use" defense (Ans. Third Defense) apply only when the trademark term at issue is used in good faith to describe the defendant's own goods or services (statutory fair use) or the goods or services of the trademark holder (nominative fair use). *See, e.g., Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir. 1980), *cert. denied*, 450 U.S. 981 (1981) (statutory fair use); *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.*, 550 F.3d 465, 489 (5th Cir. 2008) (intent to "capitalize on consumer confusion is not a nominative fair use"). Similarly, Yahoo's laches defense (Ans. Tenth Defense) would be "precluded" by a finding of bad faith or intentional copying. *Smack Apparel Co.*, 550 F.3d at. 490. Evidence of Yahoo's awareness and purposeful conduct regarding the trademarks of non-parties, which is probative of Yahoo's knowledge and intent regarding American's trademarks, is directly relevant to Yahoo's own defenses--and therefore must be discoverable.

Thus, Yahoo's relevance objections should be overruled.

*2. Yahoo Cannot Support its Unduly Burdensome Objections*

Yahoo asserts that it would be unduly burdensome to provide information concerning Yahoo's commercial use of non-party trademarks. *See, e.g.*, App. 13-17; App. 21-22. But Yahoo has failed to provide any concrete explanation as to why producing this information is unduly burdensome, and American believes that there is no basis for sustaining the objections At most, Yahoo has asserted that Yahoo "has no way of identifying all the trademarks that may be used in connection with [its] Sponsor Results product" and Yahoo "does not track which of these keywords are trademarks." App. 68. But the documents that Yahoo has provided to American both in the context of this lawsuit and outside the lawsuit makes clear that Yahoo has a robust program for tracking the use and effectiveness of brand terms and encouraging advertisers to use them. *See, e.g.*, App. 174 (slide from Yahoo's presentation to American touting its ability to track American's "Brand Terms Campaign"); App. 246 (slide from Yahoo presentation

6

boasting that "[t]hose who bid on brand terms, in conjunction with Yahoo! ads, saw [i]ncreases up to 83% on sponsored clicks"). Accordingly, American respectfully requests that the Court overrule Yahoo's burden objections to American's requests for production numbered 11, 32-39, 41, 44-46, 59-61, 63, 64, 67, 71, and 72 and interrogatory number 8.

C. **Yahoo's intentional failure to take preservation measures for relevant documents and information likely prejudices American.**

In December of 2006, American told Yahoo that it would sue if Yahoo did not stop its use of American's trademarks.[3] American and Yahoo entered into a standstill agreement at that time, but Yahoo did not even *begin* to preserve information about the parties' dispute until nearly two years later, and not until a month after American filed its complaint in this action. App. 45. Yahoo did not change its retention practices after execution of the agreement (App. 185, ll. 14-19); it made no efforts at the end of 2006 to preserve information concerning the dispute with American (App. 187, ll. 17-21). In fact, Yahoo's corporate representative testified that Yahoo does not take any steps to preserve information when litigation is threatened. App. 190, l. 22 – App. 191, l. 2. Yahoo, of course, had a duty to take steps to preserve relevant documents and information when litigation was threatened. *See, e.g. Realnetworks, Inc. v. DVD Copy Control Ass'n*, No. 08-cv-04548, 2009 WL 1258970, at *5, *9 (N.D. Cal. May 5, 2009) (sanctioning

---

[3] On December 19, 2006, American's General Counsel and Senior Vice President, Gary Kennedy, sent an e-mail to senior legal counsel for Yahoo, which stated, "We have a dispute with your company regarding the Yahoo! Sponsored Search program and are prepared to file a lawsuit in Texas today with regard to this matter." App. 1. Several hours later, lawyers for Yahoo and American spoke on the telephone, and agreed to enter into a tolling agreement preserving the rights of the parties with respect to contemplated litigation. Yahoo sent a confirming e-mail to American that afternoon. *Id.* Yahoo signed the agreement that day. App. 2-4. The parties entered into written extensions of this agreement on May 14, June 7, August 20, and November 13, 2007; February 22, May 16, and July 21, 2008 that expired upon the filing of the Complaint in this action on October 17, 2008. Compl. at 1.

party for failing to preserve evidence after entering into a "tolling/standstill agreement . . . which created a duty to ensure preservation of its relevant documents and data").

American believes that Yahoo's failure to issue document preservation notices in December of 2006 has led to the loss of information essential to the issues in this lawsuit

The full extent of the consequences of Yahoo's elimination of documents and data relevant to the case are not yet clear, but what American does know about Yahoo's document retention is troubling:

- Yahoo has not maintained screen shots, html code, or other data that would allow American to view the actual search results page that Yahoo displayed to users for each sponsor result, including the identity of other the sponsor links and "algorithmic links" that Yahoo posted on the same results page or the "display URL" for each sponsor result that Yahoo posted as the Internet address each link would take consumers to. *See* App. 195, l. 19 – App. 196, l. 12; App. 199, ll. 2-24; App. 206, l. 1 – App. 207, l. 24; App. 208, l. 3 – App. 211, l. 12; App. 229, l. 24 – App. 235, l. 25. Because Yahoo has failed to preserve this critical electronically stored information, it has effectively prevented American from replicating the precise images that Yahoo displayed to its users when Yahoo presented them with the search "results" at issue in this case.

- There are gaps in the electronic data that is important to this case. As noted above, Yahoo has transferred some of its electronically stored information to back-up tapes so that its production will be long delayed. *See supra*; App. 131.[4] It is not yet known if Yahoo will be able to properly produce that data or if it has damaged the data by the process of transferring it.

- Yahoo's designee on databases, Ms. Cameron, identified approximately 30 pieces of data related to its paid search results that Yahoo routinely collects, but Yahoo still has not provided American with any information about what these categories of data are or whether they will be provided. App. 201, l. 18 – App. 205, l. 7; App. 132. Ms. Cameron also identified other areas in which important data is not maintained, including: (a) the "click stream data" that would allow American to identify the specific actions taken by Internet users when they conducted searches in the Yahoo search engine for American Airlines Marks and Terms Similar to the American Airlines Marks and clicked on specific portions of the Yahoo site (App. 208, l. 3 – App. 211, l. 12; App. 212, l. 1 – App. 218, l. 25); (b) information in the account monitoring

---

4  American has already identified several categories of information that is apparently missing, or has been omitted from the files of data that Yahoo has provided. App. 131-135.

8

database that tracks money spent by advertisers (App. 197, l. 4 – App. 198, l. 18); and (c) reports that Yahoo provided to advertisers on particular dates (App. 200, l. 16 – App. 201, l. 4).

- While Yahoo has identified 35 persons in its interrogatory answers as having relevant information (App. 38-41), none received non-destruction notices until November 13, 2008 at the earliest, and *some as late as June 15, 2009.* In fact, even the Yahoo employees with responsibility for American's account with Yahoo were not instructed to retain documents until far too late. For example, Bradley King, the Director of the Travel Category for Yahoo's search advertising business (which included the American customer relationship) and Gita Bhatia, a Yahoo Account Manager on the American account were not given non-destruction notices until November 13, 2008. App. 46. Chip Jessop, Yahoo's Director of Sales for the Central Region (which includes American), *still* has not been identified as the recipient of a non-destruction notice.

- No custodial documents have been produced for at least six Yahoo employees (King, Bhatia, Jessop, Hagerty, Wasemiller and Steelman) who seem to have been partially responsible for American's business dealings with Yahoo. App. 54-55; App. 158-160. King may be a key witness. He no longer works for Yahoo, and American is concerned that it will never see any of his unique documents.

- Documents produced by Yahoo indicate that there are even more personnel who appear to have relevant responsibilities, but have not been listed as custodians or subject to document holds and preservation efforts. App. 148 (Ron Belanger, Yahoo's Senior Director for Channel Strategy and Development, who conducted a symposium on using Yahoo's paid search program to "nurtur[e]" trademarks); App. 149-151 (Jill Peterson and Grant Leavins, from Yahoo's "Trademark Team"); App. 152-155 (David Miller, who apparently had some supervisory responsibility over trademark complaints to Yahoo).

- Yahoo has apparently not made any concerted effort to preserve the instant message communications of its employees. App. 73-74. Yahoo's corporate designate, Carmen Arenal, testified that some Yahoo custodians did use instant messages to discuss American-related business. App. 182, l. 17 – App. 184, l. 16; App. 186, ll. 8-13. While Yahoo's counsel has expressed his understanding that Yahoo's custodians did not use instant messaging for American-related business, Ms. Arenal's sworn testimony has not been corrected by her or others under oath. App. 136-137. To date, no such relevant instant messages have been produced.

Yahoo compounded American's difficulties in assessing what information is available for discovery when Yahoo failed to prepare its Rule 30(b)(6) designees to testify as to the efforts it took to preserve and produce relevant documents. For example, Yahoo designated Lodema Ronchetti, Yahoo's new director of records management, as the proper 30(b)(6) witness as to

9

Yahoo's "document retention policy from 1999 to the present." App. 43, Topic 18. Ms. Ronchetti, *an employee for just eight months*, was unable to testify concerning Yahoo's document retention policies at its marketing, sales, search advertising, and information technology departments, or at the 100 server locations where Yahoo stores massive databases—all areas that are central to the allegations in the Complaint. App. 176, ll. 11-18; App. 180, ll. 8-24. Furthermore, Ms. Ronchetti did not know about Yahoo's retention practices concerning the various methods of internal communication commonly used by Yahoo's employees, such as e-mail, computer instant messaging and voice-mail. App. 177, l. 6 – App. 179, l. 13. Similarly, Yahoo offered Carmen Arenal, Yahoo's director of legal services, as its designee on Yahoo's "preservation of, search to find, and production of documents in this action (App. 43, Topic 19), but Ms. Arenal did not know, for example, the effort spent in Yahoo's document gathering efforts (App. 188, l. 7 – App. 189, l. 25), or what timetable Yahoo had set internally for completing its collection of responsive documents (App. 192, l. 18 – App. 193, l. 11). As a result, Yahoo has already put American at a disadvantage in determining what was and what was not preserved.[5]

To determine the full extent of Yahoo's failure to maintain relevant information and the harm that it may cause American, American requests that the Court permit American 5 additional depositions and 15 additional interrogatories, at Yahoo's expense and without regard

---

[5] As the Fifth Circuit has explained, Rule 30(b)(6) mandates "a conscientious good-faith endeavor to designate the persons having knowledge of the matters sought by the party noticing the deposition and to prepare those persons in order that they can answer fully, completely, unevasively, the questions posed." *Brazos River Auth. v. GE Ionics, Inc.*, 469 F.3d 416, 433 (5th Cir. 2006) (internal quotation marks omitted).

to the existing discovery limits.[6] After American's investigation is complete, it may seek additional relief.

D.  **Yahoo's reliance on keyword searches to gather responsive information has resulted in Yahoo's (i) failure to produce all responsive information and (ii) production of vast amounts of irrelevant material.**

Yahoo's document production reveals that it has relied on narrow keyword searches processed by a computer, but with apparently little (if any) human review, to gather and produce documents.[7] Yahoo's primary reliance on keyword searches is misplaced and unfairly prejudices American in two ways: first, relevant, responsive documents are almost certainly missed; and second, many irrelevant, nonresponsive documents (and even some privileged documents) are produced.

American has no concrete method for determining what documents have been missed by Yahoo's inadequate keyword searches. But when search terms were selected without a "cooperative and informed process" involving both sides, courts often find searches to be "plainly inadequate" as a method of finding responsive information because they miss alternate names, misspellings and spelling variations, and other cues that can only be appreciated by a human set of eyes. *See, e.g., In re Seroquel Prods. Liab. Litig.*, 244 F.R.D. 650, 661-63, 665-66 (M.D. Fla. 2007). The difficulty in determining what documents have been missed by Yahoo's

---

[6] *See Consol. Aluminum Corp. v. Alcoa, Inc.*, 244 F.R.D. 335, 347-48 (M.D. La. 2006) (ordering additional depositions and discovery, at producing party's expense, to explore extent of harm done by failure to properly preserve documents).

[7] American originally expressed its willingness to cooperate with Yahoo in considering the use of keyword searches to locate responsive information, but Yahoo did not seek an agreement with American on the use of keyword searches. And American has consistently explained to Yahoo that its keyword searches are inadequate because of both the number of irrelevant documents being produced and the documents likely to be missed.

11

keyword searches is compounded by its failure to preserve documents and the production of vast amounts of irrelevant material.

A considerable portion of Yahoo's production consists of documents that are not responsive to any of American's requests, and many thousands of these non-responsive documents are utterly irrelevant filler material. Here are some examples:

- a flyer for ballroom dancing lessons,
- a copy of "The Gift of Stitching" magazine,
- two movie screenplays, each hundreds of pages long,
- a recipe for oatmeal and chocolate chip cookies,
- two copies (found so far) of an 876-page collection of motivational quotations
- personal tax returns of several Yahoo employees, with social security and other personal information intact

App. 247-266.

Yahoo's failure to adequately screen it production with any quality control at all is also evident in its production of more than 180 documents that American has identified to Yahoo which appear to be covered by attorney-client privilege or work-product protection and the more than 180 privileged documents Yahoo has confirmed it produced in error. App. 112-130; App. 156-157. As American continues to wade through the deluge of documents produced by Yahoo, American expects that many additional privileged documents will be found, and this process is further slowing American's review of Yahoo's production.

The only way to cure these problems is to force Yahoo to conduct a human review to (i) find all remaining responsive materials, and (ii) eliminate the completely irrelevant and unresponsive materials it has already produced.

## V. PRAYER

American respectfully requests an order that: (1) requires Yahoo to produce by July 24, 2009 all ESI responsive to American's discovery requests; (2) overrules Yahoo's discovery relevancy and burden objections and requires Yahoo to produce by July 31, 2009 any material withheld based on the overruled objections; (3) permits American an additional 15 interrogatories and 5 depositions to be taken at Yahoo's cost to explore the full extent of Yahoo's destruction of relevant information; and, (4) requires Yahoo to conduct (i) searches for responsive information through human review and produce all responsive information by July 31, 2009 and (ii) a human review of its records to locate all responsive materials and eliminate from its previously produced material nonresponsive and irrelevant materials by July 31, 2009.

Dated: July 13, 2009

Respectfully submitted,

_____
Dee J. Kelly (State Bar No. 11217000)
Dee J. Kelly, Jr. (State Bar No. 11217250)
Lars L. Berg (State Bar No. 00787072)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown (admitted *pro hac vice*)
Jason Stavers (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
555 Market Street, Suite 3000
San Francisco, CA 94105
Phone: (415) 393-8200
Fax: (415) 986-5309

Howard S. Hogan (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

## CERTIFICATE OF CONFERENCE

I certify that counsel for American has had several conferences regarding the merits of this motion to compel. Based on its representations during these conferences and subsequent correspondence, Yahoo opposes the relief sought in this motion. This motion is, therefore, presented to this Court.

_____
Dee J. Kelly, Jr.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered on July 13, 2009 to Defendant's counsel, as follows, in accordance with the Federal Rules of Civil Procedure:

| | |
|---|---|
| David F. Chappell<br>Scott A. Fredricks<br>CANTEY HANGER LLP<br>Cantey Hanger Plaza<br>600 West Sixth Street, Suite 300<br>Fort Worth, Texas 76102<br>(via hand delivery and email) | Michael A. Jacobs<br>Lynn M. Humphreys<br>MORRISON & FOERSTER LLP<br>425 Market Street<br>San Francisco, CA 94105-2482<br>(via Federal Express and email) |

_____
Dee J. Kelly, Jr.

14