

*OTJ*

**ORIGINAL**

```
                                                          FILED
                                                    U.S. DISTRICT COURT
                                                  NORTHERN DIST. OF TX.
                                                     FT. WORTH DIVISION

                                                     2009 JUL 17 PM 3:59

                                                       CLERK OF COURT
```

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br> Plaintiff, <br><br> -v.- <br><br> YAHOO! INC. and OVERTURE SERVICES, INC. d/b/a YAHOO! SEARCH MARKETING, <br><br> Defendants. | Case No. 4:08-CV-626-A |

### DEFENDANTS' OPPOSITION TO PLAINTIFF AMERICAN AIRLINES, INC.'S MOTION TO COMPEL DISCOVERY

**I. INTRODUCTION**

As ordered by the Court, counsel and representatives for Yahoo! and American Airlines met in Texas on July 16, 2009, to attempt to resolve their discovery disputes. The parties have reached a tentative agreement with respect to most of the issues raised in American's motion. The parties are drafting a statement memorializing their agreement.

The Court directed Yahoo! to file an expedited response to (1) American's request for additional discovery regarding Yahoo!'s document retention practices and collection efforts; and (2) American's request for human review of all Yahoo! documents. The parties have resolved item 1. While Yahoo! believes that it has retained all relevant data and documents, Yahoo! has agreed to allow American five additional depositions and fifteen additional interrogatories to further explore document retention and collection issues. Yahoo! will cover the court reporter and videographer costs for the depositions, but the parties will each bear their own attorneys' costs.

The only remaining dispute to be addressed in this expedited response is American's request that Yahoo! perform a human review of *all* records collected from its custodians, even including those that were already screened and rejected as non-responsive. American's request is unreasonable and unwarranted for several reasons:

First, Yahoo! has already performed a human review of a substantial volume of the core responsive data and documents. Yahoo! interviewed more than 60 custodians currently employed by Yahoo! and asked them to identify and provide specific data, documents and files responsive to American's requests. These specifically identified responsive materials, including hundreds of thousands of pages worth of relevant data, were individually (human) reviewed prior to production. As an additional measure to capture responsive documents, and consistent with common practice in the digital age, Yahoo! copied the computer hard drives of the relevant custodians (more than 80 current and former employees) and used search terms to screen for additional responsive documents. These responsive documents were screened for privilege prior to production.

Second, the search terms that Yahoo! used to screen the hard drives were broad enough to capture all additional responsive documents. American claims in this litigation that Yahoo! infringed nine American trademarks by allowing advertisers to place advertisements on Yahoo!'s search engine triggered by web user searches for those trademarks. Information relevant to American's claims was captured by the search terms Yahoo! used for screening hard drive documents. The search terms included (1) all of the American trademarks, (2) the names of more than 15 travel companies who may have bid on American keywords for purposes of triggering advertisements on Yahoo!, (3) the names of domestic airlines, (4) terms pertaining to relevant features of Yahoo!'s search engine, and (5) generic terms of relevance to particular custodians, such as "brand" and "trademark."

Third, Yahoo! informed American early in the process (during the meet-and-confer session on April 27 and 28) that it was intending to use search terms to screen documents from the computer hard drives. Yahoo! provided American with its initial list of search terms for each

2

custodian on May 8, 2009, and augmented the list on May 18, 2009. American *never* suggested any modification to the search term list, although Yahoo! would certainly have been willing to add, delete, or modify terms. It was not until May 21, 2009, that American first voiced a general objection to Yahoo!'s use of search terms, and even then they made no attempt to identify problems with any of the specific terms. (Def's App. 67-73 (May 21, 2009 Letter From L. Berg to A. Rodriguez).)

Finally, since American has apparently already reviewed much of the Yahoo! production (the documents were provided in text-searchable form), it would be wasteful for Yahoo! to duplicate these efforts. American complains that it has located some irrelevant documents in reviewing the Yahoo! production. As the parties and the Court know, this is unfortunate but not unusual in cases involving the mass production of documents, and American is similarly guilty. However, as a compromise, Yahoo! offered to pay part of American's costs associated with its review of Yahoo!'s production. American has rejected that offer. Yahoo! also indicated its willingness to run additional search terms through the custodian hard drives to address any documents American is concerned have not been captured already, but American rejected that suggestion as well.

Yahoo!'s purpose in screening the custodian hard drives was to efficiently capture any documents and files not specifically identified by custodians and eliminate non-responsive documents in a short time frame. Yahoo! has tried to work with American on this issue, but to no avail. American's purpose in demanding further human review of these materials is nothing more than harassment – an attempt to impose a staggering and unnecessary discovery burden on Yahoo!. Litigation discovery should not be a weapon to inflict needless costs on your opponent. Yahoo! respectfully requests that American's demand for further review of the Yahoo! documents be denied.

## II. YAHOO!'S COLLECTION AND REVIEW PROCESS

Yahoo! has gone to great lengths to respond to American's 77 broad document requests,[1] producing over 1.7 million pages of responsive documents and hundreds of thousands of pages of data. Among other things, Yahoo! has:

(1) collected responsive materials belonging to more than 80 custodians (current and former employees), including sales, marketing, financial, and product personnel (Def's App. 75 (Declaration of Carmen Arenal in Support of Defendant's Opposition to Plaintiff American Airlines, Inc.'s Motion to Compel Discovery ("Arenal Decl.") ¶ 4); Def's App. 09-22 (May 8, 2009 Letter from D. Muino to F. Brown) at Exh. A);

(2) individually interviewed more than 60 of those custodians, from whom a large collection of specifically responsive documents were identified, obtained, human-reviewed, and produced (Def's App 75 (Arenal Decl. ¶ 4));

(3) collected and produced hundreds of thousands of pages of data from Yahoo!'s databases (which rank as some of the largest databases in the world) pertinent to the advertisements at issue in this case (Def's App.75 (Arenal Decl. ¶ 6)); and

(4) copied the computer hard drives of the custodians, from which additional documents were extracted using word searches (those documents were subjected to a privilege screen prior to review, and the potentially privileged documents were human-reviewed) (Def's App. 75 (Arenal Decl. ¶¶ 5, 7).)

Throughout the process, Yahoo! has kept American fully informed regarding the materials being produced, including:

(1) Providing detailed descriptions of the data and documents produced. (*See, e.g.,* Def's App. 04-05 (April 16, 2009 Letter from D. Muino to F. Brown), 25-55 (May 18, 2009 Letter from D. Muino to L. Berg); Pltf's App. 72-110 (June 15, 2009 Letter from D. Muino to L. Berg); 56-60 (June 16, 2009 Letter from D. Muino to F. Brown), 61-64 (June 18, 2009 Letter from D. Muino to F. Brown), 65-66 (June 29, 2009 Letter from D. Muino to F. Brown).)

(2) Having several lengthy telephone calls with opposing counsel during which Yahoo!'s counsel explained many of the details of Yahoo!'s collection and production. (*See* Def's App. 25-55 (May 18, 2009 Letter from D. Muino to L. Berg); Pltf's App. 72-110 (June 15, 2009 Letter from D. Muino to L. Berg).)

(3) Providing a list of Yahoo!'s custodians, including their titles and search terms used to screen responsive hard drive documents for each custodian (Def's App. 09–22, 35–54.); and

---

[1] On July 15, 2009, American served even more document requests, for a current total of 117.

(4) Providing a list of recipients and dates of litigation hold notices. (Pltf's App. 46-47 (May 1, 2009 Letter from D. Muino to F. Brown), Def's App. 23-24 (May 11, 2009 Letter from D. Muino to F. Brown).)

As previously noted, a substantial volume of the data and documents collected from the Yahoo! custodians was human-reviewed prior to production. This encompassed hundreds of thousands of pages worth of relevant data and more than 79,000 pages of documents, including the following:

- Spreadsheets and data files containing hundreds of thousands of pages of data regarding the Sponsor Result advertisements triggered by American Airlines' keywords. (YAH-AA 0000001-20, 0008152-73, 0454822-25, 1381599-605, 1418287.)

- Spreadsheets showing the click-through rates for American's keywords. (YAH-AA 0454821.)

- Excerpts from the Sensitive Terms List, Global Negative Terms List, and the Trademark List showing the American terms and the dates they went on the lists. These lists are used to enforce Yahoo! trademark policies. (YAH-AA 413572, 631830.)

- Studies regarding user perception of Yahoo! search engine, Sponsor Results, and related issues. (YAH-AA 12170-200, 18593, 62296-309, 62325-334, 64448- 496, 64695-706, 64707-720, 1230299-762.)

- Organizational and employee information from Yahoo!'s Backyard Intranet and human resources department. (YAH-AA 77-90, 1757-1822, 631708-817, 1230764-797, 1232521, 1499147, 1584427.) Because much of this information does not exist in presentable documentary form, Yahoo! went to the effort of gathering the information and creating documents to present it.

- Spreadsheets showing terms connected to American marks by Yahoo!'s "We have included" and "Also Try" functions. (YAH-AA 0413571.)

- Spreadsheets reflecting financial information related to Overture and Yahoo! Search Marketing. (YAH-AA 0631819; YAH-AA 0631829; YAH-AA 1142023.)

- Responsive, non-privileged materials from prior trademark litigation involving Yahoo!. (YAH-AA 1142152- 96135; YAH-AA 1498465-914.)

- Yahoo!'s Master Terms and Conditions and Program Terms, Yahoo!'s Terms of Service, as well as documents explaining the process of raising trademark concerns. (YAH-AA 1230264 - 98.)

- Twikis (which are centralized information repositories found within Yahoo!'s internal and private company website) containing information pertinent to, *inter alia*, user perception studies, trademark policies, Yahoo!'s keyword selection tool, and Yahoo!'s advanced match function. (YAH-AA0081769 – 88998.)

- Spreadsheets showing the results of business-to-business satisfaction surveys conducted by Yahoo!. (YAH-AA 0631820-28.)

- Data and feedback captured from the Yahoo! search user satisfaction survey since its inception in 2007. (YAH-AA 1050769 – 0874.)

- Top Yahoo! search partners, particularly showing the partners responsible for 80% of Yahoo!'s search partner revenues. (YAH-AA 1418288.)

As a supplement to that extensive human collection and review effort, Yahoo! has imaged the hard drives of the custodians and used search terms to extract additional responsive documents. (Def's App. 75 (Arenal Decl. ¶ 5).) Yahoo! screened those documents for potential privilege and conducted a human review of the potentially privileged documents. (Def's App. 75 (Arenal Decl. ¶¶ 5, 7).)

Yahoo! has expended considerable time and resources on its collection, review, and production process. For example, Yahoo!'s data management team has spent roughly 780 hours collecting data. (Def's App 75 (Arenal Decl. ¶ 3).) Carmen Arenal, the Yahoo! employee in charge of overseeing the collection process, has spent approximately 720 hours. (Def's App 75 (Arenal Decl. ¶ 1).) Others within the Yahoo! legal department and across the company have spent, individually, dozens of hours as well. The costs of Yahoo!'s document vendor have come to more $350,000 so far. (Def's App 75 (Arenal Decl. ¶ 5).) Outside counsel costs associated with document collection, review and production amount to roughly $200,000.

In sum, Yahoo! has been more than diligent in collecting and producing data, documents, and information responsive to AA's requests.

### III. AMERICAN'S REQUEST FOR ADDITIONAL HUMAN REVIEW OF YAHOO!'S RECORDS SHOULD BE DENIED

American's broad document requests cover a large amount of electronically stored data. As described above, Yahoo! collected and individually reviewed the responsive data and documents collected through its custodian interviews. To assure that all responsive documents were captured, Yahoo! also copied the hard drives of relevant custodians and screened for additional responsive documents using search terms. During the meet-and-confer calls on

April 27 and 28, Yahoo! informed American of its intention to use search terms, and subsequently provided a list of the search terms to American. (*See* Def's App. 09–22, 35–54.) American never sought to modify that list of terms and never identified any reason why those specific terms would be insufficient for screening purposes.

Identifying and producing responsive documents by search terms is an accepted practice given the inherently burdensome expense of e-discovery. *The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production*, Principle No. 11 (2d ed. 2007) ("A responding party may properly access and identify potentially responsive electronic data and documents by using reasonable selection criteria, such as search terms or samples."); *see also Regan-Touhy v. Walgreen Co.*, 526 F.3d 641, 649 (10th Cir. Okla. 2008) (citing *The Sedona Principles* and noting that the burdens and costs associated with electronic discovery are well known). Yahoo!'s search terms are sufficiently broad to capture all responsive documents, and American has not alleged any specific reason to think otherwise. Yahoo! would be willing to run searches for additional terms, but American never suggested any until the July 16, 2009 meet and confer, when it suggested one additional term ("confusion"). Even then, American refused to accept the expansion of the search term list as a resolution of the issue.

Instead, American demands that Yahoo! individually review every piece of data and document on every custodian's hard drive. Human review of these largely non-responsive documents (the non-responsive documents amount to roughly 8 times the volume of the approximately 1.7 million produced pages) would be fruitless, massively expensive, and virtually impossible to achieve in a short time frame. To provide a ballpark estimate, at a review rate of 600 documents per day (10 hour days) at $200/hour, a re-review of just the 1.7 million pages already produced would amount to roughly $1.2 million. American received those documents in text-searchable form and is therefore equipped to easily locate the information it seeks. Yahoo! should not be required to duplicate American's efforts at great additional expense. For a review of the non-responsive documents (roughly 8 times as many), an estimated price would be 8 times

7

as much. American's attempt to impose this kind of discovery cost on Yahoo! is improper, particuarly when there is no value to be gained by it. *See Surplus Source Group, LLC v. Mid Am. Engine, Inc.*, 2009 U.S. Dist. LEXIS 29260, *3-5 (E.D. Tex. Apr. 7, 2009) (citation omitted) (balancing cost, burden, and need is often an issue in discovery disputes). As such, American's request for additional review of Yahoo!'s documents should be denied.

## IV. CONCLUSION

For the reasons stated above, Yahoo! respectfully requests that the Court deny American's motion seeking additional human review of Yahoo!'s records.

Dated: July 17, 2009

Respectfully submitted,

_____
David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH MARKETING

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true copy of the foregoing document has been served on counsel of record as follows:

Dee J. Kelly  *Via Hand Delivery*
Dee J. Kelly, Jr.
Lars L. Berg
Kelly Hart & Hallman, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Frederick Brown  *Via FedEx*
Jason Stavers
Gibson, Dunn & Crutcher LLP
One Montgomery Street, Suite 3100
San Francisco, CA 94104

Howard S. Hogan  *Via FedEx*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

Date: July 17, 2009

_____
Scott A. Fredricks