American Airlines, Inc. v. Yahoo! Inc. et al                                                                                           Doc. 54

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,

    Plaintiff,

-v.-

YAHOO! INC. and OVERTURE SERVICES, INC.
d/b/a YAHOO! SEARCH MARKETING,

    Defendants.

No. 4:08-CV-626-A

### PLAINTIFF'S REPLY BRIEF RELATIVE TO ITS MOTION TO COMPEL

American simply seeks relevant information responsive to its discovery requests. The only way for American to obtain all such information under the current circumstances is for Yahoo to conduct a human review of the relevant material maintained on the computer hard drives of the 80 Yahoo employees (or former employees) that have already been searched via a limited keyword search. But Yahoo refuses to conduct the necessary human review and fails to prove that its limited keyword search resulted in the production of all relevant, responsive material. Rather, Yahoo baldly asserts that (i) unilaterally-imposed and limited keyword searches are generally acceptable and (ii) its keyword search in this case is sufficient – not because of the results, but because it says so.

**I.    YAHOO FAILED TO PRODUCE ALL THE RELEVANT DOCUMENTS FOR 80 YAHOO EMPLOYEES**

Yahoo admits that 80 of its employees (or former employees) maintained relevant, responsive information on their personal computer hard drives or on shared drives. Yahoo also admits that it looked for such information only through a limited keyword search – not a human

review. In fact, the descriptions on pages 5 and 6 of Yahoo's response do not identify a single individual whose computer hard drive or shared drive was reviewed by a human.[1]

Yahoo claims to have conducted a human review of hundreds of thousands of pages of data. The data Yahoo produced must be distinguished from other responsive documents because it consists almost exclusively of the computer generated information that was extracted through specific queries run through Yahoo's database containing vast stores of information about each of the millions and millions of ads at issue. Yahoo's touting a human review of the hundreds of thousands of pages of this data, which was produced in the form of spreadsheets, is largely meaningless and misses the point. American seeks human review of the documents maintained by the key witnesses who work (or worked) for Yahoo. The type of information American seeks includes the final version and all drafts of emails, memos, letters, notes, calendar entries, spreadsheets, and other documents normally kept on an employee's hard or shared drives.

Of the 2.25 million pages of documents produced so far, Yahoo claims to have reviewed only about 79,000 pages through human review (setting aside the data reviewed). But Yahoo cannot claim this was a *careful* review because it has produced hundreds of privileged documents and thousands of pages of unresponsive documents (like personal tax returns and

---

[1] American is not suggesting that every piece of information on each of the hard (or shared) drives must be reviewed by a human. Rather, Yahoo can interview each employee to determine the files on the drives where relevant information is likely located. Yahoo would then conduct a human review of those files. (For some key individuals, responsive material may be on files throughout their hard drive. A human review of such person's entire hard drive may be necessary.) For example, an employee making sales to American would likely have a file on his hard drive or on shared drives entitled something like "American Sales." All material on that file should be subjected to a human review. That employee would also likely have files for storing personal material. Such files may be entitled something like "CPA," where personal tax returns may be stored. American does seek a human review of files of this kind.

knitting magazines). Thus, there are 80 Yahoo employees (or former employees) who have relevant, responsive information on their computer hard or shared drives that Yahoo has not produced because such information was not identified through a careful human review. American is entitled to this information.

## II. AMERICAN MADE TIMELY, WELL-FOUNDED OBJECTIONS TO YAHOO'S PROPOSED KEYWORD SEARCHES

American was always leery of Yahoo's assertion that it could locate all relevant, responsive materials through a limited keyword search. Accordingly, American never agreed to the use of keyword searches. The lack of an agreement dooms Yahoo's unilateral and limited keyword search. See *In re Seroquel Products Liability Litig.*, 244 F.R.D. 650, 662 (M.D.Fl. 2007) (finding defendants did not "embrace the requirements of Rule 26 and the Sedona Principles," in part, because it did not reach an agreement "from the outset" with plaintiffs on the search terms and methods).

Contrary to Yahoo's assertion that American remained silent until May 21 about Yahoo's keyword searching, American verbally expressed its concerns at the April 27 and 28 meet-and-confer session and at the deposition of Yahoo's corporate representative in late April when Yahoo first informed American about its intent to conduct a keyword search.[2] American also followed up in writing on May 4, referring to Yahoo's proposed keyword searches using only nine keywords and stating, "Such a limited search is not only not reasonable, but is unlikely to

---

[2] This was well after Yahoo should have already begun its search and produced responsive documents. In fact, Yahoo's production was due on April 1, but Yahoo unilaterally extended that date and still is producing documents today. Yahoo's failure to produce anything is what caused the need for the meet-and-confer session. Yahoo's keyword searches seem to be a short-cut, catch-up measure to make up for the failure to timely produce responsive material.

locate the entire universe of documents to which American is entitled." App. 51-53. American repeated these concerns in subsequent correspondence:

- 5/21/09 - "Yahoo does have an obligation to search for all records of all instances in which Yahoo and its agents encouraged the use of trademarks, and all complaints and other confusion caused by such uses" (Def. App. 69);

- 6/8/09 - explaining that Yahoo's keyword search approach to finding relevant documents is "unacceptable" in comparison to American's efforts to make sure each potentially responsive document is reviewed by human being;

- 6/26/09 - pointing to the number of irrelevant documents being produced by Yahoo because of its search method (App. 112);

- 7/9/09 - describing documents likely to be missed and additional problems. App. 137-138.

Yahoo ignored American's concerns and unilaterally pressed forward with a limited keyword search. Yahoo's observation that American did not provide keywords for Yahoo to use in its keyword search begs the question of the propriety of any such search; American did not provide keywords because American did not agree to the keyword search method in the first place. When American made any observations about the keywords used, such observation was made only to point out the flaws in what Yahoo had done.

American's concern about Yahoo's keyword searches was based on the idea that such searches are generally under inclusive because they do not include common or inadvertently misspelled terms, variations on stem words, and synonyms. *See The Sedona Conference Journal*, Vol. 8 at 201-202 (Fall 2007); *See also Victor Stanley, Inc. v. Creative Pipe, Inc.*, 250 F.R.D. 251, 260 (D.Md. 2008) (keyword searches have "well-known limitations and risks associated with them, and proper selection and implementation obviously involves technical, if not scientific knowledge."). When a keyword search is under inclusive, responsive and potentially critical documents necessary to prosecute an action are naturally not produced.

## III. YAHOO FAILED TO PROVE ITS KEYWORD SEARCHES WERE EFFECTIVE

The burden is on Yahoo to demonstrate that its keyword search strategy is acceptable. *See Victor Stanley*, 250 F.R.D. at 262 (setting forth the burden and parameters of an acceptable keyword search); *see also Smith v. Life Investors Ins. Co. of America*, 2009 WL 2045197, *7 (W.D.Pa. Jul 9, 2009) ("[T]he party performing the search ha[s] a duty to demonstrate that its methodology was reasonable."). Yahoo failed to provide any evidence that its methodology was sound, that the search was designed by someone with the appropriate qualifications, or that any quality-assurance measures were put in place. *See Victor Stanley*, 250 F.R.D. at 262.

One glaring deficiency in the keywords Yahoo unilaterally chose is the omission of terms at the heart of the lawsuit such as: confuse, mislead, survey, and OTA (the industry acronym for "Online Travel Agency"). Additionally, the search terms that were used were not consistently used for each custodian. *See* App. 87-110. The flaws in Yahoo's keyword searches are borne out by the results themselves and made worse by its failure to conduct a responsiveness review of the documents identified by keyword searches. That is, Yahoo's production contains a vast number of irrelevant, nonresponsive material that American has had to wade through to find relevant, responsive material (described in American's motion). Yahoo's offer to (i) conduct additional keyword searches and (ii) pay for American's costs associated with the bloated

production are tantamount to an admission that the keyword searches yielded incomplete and poor results.[3]

## IV. CONCLUSION

Without an agreement to use keyword searches, a keyword search cannot be the sole method to search for responsive material. Moreover, the results of Yahoo's unilateral keyword search are inadequate. Accordingly, the court should order Yahoo to conduct a human review of the hard drives and shared drives of the 80 Yahoo employees (or former employees) that were searched with keywords.

Dated: July 23, 2009

---

[3] Yahoo's offer to pay American for the work associated with culling irrelevant, non-responsive documents from Yahoo's bloated production does not address the most damaging effect of Yahoo's conduct. Specifically, it fails to address the unfair prejudice American suffered by being forced to focus its attention and efforts on culling the production instead of studying and analyzing relevant, responsive material. It also fails to remedy the under-production of responsive documents that would be located during a human review.

Respectfully submitted,

*[signature]*

Dee J. Kelly (State Bar No. 11217000)
Dee J. Kelly, Jr. (State Bar No. 11217250)
Lars L. Berg (State Bar No. 00787072)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown (admitted *pro hac vice*)
Jason Stavers (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
555 Market Street, Suite 3000
San Francisco, CA 94105
Phone: (415) 393-8200
Fax: (415) 986-5309

Howard S. Hogan (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered on July 23, 2009 to Defendant's counsel, as follows, in accordance with the Federal Rules of Civil Procedure:

David F. Chappell
Scott A. Fredricks
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
*(via hand delivery and email)*

Michael A. Jacobs
Lynn M. Humphreys
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
*(via fax and email)*

/s/ Lars L. Berg
Lars L. Berg