American Airlines, Inc. v. Yahoo! Inc. et al

Doc. 64



FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2009 AUG -7 PM 4: 28

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,

Plaintiff,

-v.-

YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH
MARKETING,

Defendants.

Case No. 4:08-CV-626-A

## DEFENDANTS' MOTION TO RECONSIDER PORTION OF
## AUGUST 4, 2009 CORRECTED ORDER ON MOTION TO COMPEL

### I.     INTRODUCTION

The Court's August 4, 2009 Corrected Order on Motion to Compel granted all issues raised in Plaintiff American Airlines, Inc.'s ("AA") Motion to Compel Discovery filed on July 13, 2009. However, because certain of the matters on which the Court ruled had previously been ordered held in abeyance until re-urging by the Plaintiff, they have not yet been responded to by Defendants Yahoo! Inc. and Overture Services, Inc. d/b/a Yahoo! Search Marketing ("Yahoo!"). In particular, Yahoo! has not had an opportunity to address the issue of certain Yahoo! ESI ("electronically stored information") that is stored on back-up tapes and is not readily-accessible for production in any short time frame. The Court's August 4th order directed Yahoo! to produce such ESI by August 10, 2009. Yahoo! respectfully requests that the Court reconsider its August 4th order regarding the production of this ESI and instead direct the parties to work out an alternative approach as outlined herein.

Dockets.Justia.com

Yahoo! has produced responsive data (*i.e.*, ESI) for nearly the entire period from October 2002 to May 2009. This data includes information regarding advertisments (known as Sponsor Results) for AA and certain travel websites that appeared on the Yahoo! search results page when web users searched on the term "American Airlines" or other related terms. The only part of this data that is presently unavailable is data from January 2007 to September 21, 2007, which is currently stored on back-up tapes. That portion of the data was stored on back-up tapes as part of the ordinary operation of Yahoo!'s Sage database, the repository of most incoming data to Yahoo!'s search engine and one of the largest databases of its kind in the world. Yahoo!'s engineers have been working to restore the data for January 2007, which is expected to be available by the end of August 2009. The remaining data from February 2007 to September 21, 2007, will be extremely expensive and time-consuming to restore, requiring additional hardware and at least one month of working time for each month to be restored. Consequently, full data for the entire period would not be available until the Spring or Summer of 2010.

Most or all of the missing information for 2007 may be available from data maintained by AA, the travel websites, or their advertising agents. AA and its agents have produced data that Yahoo! is currently reviewing. Yahoo! has also served subpoenas for such data on the relevant travel websites. If the missing information cannot be established through these sources, Yahoo! indicated to AA during the Court-ordered meet and confer conference on July 16, 2009, its willingness to stipulate to an extrapolation of the missing information for 2007, based on the available surrounding data. AA rejected this offer. Yahoo! requests that the Court direct the parties (1) to attempt to assemble the missing 2007 information from the data produced by AA or third parties; and (2) if that fails, to arrange an appropriate extrapolation of the missing information based on the surrounding data.

## II. PROCEDURAL BACKGROUND

On July 13, 2009, AA filed its Motion to Compel Discovery [Document No. 43] in which it raised and sought relief on four issues: (1) that Yahoo! be compelled to produce certain ESI containing advertising data that covers the period from January 2007 through September 21, 2007; (2) that Yahoo!'s relevancy and burden objections be overruled and all documents withheld based on these objections be produced; (3) that AA be permitted an additional 15 interrogatories and 5 depositions at Yahoo!'s expense to investigate Yahoo!'s retention practices and procedures; and (4) that Yahoo! perform an entirely human review of its records rather than rely upon keyword searching through many of its records.

On July 14, 2009, the Court entered an Order [Document No. 46] requiring Yahoo! to file an expedited response to issues (3) and (4) of AA's motion – that is, the document retention and human review issues. That same order stated: "As to the remaining relief requested by plaintiff's motion, the court will hold the motion in abeyance to allow the parties one final opportunity to settle their discovery disputes." The Court set specific deadlines for the parties to meet and confer, and withdraw and or supplement discovery as appropriate. "Thereafter, plaintiff may reurge its motion to compel, in whole or in part, by delivering notice to defendants and the court no later than 4:00 p.m. on July 27, 2009."

On July 16, 2009, pursuant to the requirements of the Court's July 14, 2009 order, the parties participated in a face-to-face meeting to confer on the subjects of AA's motion. As reflected in Plaintiff's Report In Response to the Court's July 14, 2009 Order [Document No. 47], the parties agreed to the additional depositions and interrogatories requested under issue (3) of AA's motion, with Yahoo! bearing the costs for the court reporter and videographer. Report, at para. 2. AA also agreed to withdraw one of its requests for production and to limit the scope

of many of the other requests that were the subject of issue (2) of the motion to compel. Report, at para. 3.

On July 17, 2009, Yahoo! filed its Opposition to Plaintiff American Airlines, Inc.'s Motion to Compel Discovery [Document No. 48]. In accordance with the Court's July 14th Order, Yahoo! limited its expedited response to issues (3) and (4) of AA's motion to compel. However, because agreement had been reached by the parties with respect to issue (3) – the request for additional interrogatories and depositions – Yahoo! focused its attention on responding to AA's demand that Yahoo! conduct an entirely human review of its records rather than rely, in part, on keyword searches. Yahoo! did not read the Court's July 14th Order as requiring, or even allowing, a response on issues (1) and (2) at that time.

Yahoo! began diligently working to supplement its production in accordance with the parties' agreements and the July 14th order of the Court. On July 24, 2009, Yahoo! sought an unopposed one week extension of time to complete this effort and submitted a proposed agreed order to this affect. The Court signed the order that day [Document No. 56-2], thereby requiring Yahoo! to supplement its production by July 31, 2009, and allowing AA to "reurge its motion, in whole or in part, by delivering notice to Defendants and the Court no later than 4:00 p.m. on August 13, 2009."

On August 4, 2009, the Court signed its Corrected Order on Motion to Compel, granting AA's motion on all four issues raised in the motion to compel, including those issues the July 14th order had stated would be held in abeyance until reurging by AA. Because issues (2) and (3) have been settled by agreement of the parties, and issue (4) has been fully briefed to the Court, Yahoo! only requests by this motion that the Court reconsider its Order on issue (1) requiring Yahoo! to produce all responsive ESI by August 10, 2009.

## III.   YAHOO!'S 2007 DATA STORED ON BACK-UP TAPES

Yahoo! has collected and produced responsive data regarding relevant Sponsor Results for nearly the entire period from October 2002 to May 2009.  Cameron Decl., ¶ 4.  (Def. App. 4) This data includes information regarding Sponsor Results that were (1) displayed in response to searches for AA trademarks and terms allegedly similar to those trademarks, and (2) clicked on by a web user.  *Id.*  The only period for which responsive data is not readily-accessible is the period from January 2007 to September 21, 2007.  *Id.,* ¶ 7.  (Def. App. 5)  Data for this period was originally stored in Yahoo!'s Sage database and is currently stored on back-up tapes.

Below is a chart showing the number of clicked Sponsor Results for major travel websites from December 2002 to May 2009 that were triggered by searches for AA terms.[1]  The gap shown in 2007 reflects the period for which data is not readily-accessible:

---

[1] AA claims that the display of Sponsor Results for non-AA travel websites (as shown in the chart) infringed AA's trademarks because the Sponsor Results were triggered by user searches for AA terms.  However, under Yahoo!'s trademark policies, the travel websites were only permitted to have Sponsor Results displayed in response to searches for AA terms if they actually sold AA tickets or directed users to a location where tickets could be purchased.  This is consistent with the law of nominative fair use of trademarks, under which a party authorized to sell a good or service is entitled to use the associated trademarks to tell the public that they are engaged in such business. *See Tiffany v. eBay*, 576 F. Supp. 2d 463, 469 (S.D.N.Y. 2008) ("the Court finds that eBay's use of Tiffany's trademarks in its advertising, on its homepage, and in sponsored links purchased through Yahoo! and Google, is a protected, nominative fair use of the marks"); *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 855-56 (N.D. Tex. 2009) ("This court finds the holding in *Tiffany* persuasive. The fair use doctrine allows second hand sellers to inform customers that it sells a mark holder's product so long as it conveys the information "fairly," *i.e.*, in a way that uses no more of the mark than necessary to identify the product, and does not suggest affiliation or sponsorship.").

---



**Click History: Major Travel Sites**

Travel Website Clicks

It should be noted that the number of travel website clicks declined significantly in the period after December 2006, as shown by the available data in the chart. This coincides with the implementation in December 2006 of an Addendum to AA's ARC Agreement (the agreement AA maintains with its authorized ticket agents) which forbids the ticket agents from advertising based on AA's trademarks. [*See* AA's Complaint ¶¶ 151, 153.] The contractually-bound ticket agents appear to have complied with the Addendum, hence the low level of advertising in the post-December 2006 time period. This history supports an inference that the level of advertising during 2007 was low. Yahoo! has subpoenaed the travel websites to provide any available data to fill in the missing information.

Yahoo!'s Sage database contains a large volume of data associated with Yahoo! Sponsor Results. Cameron Decl., ¶ 3. (Def. App. 4) The Sage database stores data for every Sponsor

Result that is clicked by a web user, of which there are millions each day. *Id.* (Def. App. 4) The Sage database is one of the largest databases in the world of its kind, containing more than 1.4 petabytes of data (*i.e.*, 1.4 billion megabytes). *Id.* To put this in perspective, if a typical personal computer has a hard drive capacity of 200 gigabytes, then 1.4 petabytes would be the full capacity of 7,000 computers. 1.4 petabytes could also hold roughly 140 copies of the entire print collection of the Library of Congress. (Def. App. 10)[2] Yahoo! has more than 50 engineers and analysts who work on maintaining, accessing, and analyzing the data. Cameron Decl. ¶ 3. (Def. App. 4) There are hundreds more individuals within Yahoo! who regularly interact with the database either through queries or reports on the database in the course of their duties. *Id.*

Click data in the Sage database is ordinarily maintained in readily-accessible form for a period of 18 months from when the data is generated. Cameron Decl., ¶ 5. (Def. App. 5) After 18 months, the data is stored on back-up tapes. *Id.* The 18-month retention practice for click data in the Sage database began in early 2008. *Id.*, ¶ 6. (Def. App. 5) The purpose of backing up data to tapes after 18 months is to limit the considerable expense associated with storing and maintaining large volumes of data in readily-accessible form. *Id.* The hardware and maintenance associated with such data storage costs Yahoo! millions of dollars each year. *Id.*

For purposes of this litigation, Yahoo! engineers have been working to restore the data from back-up tapes for January 2007. Cameron Decl., ¶ 8. (Def. App. 5) Data restoration for half of that month is nearing completion and Yahoo! anticipates that the remainder will be completed by the end of August 2009, barring any unforeseen issues with the tapes. *Id.*

---

[2] For further analogies regarding the size of a petabyte of data, attached is the Wikipedia entry for "petabyte" (Def. App. 7) and a discussion from www.whatsabyte.com (Def. App. 10) ("1 Petabyte could hold approximately 20 million 4-door filing cabinets full of text. It could hold 500 billion pages of standard printed text. It would take about 500 million floppy disks to store the same amount of data.").

The process of data restoration is time-consuming and labor-intensive, requiring substantial computing and human resources. Cameron Decl., ¶ 9. (Def. App. 5) The process requires engineers to (a) restore each of billions of lines of data from tape and place them into the Sage filer, one day at a time; (b) extract the click data from the filer; and (c) insert the data into the Sage storage warehouse to be made available for purposes of this litigation. *Id.* The computation time associated with this restoration is roughly one day for each day of data to be restored. *Id.*, ¶ 10. (Def. App. 6) The data cannot be selectively restored (*i.e.*, limited to the data of relevance to this litigation), but must instead be restored for all of the petabytes of data for the relevant time period. *Id.*, ¶ 9 (Def. App. 5-6)

To restore data for the period of February 2007 to September 21, 2007, Yahoo! would need to purchase at least $350,000 worth of added equipment and expend roughly 3,500 man hours of labor. Cameron Decl., ¶ 10. (Def. App. 6) The process will take roughly 4-5 weeks for each month of data to be restored. *Id.* Accordingly, the full restoration could not be completed until the Spring or Summer of 2010. *Id.*

## IV. ARGUMENT

In its Motion to Compel Discovery, AA suggests that Yahoo! should have altered its ordinary data retention practice, at the inception of this lawsuit, to keep the entirety of the Sage database in readily-accessible form for purposes of this case. [Document No. 43.] The law does not require a party to make such dramatic alterations to its ordinary business practices in anticipation of potential discovery requests. *See* Fed. R. Civ. P. 26(b)(2)(B), 34(b)(2)(E).

As previously described, retaining data in the Sage database for extended periods of time is an expensive proposition. Cameron Decl., ¶ 6. (Def. App. 5) Yahoo! made a good-faith effort to capture responsive data from the Sage database early in the case. Yahoo!'s data

management personnel began arranging for the collection of responsive data from Yahoo!'s Sage database (and two older databases) at least as early as February 2009, before AA had even served its first set of document requests. [Document No. 49-3, page 75, ¶ 3.] Yahoo! captured responsive data from the Sage database in March 2009 and at various times thereafter, and has preserved and produced that data in this case. *Id.*; Cameron Decl., ¶ 4. (Def. App. 4)

Federal Rule of Civil Procedure 26(b)(2)(B) provides that "[a] party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Rule 34(b)(2)(E) requires that electronically stored information be produced "in a form or forms in which it is ordinarily maintained." As previously described, it is Yahoo!'s ordinary practice to store click data from the Sage database on back-up tapes after 18 months. Cameron Decl., ¶ 5. (Def. App. 5) That is the form in which data older than 18 months is ordinarily maintained. The cost of restoring such data, if it is to be undertaken, should properly be borne by Plaintiff. *See* Fed. R. Civ. P. 26(b)(2)(B); *Zubulake v. UBS Warburg*, 217 F.R.D. 309, 317-23 (S.D.N.Y. 2003) (outlining standard for shifting of electronic discovery costs for inaccesible data, such as data stored on back-up tapes). Yahoo! made a good-faith effort to capture and preserve responsive data early in this case. The fact that Yahoo! did not alter its regular data retention practice for the entire Sage database at an earlier time is certainly not indicative of bad-faith. *See* Fed. R. Civ. P. 37(e) (a party shall not be penalized for "failing to provide electronically stored information lost as a result of the routine, good-faith operation of an electronic information system").

At the Court-ordered meet and confer conference on July 16, 2009, Yahoo! proposed a practical solution to the issue of the unavailable 2007 data: The parties could first attempt to obtain the missing information from data produced by AA or third parties; if that fails, the parties

can stipulate to a reasonable extrapolation of the data for the missing time period, based on the surrounding data. Yahoo! also offered to make its data management personnel available to talk with AA's personnel to clarify any technical details. AA refused Yahoo!'s offer and instead insisted that Yahoo! provide the 2007 data, even after Yahoo! had explained that the data would be impossible to restore in any reasonable period of time for purposes of this case. Yahoo! remains prepared to work with AA to reach a practical resolution of this issue as outlined above.

## V.     CONCLUSION

For the foregoing reasons, Yahoo! respectfully requests that the Court reconsider its August 4th Order instructing Yahoo! to produce the 2007 data by August 10, 2009, and instead direct the parties (1) to attempt to assemble the missing 2007 information from the data produced by AA or third parties; and (2) if that fails, to arrange an appropriate extrapolation of the missing information based on the surrounding data.

## CERTIFICATE OF CONFERENCE

I certify that on August 7, 2009, I conferred with Lars L. Berg (counsel for American Airlines) on the foregoing motion. Mr. Berg stated that he could not state whether American Airlines was opposed or unopposed to the motion at this time without further consideration.

_____
Scott A. Fredricks

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Defendants' counsel, as indicated below, on the ____7th____ day of August 2009:

Dee J. Kelly                          *Via Hand Delivery*
Dee J. Kelly, Jr.
Lars L. Berg
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, TX  76102

Frederick Brown                       *Via Federal Express*
George A. Nicoud III
Jason Stavers
GIBSON, DUNN & CRUTCHER LLP
One Montgomery Street, Suite 3100
San Francisco, CA  94104

Howard S. Hogan                       *Via Federal Express*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036

_____
David Chappell

Respectfully submitted,

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH MARKETING