American Airlines, Inc. v. Yahoo! Inc. et al                    Doc. 78

1

```
1                 IN THE UNITED STATES DISTRICT COURT
                 FOR THE NORTHERN DISTRICT OF TEXAS
2                        FORT WORTH DIVISION

3    AMERICAN AIRLINES, INC.,      .  CIVIL ACTION NO.
                 Plaintiff,        .  4:08-CV-626-A
4                                  .
     VS.                           .
5                                  .
     YAHOO! INC. and OVERTURE       .
6    SERVICES, INC. d/b/a          .
     YAHOO! SEARCH MARKETING,      .  August 11, 2009
7                 Defendants,      .  10:38 a.m.
     .  .   .   .   .   .   .   .   .   .   .   .

8
                    TRANSCRIPT OF PROCEEDINGS
9                     (Telephone Conference)
               BEFORE THE HONORABLE JOHN H. McBRYDE
10                  UNITED STATES DISTRICT JUDGE


11
     APPEARANCES:
12
     For the Plaintiff:          Mr. Frederick Brown
13                               Gibson Dunn & Crutcher LLP
                                 555 Mission Street, Suite 3000
14                               San Francisco, California  94105
                                 (415) 393-8204
15
                                 Mr. Lars L. Berg
16                               Kelly Hart & Hallman
                                 201 Main Street, Suite 2500
17                               Fort Worth, Texas  76102
                                 (817) 878-3524
18
     For the Defendants:         Mr. David F. Chappell
19                               Mr. Scott A. Fredricks
                                 Cantey Hanger LLP
20                               600 West Sixth Street, Suite 300
                                 Fort Worth, Texas  76102
21                               (817) 332-1800

22                               Mr. Michael A. Jacobs
                                 Mr. D. Anthony Rodriguez
23                               Mr. Daniel P. Muino
                                 Morrison & Foerster, LLP
24                               425 Market Street
                                 San Francisco, California  94105
25                               (415) 268-7455
```

U.S. DISTRICT COURT

1    APPEARANCES CONTINUED:

2    Official Court Reporter:        Eileen M. Brewer
                                     424 United States Courthouse
3                                    501 West Tenth Street
                                     Fort Worth, Texas  76102-3637
4                                    (817) 850-6661

5

6

7
     Proceedings recorded by mechanical stenography, transcript
8    produced by computer-aided transcription.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                      P R O C E E D I N G S,

 2            THE COURT:  We're on the line.  This is a conference

 3  call between the Court and the attorneys in No. 4:08-CV-626-A,

 4  American Airlines Inc., versus Yahoo! Inc., and Overture

 5  Services, Inc., d/b/a Yahoo! Search Marketing.

 6      Let's see, who's on the line for the plaintiff?

 7            MR. BROWN:  Thank you, Your Honor.  There are two of

 8  us, Fred Brown and Lars Berg.

 9            THE COURT:  Okay.  Are you going to be the lead

10  attorney, Mr. Brown?

11            MR. BROWN:  I will be, Your Honor.

12            THE COURT:  Okay.  And who's on the line for -- are

13  the defendants all represented by the same attorneys?  Yahoo!

14  and Overture?

15            MR. CHAPPELL:  Yes, sir.

16            THE COURT:  And who was that speaking?

17            MR. CHAPPELL:  That was David Chappell speaking, Your

18  Honor.

19            THE COURT:  And who else is on the line for those

20  defendants?

21            MR. CHAPPELL:  We have Scott Fredricks here at Cantey

22  Hanger with me, and then Michael Jacobs with Morrison & Foerster

23  will introduce his people, Your Honor.

24            MR. JACOBS:  Good morning, Your Honor.  This is

25  Michael Jacobs and with me is Tony Rodriguez and Dan Muino.
```

1      THE COURT:  And who will be the spokesman for the

2 defendants?

3      MR. JACOBS:  I think I will probably do much of the

4 speaking Your Honor, Michael Jacobs.

5      THE COURT:  I have with me the court reporter, who is

6 taking this down, and Jamie Hoxie, the law clerk working with me

7 on the case.  Unless you're responding to a question where I've

8 identified you, identify yourself when you speak so the court

9 reporter will know who is talking.

10    I arranged for this because of the deadline we had for

11 Yahoo! to respond to one of the requirements of an order I

12 signed on the 4th, I believe, August the 4th.  And I realize I

13 didn't give the defendants an opportunity to make a formal

14 response to that.  I was prompted to move, when I did, because I

15 saw the problem developing with the expert designations and

16 reports.  And I felt that the issue that the August 4 order

17 dealt with might have some interrelationship with that.

18    I now have seen the defendant's response and I'm a little

19 concerned with the fact that it simply can't do what I've

20 ordered it to do.  Obviously, we don't accomplish much by

21 ordering somebody to do something they can't do.

22    So let me ask Mr. -- Let's see, who do I want to direct

23 this question to.  Mr. Brown?  Is it Brown, yes.

24      MR. BROWN:  Yes, sir.

25      THE COURT:  How can the Court require Yahoo! and

1 Overture to do something they can't do?

2         MR. BROWN:  I don't think that is possible.

3         THE COURT:  Okay.  Well, what do you want?  Do you

4 want to extend the trial date until -- They say they can do it

5 sometime in the year 2010.

6         MR. BROWN:  I doubt, Your Honor, that it would take

7 that long.  My answer was in respect to the deadline that was

8 imposed yesterday.  When we met with Mr. Jacobs and his client

9 some weeks ago, our proposal to their telling us it would take

10 seven months was that we thought they could do it in one month

11 and there the negotiations stopped.  3500 manhours of time, if

12 they hired 35 people or used their people to do it, and they

13 work from, let's say 50 hours a week to do it, they could do it

14 in two weeks.  We thought the offer of a month was generous.

15     The support that they have provided to date is conclusory.

16 It doesn't give us any of the details about how many people they

17 have on this project, doesn't give us the details of the

18 equipment, and it doesn't describe in any detail from any

19 knowledgeable person precisely why they think it would take

20 longer than 30 days.  We think they could do it on an expedited

21 fashion.

22     We also believe that they are the cause of their own

23 problem because of their failure to issue an appropriate hold

24 notice and their failure to begin --

25         THE COURT:  Well, I think that's a different issue.

1  If you think they've done something wrong that they should be

2  sanctioned for, that will be dealt with separately.

3      MR. BROWN:  We have not asked for any sanction when we

4  asked that the documents and information be produced.

5      THE COURT:  Okay.  So what he's saying, Mr. Jacobs, is

6  that y'all just need to try harder.  What's your response to

7  that?

8      MR. JACOBS:  This is Michael Jacobs.  We have pressed

9  that question with the Yahoo! folks, and because we recognize

10  that really this is a technical question, we proposed to

11  American that they designate somebody on their side who was

12  really a technical mavin in this field of databases to talk

13  directly with our database folks so at least the technical

14  people can reach a shared understanding.  I still think that's

15  actually the most practical thing to do at this stage so at

16  least we're not trying to argue to you, lawyers who aren't

17  deeply technically knowledgeable, trying to argue to you about

18  what can and can't be done.

19      What I will represent to the Court is that we have pressed

20  the question can it be done faster.  It is not a matter of

21  people.  It's not even a matter of just adding hardware, because

22  the database needs to be rebuilt sequentially day by day with

23  each backup added in and added in properly on the system that is

24  this huge, you know, just unbelievably gargantuan database.  And

25  that's what we understand to be the reason that it will take

even much of August to rebuild January 2007, and then

progressively weeks and weeks and weeks for each remaining

month.

THE COURT:  Mr. Brown, I don't have anywhere near the

technical knowledge that the lawyers do in this case, so I'm

going to have to rely on the lawyers to help me along.  What's

your response to what you just heard?

MR. BROWN:  We think they could do it faster if they

tried harder.  We're also --

THE COURT:  Is that because of your expertise on the

subject?

MR. BROWN:  I don't have the technical expertise to

speak to the particular problems that Yahoo! is experiencing,

but I don't think any of us on this phone call do.

THE COURT:  Well, maybe he's got the right idea.  Does

American have someone available to it who can get with the

technical people with Yahoo! and at least have an understanding

as to what the real problems are?

MR. BROWN:  Either through a -- someone that we would

engage to do that or internally, we could certainly accomplish

that.  What we would have expected to see is some technical

declaration at this point in time to describe to us in detail,

under oath, what the problems are.  And even at this late date,

we don't have those.

THE COURT:  Well, Mr. Jacobs, that seems to be a

1    reasonable request.  Why don't they have that?

2           MR. JACOBS:  I think they do, Your Honor.  Number one,

3    they took the deposition of Catherine Cameron, who is the

4    declarant in our -- I guess our motion for reconsideration.  And

5    then in the Cameron declaration she describes in paragraph nine

6    the steps that are being taken, and she describes the scale of

7    the database.  So what I would expect -- If we're going to send

8    the ball back over the net, what I would expect American to have

9    done is given that declaration to a technical person and said,

10   "We have some more questions about this.  What is this reference

11   in paragraph 9(a) to restoring billions of lines of data from

12   tape," or something of that nature.  That could have been done

13   over the past weeks, because we have offered that technical

14   interchange.  Moreover, they took her deposition four months

15   ago, I think, right?

16          THE COURT:  Is she the person who would be the person

17   with the technical knowledge to confer with the American

18   Airlines counterpart?

19          MR. JACOBS:  Yes.  I think she might bring one of the

20   line engineers, if you will, into the discussion as well.  She

21   is the responsible manager of this effort and of this project.

22   I think -- What I've come to know after working on these cases,

23   that you can go down several levels of detail into the technical

24   details in a project like this.  So she would probably have some

25   help in that dialogue.

1        THE COURT:  Okay.  I would prefer not to delay the

2   pretrial or the trial in the case, if there's a way to avoid it,

3   which means that I would like to expedite providing the

4   information.  But if it can't be done, it can't be.

5        And let me go back to you, Mr. Brown.  Is American

6   satisfied that it does not want to pursue either of the

7   alternatives that Yahoo! suggests?

8        MR. BROWN:  The stipulations, Your Honor, were

9   entirely one-sided from our view.  This also is a very critical

10  period of time in which there was a very significant technology

11  change called "Panama" that was introduced by Yahoo! in February

12  of 2007.  That technology platform introduced a new way for

13  Yahoo! to do paid search advertising and change the dynamics of

14  its relationship with its advertising customers.

15       There was also a second change, and that was a change in

16  the contract between American and travel agents that Yahoo!

17  believes provides it a defense to any liability and any damages,

18  and that change occurred in December of 2006.  So this period of

19  time is critical.  We are not sure if we could do an accurate

20  extrapolation on damages, and then we also have the issue of

21  what particular ads were displayed.

22       Yahoo! is contending that we need to show that each and

23  every one of the million ads it displayed was itself an

24  infringing ad.  We don't agree with that position, but that

25  certainly is something we need to deal with.  So we need to see

1 what ads, in fact, were displayed during that period of time to

2 adequately represent American Airlines.

3         THE COURT:  Okay.  How long would it take American to

4 identify an expert with the knowledge needed to confer with the

5 Yahoo! expert?

6         MR. BROWN:  Your Honor, I think we can probably do

7 that within a week, Your Honor.

8         THE COURT:  Okay.  I think I'll withdraw the August 4

9 order as to the subject we're now discussing.  I'll establish a

10 week to identify the expert, and I assume that expert will then

11 need some time to understand the problem.

12    I'll direct this to you, Mr. Brown.  When do you anticipate

13 you would have an expert ready to confer with the Yahoo! expert?

14         MR. BROWN:  I think we can do it within two weeks.  It

15 would greatly help us if we had a declaration from Yahoo!

16 describing the problem that it believes it will be dealing with

17 so that our expert can see that and come prepared to discuss

18 that declaration with Yahoo! and to test what they say, whether

19 it's correct or incorrect or whether there could be a different

20 point of view.

21         THE COURT:  Okay.  Mr. Jacobs, do you understand the

22 type of detail he's looking for?

23         MR. JACOBS:  I think so, Your Honor.  I think what

24 we'll do is we will go back to our technical folks and say can

25 you elaborate on the paragraph.  And I will talk to Mr. Brown

1  and say is this the kind of information that would be helpful to

2  you.  And we will try and work it out among the two of us.

3           THE COURT:  Okay.  I'm going to fix a deadline of ten

4  days, and I'll have an exact date, for the defendants to provide

5  a new declaration or declarations defining exactly what problems

6  are being encountered or will be encountered in restoring the

7  information.  And I expect there to be a communication between

8  the responsible attorneys as to what Yahoo! plans to provide and

9  whether that's what American Airlines thinks should be required.

10 So, in other words, I expect there to be a cooperative effort in

11 defining what should be in the declaration.

12           MR. JACOBS:  We'll do that, Your Honor.

13           MR. BROWN:  We'll do that, Your Honor.  This is Fred

14 Brown.

15           THE COURT:  And then I'm going to set a deadline of

16 two weeks for there to be a meeting between the experts for

17 American Airlines and the defendants.

18           MR. BROWN:  May we do that in Fort Worth, Your Honor?

19           THE COURT:  Who was that?

20           MR. BROWN:  That was Fred Brown, I'm sorry.

21           MR. JACOBS:  Your Honor, if we could do it by video

22 conference, at least, I think it would go a lot faster than if

23 we have to fly people around at the height of the travel season.

24           THE COURT:  Well, American likes that.

25           MR. JACOBS:  This is Michael Jacobs.  We've come to

1  know that, Your Honor.

2            THE COURT:  What's wrong with a video conference,

3  Mr. Brown?

4            MR. BROWN:  Nothing is wrong with it, Your Honor.

5  I was just assuming that we could get more done on a more

6  personal basis if we were sitting in the same conference room.

7            THE COURT:  Well, I think that's probably true.  I

8  think that is true.

9            MR. JACOBS:  Your Honor, why don't we leave the -- I

10 think we can work out the location based on the availability of

11 folks.  It may be, for example, that American's expert happens

12 to be out here.  There are a lot of database folks here.

13           MR. BROWN:  I think we'll probably have someone --

14 Your Honor, this is Fred Brown -- here in Texas.

15           THE COURT:  Well, Fort Worth will be the default

16 location, but I expect you to have whatever discussions are

17 appropriate about an alternative if that actually turns out to

18 be more desirable.

19           MR. JACOBS:  Michael Jacobs.  Understood, Your Honor.

20           THE COURT:  Okay.  Is there anything else we need to

21 deal with?

22           MR. BROWN:  No, Your Honor.  Thank you.  It's Fred

23 Brown.

24           MR. JACOBS:  Thank you, very much, Your Honor.

25           THE COURT:  Okay.  Thank you.

1     (Proceedings concluded, 11:55 a.m.

2               -o0o-

3             CERTIFICATE

4     I certify that the foregoing is a correct transcript from the record of proceedings in the above-entitled matter.  I

5 further certify that the transcript fees format comply with those prescribed by the Court and the Judicial Conference of the

6 United States.

7

8 s/Eileen M. Brewer             August 21, 2009
  Eileen M. Brewer              Date

9 Official Court Reporter
  Texas CSR No. 3016

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25