

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2009 SEP - 1  PM 3: 35

CLERK OF COURT

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4-08CV-626-A |
| | § | |
| YAHOO! INC., and | § | |
| OVERTURE SERVICES, INC. d/b/a | § | |
| YAHOO! SEARCH MARKETING, | § | |
| | § | |
| Defendants. | § | |

## DEFENDANTS' MOTION TO COMPEL AND BRIEF IN SUPPORT
## AND REQUEST FOR EXPEDITED CONSIDERATION

David F. Chappell
Scott A. Fredricks
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas  76102
Tel.:  817.877.2800
Fax:  817.877.2807

Michael A. Jacobs (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
D. Anthony Rodriguez (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Tel.: 415.268.7000
Fax: 415.268.7522

*Counsel For Defendants Yahoo! Inc. and
Overture Services, Inc. d/b/a Yahoo! Search Marketing*

Dockets.Justia.com

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS..................................................................................................i

TABLE OF AUTHORITIES ..........................................................................................ii

PRELIMINARY STATEMENT ..................................................................................... 1

CERTIFICATE OF CONFERENCE............................................................................... 3

ARGUMENT .................................................................................................................. 3

    A.    American Failed To Disclose "Core" Fact Witnesses Who Are
Former Employees And Buried Other Key Witnesses Who Are
Current Employees in a 126 Name List................................................................ 4

        1.    American Failed To Disclose Important Former
Employees............................................................................................... 5

        2.    American Buried The Names of Witnesses Who Are
Current Employees In A 126 Name List And Left Out
Other Names............................................................................................ 7

    B.    American Should Take Additional Document Collection And
Production Steps For Approximately 80-90 Custodians. .................................... 11

    C.    American Should Produce Ms. Alice Curry As Its Rule 30(b)(6)
Designee On Topics 8, 9, 10, 27, 36, and 37 For One Day Of
Testimony On September 30, 2009. ................................................................... 14

    D.    American Should Produce Its Employee, Mr. Chris DeGroot,
For Deposition In New York City Or Fort Worth, Rather Than London ............ 19

PRAYER....................................................................................................................... 21

# TABLE OF AUTHORITIES

**Cases**                                                                                               **Page**

*Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145
(7th Cir. 1976).................................................................................................................5

*Dollar v. Long Mfg., N.C., Inc.*, 561 F.2d 613 (5th Cir. 1977).................................5

*Frontier-Kemper Contractors, Inc. v. Elk Run Coal Co., Inc.*,
246 F.R.D. 522 (S.D. W. Va. 2007)...................................................................4, 5

*Hybrid Kinetic Automotive Holdings, Inc. v. Hybrid Kinetic
Automotive Corp.*, 2009 WL 1806652 (N.D. Miss. June 24, 2009) .....................21

*Martin v. Brown*, 151 F.R.D. 580 (W.D. Pa. 1993)................................................4

*Merrill v. Waffle House, Inc.*, 227 F.R.D. 467 (N.D. Tex. 2005)...........................4

**Statutes**                                                                                            **Page**

FED. R. CIV. P. 26(b)(1)...................................................................................3, 4

FED. R. CIV. P. 30(d)(1)......................................................................................18

FED. R. CIV. P. 33(b) ............................................................................................4

FED. R. CIV. P. 37 ............................................................................................1, 3

**Other**                                                                                               **Page**

8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL
PRACTICE AND PROCEDURE § 2112 (2d ed.1994) ..............................................21

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendants Yahoo! Inc. and Overture Services, Inc. (collectively "Yahoo!") move this Court for an order compelling Plaintiff American Airlines, Inc. ("American") to do the following:

1. Respond to five interrogatories and produce a deponent to identify relevant former employee witnesses and to describe the collection and production of their documents (if any), in light of American's multi-month failure to identify former employees in its initial interrogatory responses, and its extensive revisions on August 13, 2009, to those responses.

2. Utilize electronic search terms to identify and human review previously unsearched electronic materials from custodians for whom American conducted only a manual "walk through" of electronic materials, to be completed by September 18, 2009.

3. Produce Ms. Curry for one day of Rule 30(b)(6) testimony on September 30, 2009, to complete testimony on 6 of 24 topics for which American has designated her as its representative.

4. Produce American employee, Mr. Chris DeGroot, for deposition in New York City or Fort Worth, on October 1, 2, or 5, 2009 rather than London, England on October 14, 2009 (a week after the summary judgment deadline in this case).

Yahoo! would respectfully show the Court that the requested Order is appropriate and necessary as follows:

## PRELIMINARY STATEMENT

Fresh off its lawsuit against Google in an action that was before this Court from August 2007 to July 2008, American cut and pasted from its *Google* pleading and launched this action against Yahoo! in October 2008, alleging trademark, unfair competition, tortious interference with contract, and other claims. American's claims are based on Yahoo!'s sales of Internet advertising to (1) "online travel agencies" ("OTAs"), among the largest of which are

Expedia, Orbitz, Travelocity, Cheaptickets, Priceline, and Hotwire, and (2) "meta-search engines" ("MSEs"), which are found on websites like Kayak and LowFares, on which a Web searcher can see different airlines' fare information. OTAs are American's *authorized* agents for the booking of tickets for travel on American; in other words, American grants an OTA such as Expedia full authority to sell any available ticket on any American flight. American likewise has *authorized* major MSEs to access and display American fare and schedule information. This is not a case about bogus or unauthorized ticket sales or displays of fares.

The OTA and MSE advertising about which American complains is known as "Sponsor Results." Sponsor Results display on portions of Yahoo! search results pages that appear in response to a Web searcher entering a search query into Yahoo!. The search query might have consisted of a term that was an alleged American trademark (*e.g.*, the Web searcher typed "American Airlines" into the search box), or the query might have included an alleged American trademark (*e.g.*, the Web searcher typed in "American Airlines tickets"). The "organic," algorithmic, search results had their usual central prominence on the resulting search results pages, and thus American's own website, "aa.com," routinely was front and center in those results.

Organic results and Sponsor Results show websites' distinctive "URL" addresses. Thus, if an Expedia advertisement appeared on the search results page, its URL, www.expedia.com also would appear, while www.aa.com would appear in an American advertisement or throughout the organic search results. A Web searcher could choose to click on any of the organic results or Sponsor Results. The click would not necessarily lead to a purchase from American or a booking through an OTA. Indeed, the Web searcher may have had no intention of

buying a ticket from anyone during that particular search session. The Web searcher might merely have been window-shopping, or in the early or middle stage of planning a trip.

American nevertheless alleges that Sponsor Results infringed its trademarks and caused it to lose sales and goodwill. American also contends the advertising reflected tortious interference by Yahoo! with a December 19, 2006, addendum to the form contract known as the "ARC Agreement," by which American grants OTAs authority to sell American Airlines tickets (the "ARC Addendum").[1] American contends that the ARC Addendum clarified existing — though unarticulated — contractual provisions regarding the use of American marks in Internet advertising. In this case, as in *Google*, American has not sued any OTA or MSE. American claims damages from alleged infringement from December 2002 to the present. Yahoo! denies any liability to American.

## CERTIFICATE OF CONFERENCE

Counsel for Yahoo! certifies that, in accordance with Fed. R. Civ. P. 37(a)(1) and LR 7.1, it has met and conferred in good faith in person (including an in-person session on July 16, 2009, in Fort Worth) over the phone, and through correspondence with counsel for American on numerous occasions since May 2009 in an attempt to avoid bringing this motion. American continues to refuse to satisfactorily resolve the matters that this motion presents. Yahoo! has filed this motion to secure an end to American's inadequate approach to discovery.

## ARGUMENT

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears

---

[1] American has not based a tortious interference claim on MSE advertisements. MSEs do not book tickets, and therefore are not parties to the ARC Addendum.

reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Under federal law, "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005) (citations omitted). Yahoo! demonstrates below that American is hindering discovery.

A.   **American Failed To Disclose "Core" Fact Witnesses Who Are Former Employees And Buried Other Key Witnesses Who Are Current Employees in a 126 Name List.**

Yahoo! has serious concerns about the quality of American's identification of witnesses. American's August 13, 2009, "supplement" to its interrogatory responses only reinforced those concerns. The record is clear that American (1) failed to include important former employees in its interrogatory responses for months, because of their status as *former* employees, and (2) instead buried names of "core" witnesses in a 126 name list. *See* App. Ex. H, pp. 067-070. American's failings in identifying witnesses are especially glaring because American litigated the *Google* case extensively just before filing this action, and apparently began its preparations to bring this action in 2006. *See* App. Ex. A, pp. 003 (Broadfield Depo. at 56). American had plenty of time to identify witnesses responsive to Yahoo!'s interrogatories. American, however, chose to exclude former American employees from its discovery responses, and to cloud its responses to Yahoo!'s interrogatories with a 126 name list.

Rule 33(b) of the Federal Rules of Civil Procedure requires that a party responding to interrogatories must answer the interrogatory fully and under oath. FED. R. CIV. P. 33(b). The responding party is under an obligation to furnish all discoverable information requested that is available to it with reasonable effort. *See Martin v. Brown*, 151 F.R.D. 580, 593–94 (W.D. Pa. 1993) (party answering must promptly furnish responsive information available through reasonable efforts); *Frontier-Kemper Contractors, Inc. v. Elk Run Coal Co., Inc.*, 246 F.R.D.

522, 529 (S.D. W. Va. 2007) (party to civil litigation under "severe duty" to make every effort to obtain requested information and, if unsuccessful, answer should recite in detail attempts made to acquire information). As part of the duty of disclosure, a party may not give evasive or incomplete answers that are framed to impede, rather than facilitate, the other party's discovery. *See Dollar v. Long Mfg., N. C., Inc.*, 561 F.2d 613, 617 (5th Cir. 1977) (responding party required to give candid, non-evasive answer, or plainly state objection justifying the lack of response); *Airtex Corp. v. Shelley Radiant Ceiling Co.*, 536 F.2d 145, 155 (7th Cir. 1976) (duty of cooperation and candor in responding to interrogatories does not permit evasive or incomplete answers designed to impede discovery).

### 1. American Failed To Disclose Important Former Employees.

Sixteen of Yahoo!'s seventeen interrogatories included requests for the names of "all persons who have knowledge," or similar requests, regarding the facts on which American bases its claims, including its trademark claims, (e.g., Interrogatories 9-11), and tortious interference claim (Interrogatory 16). These interrogatories were not limited to current American employees.

American, however, failed to disclose witnesses who are *former* employees of American. For example:

- American's then-Senior Vice President for Global Sales, David Cush, is the executive who signed the letter to OTAs announcing the ARC Addendum in December 2006. *See* App. Ex. B, p. 020 (Cush letter to Travel Professionals, Dec. 20, 2006). Mr. Cush also had one-on-one discussions in 2007 with executives at major OTAs, such as Travelocity, regarding compliance with the ARC Addendum. *See* App. Ex. C, p. 021 (Cush e-mail to Sultan, Aug. 30, 2007). Mr. Cush left American in late 2007, approximately one year after American

adopted the ARC Addendum, to become the CEO of Virgin America Airlines. *See* App. Ex. D, p. 022 (Virgin America press release, Nov. 26, 2007).

- Michelle Hurtado is a former American employee whom an American Rule 30(b)(6) designee identified as one of seven "core" American witnesses. *See* App. Ex. A, p. 015 (Broadfield Depo. at 80: "Michelle Hurtado was defined as a person who was – her position was centrally related to the matter at hand."). Ms. Hurtado remains in the American fold: American Airlines Vacations advised Yahoo! on August 20, 2009, that it employs Ms. Hurtado on a part-time contract basis.

- Nicolle Gershon is another former American employee who, among other positions at American, was a Sr. Interactive Search & Online Advertising Analyst. *See* App. Ex. E, pp. 024-025 (obtained from http://www.linkedin.com/in/nicollegershon.)

American did not list Mr. Cush, Ms. Hurtado, or Ms. Gershon in any of its original interrogatory responses. *See* App. Ex. H, pp. 032-070. The absence of these people — the executive responsible for the ARC Addendum, a "core" employee, and a senior search and online advertising analyst — makes it clear that a person's status as a *former* employee was a litmus test in how American responded to discovery. Don Broadfield, an in-house attorney at American who served as its Rule 30(b)(6) designee on document collection issues, testified that American did not provide Ms. Hurtado's name because she was no longer an American Airlines employee. *See* App. Ex. A, p. 015 (Broadfield Depo. at 80: "*She is not an American Airlines employee* with knowledge of relevant facts" (emphasis added).). And how else to explain the failure to disclose Mr. Cush, who notified OTAs of the ARC Addendum and had direct

discussions with major OTAs about their Internet advertising, but was a former employee when American responded to Yahoo!'s interrogatories.

At a meet and confer on July 16, 2009, American disclosed that it had not produced documents from Mr. Cush and from Charles Sultan, an apparently current American employee who also dealt with major OTAs in 2007 regarding compliance with the ARC Addendum. *See* App. Ex. F, p. 028 (Sultan email to Cush, June 11, 2007). American offered neither an excuse for this, nor an explanation of why it did not disclose its document production failure until mid-July. On August 5, 2009, American produced a mere 300 pages, including duplicative emails, that it said "included" documents from Mr. Cush and Mr. Sultan.[2] *See* App. Ex. G, p. 030 (August 5, 2009 Wiehle letter.).

In sum, American excluded former employees that had direct, even "core" roles in events at issue, simply on grounds they were former employees, and kept at this tactic for months by refusing to revise its identification of witnesses in its interrogatory responses. Moreover, American's failures to identify Mr. Cush, a powerful executive with hands-on involvement in events like the adoption of the ARC Addendum and American's dealings with OTAs, and Ms. Hurtado, whom American classified almost a year ago as a "core" witness, justify a concern that American takes a narrow, tactical approach when responding to interrogatories and document demands.

### 2. American Buried The Names of Witnesses Who Are Current Employees In A 126 Name List And Left Out Other Names.

In its original responses, American used dozens of filler names to bury relevant witnesses' names and left out witnesses for no apparent valid reason. In those responses, which it stood by from April 2009 to August 2009, American never listed more than six American

---

[2] Mr. Cush is listed as the custodian of 26 of these documents; Mr. Sultan, 43.

employees as witnesses, and usually the same three (Derek DeCross, Alice Curry, and Andrew Rubin). *See* App. Ex. H, pp. 035-061 (Pl's Obj. and Resp. to Yahoo!'s Interrogatories).[3] Without fail, however, American also cited a list of 126 names, but never stated the people on that list squarely met any particular interrogatory's request for information about witnesses with knowledge of particular issues or events. *Id.* Instead, American made the boilerplate assertion that the people on that list had "personal knowledge of the facts relevant to this lawsuit." *Id.*

American's 126 name list included, among others:

- Larry Page, one of the co-founders of Google (App. Ex. H, p. 070);

- a public relations manager at Google (*Id.*);

- someone at Latin Medios (which American described as a Hispanic ad agency) (*Id.*);

- employees at Citibank (*Id.*).

Missing from the list:

- Mr. Cush;

- Ms. Hurtado;

- Mr. Sultan;

- Ms. Gershon;

- Reid Bork. (who had direct dealings with at least one major OTA regarding compliance with the ARC Addendum).

---

[3] Mr. Rubin verified American's original responses, and Ms. Curry verified the supplemented set of responses. American offered no explanation of how Mr. Rubin and Ms. Curry, both of whom American considers to be "core" witnesses, could sign verifications—just four months apart— for responses that contain such different information about witnesses.

After months of refusing Yahoo!'s requests to withdraw the list of 126 names, American simply supplemented its interrogatory responses on August 13, 2009.[4]  In the supplemented responses:

- American added one or more of its seven "core" witnesses to responses (*e.g.*, Mr. Friedman, Ms. O'Reilly, Ms. Hurtado), with no explanation of why these "core" witnesses' names were not in the original responses (*see e.g.*, App. Ex. I, pp. 075-102);[5]

- Mr. Cush, Ms. Hurtado, Mr. Sultan, Mr. Bork, and Ms. Gershon —none of whom were even listed in any of American's original responses— now appear in one or more of the 17 supplemented responses (*see e.g.*, App. Ex. I, pp. 075, 077, 081, 086);

- Mr. Rubin, *who verified the original responses that specifically identified him, Mr. DeCross, and Ms. Curry in response to Interrogatory 16*, no longer is listed in the response to Interrogatory 16 — with no explanation for why his name was deleted, or why the reliability of his earlier verification is not impaired by his error regarding himself (*see e.g.*, App. Ex. I, p. 102);

- American listed 29 employees of "tm: interactive" (American's vendor) in the 126 name list, (App. Ex. H, p. 068) but listed only 8 tm employees in its supplemented responses (*see, e.g.*, Response 6) (App. Ex. I, p. 081);

---

[4] The day after providing its supplemented responses, and within an hour of receiving Yahoo!'s request for dates in September to depose the seven American "core" witnesses, American stated that its counsel would be unavailable from September 9 to 18, and requested that no depositions or motions be set during that period.

[5] American has designated Ms. Curry on *24* of the topics in Yahoo!'s Rule 30(b)(6) deposition notice.  American's months-long refusal to identify witnesses made it difficult for Yahoo! to determine whether Ms. Curry was being used to shield other American employees from serving as American's corporate representatives on any of those 24 topics.

- American listed 11 employees of iCrossing (another American vendor) in the 126 name list (App. Ex. H, p. 068), but listed only 2 iCrossing employees in its supplemented responses (App. Ex. I, p. 081);

- American dropped entirely its references to almost four dozen people, including the employees of 14 companies: Tracey Locke (9 people); Universal McCann-I (4); McCann Erickson (2); Smart Media (1); Weber Shandwick (1); Dexterity Media (1); Global Hue (1); Zubi Advertising (2); Latin Medios (1); Momentum (1); Citibank (3); Google (16); One World (1); DDB Dallas (1).

- Among the new names are two lawyers, including Mr. Broadfield, who helped draft the original responses, and Mr. Wark, a higher-ranking lawyer at American, with no explanation of why American did not name them earlier (*see* Responses 5, 8) (App. Ex. I, p. 080-086).

American's use of the 126 name list, and its insistence on sticking with that list for almost four months, is a blatant attempt to impede Yahoo!'s discovery. In order to clear the fog created by American, Yahoo! moves for an order requiring American to provide a deponent for examination about, and answer five interrogatories regarding, the identification of witnesses, including former employees, and to describe the collection and production of former employees' documents.[6]

When the parties were negotiating the number of depositions to provide for, American -- and only American -- knew the number of current and former employees who were so involved in relevant events that American (eventually) would have to identify them as witnesses in

---

[6] Yahoo! also reserves its rights to seek an appropriate sanction or other relief for the delay and expense American has caused Yahoo! by using the 126 name list and by failing to identify Mr. Cush, Ms. Hurtado, Mr. Sultan, Mr. Bork, Ms. Gershon, and anyone else whom American should have identified.

interrogatory responses. Yahoo! is working hard to fit the depositions it believes are necessary within the 14 deposition cap, but may need to request leave for additional depositions, perhaps four to eight. If American remains true to form on scheduling cooperation, it will be impossible to complete those depositions before motions for summary judgment are due, which would prejudice Yahoo! and reward American for the defective interrogatory responses that it stood by until mid-August.

**B.  American Should Take Additional Document Collection And Production Steps For Approximately 80-90 Custodians.**

American has identified approximately 80-90 custodians of potentially responsive documents. *See* App. Ex. A, p. 002 (Broadfield Depo. at 38:7.) Of this group, American considers seven to be "core" witnesses. *See* App. Ex. A, pp. 006, 014 (Broadfield Depo. at 66, 79). For the "core" witnesses, American has represented that it reviewed all of their electronic materials —emails, documents on hard drives, and documents on shared drives— for responsiveness. But for the other 80-90 custodians —which includes Mr. Cush— American did much less.

For the 80-90 "non-core" custodians, *if they even were still at American* when it came time to search for documents responsive to Yahoo!'s discovery, American just "walked through" their electronic materials, and only at a high level. "File" names (with each "file" containing individual documents) and the custodian's own memory about how and where he or she retained documents from at least 2002 through 2009 appear to have controlled what made it into the pool of documents to be reviewed. *See* App. Ex. A, pp. 004-005, 008-010, 017-019 (Broadfield Depo. at 63-64, 70-72, 87, 200-201). If particular emails, Word documents, Powerpoints, Excel charts, etc., were kept in generic-titled files, but were misfiled, forgotten, or otherwise not placed

into a file or titled in a way that struck the custodian or counsel (who conducted an average of eight or nine walk-throughs a day) as relevant, they apparently went uncollected.

> A:    You're asking of the files that we deemed to not – possibly not contain relevant information, that we did not collect, whether we reviewed every document in those files?
>
> Q:    And the answer is?
>
> A:    The answer is most likely not.

(App. Ex. A, p. 011) (Broadfield Depo. at 73).

And if the custodian, such as Mr. Cush, had left American by the time American was responding to Yahoo!'s discovery, there was nobody with whom counsel could "walk through" his or her folders. American's late and small production of Mr. Cush's documents may very well be connected to the inability to conduct even a "walk-through" with him after Yahoo! served discovery.

Mr. Broadfield, American's 30(b)(6) designee on document collection topics, did not describe a systematic review to confirm that the "walk through" had in fact captured responsive documents that were distributed across the many places documents can be stored on a hard drive or shared drive, instead of in the particular files that American retrieved. American has not cited other steps to capture documents that the "walk-through" missed, such as running search terms or taking other quality control measures. Just the "walk-through."

American's supplemented interrogatory responses cast further doubt on the reliability of the "walk-through." If the "walk-through" was so effective in finding relevant materials (and putting aside the concern about American's failure to identify witnesses in its original interrogatory responses), American should have seen a quantity or type of materials that would have led it to identify a person in response to one or more of Yahoo!'s interrogatories that asked

for witness names. The walk-through, however, apparently did not find those materials, for American listed only a handful of people in its original interrogatory responses. American did not even include all seven of the "core" witnesses in its original responses, despite identifying these people, as far back as 2006, as holding positions key to this case.

American deems Yahoo! to be a "beneficiary of the Google documents," and has done only two "refreshes" specific to Yahoo!, with only one of those efforts coming after Yahoo! served its Rule 34 requests. *See* App. Ex. A, pp. 012-013. (Broadfield Depo. at 77-78). American's failure to identify people like Mr. Cush, Ms. Hurtado, Mr. Bork, Mr. Sultan, and Ms. Gershon, its delayed (and small) production of Mr. Cush's documents, and its erratic designation of people as having relevant knowledge, demonstrate that American missed, omitted, or was late to recognize open and obvious information. These facts weigh strongly against allowing American to rest on its "walk throughs" in this case.

American's supplemented responses also weigh in favor of requiring American to take further document collection steps. American's supplemented responses elevate approximately 30 American employees to being individually named in an interrogatory response, rather than merely included in the 126 name list. American should have listed those people in its original responses, but has only done a "walk-through" of electronic materials for most of them. If American claims it learned something about these 30 people since April 20, 2009 (when American served its original responses) that prompted it to name them in the supplemented responses, then American should have done further review of their materials. American, however, has yet to identify any such measures.

The facts show that American decided, *before it even received Yahoo!'s interrogatories,* that seven "core" custodians' materials should be reviewed one way, and everyone else's

reviewed another way, and nothing — not Yahoo!'s interrogatories in March 2009 or American's revamping of its responses in August 2009 — has changed the scope of American's review of the so-called "noncore" custodian's materials. American should not be able to control the scope of what it must review and produce. Something more must be done, and soon.

Yahoo! proposes that American be compelled to run search terms across these 80 to 90 custodians' electronic materials and then perform human review of these materials for responsiveness and produce resulting materials by September 18, 2009. American criticizes Yahoo! for using keywords to search hard drives, but American's "walk through" measures provide neither the scope of Yahoo!'s search efforts nor the amount of individualized file review that American says it applied to seven of its custodians' materials. American should upgrade its "walk through" measures by utilizing search terms to identify electronic materials maintained or created by the 80 to 90 custodians for human review that would otherwise go unreviewed. Yahoo! proposed the search terms listed in Ex. J (App. 109) of the Appendix to American, but American refused to run any search terms.

### C. American Should Produce Ms. Alice Curry As Its Rule 30(b)(6) Designee On Topics 8, 9, 10, 27, 36, and 37 For One Day Of Testimony On September 30, 2009.

On May 13, 2009, Yahoo! served a Rule 30(b)(6) deposition notice on American. *See* App. Ex. K, pp. 110-130 (Deposition Notice to American, served May 13, 2009). American designated Alice Curry, a director of distribution strategy, to testify on 20 topics, and has since designated her on four more topics. American contends Ms. Curry had to appear for only one day of Rule 30(b)(6) testimony (June 4, 2009) even though it designated Ms. Curry on four topics *after* June 4, 2009.

Ms. Curry testified on June 4 in Dallas in a deposition from 9:00 a.m. to 5:43 p.m. During that deposition, Yahoo! asked questions on 18 topics:

11. Whether, when, how, and why American has sold TICKETS to AMERICAN AIRLINES AUTHORIZED AGENTS AND/OR RE-SELLERS that also sell or re-sell TICKETS for other airlines.

12. Whether, when, how, and why American has allowed AMERICAN AIRLINES AUTHORIZED AGENTS AND/OR RE-SELLERS that display ADVERTISING by or about other airlines to sell or re-sell American Airlines TICKETS.

13. How American determines how many TICKETS it will make available to AMERICAN AIRLINES AUTHORIZED AGENTS AND/OR RESELLERS to sell or re-sell.

14. Whether, when, how, and why American records information calculating, estimating, or otherwise regarding the number of Web searchers who purportedly have been diverted by Sponsor Results on Yahoo! from reaching their original intended web destination of aa.com.

15. Whether, when, how, and why American records information calculating, estimating, or otherwise regarding the number of Web searchers who have been diverted, by Sponsor Results on Yahoo! or otherwise, to aa.com from their original intended web destination.

16. Whether, when, how, and why American records information calculating, estimating, or otherwise regarding the number of direct TICKET sales, and amount of TICKET revenue, American purportedly has lost to competitors and/or to AMERICAN AIRLINES AUTHORIZED AGENTS AND/OR RE-SELLERS because Web searchers have been diverted by Sponsor Results on Yahoo! from reaching their original intended web destination of aa.com.

17. Whether, when, how, and why American records information calculating, estimating, or otherwise regarding the number of direct TICKET sales, and amount of TICKET revenue, American has gained at the expense of competitors and/or of AMERICAN AIRLINES AUTHORIZED AGENTS AND/OR RE-SELLERS because Web searchers have been diverted, by Sponsor Results on Yahoo! or otherwise, to aa.com from their original intended web destination.

22. The meaning, significance, and connotation of the words "Official Site" in a SEARCH ENGINE'S description or display of American Airlines' website or "aa.com" web address.

23. What American is referring to as "important information" in paragraph 31 of the COMPLAINT.

26. American's monitoring, receipt, review, and approval of actual or proposed uses of the American marks listed in the COMPLAINT by

AMERICAN AIRLINES AUTHORIZED AGENTS AND/OR RE-SELLERS pursuant to the ARC AGREEMENT and/or ADDENDUM.

28. American's decision to require the ADDENDUM to the ARC Agreement [. . .], and the location and identification of its communications with AMERICAN AIRLINES AUTHORIZED AGENTS AND/OR RE-SELLERS regarding the ADDENDUM.

29. Whether, when, how, and why American Airlines has communicated with any person or entity, including any AMERICAN AIRLINES AUTHORIZED AGENTS AND/OR RE-SELLERS, to complain, object to, or otherwise express concern about bids on SEARCH ENGINE keywords.

30. When and why American first began bidding on keywords on any and all SEARCH ENGINES, and, if applicable, when and why American stopped such bidding.

31. When and why American first began bidding on keywords containing American's marks on any and all SEARCH ENGINES, and, if applicable, when and why American stopped such bidding.

32. When and why American first began bidding on keywords containing other airlines' trademarks on any SEARCH ENGINE, and, if applicable, when and why American stopped such bidding.

33. When and why American first began bidding on keywords containing the trademark(s) of any AMERICAN AIRLINES AUTHORIZED AGENTS AND/OR RE-SELLERS on any SEARCH ENGINE, and, if applicable, when and why American stopped such bidding.

34. The occurrence, purpose, mechanics, and effect of bidding, on any and all SEARCH ENGINES, by or on behalf of American on SEARCH ENGINE keywords that are or were the same as trademarks owned by or licensed to (a) airlines with whom American competed or competes, or (b) AMERICAN AIRLINES AUTHORIZED AGENTS AND/OR RE-SELLERS.

35. The location and identification of documents and data reflecting or used in bidding by or on behalf of American, on any and all SEARCH ENGINES, on keywords, including but not limited to keywords containing other airlines' trademarks, the American marks listed in the COMPLAINT, or AMERICAN AIRLINES AUTHORIZED AGENTS' OR RE-SELLERS' trademarks.

At the end of the day, two topics remained, both of them requiring extensive examination:

36. The determination of whether, when, why, and how to communicate trademark complaints or concerns to any and all SEARCH ENGINES regarding any of the American marks listed in the COMPLAINT, and the location and identification of documents and data regarding such determinations and communications.

37. When and how American discovered the conduct that its COMPLAINT alleges to have been wrongful.

American maintains that all 20 topics had to be covered on June 4. American, in contrast, deposed a Yahoo! designee on a single topic on May 29, 2009, and took a full day to do so. American faults Yahoo!'s counsel for breaking the deposition at 5:43 p.m., but cannot deny that counsel gave notice two days before the deposition that the deposition would run from 9:00 a.m. to approximately 6:00 p.m., and that American did not object or even respond to that notice. *See* App. Ex. L, p. 131 (Rodriguez letter to Berg, June 2, 2009). American instead has insisted that counsel, the court reporter, and the videographer should have adjusted travel (with counsel switching from an 8:13 p.m. United flight to a last-minute, expensive, ticket on a 9:20 p.m. American flight) and other plans because American's counsel asserted only at 5:30 p.m. that the deposition should continue into the evening. The facts are that Yahoo! conducted efficient examinations on 18 topics over a full day, and needed more time than was available to examine Ms. Curry on Topics 36 and 37.

In any event, this motion is about more than Topics 36 and 37. On July 21, 2009, American withdrew its designee on ten topics (the day before his deposition) and assigned three of those topics to Ms. Curry.[7] *See* App. Ex. M, p. 132 (Berg letter to Rodriguez, July 21, 2009).

---

[7] These three topics are:

8. The receipt, preservation, location, and production of any document or data reflecting that anyone believed American Airlines sponsored or endorsed a Yahoo! advertiser.

9. The receipt, preservation, location, and production of any document or data reflecting that anyone believed a Yahoo! advertiser was an official American Airlines affiliate.

American, however, declined to provide a date for Ms. Curry to testify as a designee on these topics.

American did this again on August 9, when, after initially refusing to do so, it agreed to designate Ms. Curry on aspects of yet another topic, one that its original designee testified on June 24, 2009, that he was not qualified to discuss, but that Ms. Curry was.[8] App. Ex. N, p. 133. (Berg letter to Rodriguez, Aug. 10, 2009). Once again, American refused to make Ms. Curry available for a 30(b)(6) session on the new topic. *Id.*

Instead, American has "offered" to make Ms. Curry available in her individual capacity for seven hours, and to allow Yahoo! to cover the 30(b)(6) topics during that time. *Id.* American would retain the option to decide whether and by how much to extend the seven hours, or to produce Ms. Curry on another date (American appears to have made producing Ms. Curry for deposition a very low priority—she was not available in the ten weeks between June 4 and August 14, and was next available on September 29).

American's offer is not much of an offer. American already is obligated to produce Ms. Curry for deposition in her individual capacity for a full day of testimony. FED. R. CIV. P. 30(d)(1). American considers Ms. Curry a "core" witness. *See* App. Ex. A, p. 006 (Broadfield Depo. at 66.). With even American in agreement that Ms. Curry is an important witness, Yahoo! should not have to squeeze examination on six additional 30(b)(6) topics into Ms. Curry's individual deposition. In light of all that has happened, Yahoo! takes little comfort from doing a combined independent and 30(b)(6) deposition and giving American control of whether Yahoo!

---

10. The receipt, preservation, location, and production of any document or data reflecting that anyone had been deceived into believing, because of Sponsor Results on Yahoo!, that he, she, or it would be provided with official information about American Airlines' flights and other services directly from American Airlines.

[8] Topic 27 covers "American's adoption, modification and enforcement of trademark licenses, agreements, policies and/or guidelines for uses by third parties of the American marks listed in the COMPLAINT."

may go beyond seven hours. Accordingly, Yahoo! elected not to proceed with an August 14 "combined" deposition on American's unilateral conditions, but instead to obtain guidance from the Court to resolve this issue once and for all.

Six Rule 30(b)(6) topics warrant another day of 30(b)(6) testimony from Ms. Curry.[9] Yahoo! requests that American be compelled to produce Ms. Curry for one full day of Rule 30(b)(6) testimony on September 30, the day following Ms. Curry's already-noticed deposition as an individual.

### D. American Should Produce Its Employee, Mr. Chris Degroot, For Deposition In New York City Or Fort Worth, Rather Than London, England.

On August 14, Yahoo! requested the deposition of Chris DeGroot, a current American employee. Mr. DeGroot, along with Ms. Curry, made the decision to add restrictions on keyword bidding to the ARC Addendum, effective December 2006:

> Q. At American Airlines who made the decision to adopt this addendum?
>
> A. American Airlines has always had this addendum. The discussion regarding changes to the addendum were with me and at that time the director of distribution strategy, who was Chris Degroot.
>
> Q. Anybody else?
>
> A. Our legal counsel.
>
> Q. So was it a joint decision with you and Mr. Degroot or --
>
> A. Yes.

App. Ex. Q, p. 137 (Alice Curry Depo. at p. 148). Mr. DeGroot sent letters to Orbitz, Travelocity, and Expedia -- the three largest OTAs -- on April 27, 2007, demanding they no longer "purchase" keywords that were identical or similar to American's marks. App. Ex. R, pp.

---

[9] Yahoo!, had offered to take the 30(b)(6) deposition in a half-day session, but that was *before* American designated Ms. Curry on Topic 27.

138-140 (DeGroot emails to OTA's). Mr. DeGroot had similar communications with a vice-president at Kayak.com, a leading MSE, demanding that Kayak cease and desist from bidding on American's marks as keywords. App. Ex. P, p. 135 (DeGroot email, August17, 2007). In November 2007, Mr. DeGroot transferred to American's Moscow office. In June 2008, Mr. DeGroot appeared in Fort Worth for his deposition in the Google litigation. Mr. DeGroot apparently now works for American in London. App. Ex. O, p. 134 (Berg letter, August 31, 2009).

Yahoo! requested Mr. DeGroot's deposition in September, but American has offered only October 14, in London. That date is one week after motions for summary judgment are due. Yahoo! gave ample notice that it wanted this deposition in September. If American has its way, sixty days will have passed between Yahoo!'s request and Mr. DeGroot's deposition, and Yahoo! will have filed its motion for summary judgment before being given the opportunity of deposing someone who was one of the two people who decided to implement the "anti-keyword bidding" change with the ARC Addendum and who sent letters to the biggest OTAs and MSE's regarding their keyword bidding. Yahoo! requests that the deposition be set for October 1, 2, or 5th.

Yahoo! proposed that Mr. DeGroot appear in Texas or in New York City in September, but American's only response was to threaten to release the October 14 date. App. Ex. O, p. 134 (Berg letter, August 31, 2009). Traveling to London from San Francisco will take the better part of two days for Yahoo!'s counsel, plus the deposition day and return travel. Holding the deposition in Texas or New York City will sharply reduce the expense and travel time for this deposition without prejudicing American (which is based in Fort Worth, brought this action in Fort Worth, and operates one of the world's largest airlines) or Mr. DeGroot (a seasoned traveler who has relocated at least twice at American's request in the past two years). Yahoo! requests

that the deposition be set for Fort Worth or New York City. It simply is unreasonable to require stateside counsel for both parties to trek around the world for the deposition of *plaintiff* American *Airlines'* employee. 8A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2112 (2d ed.1994) (stating general rule that plaintiffs are required to make themselves available for examination in the district in which suit was brought); *Hybrid Kinetic Automotive Holdings, Inc. v. Hybrid Kinetic Automotive Corp.*, 2009 WL 1806652, *1 (N.D. Miss. June 24, 2009) (same).

## PRAYER

For the foregoing reasons, Yahoo! respectfully requests that the Court enter an order requiring American to do the following:

1. Respond to five interrogatories and produce a deponent to identify relevant former employees and to describe the collection and production of their documents (with this discovery exempt from existing caps).

2. Utilize electronic search terms to identify, human review, and produce to Yahoo! by September 18, 2009 responsive electronic materials from custodians for whom American conducted only a manual "walk through".

3. Produce Ms. Alice Curry for one full day of Rule 30(b)(6) testimony on September 30, 2009.

4. Produce Mr. Chris DeGroot for deposition in New York City or Fort Worth on October 1, 2, or 5, 2009.

Respectfully submitted,

David F. Chappell

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
D. Anthony Rodriguez (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE
SERVICES, INC. d/b/a YAHOO!
SEARCH MARKETING

## CERTIFICATE OF CONFERENCE

I certify that counsel for Yahoo! has had conferences via phone, in person, and via correspondence regarding the various subject matter of this motion to compel. American opposes the relief sought in this motion. This motion is, therefore, presented to this Court for consideration and a ruling.

_David F. Chappell_

David F. Chappell

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Defendants' counsel, via fax, on the 1st day of September 2009:

| | |
|---|---|
| Dee J. Kelly<br>Dee J. Kelly, Jr.<br>Lars L. Berg<br>KELLY HART & HALLMAN, LLP<br>201 Main Street, Suite 2500<br>Fort Worth, TX 76102 | *Via Hand Delivery and Via e-mail* |
| Frederick Brown<br>George A. Nicoud III<br>Jason Stavers<br>GIBSON, DUNN & CRUTCHER LLP<br>One Montgomery Street, Suite 3100<br>San Francisco, CA 94104 | *Via Federal Express and Via e-mail* |
| Howard S. Hogan<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036 | *Via Federal Express and Via e-mail* |

_David F. Chappell_

David F. Chappell