ORIGINAL

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2009 SEP -8 PM 1:23

CLERK OF COURT

| | |
|---|---|
| AMERICAN AIRLINES, INC.,<br><br>Plaintiff,<br><br>-v.-<br><br>YAHOO! INC. and OVERTURE SERVICES, INC.<br>d/b/a YAHOO! SEARCH MARKETING,<br><br>Defendants. | No. 4:08-CV-626-A |

**PLAINTIFF'S RESPONSE BRIEF IN OPPOSITION TO**
**DEFENDANTS' MOTION TO COMPEL**

## I.
## INTRODUCTION

American has acted properly and fulfilled all its obligations on each of the four issues that Yahoo brings to the Court's attention.[1]   First, while Yahoo complains generally about American's identification, *in the early stages of the case,* of persons with knowledge, it does not argue that there are any deficiencies in the present disclosures.   American did what all responsible litigants do – as it learned more facts as the case progressed and what its opponent thought was relevant, it identified additional witnesses.   Yahoo did the same.   In fact, Yahoo initially listed only a single employee with knowledge about testing.   That list was supplemented

---

[1] American disagrees with most of Yahoo's two-page, one-sided recitation of its view of the overall merits of the case contained at the beginning of Yahoo's brief.   American notes that Yahoo's argument contains no mention of either the issues relevant to Yahoo's motion to compel or any explanation of the alleged harm caused by American's alleged conduct.

---

Dockets.Justia.com

to include 13 employees with knowledge.[2]  Second, Yahoo complains that American's in-person interviews by both outside and inside counsel with each person likely to have relevant information and the extensive human review of the documents obtained from those custodians (resulting in the production of over 1 million pages) was insufficient.  Yahoo's distrust of human review is unjustified, as is, Yahoo's request for an additional electronic search using keywords. Yahoo neither cites to legal standard or discovery rule violated nor identifies to any information that was not produced.  Instead, Yahoo is creating an issue where none exists and to distract from its own conduct.  Yahoo's third and fourth points involve depositions of high-level American employees, and American has simply tried to prevent Yahoo from abusing these employees. Nevertheless, American has agreed to produce Alice Curry as requested for 12 additional hours of deposition.[3]  As for Chris DeGroot, American intends to produce him for his deposition in Fort Worth, Texas, or New York the locations requested by Yahoo on October 15, 2009.

## II.
## ARGUMENT AND AUTHORITIES

1.  **American Disclosed Its Former Employees Consistent With Its Obligations Under the Rules.**

American responded to Yahoo's broad interrogatories requesting the identity of "all persons who have knowledge" by identifying certain individuals with knowledge in the

---

[2]  *Compare* Yahoo's original answer to Interrogatory 9 (App. 5) *to* Yahoo's supplemental response. (App. 17-18).

[3]  Yahoo has agreed to limit the second and third days of deposition to a total of 12 hours, with the right to seek more time later.  Yahoo inexplicably seeks to depose Alice Curry for a total of three days.  This is in addition to having the benefit of two days of her testimony in the closely related *American v. Google* case.  But Yahoo simply will not agree to any proposals to lessen the burden on Ms. Curry.

interrogatory response itself and by referencing a broader list of persons with knowledge.[4] Def. App. at Ex. H. The parties discussed American's responses at a meet and confer on May 19, where counsel for Yahoo agreed that Yahoo would clarify what it was seeking with its requests. App. 24; App. 28. Yahoo never followed up on that commitment. App. 28. After a subsequent meet and confer, however, American agreed to supplement its responses to list additional persons with knowledge and remove the reference to the broader list of persons, which it did. Def. App. at Ex. I.

Yahoo now complains that American's initial responses failed to identify or produce documents for former employees.[5] Motion at 5-11. However, Yahoo has not identified a single former employee who American has failed to disclose. On June 10, American provided Yahoo a list of current and former American employees who received litigation hold notices in connection with the litigation. App. 38-39. Every employee about whom Yahoo now complains

---

[4] Exhibit A to American's interrogatory responses was the list of persons American disclosed pursuant to Rule 26. Rule 26 requires American to disclose persons American may use to support its claims or defenses. FED. R. CIV. P. 26(a)(1)(A)(i). If American does not choose to use former employees to support its claims or defenses, it is not obligated to disclose them. As such, Yahoo's attempt to define Exhibit A as a comprehensive list of persons with knowledge is insupportable by the facts.

[5] Yahoo's motion is replete with (exaggerated) complaints about conduct in which Yahoo itself has engaged. For example, Yahoo identified only 3 current employees in its Rule 26 disclosures. App. at 40-41. After numerous requests, Yahoo supplemented its Rule 26 disclosures to identify 76 persons, including current and former employees. App. at 46, 51-56. American received similar supplementations to Yahoo's interrogatory responses. *See* App. at 2-4 (Response to Interrogatory 8 identifying 34 people), App. 10-17 (Supplementation identifying 100 people), App. 5 (Response to Interrogatory 9 identifying 1 person), App. 17-18 (Supplementation identifying 13 people). Despite numerous requests and his upcoming deposition, Yahoo still has *never* produced custodial documents from Brad King, a key former Yahoo employee.

---

was disclosed as a person for whom a litigation hold notice was issued.[6] *Compare* Motion at 5-6, 8 *to* App. 38-39. Further, American has produced over 1 million pages that not only contain the names of both current and former American employees but also metadata identifying the custodians for whom documents have been produced. The production included both current and former employees' custodial files, including documents for both Ms. Hurtado and Mr. Gershon, about whom Yahoo complains. Motion at 6. In sum, American has fully complied with its discovery obligations.

### 2. American made a Thorough and Complete Collection of Responsive Documents for all 80-90 Employees.

American designed and executed a methodical and thorough process to preserve, identify, collect, and produce responsive documents and ESI to Yahoo. American's witness and in-house counsel, Don Broadfield, described this process in his deposition and in the accompanying declaration. *See* App. 60-104; App. 115-119.

- In November 2006, American sent a litigation hold notice with respect to potential litigation against both Google and Yahoo. App. 65-66; App. 115 at ¶ 2. The initial litigation hold went to dozens of employees, including senior executives, managing directors, and managers in the relevant departments. App. 67; App. 115 at ¶ 2; App. 38-39. When additional persons were identified through in-person interviews and research in early 2007, they too were given hold notices. App. 63-64; App. 115 at ¶ 2.

- The litigation hold notice was sent along with an agreement that needed to be signed and returned to the legal department to ensure that the recipients affirmed that they understood and would comply with the directions. App. 68; App. 116 at

---

[6] Yahoo did request that American review Mr. Cush and Mr. Sultan's documents. American obliged that request. American produced Mr. Cush and Mr. Sultan's custodial documents on August 5. Motion at 7. Yahoo complains that the production consisted of "a mere 300 pages" of duplicative emails. Motion at 7. However, this limited production of duplicative emails is due to the fact that Mr. Cush and Mr. Sultan are not as integral to the subject matter of this litigation as Yahoo wishes them to be, thereby validating American's original assessment that they were not likely to be repositories of responsive information.

---

¶ 3. In-person interviews were conducted by a team of inside and outside counsel (the "Review Team") with employees in relevant departments to "reinforce" the hold notices and the cooperation needed. App. 68-70; App. 116 at ¶ 4. Reminder hold notices were also sent. App. 69; App. 115 at ¶ 2.

- In mid 2007, when an electronic document preservation system became available, American used that system to automatically copy existing email files of all relevant custodians and create blind copies of every future email (with attachments) sent by the custodians. In addition, American had its e-discovery team send extensive written surveys to the custodians to determine what forms of electronic communication they used and how they created and used documents and data. The surveys were used to determine, among other things, if custodians used certain technologies (like instant messages – they did not ) or saved documents on certain programs (like Word or Excel). App. 71-73, 80, 100; App. 116 at ¶¶ 5-6.

- With respect to hard copy documents, the Review Team personally interviewed custodians to determine where the custodians kept their documents – files, file drawers, file cabinets, desktop, etc. – on a broad array of relevant topics. These storage areas were then searched and documents were collected by members of the Review Team rather than by the custodians. App. 62-63; App. 116-117 at ¶¶ 7, 9.

- With respect to electronically-stored information ("ESI"), the Review Team conducted similar interviews and similar searches of electronic files, folders, directories, shared files, shared drives and home directories, etc. that contained ESI on relevant topics. All ESI in those storage places were copied and were human reviewed for relevance. App. 74-76, 79-83; App. 116-117 at ¶ 7, 10.

- For certain custodians who were involved directly with the subject matter of the litigation on a significant basis, like custodians in the aa.com business unit, *all* of their ESI was gathered and human reviewed. App. 74-76, 79; App. 117 at ¶ 8. For non-core individuals that could not identify specific folders or did not put anything into identifiable folders or files, American similarly gathered and reviewed *all* of their ESI. App. 90; App. 18 at ¶ 11.

- When employees moved into a new job that would result in discoverable information, a litigation hold notice was issued and similar steps to preserve and identify documents and ESI were undertaken. App. 87-88; App. 118 at ¶ 12.

- All of the hard copy documents and ESI collected by the Review Team were put on hard drives and sent to American's discovery vendor. Once custodial documents were loaded by American's discovery vendor into a database for review, a team of contract attorneys, whose full time job was to review each page and each ESI for responsiveness, reviewed all of the documents and ESI loaded. App. 76-78, 80; App. 118 at ¶¶ 13-15. This information was reviewed multiple

times for responsiveness. App. 89, 92, 95-96; App. 118 at ¶ 15. American also conducted quality checks by supervising attorneys to ensure the integrity and quality of the review and production. App. 96-98; App. 119 at ¶ 16.

- American "refreshed" its collection of documents and ESI for these custodians twice in 2008 and again in May 2009. These "refreshes" captured documents and ESI created after the previous productions. App. 84-86; App. 119 at ¶ 18.

- The collection and review process took considerable time and considerable personnel. While precise numbers are difficult to arrive at because personnel were occupied on more than one project in a period of time, American estimates that its out of pocket costs for its team of contract attorneys (as of July 22) was between $700,000 and $900,000 and involved a team of lawyers and paralegals that fluctuated between 14 and 28 lawyers and paralegals. App. 91, 99.

- All of the documents deemed non-responsive to Google's requests for production and the documents collected for this litigation were reviewed by the contract attorneys to determine if they were responsive to Yahoo's requests. App. 93-94; App. 119 at ¶ 17.

American met and exceeded its discovery obligations at every stage of its document and ESI collection, review and production effort. Yahoo now seeks to require American to conduct a second review of the same files on the off chance that something somewhere may have been misfiled, overlooked, or forgotten. Yahoo's make work, which American believes would cost hundreds of thousands of dollars and take several weeks, would be expensive, burdensome and unproductive and likely would be far less productive than the human review previously conducted. Moreover, Yahoo's request would interfere with other more important tasks as it comes late in discovery when the focus needs to be on depositions and other pending matters in this case. Because American has taken reasonable and diligent efforts to retain, locate, and produce responsive documents, Yahoo's unreasonable request should be denied.

## B.    Deposition Issues

American has agreed to produce Alice Curry as requested. With an extension of the summary judgment deadline, Chris DeGroot's deposition can be taken by agreement.

**1. Although American Has Agreed, Yahoo's Request to Depose Ms. Curry for Three Days is Unreasonable.**

Ms. Curry is American's Director of Distribution Strategy and is charged with responsible for the agencies that book American Airlines tickets. App. 107, 109. She was in charge of aa.com from May 2006 to March 2008. App. 108. Ms. Curry was designated as a corporate representative on important topics because she is knowledgeable about those topics. Her knowledge as a percipient witness is entirely encompassed within the topics for which she will be deposed as a corporate representative. Google examined Ms. Curry on two occasions on topics similar to those sponsored by Yahoo. American has provided those transcripts to Yahoo.

Under the Rules, depositions are "limited to 1 day of 7 hours." Fed. R. Civ. P. 30(d)(1). This limitation includes corporate representatives designated under Rule 30(b)(6). *See* 2000 Advisory Committee Notes for Rule 30 at ¶ 3. Yahoo previously took the deposition of Ms. Curry in her capacity as a corporate representative for 1 day of 7 hours. Motion at 14. American offered to have Ms. Curry stay that evening until Yahoo had concluded its 30(b)(6) topics. App. 110-111; Motion at 17. Yahoo declined.

Before Yahoo's motion was filed, American agreed to tender Ms. Curry for an additional day of deposition, as a corporate representative or in her individual capacity or combined, and to discuss with Yahoo at the end of that second day whether there was a reasonable need for more than 14 hours of examination.[7] American's suggestion was supported by case law. *See Malec v. Trustees of Boston College*, 208 F.R.D. 23, 25 (D. Mass. 2002) ("the better practice is for the

---

[7] As it currently stands, Yahoo has approximately 650 pages of testimony from Ms. Curry (~275 from her June 4 deposition in this matter), which will likely balloon to almost 1,000 pages once her second deposition in this matter is completed. Therefore, Yahoo will ultimately have the benefit of 4 days of testimony from Ms. Curry, which should be sufficient.

deposition to go forward to determine how much is able to be covered in the seven hours"); *Pratt*, 2009 WL 2032469 at *1 ("Defendants should complete their first seven hour deposition before seeking leave for additional time.").

American proposed ways for Yahoo to complete Ms. Curry's second day of deposition on the second day, including a commitment that Ms. Curry would review documents if Yahoo identifies them before the deposition and would be prepared to testify about them – assuming they were within the 30(b)(6) topics. In that way, significant time would not to be taken on the record for long reviews of documents that could be reviewed before the deposition. American also suggested that Ms. Curry could extend the second day of deposition by a few hours if that would assist Yahoo in finishing that day. To make sure that old ground wasn't covered twice, American also proposed making Ms. Curry available for a third day, within 30 days of the second, if Yahoo would commit to not asking questions on topics it had covered before. Yahoo again declined American's proposed solution, but did propose limiting the second and third day of depositions to 12 hours.

### 2. Scheduling DeGroot's Deposition

Chris DeGroot is the International Planning Manager at American. He lives and works in London, England. He is not available for a deposition on October 1, 2, or 5 because he will be in Paris, France handling American's long-planned bi-annual international sales conference. He plays an integral role in that conference, which is attended by American's agents from throughout Europe and India.

American intends to produce Mr. DeGroot for his deposition in Fort Worth, Texas or New York, New York on October 15. American understands that Yahoo agrees in principal to this provided that the summary judgment deadline is moved. Accordingly, American intends to

file an unopposed motion to extend the summary judgment deadline so that this scheduling issue can be resolved.

For the foregoing reasons, American requests that Yahoo's motion to compel be denied in its entirety.

Dated: September 8, 2009

Respectfully submitted,

Dee J. Kelly (State Bar No. 11217000)
Dee J. Kelly, Jr. (State Bar No. 11217250)
Lars L. Berg (State Bar No. 00787072)
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown (admitted *pro hac vice*)
Jason Stavers (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
555 Market Street, Suite 3000
San Francisco, CA 94105
Phone: (415) 393-8200
Fax: (415) 986-5309

Howard S. Hogan (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered on September 8, 2009

to Defendant's counsel, as follows, in accordance with the Federal Rules of Civil Procedure:

| | |
|---|---|
| David F. Chappell | Michael A. Jacobs |
| Scott A. Fredricks | Lynn M. Humphreys |
| CANTEY HANGER LLP | MORRISON & FOERSTER LLP |
| Cantey Hanger Plaza | 425 Market Street |
| 600 West Sixth Street, Suite 300 | San Francisco, CA  94105-2482 |
| Fort Worth, Texas  76102 | *(via fax and email)* |
| *(via hand delivery and email)* | |

Lars L. Berg