

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX.
FT. WORTH DIVISION

2009 OCT 13  PM 3: 52

CLERK OF COURT

AMERICAN AIRLINES, INC.,

    Plaintiff,

    -v.-

YAHOO! INC. and OVERTURE
SERVICES, INC. d/b/a YAHOO! SEARCH
MARKETING,

    Defendants.

Case No. 4:08-CV-626-A

---

## DEFENDANTS' RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West 6th Street, Suite 300
Fort Worth, Texas  76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (pro hac vice)
Anthony D. Rodriguez (pro hac vice)
Lynn M. Humphreys (pro hac vice)
Daniel P. Muino (pro hac vice)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522


ATTORNEYS FOR DEFENDANTS
YAHOO! INC. and OVERTURE
SERVICES d/b/a YAHOO! SEARCH
MARKETING

Dockets.Justia.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................ iii

I.  INTRODUCTION AND SUMMARY OF ARGUMENT .......................................... 1

II.  AMERICAN'S DISCOVERY TACTICS AND YAHOO!'S GOOD-FAITH EFFORTS TO RESPOND ................................................................. 3

III.  AMERICAN'S MOTION SHOULD BE DENIED BECAUSE AMERICAN FAILED TO MEET AND CONFER WITH YAHOO! PRIOR TO SEEKING SANCTIONS ........................................................ 6

IV.  AMERICAN'S MOTION SHOULD BE DENIED BECAUSE YAHOO! HAS NOT WITHHELD ANY RESPONSIVE DATA OR DOCUMENTS ................................................................................ 8

  A.  Impressions Data ............................................................................ 8

  B.  Custodial Files For Eighteen Employees ......................................... 13

  C.  Data Underlying Various Studies ................................................... 15

  D.  User Complaints ............................................................................ 17

V.  YAHOO! MADE A GOOD-FAITH EFFORT TO REVIEW ITS PRODUCTION TO REMOVE NON-RESPONSIVE DOCUMENTS ................................................................................. 18

VI.  AMERICAN'S REQUESTED SANCTIONS ARE UNWARRANTED .................................................................................. 19

  A.  American's Request to Strike Yahoo!'s Answer and Defenses to Trademark Infringement Is Unwarranted ................................... 19

    1.  Yahoo! Engaged in No Bad Faith or Willful Misconduct ........................................................................ 20

    2.  The Sanctions American Seeks Are Not Fair and Just ........................ 22

    3.  The Sanctions American Seeks Do Not "Specifically Relate" To Claims Sought To Be Proven By the Allegedly Withheld Discovery ........................................... 23

    4.  The Sanctions American Seeks Do Not Further The Goals of Rule 37 ......................................................... 24

  B.  American's Request That the Court Hold Yahoo! In Contempt Is Unwarranted ............................................................................ 25

  C.  The Court Should Deny American's Request for Attorneys' Fees .............................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Atl. Recording Corp. v. Heslep,*
 No. 4:06-CV-132-Y, 2007 U.S. Dist. LEXIS 35824 (N.D. Tex. May 16, 2007) ......................7

*Chilcutt v. United States,*
 4 F.3d 1313 (5th Cir. 1993) ...............................................................20,21,22,23,24

*Compaq Computer Corp. v. Ergonome Inc.,*
 387 F.3d 403 (5th Cir. 2004) ...............................................................................22

*Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n,*
 121 F.R.D. 284 (N.D. Tex. 1988) ................................................................. 6, 21 fn.7

*FDIC v. LeGrand,*
 43 F.3d 163 (5th Cir. 1995) ...............................................................................25

*Federal Sav. & Loan Ins. Corp. v. Village Creek Joint Venture,*
 130 F.R.D. 357 (N.D. Tex. 1989) ...........................................................................7

*Gonzalez v. Trinity Marine Group,*
 117 F.3d 894 (5th Cir. 1997) ..............................................................................20

*Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee,*
 456 U.S. 694 (1982)........................................................................................23

*Kalis v. Colgate-Palmolive Co.,*
 231 F.3d 1049 (7th Cir. 2000) ..............................................................................7

*Kamatani v. BenQ Corp.,*
 No. 03-cv-437, 2005 WL 2455825 (E.D. Tex. Oct. 6, 2005)................................................21

*Morton v. Harris,*
 628 F.2d 438 (5th Cir. 1980) ..............................................................................20

*Playboy v. Netscape Commc'ns Corp.,*
 354 F.3d 1020 (9th Cir. 2004) ............................................................................24

*Pressey v. Patterson,*
 898 F.2d 1018 (5th Cir. 1990) .........................................................................19, 20

*Smith v. Am. Founders Fin., Corp.,*
 365 B.R. 647 (S.D. Tex. 2007) ............................................................................20

*Smith v. Legg (In re United Mkts. Int'l),*
 24 F.3d 650 (5th Cir. 1994) ..............................................................................20

*Southern Capitol Enters. v. Conseco Servs., L.L.C.,*
No. 04-705-JJB-SCR, 2008 U.S. Dist. LEXIS 87618 (M.D. La. Oct. 24, 2008) ....................23

**OTHER AUTHORITIES**

Fed. R. Civ. P.
37(a)(1) ...............................................................................................................................6
37(b).............................................................................................................................19, 20
37(e) ............................................................................................................. 12 fn.4, 24

ND Tex. Loc. R.
7.1.......................................................................................................................................1
7.1(a) ..............................................................................................................................6, 7
7.1(b).............................................................................................................................6, 7
7.1(h).................................................................................................................................6

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

American Airlines asks this Court to impose extraordinarily harsh sanctions on Yahoo! for supposedly withholding or destroying certain data and documents. American seeks a finding of civil contempt, an award of $1.2 million, attorneys' fees, and the elimination of Yahoo!'s defenses to American's trademark infringement and dilution claims.

Sanctions of this severity are rarely sought or imposed in litigation. They are utterly unjustified here. American fails to identify a single instance of discovery misconduct by Yahoo!, much less *sanctionable* conduct. American attempts to portray Yahoo! as obstructive and uncooperative in discovery, but that characterization bears no relationship to the facts. Yahoo! has gone to exceptional lengths to respond to American's discovery requests and has produced a massive volume of data and documents, at a cost to Yahoo! of at least $2.3 million to date. Yahoo! has agreed to comply with almost every specific request American has made for additional discovery. American cannot, in these circumstances, justify the imposition of sanctions of any kind.

Contrary to American's argument, Yahoo! has not withheld or destroyed any relevant information, and certainly nothing in American's submission demonstrates the kind of willful, bad faith conduct that could support sanctions. The "impressions" data American now seeks *has already been produced in massive quantities for a more than six-year period*, as have the other data and documents about which American complains. To the extent there is anything more, it is duplicative and of no additional value to deciding the merits of this case.

American's motion should be denied for at least four reasons. *First*, American failed to meet and confer with Yahoo! on the issues raised in the motion, as it was required to do under Rule 7.1 of the Court's local rules. American's failure to meet and confer is particularly troubling in light of the harsh sanctions it seeks. Had American met and conferred with Yahoo!, disputes could have been resolved without Court intervention or at least clarified, reducing the scope of the task before the Court. Instead, American improperly chose to ambush Yahoo! —

1

and to time its ambush to jam Yahoo! at the summary judgment deadline. The Court should deny the motion for failure to meet and confer.

*Second*, American's motion fails to establish that documents or data were deliberately withheld or destroyed. To the contrary, Yahoo! has met its discovery obligations with respect to all categories of documents about which American now complains:

- *Impressions Data*: More than six years of impressions data (*i.e.*, data regarding the allegedly infringing advertisements that appeared on Yahoo!'s search results pages) is available to American in several forms:

    - Yahoo! produced data for more than *19,700,000* impressions that were displayed and clicked by Internet users over more than six years (including the text of most of those impressions). It is absurd for American to suggest that the millions of impressions provided are insufficient for American to attempt to make its case.

    - Yahoo! recently produced 40 days of non-clicked impressions that were displayed during August and September of this year. American has known since May 2009 (when it deposed Yahoo!'s witness regarding data issues) that Yahoo! keeps data on non-clicked impressions in active form for a short period of time (currently 40 days), yet American did not specifically ask Yahoo! to produce this data until recently. In any event, the data is duplicative: the advertisement text of most of the non-clicked impressions was *already contained* in the clicked impressions data previously provided.

    - American has thousands of screenshots of Yahoo!'s search results pages that it captured in 2007 and thereafter as American prepared to file this lawsuit. American could have captured as many Yahoo! screenshots as it wished. Yahoo! does not, and has never, captured such screenshots in the ordinary course of its business and thus has nothing further to produce.

- *Custodial Files*: American faults Yahoo! for not producing custodial files for 18 employees (17 of them former employees). But American fails to mention that Yahoo! has produced thousands of pages of documents for these employees from other custodial sources. One former employee, Brad King, himself produced over 40,000 pages of business documents from his time at Yahoo!. Another employee, Kim Staley, never worked with travel industry clients and had no responsive documents. As for others, Yahoo! focused its early document collection and retention efforts on a group of relevant custodians, which did not include these employees.

- *Data Underlying Various Studies*: Yahoo!'s production contains numerous studies responsive to American's discovery requests. Yahoo! produced data and documents related to those studies to the extent they were available. American has never specifically requested from Yahoo! data regarding most of the studies listed in its motion. Yahoo! searched for any available data and documents in response to the few specific requests that American did make and produced all responsive documents.

- *User Complaints*: Pursuant to American's specific request, Yahoo! searched for user complaints pertaining to the frequently-asked question cited by American. Yahoo! located no such complaints, and accordingly had nothing to produce to American.

*Third*, in compliance with the Court's August 4, 2009 order, Yahoo! conducted a human review of its entire document production to weed out non-responsive materials. Yahoo! hired approximately 50 reviewers who reviewed documents full-time, every day (including weekends), from August 5 until the review was completed on August 20. The review process cost Yahoo! approximately $700,000, and the review eliminated roughly 68,500 non-responsive documents from Yahoo!'s production. The fact that some non-responsive documents remain in the production is hardly sanctionable conduct. The scope and seriousness of Yahoo!'s review efforts cannot be denied, and the presence of non-responsive documents is common to any large production.

*Fourth*, the discovery issues that American raises come nowhere near warranting sanctions. In the Fifth Circuit, the imposition of sanctions requires a finding of bad faith or willful misconduct. The sanctions must also be "just" and "fair." Here, there was no misconduct, willful or otherwise. Yahoo! has made extraordinary efforts to comply with American's discovery demands, including agreeing on numerous occasions to expand its document collection efforts to encompass additional custodians, data, or documents specifically requested by American. Conspicuously missing from American's motion is any explanation as to why Yahoo! would willfully withhold the particular documents and data at issue, given the massive amount of material Yahoo! already provided. Yahoo! provided the requested information to the best of its ability, and there is no basis for sanctions of any kind.

American is attempting to leverage its discovery tactics to achieve a merits victory in this case. The requested sanctions are entirely improper and should be denied.

## II.    AMERICAN'S DISCOVERY TACTICS AND YAHOO!'S GOOD-FAITH EFFORTS TO RESPOND

Throughout this case, American has sought tactical advantage by imposing burdensome discovery on Yahoo!. American has served Yahoo! with 120 document requests (many of them

3

overbroad), 25 expansive deposition topics under Rule 30(b)(6), and 24 multi-part interrogatories.

In response to these sweeping requests, Yahoo! has (1) produced more than 19 million data records pertaining to the accused advertisements, (2) sought data and documents from more than 125 custodians, (3) produced more than 4 million pages of documents, (4) provided 22 witnesses for deposition, (4) hired a document vendor to process Yahoo!'s production, (5) hired approximately 50 contract attorneys to conduct a human review of documents for responsiveness, (6) hired a database consultant to assist with restoring data from back-up tapes, and (7) assigned half a dozen employees to spend substantial amounts of their time working solely on providing data and documents for this case. (Defs' Opp App. 0006-0007, 0011-0012 (Jacobs Decl. ¶¶ 4-5, 22); 0080-0081 (Arenal Decl. ¶¶ 4-8); 0091-0092 (Cameron Decl. ¶¶ 3, 5-6).) Yahoo! has spent more than $2.3 million responding to American's discovery requests, not counting the significant time spent by Yahoo! personnel.[1] (Defs' Opp App. 0011-0013 (Jacobs Decl. ¶¶ 20, 22, 29); 0081 (Arenal Decl. ¶ 6).)

The broad scope of American's discovery requests is illustrated by the following examples (including Special Interrogatory 3, which is noteworthy because it seeks extensive information regarding *more than 250* Yahoo! employees and other persons, most of whom have no apparent connection to this case):

> **Deposition Topic 22:**
> All databases used by DEFENDANTS and under DEFENDANTS' ownership or control at any time from January 1, 2000 to present, the general purpose of each database, the general contents of each database, how long data in each database is maintained, the deletion of any data, the dates and reasons for the deletions, the past and present accessibility and searchability of each database and the identity of the persons most knowledgeable about each database.

(Defs' Opp App. 0123.)

---

[1] The data that Yahoo! produced came mostly from Yahoo!'s Sage Data Warehouse, one of the largest databases in the world of its kind. (Defs' Opp App. 0104 (Cameron Depo. 26:6-24).) Yahoo! personnel devoted hundreds of man-hours to collecting and assembling this data for production. (Defs' Opp App. 0091 (Cameron Decl. ¶ 3).)

sf-2749263

**Special Interrogatory 3:**
For each person who: is or was responsible for a database, data field, or data table identified either in Yahoo!'s response to Interrogatory No. 1 or by Ms. Cameron in her May 29, 2009 deposition; or is identified on Exhibit A to these requests [*encompassing more than 250 persons*], identify the current DOCUMENT retention practices applicable to that person (including practices related to the retention, maintenance or backup of electronically stored information), whether individually set, set by default or set in any other way, as well as any previous retention practices, including those observed before the implementation of Yahoo!'s retention policy, and describe generally the nature of any RESPONSIVE INFORMATION that was erased, deleted, destroyed, allowed to expire or otherwise not maintained since December, 2006, the person's reason for doing so and the date(s) on which the document was destroyed or otherwise lost.

(Defs' Opp App. 0130.)

Yahoo! objected to some of American's overbroad discovery requests, but it has nonetheless endeavored to reach agreement and cooperate with American on *all of its requests*. In addition to the efforts cited above, Yahoo! has agreed to numerous demands by American to expand Yahoo!'s data and document production. The following are just a few examples:

- On several occasions, Yahoo! greatly expanded the scope of its impressions data production to incorporate additional data, including: (a) data for advertisements triggered by 180 additional terms suggested by American, beyond American's nine trademarked terms; (b) data for advertisements triggered by thousands of longer search strings that in some way incorporated American's trademarked terms; and (c) numerous additional fields of data of questionable relevance. (Defs' Opp App. 0182-0183, 0219.) Yahoo! re-packaged its produced data several times, at American's request. (Defs' Opp App. 0183, 0223.) In each of its cover letters, Yahoo! clearly described the data produced, including a detailed description of the data fields. (Defs' Opp App. 0236-0237, 0239, 0269-0272, 0274-0275, and 0180.)

- Yahoo! added more than 25 additional custodians to its custodian list in response to requests by American. (Defs' Opp App. 0186-0187.)

- Yahoo! expanded its document collection to cover information regarding approximately 150 companies in the travel industry (most of them not even airlines), suggested by American. (Defs' Opp App. 0276-0280.)

- Yahoo! produced numerous additional data sets and documents in response to specific requests by American. (Defs' Opp App. at 0184-0185.)

## III. AMERICAN'S MOTION SHOULD BE DENIED BECAUSE AMERICAN FAILED TO MEET AND CONFER WITH YAHOO! PRIOR TO SEEKING SANCTIONS

American "certifies" that it met and conferred "in person, by correspondence, and by phone" with Yahoo! "on several occasions over many weeks" to obtain the information that is the subject of the motion. (Mot. at 2.) In fact, American made no attempt to confer to resolve the disputes underlying the motion, and no attempt was made to confer about the motion itself.

The Court's Local Rules require that "an attorney for the moving party must confer with an attorney for each party affected by the requested relief to determine whether the motion is opposed." ND Tex. Loc. R. 7.1(a). Once the parties have met and conferred, the rules require that the moving party submit a "Certificate of Conference," stating whether the motion is opposed or unopposed, and if opposed, stating that a conference was held and why agreements could not be reached. ND Tex. Loc. R. 7.1(b). Even though the Local Rules state expressly that these requirements apply to sanctions motions (ND Tex Loc. R. 7.1(h)), American failed to provide the required information in its "certification." American fails, for example, to state whether the motion is opposed or unopposed. The reason for that omission is plain: *American never raised with Yahoo! its intention to file the instant motion.* That is directly contrary to the Court's local rules. Given the number and complexity of the discovery issues American intended to raise in its motion, and the magnitude and severity of the sanctions it intended to seek, it was incumbent upon American to meet and confer before filing the motion. *See Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 289 (N.D. Tex. 1988) (en banc) (per curiam) (purpose of meet and confer requirement "is to promote a frank exchange between counsel to resolve issues by agreement or to at least narrow and focus the matters in controversy before judicial resolution is sought"); *see also* Fed. R. Civ. P. 37(a)(1) (moving party required to meet and confer).

Nor has American adequately met and conferred on the issues raised in the motion. The extent of its communications with Yahoo! on the issues consisted of a letter briefly mentioning two of the disputes and a two-minute conversation. In a letter on August 20, 2009, American

asked Yahoo! about its production of impressions data and any user complaints underlying the FAQ about which they now complain in their motion. (Defs' Opp App. 0281-0282.) On August 25, 2009, at the end of a Court-ordered meeting between Yahoo!'s technical personnel and American's data consultants regarding the restoration of data from 2007, American's counsel briefly raised the issue of non-clicked impressions data in a conversation lasting about two minutes. (Defs' Opp App. 0291 (Muino Decl. ¶ 3).) In neither instance did American clearly explain what their issues were, let alone seek a resolution of them. Following those communications, American made no effort to call or meet with Yahoo! to discuss these issues. And American never communicated at all with Yahoo! to resolve most of the other issues raised in its motion — the custodial files for seventeen of the eighteen employees (other than Brad King) and the data underlying the various Yahoo! studies.

Had American conferred with Yahoo!, it may have been possible for the parties to clarify or resolve the present disputes. Instead, American chose to ambush Yahoo! with a slew of discovery issues, timing the filing of its motion so that Yahoo! would need to respond while it was occupied in preparing its summary judgment motion. The failure to meet and confer is sufficient grounds for denial of American's motion. *Federal Sav. & Loan Ins. Corp. v. Village Creek Joint Venture*, 130 F.R.D. 357, 360 (N.D. Tex. 1989) (denying motion to compel based in part on movant's failure to engage in required conference under local rules); *see also Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059 (7th Cir. 2000) (district court did not abuse discretion in denying motion to compel that failed to include meet and confer certification).

In light of American's failure to meet and confer, and failure to comply with the Court's local rules before seeking sanctions, Yahoo! requests that the Court order American to pay Yahoo!'s fees and costs in opposing this motion.[2] ND Tex. Loc. R. 7.1(a), (b); *see also Atl.*

---

[2] On October 9, 2009, Yahoo! sent a letter to American noting the lack of an adequate meet-and-confer effort and requesting that American withdraw its motion and discuss the issues with Yahoo!. Counsel for the parties had a phone call on October 12, during which American's counsel asked for Yahoo! to provide more information regarding the various disputes, but declined to withdraw American's motion.

*Recording Corp. v. Heslep*, 2007 U.S. Dist. LEXIS 35824, *22 (N.D. Tex. May 16, 2007) (awarding reasonable costs, including attorney's fees, incurred in defending against "baseless" motion for sanctions). If the Court grants this request, Yahoo! will provide the Court with its total fees and costs.

## IV. AMERICAN'S MOTION SHOULD BE DENIED BECAUSE YAHOO! HAS NOT WITHHELD ANY RESPONSIVE DATA OR DOCUMENTS

### A. Impressions Data

American's motion focuses largely on the "impressions" data Yahoo! maintains in active form for a 40-day period. American accuses Yahoo! of failing to preserve and produce impressions data of relevance to this case. This is simply untrue.

An "impression" is a Sponsor Result advertisement displayed on Yahoo!'s search results page in response to a user search. (Defs' Opp App. 0091 (Cameron Decl. ¶ 4).) American claims that Yahoo! infringed its trademark rights by allowing such advertisements to appear when users conducted searches on American Airlines trademarked terms. According to American, the accused advertisements caused user confusion and diverted users to click on websites other than American's own site. These diverted clicks allegedly caused American to lose ticket sales to other websites.

Yahoo! has produced data for more than *19,700,000* impressions, from October 2002 to May 2009. (Defs' Opp App. 0091-0092 (Cameron Decl. ¶¶ 5-6).) For the majority of these advertisements, this data includes: (1) the title, text, and URL of the advertisement; (2) the search terms and keywords that triggered the advertisement; and (3) the gross revenue generated for Yahoo! by the advertisement. (Defs' Opp App. 0092 (Cameron Decl. ¶ 7).) This data comprises a complete record of user behavior vis-à-vis the displayed advertisements for the entire relevant time period. The data is the basis of the opinion submitted by American's damages expert, Daniel Jackson, who argues that diverted clicks caused damage to American.

To establish its case for trademark infringement and dilution, American must show that the accused advertisements caused user confusion. American's chosen theory does not turn on

the particular contents of third-party airline flight advertisements. When asked to identify all facts supporting its claims, American did not mention any specific Sponsor Results. (Defs' Opp App. 0308-0315 (AA's Supp Response to Rog 9 at 17-24).) American's expert on consumer confusion, moreover, discusses no more than 7 of the millions of advertisements for which Yahoo! has already provided data. (Defs' Opp App. 0343-0345 (Englis Rep., 14-16).)

Thus, while American already has data for more than 19,700,000 advertisements, it uses virtually none of it to support its liability theory. It is entirely implausible for American to now assert that it requires even more data. American presumably has no intention of showing a jury millions of accused advertisements, nor could it do so as a practical matter. Indeed, American has no basis for showing a jury more than the few advertisements its expert has relied on to support American's liability theory. In any event, American cannot seriously maintain that the millions of advertisements Yahoo! has already provided are insufficient for determining the merits of its trademark claims.

Nonetheless, American accuses Yahoo! of willfully failing to produce data pertaining to non-clicked impressions (those that appeared on the page but were not clicked by an Internet user). (Mot. at 4-10.) That accusation is false. To begin with, American has never moved for, and this Court has never ordered, the production of this particular data. American has known since at least May 29, 2009, when it took the deposition of Yahoo!'s designee on data issues (Catherine Cameron), that Yahoo! maintains some data regarding non-clicked impressions for a short time period (currently 40 days). (Defs' Opp App. 0093 (Cameron Decl. ¶ 8).) In response to extensive questioning by American's counsel, Ms. Cameron provided the following information:

> Q. What is the purpose of the Sage database?
>
> A. The purpose of the Sage database is to take all the click stream data that comes in, so every click, every search, *all the impressions, all the ads that are shown*, and put it into meaningful tables and data feeds for reporting for billing and paying and for several other systems. . . .
>
> Q. Do you record the identity of the ads that were returned?

A. Okay. In the search stream itself, the search data, we do not record which ads were returned because that would generate a new row of data. And if our searches are a billion rows a day, we don't want to multiply it by five. *There is a separate stream of data that records which individual ads were returned.*

Q. What separate stream of data is that?

A. I'm trying to think of which period of time. *We could just call it "Offers"; now it's called SS_Offers, Sponsored Search_ Offers. And what that information has is it shows for each search which ads were returned for those particular searches.* That data is incredibly massive because you can imagine for each search if we're creating a record for that, and each search retains five ads, you're talking 5 billion rows in a day. So that data to us is not very useful because it's just too big even to query, and it's not very interesting because it's not how we pay or bill. *Through history, we have stored a limited amount of that data for a limited period of time.* . . .

*Q. So right now, if you wanted to search query information about all the ads and all the organic results that were returned, you could run queries based on this month and the past 30 days?*

*A. Yes, that would be correct.*

(Defs' Opp App. 0106, 0111-0112 (Cameron Depo. 28:5-11, 97:3-25, 99:19-24) (emphasis added).) The "Offers" table that Ms. Cameron referenced in her testimony is the one that contains data regarding non-clicked impressions for a short period of time. (Defs' Opp App. 0093 (Cameron Decl. ¶ 8).) American quotes repeatedly from the September 10, 2009 testimony of Huiming Li (*see* Mot. at 8, 23 (Question: "[I]s it fair to say that Yahoo! keeps data concerning ads displayed but not clicked?" Answer: "Yes.")), but this was exactly what Ms. Cameron had already disclosed in even greater detail on May 29.

Despite knowing about this set of data since May, American never specifically asked about it until late August. (Defs' Opp App. 0281-0282, 0291.) Yahoo! made clear in each of the cover letters accompanying its data productions that data for *clicked* impressions was being provided.[3] (Defs' Opp App. 0236-0237, 0239, 0269-0272, 0274-0275, and 0180.) While the

---

[3] American cites a letter from counsel stating that "Yahoo! generally maintains data for clicked advertisements only." (Mot. at 22-23.) As indicated in Ms. Cameron's testimony, this representation is accurate. While Yahoo! keeps extensive data on clicked advertisements, it only maintains data regarding non-clicked advertisements for a very limited period of time (currently 40 days) and does not generally make use of that data. (Defs' Opp App. 0093 (Cameron Decl. ¶ 8).) Because American is claiming damages for the entire period from December 2002 to the present, Yahoo! was focused on providing data for that much longer time period. As demonstrated by Ms. Cameron's detailed testimony, Yahoo! in no way concealed the existence of the smaller set of non-clicked impressions data.

available data for non-clicked impressions from the "Offers" table is duplicative and of limited availability (as described below), Yahoo! certainly would not have refused to produce it, if specifically asked.

In order to demonstrate the duplicative nature of the data in the "Offers" table, Yahoo! recently collected and produced the 40 days of non-clicked impressions data for the period August 6, 2009, to September 14, 2009. (Defs' Opp App. 0093 (Cameron Decl. ¶ 10).) An analysis of the data shows that the text of 78% of the non-clicked impressions *was already provided* in the clicked impressions data previously produced for October 2002 to May 2009. (Defs' Opp. App. 0354 (Slottje Decl. ¶ 6).) This makes sense, given that the same advertisements appear many times, and sometimes are clicked and sometimes not. (Defs' Opp App. 0093 (Cameron Decl. ¶ 9).) An example of the available data about these advertisements from the two data sources is shown below:

|  | Advertisement Title | Advertisement Text | Advertisement URL |
|---|---|---|---|
| **Advertisement from Offers Table** (recently produced) | {KeyWord:Orbitz: Book Flights} | Find Flight Deals on ORBITZ. Low Fares Made Easy. Book Now. | www.ORBITZ.com |
| **Advertisement from Clicked Impressions Data** (previously produced) | {KeyWord:Orbitz: Book Flights} | Find Flight Deals on ORBITZ. Low Fares Made Easy. Book Now. | www.ORBITZ.com |

(Defs' Opp. App. 0354 (Slottje Decl. ¶ 6).)

Moreover, Yahoo! expects that nearly 100% of the non-clicked impressions will be represented once Yahoo! supplements its production of clicked impressions data for June 2009 to the present (which it will do shortly, although it has not been asked to do so). The 40 days of non-clicked impressions produced are from August and September of this year, while the clicked impressions data previously provided ends with May 2009. The fact that the text of most of the non-clicked impressions in the August/September set (78%) are found in the earlier clicked impressions data demonstrates that the same advertisements were showing up repeatedly over

many months. The supplemental click data for June 2009 to the present is expected to contain the text of all new advertisements displayed in recent months. Accordingly, American already has all of the historical advertisements that appeared and will shortly have all of the recent advertisements as well.

Even if Yahoo! had collected the data from the Offers table earlier in the discovery process, due to the short retention period, the data would have gone back only to the early part of this year.[4] By contrast, the clicked impressions data that Yahoo! has produced extends for *more than six years*, from October 2002 to May 2009 (except the period February 2007 to September 21, 2007, which is being restored). As described, this click data overlaps with the data in the "Offers" table and contains the text of all or nearly all of the displayed impressions.

With respect to screenshots of Yahoo!'s search results pages (what American refers to in its brief as "Page Impressions"), Yahoo! does not capture, and has never captured, such screenshots in the ordinary course of its business. (Defs' Opp App. 0094 (Cameron Decl. ¶ 11).) Thus, Yahoo! has nothing to produce in this regard. American's persistence on this issue makes no sense, because it already has thousands of screenshots that it captured in 2007 and thereafter as American prepared for this lawsuit. (Defs' Opp App. 0013 (Jacobs Decl. ¶¶ 27-28).) Also, there was nothing to prevent American from capturing as many Yahoo! screenshots as it wished.

Finally, American is wrong to suggest that the production of this short period of non-clicked impressions data was previously ordered by the Court. The Court's Order of August 4, 2009, granting American's motion to compel production of certain disputed electronically stored information, was set aside by an Order issued on August 11, 2009. (Docket No. 71.) After receiving additional information from the parties, the Court issued another Order on

---

[4] American falsely claims that Yahoo! is "destroying" the non-clicked impressions data through its regular removal from the active database, but the data is still retained on back-up tapes. (Defs' Opp App. 0093 (Cameron Decl. ¶ 8).) The non-clicked impressions data is far too massive to save for more than a short period of time in active form. (*Id.*) Under Rule 37(e), Yahoo! cannot be sanctioned for merely continuing to operate its database in accordance with Yahoo!'s ordinary business practices.

September 11, 2009, directing Yahoo! to restore and produce by November 12, 2009, the disputed electronically stored information — *click* data from January 2007 to September 2007 that had been stored on back-up tapes.[5] (Docket No. 93.) American did not raise and the Court's order did not address the non-clicked impressions data that is a subject of American's motion.

## B. Custodial Files For Eighteen Employees

American contends Yahoo! should have produced materials from eighteen individuals, including seventeen former employees (most of whom left Yahoo! well before this litigation began).[6] (Defs' Opp App. 0081-0082 (Arenal Decl. ¶ 9).) Yahoo! was under no obligation to impose an indiscriminate company-wide hold, such that it had to preserve all files created by personnel who worked on anything to do with sales, search, or the travel industry. While Yahoo! sometimes images the laptops of departing employees, images for sixteen of the former employees could not be located after a diligent search. (Defs' Opp App. 0082 (Arenal Decl. ¶ 10).) Nonetheless, as indicated in the chart below, Yahoo! produced thousands of pages of documents for all eighteen of these employees from other sources:

| Employees | Title | Last Date of Employment | Pages Produced |
|---|---|---|---|
| Dorothy Buechel | Senior Manager, Account Management | Current employee | 32,601 |
| Gil Brown | Director, Field Sales | September 2, 2007 | 12,383 |
| Laura Buchman | Account Executive | April 2, 2007 | 5,459 |
| Kamie Cicinelli | Sales Director | April 22, 2005 | 5,320 |

---

[5] In compliance with the Court's Order of September 11, 2009, Yahoo! is endeavoring to restore and produce the 2007 data by the November 12, 2009 deadline. To assist in the process, Yahoo! has retained an outside database consultant who has advised Yahoo! on how to expedite the restoration process. (Defs' Opp App. 0081 (Arenal Decl. ¶ 8).) Yahoo! has obtained the required equipment and devoted the necessary personnel to this project. (*Id.*)

[6] The one current employee, Dorothy Buechel, was mistakenly misidentified as a former employee by Yahoo!'s document vendor during the collection process. (Defs' Opp App. 0082 (Arenal Decl. ¶ 11).) Yahoo! is currently checking with Ms. Buechel to determine if she has any responsive documents. (*Id.*)

sf-2749263

| Anne Frisbie | Vice President, Sales | July 1, 2008 | 19,548 |
| Julie Greenhouse | Sales Director, Paid Inclusion Sales Expense | April 15, 2004 | 4,961 |
| Bradley King | Category Expert | February 13, 2009 | 30,428 |
| Kasey Klaas | Account Executive | January 16, 2009 | 26,195 |
| Jen McDonough | Account Executive | April 2, 2007 | 15,382 |
| Lori Penoyer | Client Solutions Manager | January 3, 2006 | 1,041 |
| Ben Pickering | Business Development | July 3, 2009 | 1,045 |
| Martha Phillips | Account Executive | April 9, 2007 | 3,371 |
| Morgan Simonson | Account Executive, Sales & Service | April 15, 2004 | 910 |
| Grazia Sorice-Ochoa | Senior Category Director, Travel | March 14, 2008 | 5,680 |
| Kim Staley | Account Manager (Experian account only) | October 5, 2009 | 5,577 |
| Eric Sternbach | Vice President, Sales | February 8, 2008 | 18,482 |
| Rosana Tolomei | Account Executive | July 22, 2008 | 7,092 |
| Rob Wilk | Director, Field Sales | February 27, 2009 | 8,679 |

(Defs' Opp App. 0081-0082 (Arenal Decl. ¶ 9); 0012 (Jacobs Decl. ¶ 24).) Nothing in American's submission demonstrates that any relevant documents associated with these employees have not been produced.

When this litigation began in 2008, Yahoo! identified a core group of custodians based on their roles at Yahoo! and potential knowledge of relevant issues. (Defs' Opp App. 0080 (Arenal Decl. ¶ 3).) American apparently followed a similar procedure for their document collection. (Docket No. 88 at 4-5.) Yahoo!'s core group included roughly 35 custodians (including two former employees) who had been involved with the American account, Yahoo!'s trademark advertising policy, the marketing and management of Yahoo!'s sponsored search product, and other related issues. (*Id.*) The core group did not include any of the eighteen

individuals on the list above, because those individuals were not believed to possess information of particular relevance to the case. (*Id.*)

With regard to Brad King (*see* Mot. at 10-11), a former Yahoo! specialist in the travel category, American has already obtained extensive information. Yahoo! produced 7,883 of Mr. King's documents from other custodial sources, including 4,736 e-mails. (Defs' Opp App. 0012 (Jacobs Decl. ¶ 25).) Furthermore, Mr. King himself produced approximately 40,000 pages of Yahoo! business documents that he had kept following his departure from the company. (Defs' Opp App. 0013 (Jacobs Decl. ¶ 26).) American also took Mr. King's deposition. Whether the information was obtained from Yahoo! or Mr. King, the important point is that American already has it.

With regard to Kim Staley, an employee who recently departed the company, Yahoo! determined, after diligent inquiry, that she had no responsive documents to provide. (Defs' Opp App. 0082 (Arenal Decl. ¶ 12).) Ms. Staley was an Account Manager who only worked on the Experian account (the credit reporting company), never on the American Airlines account or other travel-related accounts. (*Id.*)

## C. Data Underlying Various Studies

Yahoo! searched for and produced numerous studies responsive to American's discovery requests. (Defs' Opp App. 0082-0083 (Arenal Decl. ¶ 13).) Some of the studies gauged the opinions of users regarding Yahoo!'s search engine and search results pages, but none examined whether users were confused by particular advertisements. Yahoo! produced data and documents related to these studies to the extent they were available, including the studies about which American now complains. (*Id.*) American did not ask Yahoo! for data regarding most of the studies listed in its present motion. (*See* Defs' Opp App. 0165-0179.) Nonetheless, Yahoo! searched for and produced available data and documents regarding relevant studies. (Defs' Opp App. 0082-0083 (Arenal Decl. ¶ 13).) Yahoo! did not deliberately withhold any documents.

As detailed below, Yahoo! searched for and produced relevant data and documents to the extent they existed. The following studies are cited by American:

- "How Does a Search Engine Work." Michael Kronthal was the custodian of this study. In cooperation with outside counsel, Yahoo! searched for, but did not locate, additional documents relating to this study. (Def' Opp App. 0083 (Arenal Decl. ¶ 14).)

- "Sponsored Links: User Experience Survey Results." Carmen Arenal was the custodian of this study. In cooperation with outside counsel, Yahoo! searched for, but did not locate, additional documents relating to this study. (*Id.*)

- "United/Yahoo Search Review: A Major Airline Brand Search Test." Bill Watkins was the custodian of this study. The documents Bates-labeled YAH-AA 1465541-55 contain the raw data underlying the study. (*Id.*)

- "North Ad Click Survey Refresh." Michael Kronthal was the custodian of this study. In cooperation with outside counsel, Yahoo! searched for, but did not locate, additional documents relating to this study. (*Id.*)

- "The Role of Search in the Travel Research Cycle: Nov 05 US Travel Web Searches." John Cathey-Roberts was the custodian of this study. The document bates-labeled YAH-AA 1665550-54 is an e-mail explaining that a third party (Comscore) was commissioned to do the study; YAH-AA 2061484-85 is an e-mail discussing release of study and the study results; and YAH-AA 3308774-831 is a draft of the study. (*Id.*)

- "Ad Copy Analysis." Brian Lynch was the custodian of this document. The documents Bates-labeled YAH-AA 4223637; YAH-AA 4223638; YAH-AA 4223639 are ad copy analysis worksheets for the travel sector. (*Id.*)

- "Travel Consideration Process Study." Greg Archibald was the custodian of this document. The study was completed by a third party (Compete, Inc.). The documents Bates-labeled YAH-AA 1674248-66, YAH-AA 3165465-94, and YAH-AA 3503900-928 are different drafts of the study. (*Id.*)

- "Trademark Analysis." This is a Twiki file. In cooperation with outside counsel, Yahoo! searched for, but did not locate, additional documents relating to this study. (*Id.*)

- "Calibration Test Analysis." Jayesh Khavani was the custodian of this study. The document Bates-labeled YAH-AA 0069478-79 is an e-mail discussing the status of the test. YAH-AA 0336254-55 is a list of the editors involved in the test, YAH-AA 0346814-15 is an e-mail containing calibration test #1; YAH-AA 2837337 is an e-mail describing calibration tests; YAH-AA 0321849-51 is a document describing the test; YAH-AA 0319820 and YAH-AA 0319821 are spreadsheets with calibration test results; and YAH-AA 0319819 is a spreadsheet containing terms used for the test. (Def' Opp App. 0083-084 (Arenal Decl. ¶ 14).)

16

- "Field Study Report for Page X3: and Smart Summaries." John Cathey-Roberts was the custodian of this study. In cooperation with outside counsel, Yahoo! searched for, but did not locate, additional documents relating to this study. (Def' Opp App. 0084 (Arenal Decl. ¶ 14).)

This list represents only a small subset of the studies and related data that Yahoo! has produced. As the list shows, American is wrong in saying that Yahoo! has produced no documents relating to these studies. (Mot. at 12.) American argues that Yahoo! has not produced documents from certain custodians with knowledge of relevant studies (Mot. at 12-13), but it was not necessary to collect from every Yahoo! employee to obtain the documents responsive to American's requests. For example, American notes that Prasad Kantamneni is a Yahoo! expert on eye-tracking surveys. (*Id.*) But Yahoo! has produced eye-tracking surveys and related documents from other custodial sources, including surveys in which Mr. Kantamneni was involved. (Def' Opp App. 0084 (Arenal Decl. ¶ 15).) For these reasons, there is no basis for imposing sanctions.

### D. User Complaints

American has assumed that a certain Frequently Asked Question ("FAQ") on Yahoo!'s website — "Where are sponsor results shown on the Search results page" — indicates that users have complained to Yahoo! about confusion concerning the sponsor results. (Mot. at 13.) Pursuant to American's request, Yahoo! searched for user complaints pertaining to this FAQ. Yahoo! located no such complaints. (Def' Opp App. 0084 (Arenal Decl. ¶ 17).)

Generally speaking, Yahoo!'s practice is to create and/or update FAQs when new products are introduced or when significant changes are made to existing products. (Def' Opp App. 0084 (Arenal Decl. ¶ 16).) Changes to the FAQs are driven by product managers, not by consumer complaints. (*Id.*) Yahoo! is unaware of any user complaints received by Yahoo! regarding placement of Sponsor Results on the Yahoo! search results page. (Def' Opp App. 0084 (Arenal Decl. ¶ 17).) In cooperation with outside counsel, Yahoo! consulted relevant custodians for information pertaining to the particular FAQ cited by American. (*Id.*) Those custodians found that this particular FAQ was likely created in 2004 when Yahoo! ceased its use

of the Google algorithmic search page and launched Yahoo! Search Technology in order to educate users about the new search page. (*Id.*) American's assumption about this FAQ is wrong and its accusation that Yahoo! failed to produce user complaints is unjustified.

## V. YAHOO! MADE A GOOD-FAITH EFFORT TO REVIEW ITS PRODUCTION TO REMOVE NON-RESPONSIVE DOCUMENTS

American accuses Yahoo! of failing to comply with the Court's August 4, 2009 Order directing Yahoo! to conduct a human review of its production to remove non-responsive materials. (Mot. at 15.) This accusation is completely unfounded. Yahoo! went to great lengths to review its entire production beginning the same day the Court issued its Order.

On August 4, 2009, immediately after the Court issued its Order, Yahoo! began hiring additional reviewers to conduct the required review within the allotted timeframe. (Defs; Opp App. 0006-0007 (Jacobs Decl. ¶¶ 4-5).) Yahoo! immediately retained a litigation support company, iBridge, to assist its outside counsel with the review process. (*Id.*) iBridge promptly gathered approximately 50 contract reviewers (all law school graduates) working at locations in Oregon and India and managed by attorneys in the United States. (*Id.*) Training of these reviewers on the parameters of the project began on August 5 and continued for several days. (Defs; Opp App. 0007-0008 (Jacobs Decl. ¶ 7).) The 50-person review team worked in 8 to 12 hour shifts every day, including Saturdays and Sundays, until the review process was finished on August 20. (Defs; Opp App. 0008-0009 (Jacobs Decl.¶¶ 8, 13).) Following the primary review process (during which each document in the production was reviewed), additional measures were undertaken by Yahoo!'s outside counsel to search through the production for any non-responsive materials that might have been missed. (Defs; Opp App. 0009-0011 (Jacobs Decl. ¶¶ 14-18).)

In total, the contract reviewers and outside attorneys devoted roughly 7,600 man hours to the review project, costing Yahoo! approximately $700,000. (Defs; Opp App. 0011 (Jacobs Decl. ¶ 20).) These measures eliminated approximately 68,500 non-responsive documents from Yahoo!'s production. (Defs; Opp App. 0011 (Jacobs Decl.. ¶ 19).) Yahoo! sent a list of these

non-responsive documents to American on August 28, 2009, the extended deadline for completion of the human review project.

American's examples of non-responsive documents remaining in Yahoo!'s production do not call into question Yahoo!'s efforts to conduct a complete human review of its production in the short timeframe provided. The non-responsive documents that American identifies in its appendix account for 0.016% of Yahoo!'s production. Even if American were to find 100 times as many non-responsive documents, that would still be less than 2% of the Yahoo! production. Any production of this magnitude is bound to contain a certain number of non-responsive documents.

American has made no showing that any remaining non-responsive documents in Yahoo!'s production have imposed any added costs on American. American has deposed roughly a dozen witnesses and has used documents from Yahoo!'s production with each of the witnesses. American has also submitted its expert reports relying on a great many documents from Yahoo!'s production. American makes no effort to substantiate the staggering $1.2 million that it suggests as the proper sanction. Given the substantial effort that Yahoo! made to comply with the Court's Order, there is no basis for *any* sanction.

## VI.    AMERICAN'S REQUESTED SANCTIONS ARE UNWARRANTED

### A.    American's Request to Strike Yahoo!'s Answer and Defenses to Trademark Infringement Is Unwarranted

American asks the Court to grant a drastic remedy under Fed. R. Civ. P. 37(b) — striking from Yahoo!'s answer both its response to American's trademark infringement claims and its primary defenses to these claims. The Fifth Circuit has held that a finding of "bad faith or willful misconduct" is required to support the "severest remedies" under Rule 37(b), including striking pleadings or dismissing a case. *Pressey v. Patterson*, 898 F.2d 1018, 1021 (5th Cir. 1990). When considering a request for severe sanctions, the Court must consider "whether a less drastic remedy would be more tailored to the misconduct and therefore would better serve the

19

purposes of Rule 37." *Id.*; *see also Gonzalez v. Trinity Marine Group*, 117 F.3d 894, 898 (5th Cir. 1997) (district court is bound to impose least severe sanction available).

In addition, when determining whether sanctions under Rule 37(b) are appropriate, the court should be guided by three considerations. *Chilcutt v. United States*, 4 F.3d 1313, 1320 (5th Cir. 1993). The sanction must (1) be "just" and "fair," (2) "specifically relate to the particular 'claim' which was at issue in the order to provide discovery," and (3) meet the Rule 37 goals of "punishing the party which has obstructed discovery and deterring others who would otherwise be inclined to pursue similar behavior." *Id.* at 1320-21.

### 1.    Yahoo! Engaged in No Bad Faith or Willful Misconduct

American's request for Rule 37(b) sanctions, including striking portions of the answer, is tantamount to asking the court to resolve Yahoo!'s principal defenses to American's trademark infringement claims. A finding of "bad faith or willful misconduct" is required to support such a severe remedy. *Pressey*, 898 F.2d at 1021; *Smith v. Legg (In re United Mkts. Int'l)*, 24 F.3d 650, 654 (5th Cir. 1994) (striking a defendant's answer is "equally as harsh a sanction as dismissal of a plaintiff's case with prejudice," and should be reviewed by the same standard). Because Yahoo! has not willfully abused the discovery process and, to the contrary, has made strenuous efforts to comply with discovery requests and this Court's orders, the sanctions American seeks are unwarranted. *Pressey*, 898 F.2d at 1021 (reversing order striking defendant's answer where defendant's discovery conduct did not support conclusion that it acted "in bad faith" or "willfully abused the judicial machinery"); *Smith v. Am. Founders Fin., Corp.*, 365 B.R. 647, 682 (S.D. Tex. 2007) (denying sanctions where failure to preserve documents was not in bad faith).

American claims that Yahoo!'s allegedly "inaccurate" representations regarding its discovery responses demonstrate that Yahoo! has adopted discovery abuse as a litigation strategy. (Mot. at 20, 23 (citing *Morton v. Harris*, 628 F.2d 438, 440 (5th Cir. 1980).) These allegations are unfounded, and wholly unsupported in American's submission. As discussed

above, Yahoo! made every effort to cooperate with American's expansive discovery demands and was perfectly forthright regarding the data it possessed and was producing.[7]

Where courts have stricken pleadings or defenses, the sanctioned conduct has been egregious — far different from Yahoo!'s extensive efforts to meet American's discovery demands. For example, in *Chilcutt v. United States*, which involved a claim of negligence arising out of a slip and fall incident, the Fifth Circuit found that the defendant's conduct was "willful, contumacious, and flagrant." 4 F.3d at 1325. The defendant had failed to answer or object to the plaintiff's discovery until the morning of the hearing on the plaintiff's first motion to compel, had intentionally claimed documents did not exist that were directly related to the negligence claim, and had repeatedly failed to comply with the court's discovery orders in spite of warnings that severe sanctions could result. *Id.* at 1316-17. Based on these findings, the Fifth Circuit upheld the district court's order deeming the plaintiff's *prima facie* case met. *Id.* at 1319.[8] *See also Kamatani v. BenQCorp.*, No. 03-cv-437, 2005 WL 2455825, *14-15 (E.D. Tex. Oct. 6, 2005) (imposing sanctions for "willful" conduct where defendant made "conscious decision not to search its own records for documents" and "repeated misrepresentations in its moving papers and before the Court" regarding key facts).

These cases demonstrate that a clear showing of bad faith or willful misconduct is required to support the sanctions American seeks. There is absolutely no evidence of bad faith or willful misconduct on the part of Yahoo! in this case.

---

[7] Characterizing opposing counsel's refusal to comply with discovery orders as "bad faith" should be "reserved for only those instances in which there is a sound basis in fact demonstrating a party's deliberate and intentional disregard of an order of the court." *Dondi Properties Corp. v. Commerce Sav. & Loan Asso.*, 121 F.R.D. 284, 289 (N.D. Tex. 1988) (denying sanctions motion).

[8] The district court preserved the defendant's defense of contributory negligence. *Chilcutt*, 4 F.3d at 1319. Based on this, the Fifth Circuit noted that the sanction was "not tantamount to a default judgment" and a finding of willful or intentional misconduct, although an important factor, was not necessarily required. *Id.* at 1322. Here, because American seeks to strike both Yahoo!'s answer and its affirmative defenses, any order granting such sanctions can only be based on a finding of bad faith or willful misconduct.

sf-2749263

## 2. The Sanctions American Seeks Are Not Fair and Just

American asks the Court to enter an order striking paragraphs 85-138 of Yahoo!'s Answer and its nominative fair use and statutory fair use defenses. (Mot. at 25.) If the Court grants the relief American seeks, Yahoo! will be left without some of its principal defenses against American's claims. This sanction is not fair and just under the circumstances. *Chilcutt*, 4 F.3d at 1321-24 (factors to determine whether Rule 37 sanction is fair and just include whether defendant was given "ample warning" regarding possibility of stiff penalties for discovery abuses, whether defendant made repeated "empty promises" to provide requested information, and whether defendant engaged in "intentional misconduct").

First, Yahoo! had no warning that the issues raised in Yahoo!'s motion would result in severe sanctions. American claims the Court's July 14 Order and remarks in the August 11 telephonic hearing gave Yahoo! "ample warning" that "discovery violations would result in sanctions." (Mot. at 22.) However, the July 14 Order and subsequent September 11 Order did not pertain to the four particular discovery disputes raised in American's motion (non-clicked impressions data, 18 custodial files, data underlying studies, and user confusion complaints). The September 11 Order directed Yahoo! to restore data from back-up tapes for the period January 2007 to September 2007, which Yahoo! is currently undertaking. There has been no warning with respect to the disputes raised in American's motion, because these issues have not previously been considered by the Court. *Cf. Compaq Computer Corp. v. Ergonome Inc.*, 387 F.3d 403 (5th Cir. 2004) (ample warning found where court repeatedly warned defendant that any future failure to provide requested discovery would result in sanctions); *Chilcutt*, 4 F.3d at 1321 (ample warning found where court issued three orders containing specific warnings).

Second, Yahoo! has not made repeated "empty promises" of compliance with American's discovery requests or the Court's order. Nor, as detailed above, has Yahoo! engaged in any "intentional misconduct." Rather, Yahoo! has truthfully and accurately reported to American and the Court the status of its data and document production. Given the large volume of electronically stored information that has been collected and produced in response to American's

discovery requests, any imperfections in Yahoo!'s discovery responses cannot support the sanctions American seeks. *See Southern Capitol Enters. v. Conseco Servs., L.L.C.*, 2008 U.S. Dist. LEXIS 87618, *7 (M.D. La. Oct. 24, 2008) (noting that "[p]erfection in document production is not required," and finding that benefit of having more of particular type of data would be outweighed by burden and expense of retrieving electronic data). Accordingly, none of the factors supports the sanctions American seeks.

### 3. The Sanctions American Seeks Do Not "Specifically Relate" To Claims Sought To Be Proven By the Allegedly Withheld Discovery

The sanctions American seeks apply to eight of its claims and two of Yahoo!'s defenses, none of which "specifically relates" to the claims American seeks to prove with the allegedly withheld discovery. Striking Yahoo!'s answer or defenses is therefore unwarranted. In some cases, improperly withholding discovery may amount to a presumption with respect to the merits of the claim or defense, justifying a sanction striking an answer or defense to that claim. *See Ins. Corp. of Ireland, Ltd. v. Compagnie Des Bauxites de Guinee*, 456 U.S. 694, 708 (1982) (upholding order deeming jurisdictional facts established because discovery sought was directly related to issue of personal jurisdiction); *Chilcutt*, 4 F.3d at 1324 (district court properly presumed that plaintiff's negligence claims were established where defendant deliberately withheld report and log relating to accident). Here, given the volume of data already produced and the cumulative nature of the documents American claims have been withheld, no adverse inference that Yahoo! is liable for trademark infringement and dilution can be drawn.

Moreover, American's claim that its case has been prejudiced by Yahoo!'s conduct is simply untrue. First, American claims that without the "impressions" data it is "limited" in gauging the effect of the ads on the consumer, including whether customers are likely to draw "dilutive associations" from Yahoo!'s uses of American's mark. (Mot. at 18.) As previously explained, Yahoo! has already produced huge volumes of impressions to American. Moreover, the cases American cites do not support its claim that it is necessary to quantify the precise amount of exposure customers have to an allegedly dilutive mark in order to show dilution. *See*

*Playboy v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028-29 (9th Cir. 2004) (discussing "click-through" rates in context of likelihood of confusion analysis, not importance of quantifying impressions to make out dilution claim).

American also claims the impressions data and documents relating to consumer studies are "highly relevant" to its trademark infringement claims. (Mot. at 19.) As described above, the "impressions" data American seeks has already been produced in massive quantities. Yahoo! produced more than 19 million impressions, and American itself has thousands of screenshots of Yahoo!'s search results pages. American's claim that the trier of fact will somehow be "handicapped" (Mot. at 19) without the ability to see every single impression is implausible.

### 4. The Sanctions American Seeks Do Not Further The Goals of Rule 37

American argues that the proposed sanctions will have an appropriate deterrent effect. (Mot. at 23.) But because Yahoo! has complied with its discovery obligations and the Court's orders, the sanctions American seeks will only punish good behavior, and will not serve the Rule 37 goals of punishing a "party which has obstructed discovery" and "deterring others who would otherwise be inclined to pursue similar behavior." *Chilcutt*, 4 F.3d at 1321.

The sanctions would also be at odds with Rule 37(e), which provides a safe harbor for parties who operate their information systems in good faith and in accordance with ordinary business practices. Fed. R. Civ. P. 37(e) ("Absent exceptional circumstances, a court may not impose sanctions . . .on a party for failing to provide electronically stored information lost as a result of the routine, goodfaith operation of an electronic information system."). American's claim that Yahoo! is destroying the non-clicked impressions data through its regular removal from the active database is false. As described above, the data is too massive to save in active form, but is still retained on back-up tapes. (Defs' Opp App. 0093 (Cameron Decl. ¶ 8).) More importantly, the vast bulk of the accused impressions have already been captured and produced. Rule 37 sanctions based on American's claims of destruction of evidence are therefore improper.

**B.  American's Request That the Court Hold Yahoo! In Contempt Is Unwarranted**

A party seeking an order of civil contempt must establish (1) that a court order was in effect, (2) that the order required certain conduct by the respondent, and (3) that the respondent failed to comply with the court's order. *FDIC v. LeGrand*, 43 F.3d 163, 170 (5th Cir. 1995). These facts must be shown by clear and convincing evidence. *Id.* American has not shown that Yahoo! failed to comply with this Court's August 4, 2009 Order. As described above, Yahoo! has conducted a human review of its entire document production to weed out non-responsive materials, as ordered by the Court.

**C.  The Court Should Deny American's Request for Attorneys' Fees**

American seeks to recover its attorneys' fees and expenses for both its motion to compel and this motion. In addition, it contends that its expenses include "the substantial effort it had to invest from November 2008 to August 2009 in grappling with this ESI dispute." (Mot. at 24.) Because this motion for sanctions is baseless, the Court should not award any expenses or fees.

**VII.  CONCLUSION.**

Yahoo! respectfully requests that the Court deny American's motion for sanctions and award Yahoo! its costs incurred in opposing this motion.

sf-2749263

Dated: October 13, 2009

Respectfully submitted,

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
Anthony D. Rodriguez (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH MARKETING

26

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true copy of the foregoing document has been served on counsel of record as follows:

Dee J. Kelly                          *Via Hand Delivery*
Dee J. Kelly, Jr.
Lars L. Berg
Kelly Hart & Hallman, LLP
201 Main Street, Suite 2500
Fort Worth, TX  76102

Frederick Brown                       *Via FedEx*
Jason Stavers
Gibson, Dunn & Crutcher LLP
One Montgomery Street, Suite 3100
San Francisco, CA  94104

Howard S. Hogan                       *Via FedEx*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036

Date:   October 13, 2009

Scott A. Fredricks

sf-2749263