*CONTAINS INFORMATION DESIGNATED CONFIDENTIAL OR HIGHLY CONFIDENTIAL
PURSUANT TO CONFIDENTIALITY AGREEMENT*

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2009 NOV -2 PM 1:20

CLERK OF COURT

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

ORIGINAL

AMERICAN AIRLINES, INC.,

        Plaintiff,

    -v.-

YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH
MARKETING,

        Defendants.

Case No. 4:08-CV-626-A

## DEFENDANTS' RESPONSE AND BRIEF IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I. INTRODUCTION AND SUMMARY OF ARGUMENT ............................................... 1

II. STATEMENT OF FACTS ................................................................................................. 3

III. ARGUMENT ....................................................................................................................... 7

    A. Yahoo!'s Statutory Fair Use Defense Protects Certain Non-Travel Advertisements ....................................................................................................... 8

    B. Yahoo!'s Free Speech Affirmative Defense Applies Because American Airlines Seeks to Prevent Advertising that Does Not Violate Trademark Law ........................................................................................................................... 9

    C. Yahoo!'s Defense of Limited Remedy by Contract Applies to American Airlines' First Measure of Damages ..................................................................... 10

    D. American Airlines Seeks With This Complaint To Misuse Its Trademarks ....... 12

    E. Yahoo!'s Statute of Limitations Defense Bars Recovery for Any Conduct Before December 19, 2002 ..................................................................................... 12

    F. Yahoo!'s Laches Defense Applies Because American's Delay Is Not Within the Statute of Limitations Period ............................................................. 13

    G. American Airlines Has Unclean Hands Because It Purchases Keyword Advertising On Others' Marks ............................................................................ 15

    H. Yahoo!'s Estoppel Defense Applies Because American Airlines Appointed and Encouraged Yahoo!'s Advertisers to Sell American Airlines Tickets Without Restricting Them From Bidding on American Airlines' Keywords ................................................................................................ 18

    I. Yahoo!'s Privilege and Justification Defense Applies because Yahoo!'s Conduct Resulted from the Exercise of its Own Legal Rights or From a Good Faith Claim to a Colorable Legal Right ..................................................... 19

    J. Yahoo!'s Acquiescence Defense Applies Because American Airlines Appointed and Encouraged Yahoo!'s Advertisers to Sell American Airlines Tickets Without Restricting Them From Bidding on American Airlines' Keywords ................................................................................................ 21

    K. Yahoo!'s Implied License Defense Applies Because American Airlines Appointed and Encouraged Yahoo!'s Advertisers to Sell American Airlines Tickets Without Restricting Them From Bidding on American Airlines' Keywords ................................................................................................ 24

    L. Texas's Proportionate Responsibility Statute Provides An Affirmative Defense Limiting Yahoo!'s Liability To The Extent Joint Tortfeasors Have Already Settled with American Airlines, And Precluding Liability Based On American Airlines' Own Responsibility For Damages ....................... 25

IV. CONCLUSION ................................................................................................................. 28

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Artcraft Novelties Corp. v. Baxter Lane Co.,*
685 F.2d 988 (5th Cir. 1982) .................................................................................24

*Bd. of Regents v. KST Elec., Ltd.,*
550 F. Supp. 2d 657 (W.D. Tex. 2008)............................................................16, 23

*Birthright v. Birthright Inc.,*
827 F. Supp. 1114 (D.N.J. 1993) .........................................................................26

*Casas v. Am. Airlines, Inc.,*
304 F.3d 517 (5th Cir. 2002) ...............................................................................13

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986)...............................................................................................9

*Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.,*
447 U.S. 557 (1980)........................................................................................11, 12

*Coach House Rest., Inc. v. Coach & Six Rests., Inc.,*
934 F.2d 1551 (11th Cir. 1991) ...........................................................................26

*Coca-Cola Co. v. The Koke Company of Am.,*
254 U.S. 143 (1920)..............................................................................................18

*Conan Props. v. Conans Pizza, Inc.,*
752 F.2d 145 (5th Cir. 1985) ..........................................................................23, 24

*Davis v. Dallas County,*
No. 3:07-CV-0318-D, 2007 U.S. Dist. LEXIS 58666 (N.D. Tex. Aug. 10, 2007) .................28

*De Forest Radio Tel. Co. v. United States,*
273 U.S. 236 (1927)..............................................................................................25

*Derrick Mfg. Corp. v. Sw. Wire Cloth, Inc.,*
934 F. Supp. 796 (S.D. Tex. 1996) .................................................................14, 15

*Designer Skin, LLC v. S & L Vitamins, Inc.,*
560 F. Supp. 2d 811 (D. Ariz. 2008) .....................................................................22

*Dethrow v. Parkland Health Hosp. Sys.,*
204 F.R.D. 102 (N.D. Tex. 2001) ..........................................................................17

*Elvis Presley Enters., Inc. v. Capece,*
141 F.3d 188 (5th Cir. 1998) ..........................................................................16, 23

*Exxon Corp. v. Oxxford Clothes, Inc.,*
109 F.3d 1070 (5th Cir. 1997) ................................................................26

*Getty Petroleum Corp. v. Island Transp. Corp.,*
862 F.2d 10 (2d Cir. 1988).....................................................................28

*Getty Petroleum Corp. v. Shore Line Oil Co.,*
642 F. Supp. 203 (E.D.N.Y. 1986) .........................................................25

*Hoganas AB v. Dresser Indus., Inc.,*
9 F.3d 948 (Fed. Cir. 1993)......................................................................7

*JCW Elecs., Inc. v. Garza,*
257 S.W.3d 701 (Tex. 2008)...................................................................28

*Kasco Corp. v. Gen. Servs., Inc.,*
905 F. Supp. 29 (D. Mass. 1995).......................................................21, 25

*Mary Kay, Inc. v. Weber,*
601 F. Supp. 2d 839 (N.D. Tex. 2009) .................................................14, 22

*Mary Kay, Inc. v. Weber,*
No. 3:08-CV-0776-G, 2009 U.S. Dist. LEXIS 90358 (N.D. Tex. Sept. 29, 2009) .................14

*McCoy v. Mitsuboshi Cutlery, Inc.,*
67 F.3d 917 (Fed. Cir. 1995)..................................................................26

*McDermott, Inc. v. AmClyde & River Don Castings Ltd.,*
511 U.S. 202 (1994)...........................................................................29, 30

*MetroPCS Wireless, Inc. v. Virgin Mobile USA, L.P.,*
No. 3:08-cv-1658-D, 2009 U.S. Dist. LEXIS 88527 (N.D. Tex. Sept. 25, 2009) .................27

*Nartron Corp. v. STMicroelectronics, Inc.,*
305 F.3d 397 (6th Cir. 2002) .................................................................16

*Novell, Inc. v. CPU Distrib., Inc.,*
No. H-97-2326, 2000 U.S. Dist. LEXIS 9975 (S.D. Tex. May 4, 2000)..........................16, 17

*Pac. Info. Res., Inc. v. Simple Commc'ns,*
No. C-07-4131 MMC, 2008 U.S. Dist. LEXIS 98943 (N.D. Cal. Nov. 26, 2008)..................28

*Precision Instrument Mfg. Co., v. Auto. Maint. Mach. Co.,*
324 U.S. 806 (1945)..............................................................................17

*Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.,*
29 S.W.3d 74 (Tex. 2000).......................................................................21

*Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.,*
  401 F.3d 123 (3rd. Cir. 2005) .................................................................................16, 17

*Scott Fetzer Co. v. House of Vacuums, Inc.,*
  381 F.3d 477 (5th Cir. 2004) .................................................................................22

*Studiengesellschaft Kohle mbH v. Eastman Kodak Co.,*
  616 F.2d 1315 (5th Cir. 1980) ...............................................................................16

*Tenn. Gas Pipeline Co. v. Lenape Res. Corp.,*
  870 S.W.2d 286 (Tex. App. 1993), *aff'd in part and rev'd in part on other grounds,*
  925 S.W.2d 565 (Tex. 1996)...................................................................................21

*Tiffany (NJ) Inc. v. eBay, Inc.,*
  576 F. Supp. 2d 463 (S.D.N.Y. 2008)......................................................................22

*Travelodge Hotels, Inc. v. Elkins Motel Assocs., Inc.,*
  No. 03-799 (WHW), 2005 U.S. Dist. LEXIS 24534 (D.N.J. Oct. 18, 2005) ...........21

*United We Stand American, Inc., v. United We Stand, America New York, Inc.,*
  128 F.3d 86 (2nd Cir. 1997)....................................................................................12

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.,*
  425 U.S. 748 (1976).................................................................................................11

*Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.,*
  106 F.3d 894 (9th Cir. 1997) ..................................................................................25


**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  § 1117(a) ...................................................................................................................20

Fed. R. Evid
  201(b)(2) .....................................................................................................................7

Tex. Civ. Prac. & Rem. Code
  § 33.002(a) ................................................................................................................28
  § 33.003.....................................................................................................................28
  § 33.013.....................................................................................................................28

**OTHER AUTHORITIES**

6 *McCarthy on Trademarks and Unfair Competition* § 31 (4th ed. 2009)..............16, 21

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

When an Internet user seeks from Yahoo!'s search engine information relating to "american airlines," he or she may be interested in finding fare information from a trusted travel website such as Orbitz or Travelocity, may wish to visit AA.com (the official website of American Airlines, Inc.), or may be interested in some other website. Yahoo!'s Sponsored Search adverting gives Internet users a choice. Yahoo! displays advertisements for a variety of websites that book (or provide substantial information about) American Airlines travel. Each of these advertisements, although short, informs the Internet user that the website sells or facilitates the sale of American Airlines travel. (Appendix in Support of Defendants' Response and Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment ("Opp App.") 009, 011-013 (Pann Decl. ¶ 7 and Ex. A).) Each links to a website that Internet users searching on "American Airlines" may find useful.

American seeks to put an end to this truthful advertising. American asks this Court to enjoin Sponsored Search advertising for Internet searches on "American Airlines," "American Eagle," "AA," and scores of related terms, unless the advertisement is placed by, or with the approval of, American Airlines itself. (First Am. Compl. (Dkt. No. 98) ("FAC") at 49.) No state or federal law justifies the injunction American seeks. Yahoo! and its advertisers in the travel industry make nominative fair use of American's trademarks, and thus do not violate the Lanham Act. Yahoo! does not "sell" American's trademarks, as American disingenuously alleges. (*Id.* at ¶ 5.) Rather, Yahoo! allows advertisers who sell American Airlines tickets to advertise that fact to Internet users searching for "American Airlines" products.

American's Motion for Partial Summary Judgment does not even address the central issue in this case — that this nominative use of American's trademarks is protected by the Lanham Act. ("MPSJ," (Dkt. No. 109) at 2 n.1.) Skirting this issue entirely, American instead

targets thirteen different affirmative defenses and argues that Yahoo! has no evidence for them. American errs because it misstates the scope of its own claims and ignores its own complicity in the conduct it condemns. More specifically, American's motion fails for the following reasons specific to each defense.

The affirmative defenses of <u>statutory fair use</u> and <u>free speech</u> protect Yahoo!'s Sponsor Result advertisements for websites unrelated to American Airlines travel. These defenses protect, for example, advertisements for "American eagle" coins, "AA" batteries, and an Internet radio station that "AA members will enjoy" for its "12 Step Recovery Music." (Opp App. 035-036 (Slottje Decl. ¶¶ 7-8).) American seeks to enjoin such advertisements, or any others whose display is triggered by the keywords "American Eagle" or "AA," which are terms American has trademarked. Display of these advertisements is protected by the statutory fair use and Constitutional free speech defenses. Constitutional protections for free speech also bar American's claims with respect to travel-related websites, as these advertisements accurately inform Internet users about websites where they can book (or learn details about) American Airlines travel.

The affirmative defense that American's <u>remedies are limited by contract</u> also bars a portion of American's claims. In particular, American may not collect from Yahoo! more than $250,000 in "[e]xcess [p]ayments [m]ade [b]y American Airlines to Yahoo!" (Opp App. 039 (Jackson Rpt. at 16); *see also* FAC ¶ 168) because American paid these moneys to Yahoo! pursuant to a contract to purchase advertising. That contract limits liability to $250,000.

Because the conduct of which American complains began more than four years before Yahoo! and American entered into a tolling agreement, the <u>statute of limitations</u> also bars recovery for the oldest portion of American's claims. Because American was itself engaged in

keyword advertising, it knew or should have known about its claims before the statutory period began to run. Yet it did nothing to stop the advertising it now condemns. A presumption of laches thus arises, and American has produced no evidence to rebut the presumption.

American not only ignored for years the claims it now brings, it actively participated in the conduct it challenges. American empowered and encouraged numerous travel-related websites to book customers on American Airlines flights. American knew and approved of the fact that these websites marketed American Airlines tickets using the American Airlines name. American thus provided an implied license to these website owners and acquiesced in their use of American's marks, with the result that American is now estopped from seeking damages allegedly caused by these advertisements. Yahoo!'s affirmative defenses of implied license, acquiescence, and estoppel all rest on this theory.

Yahoo!'s affirmative defense of privilege and justification bars recovery on American's state law claim for tortious interference with contract, as Yahoo! had a right to display advertisements that make only nominative fair use of American's trademarks.

In its entirety, American's damages claim is barred by the doctrine of unclean hands, for at the same time as American has been complaining that others purchased Sponsored Search advertising using its marks as keywords, American has been purchasing advertising keyed off of the trademarks of others.

Finally, Texas's Proportionate Responsibility Statute (like analogous principles of federal law) reduces Yahoo!'s potential liability based on the proportionate responsibility of its advertisers who have already settled with American for the same alleged harm. The same statute also prevents American from recovering because American's responsibility for its own injuries exceeds 50 percent.

## II.    STATEMENT OF FACTS

By 2001, American well knew the phenomenon of keyword searching using "American Airlines" to trigger display of Sponsored Search advertising.  American already had been placing such advertisements on the search results pages of various search engines, including Yahoo!.  (Opp App. 050, 087 (AAG-00204843, AAG-00204880).)  Indeed, American has long been the dominant advertiser in Yahoo!'s Sponsored Search program for Internet users searching on "American Airlines" (or other terms that incorporate, or are similar to, American's trademarks).  (Opp App. 033-034 (Slottje Decl. ¶ 4).)

### A.    Travel-Related Advertising

Aside from American Airlines and the clothing company American Eagle Outfitters, the largest advertisers on Yahoo!'s search engine for the keywords here at issue have been American's authorized travel agents.  American appoints travel agents under the ARC Agency Reporting Agreement ("ARC Agreement") to book travel on its flights.  Throughout the relevant time period, American authorized its on-line travel agents ("OTAs"), including Orbitz, Expedia, Travelocity, and Air Travel Discounts (which operates the website www.cheap-airline-tickets.us), to issue tickets for travel on American Airlines.  (Opp App. 091-093, 098 (Plaintiff American Airlines, Inc.'s Objections and Responses to Yahoo!'s First Set of Requests for Admissions ("RFA"), Request and Response Nos. 23 (Orbitz), 26 (Expedia), 25 (Travelocity) and 36 (Air Travel Discounts)).)  These four agents were the largest purchasers of advertising (other than American Airlines and American Eagle Outfitters) for the keywords at issue.  (Opp App. 033-034 (Slottje Decl. ¶¶ 4-5).)  They alone account for about half of the clicked-on advertisements that American accuses.  (*Id.*)  Taken together with other advertisers that

American has also acknowledged are its agents under the ARC Agreement,[1] these agents of American Airlines placed a clear majority of the advertisements accused in this case. (Opp App. 034 (Slottje Decl. ¶ 6).)

The OTA's advertisements were for the sale of American Airlines tickets, sales that American itself authorized and encouraged. (*See, e.g.*, App. at 54 (screenshot).) American has a whole team of employees whose job it is to manage American's relationships with the largest OTAs, including to provide them incentives to increase their bookings. (Opp App. 128 (DeGroot Depo. at 128:9-19).) For example, American waives fees and pays bonuses if the OTA reaches certain performance targets. (Opp App. 117-120 (DeGroot Depo. at 81:1-5; 82:1-84:5).) American also provides wholesale fares that OTAs can mark up as they wish, provided the airfare is bundled in a package (*e.g.*, with hotel accommodations and car rentals). American knows these packages compete with packages that American Airlines Vacations also offers, and it knows that efforts to promote bookings by the major OTAs risk cutting into AA.com's bookings, but American embraces the OTAs for the business they bring. (Opp App. 119-123 (DeGroot Depo. at 83:22-87:2); 156 (AAG-00212484).) While some of its competitors book all their passengers directly, American has instead chosen this "strategy of participation in multiple channels, including offline agency, online agency and AA direct." (*Id.*) American also promotes its air travel through websites that post fare information and drive Internet traffic to AA.com and

---

[1] These include Cheaptickets (Opp App. 092 (RFA No. 24)), AirGorilla (Opp App. 092 (RFA No. 28)), Nbtravel (*Id.* (RFA No. 29)), SmarterTravel (Opp App. 095 (RFA No. 30)), AirlinesWorld (*Id.* (RFA No. 31)), Compareairlineprices (Opp App. 096 (RFA No. 32)), cheapoair (Opp App. 097 (RFA No. 34)), All-cheap-travel (*Id.* (RFA No. 35)), Cheapflights (Opp App. 098 (RFA No. 37)), CheapPricedTickets (Opp App. 099 (RFA No. 38)), Buyairdeals (Opp App. 100 (RFA No. 40)), Globe-travels (Opp App. 101 (RFA No. 42)), Skyauction (Opp App. 102 (RFA No. 44)), NextTag (Opp App. 103 (RFA No. 46)), Frequentflyerdepot (Opp App. 104 (RFA No. 49)), Priceline (*Id.* (RFA No. 50)), Travelation (Opp App. 105 (RFA No. 51)), Travelnow (*Id.* (RFA No. 52)), and Travelzoo (Opp App. 106 (RFA No. 53)).

other websites where consumers can book tickets. These "meta-search engines" (MSEs) appeal to American because they are yet another way to reach more customers. (Opp App. 169-170 (Cush Depo. at 54:21-55:11).)

Because the OTAs are American's agents, American sets the terms under which these companies market American Airlines travel. On December 19, 2006, American published an addendum to the ARC Agreement ("ARC Addendum") that for the first time prohibited American's OTAs from placing keyword bids on American trademarks. (Opp App. 174-179 (Def. Depo. Ex. 4), 190 and 195 (6/4 Curry Depo. at 142:12-18, 198:16-24).) In response, the largest OTAs (including at least Orbitz, Travelocity, Expedia, Priceline, Hotwire, and CheapTickets) ceased bidding on American's trademarked terms.[2] Although American did not promulgate the ARC Addendum until the end of 2006, it contends that it always had the authority to limit the OTAs' keyword searching by the terms of its contractual relationship with them. (*See* Opp App. 090 (RFA No. 13), 164 (Cush Depo. at 16:1-12).) American controls the behavior of its OTAs. Where one of them violated terms of its agency, American terminated its agency relationship and initiated (then settled) litigation against the company. (Opp App. 209-238 (AA Original Petition and Settlement Agreement).)

---

[2] Opp App. 206 (Def. Depo. Ex. 96), 133-134 (DeGroot Depo. 188:15-189:14 (American received confirmation that Orbitz would not bid on terms listed in the ARC Addendum on May 2, 2007)); 207 (AAG-00029046 (Expedia letter to American on May 28, 2007 stating that "Expedia is not bidding or purchasing American Airlines' trademarks as keywords search terms")); 145-146 (DeGroot Depo. at 210:4 - 211:6 (Travelocity had responded acceptably to communications regarding Travelocity bidding to use American marks as keywords); *see also* Opp App. 208 (Def. Depo. Ex. 99) and 139-140 (DeGroot Depo. 196:21 - 197:11 (Letter from DeGroot to Travelocity representative)); 200-201 (6/4 Curry Depo. at 226:10-227:11 (Orbitz, Expedia, Travelocity, Priceline, Hot Wire, and CheapTickets promised American they would no longer bid on Americans marks).

*CONTAINS INFORMATION DESIGNATED CONFIDENTIAL OR HIGHLY CONFIDENTIAL*
*PURSUANT TO CONFIDENTIALITY AGREEMENT*

### B.   Advertisements Not Related to Airline Travel

Although travel-related websites have been the largest advertisers using the keywords at issue in this litigation, American's complaint is broader.  American has placed nine trademarked terms (and approximately 180 related terms that it contends are related to or confusingly similar to those marks) at issue in this litigation.  (FAC ¶ 22; Opp App. 256-259 (May 4, 2009 Berg letter, Ex. B).)  These terms include "American Eagle," which is the name of American's regional carrier but also of a well-known (and trademarked) brand of clothing and related accessories.  (Opp App. 290-298.)[3]  "American eagle" also describes the bald eagle emblem of the United States.  Thus, Yahoo! displays advertisements like the following keyed to the search term "American Eagle":

- Free Shipping on American Eagle Shoes

  http://www.zappos.com/bin/zapposset?src=goto&ref=gotoamericaneagleshoes&kw=americaneagle - We offer free shipping both ways on American Eagle shoes, a 365 day return policy, and a 110% price guarantee.

- Buy American Silver Eagle Bullion Coins

  http://www.bulliondirect.com/catalog/showProducts.do?category=1 - Bullion Direct is your source for American silver eagle coins. We have various dates available in US mint crates, mint rolls, or individually on our realtime catalog.

---

[3] Yahoo! requests that the Court take judicial notice of federal trademark registrations for AMERICAN EAGLE (Registration No. 3,033,841), AMERICAN EAGLE (Registration No. 3,545,443), SKYMILES (Registration No. 1,968,255), and AMERICA WEST AIRLINES (Registration No. 1,376,326), based on registration certificates and Trademark Applications and Registrations Retrieval (TARR) database printouts from the PTO website.  (Opp App. 290-298, 354-357 and 360-363.)  Judicial notice is appropriate because these records are publicly available, and are thus "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b)(2); *Hoganas AB v. Dresser Indus., Inc.*, 9 F.3d 948, 954 (Fed. Cir. 1993) (taking judicial notice of publicly available records of the PTO).

(Opp App. 035 (Slottje Decl. ¶ 8).)

Similarly, Yahoo! displays advertisements related to Alcoholics Anonymous and to batteries of a certain size when Internet users search on "AA," a term that American has trademarked for use in air transport. Such advertisements include:

- <u>Listen To 12 Step Recovery Music 24/7</u>  12StepRadio.com - AA members will enjoy this Internet radio station that plays recovery-related modern folk, rock, Americana, and country music on your computer. Carrying the 12 Step Message with Music.

- <u>The Little Big Book Dictionary</u> http://www.bigbookdictionary.com/ - The Little Big Book Dictionary - Made for AA's Big Book. Over 1,000 words, text definitions, phonic pronunciation guides and page listings. 4th Ed. Revisions. Fits in back of Big Book.

- <u>AA Alcohol Treatment</u> http://www.alcoholicrecovery.com/ - If you or someone you know is suffering from alcohol addiction, please call us, we can help.

- <u>Discount AA Batteries 10% Off</u> http://www.batteries.com/index.asp?L=142 - Find discount batteries and chargers for your camcorder, PDA, digital camera, cell phone, laptop computer, and more. Free shipping and 10% with code SS10 at checkout.

(Opp App. 035 (Slottje Decl. ¶ 7).) These advertisements, too, American seeks to enjoin, as it asks the Court to prohibit Yahoo! from making any use, unauthorized by American Airlines, of the letters "AA." (FAC ¶ 22 & Prayer.)

## III.  ARGUMENT

Yahoo! addresses below the thirteen affirmative defenses American has challenged, in the same order American addresses them. With one exception (the affirmative defense of trademark misuse), each of American's challenges must fail, as each of Yahoo!'s defenses bars at least a portion of American's claims. Summary judgment as to an affirmative defense is only

appropriate if American is able to "show that there is no genuine issue as to any material fact and that [American] is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Whether or not there are disputes of fact, American cannot show that it is entitled to judgment as a matter of law on these affirmative defenses.

### A. Yahoo!'s Statutory Fair Use Defense Protects Certain Non-Travel Advertisements

American correctly characterizes the doctrine of statutory fair use as allowing an advertiser "to use a [trademarked] term in good faith to describe its own goods or services," where the term is descriptive and "is used in its descriptive sense rather than" as a brand name. (MPSJ at 4 (*quoting* (without attribution) *Sugar Busters LLC v. Ellen C. Brennan*, 177 F.3d 258, 270 (5th Cir. 1998).) This doctrine of "fair use" should not to be confused with "nominative fair use," a different concept. Statutory "fair use" allows a company to advertise "American eagle" coins whose design features a bald eagle. It protects an advertisement for "AA" batteries or for shoes sized "7 AA," as the letters describe a size, rather than a brand, in this context. American does not dispute that the fair use doctrine protects such advertisements, but it asserts that such advertisements are not at issue in this litigation. (MPSJ at 4.) American's argument confuses statutory fair use with nominative fair use and, ignoring the plain language of the Complaint, attempts to limit the scope of American's claims to "Assorted Screenshots" in its appendix.

American confuses nominative fair use with the affirmative defense of statutory fair use when it points to Yahoo!'s response to an interrogatory as evidence that the Complaint does not reach non-travel-related websites. Yahoo! was responding to American's interrogatory asking for evidence of nominative fair use when it stated, "allegedly infringing Sponsor Results placed by OTAs and travel MSEs did nothing more than truthfully advertise that those companies sell or

facilitate the sale of American Airlines Tickets." (App. at 3.) This response is specific to advertisements placed by On-line Travel Agencies (OTAs) and travel-related Mets-Search Engines (MSEs). It does not state or imply that there are no other advertisers caught up in the broad sweep of Plaintiff's claims. That the doctrine of nominative fair use protects advertisements from travel-related websites for American Airlines tickets does not preclude a different doctrine — the affirmative defense of statutory fair use — from protecting advertisements for coins, shoes, and batteries that may be accurately described using terms like "American eagle" or "AA."

American also mischaracterizes its own Complaint when it cites "Assorted Screenshots" in its appendix (MPSJ at 3-4) as evidence that only advertisements for travel-related websites are at issue in the case. American has never before limited its Complaint to these specific screenshots. Yahoo! would be happy to confine the litigation to those advertisements, but American's Complaint sweeps more broadly. American seeks to enjoin Yahoo! from selling *any* advertising on its search results page if display of the advertisement is triggered by keywords that are American Airlines trademarks or "terms confusingly similar to" its marks, unless the advertisement is placed by "American Airlines or its authorized licenses." (FAC at 49.) "AA" and "American Eagle" are trademarks registered to American Airlines, and American seeks in this case to prohibit their use. (FAC ¶ 22 (citing U.S. Reg. No. 514,292 and 1,388,660, respectively).) American asks the Court to enjoin Yahoo! from selling advertisements keyed off either of these terms regardless of whether the subject matter of the advertisement, unless American or one of "its authorized licensees" places the advertisement. (FAC at 49.)

American's argument implicitly concedes that no injunction in this case should be as broad as the injunction it seeks in its Complaint. In particular, no injunction should prevent

Yahoo! from displaying Sponsored Search advertisements for websites selling batteries or coins, or otherwise making fair use of American's trademarks. However, for present purposes it is enough that Yahoo! has established that the statutory defense of "fair use" protects a portion of the advertisements that American's Complaint seeks to enjoin. American is thus not entitled to judgment as a matter of law on this defense.

**B.      Yahoo!'s Free Speech Affirmative Defense Applies Because American Airlines Seeks to Prevent Advertising that Does Not Violate Trademark Law**

American's assault on Yahoo!'s free speech defense fails for at least two reasons.

First, American assumes that the only speech at issue is commercial, which is not true. Commercial speech is that "which does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (internal citation omitted); *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 562-63 n.5 (1980) (excluding informational messages from an advertising ban). An Internet user searching on "AA" might through Yahoo!'s Sponsored Search program find the website www.12StepRadio.com, which proposes no commercial transaction. The website offers music, information, and an on-line chat forum, all free of charge. (Opp App. 300, 301-302 (Tucher Decl. ¶ 3, Ex. A).) Thus, the website, and the advertisement for it, are not commercial speech. Because American's Complaint seeks to enjoin all search advertising using the keyword "AA" (FAC at 49), it would unconstitutionally prevent Internet users from seeing this advertisement publicizing free media.

Second, American's attack fails even as to the Sponsor Results that are unquestionably commercial. Advertisements for websites that allow Internet users to book American Airlines tickets are constitutionally protected commercial speech. These advertisements "accurately inform the public about lawful activity," so the state and federal governments have no substantial

interest in prohibiting their display. *Cent. Hudson*, 447 U.S. at 563. For example, American

challenges the lawfulness of this truthful advertisement for the sale (by its own authorized travel

agent) of genuine American Airlines air transport:

> **Discount American Airline**
> **Tickets**
> Sort flights by price, departure time,
> duration and airline at Orbitz.
> www.orbitz.com

(FAC ¶ 66.)

American relies on *United We Stand American, Inc., v. United We Stand, America New

York, Inc.*, 128 F.3d 86 (2nd Cir. 1997), and other cases where constitutional protections did not

apply because the speech at issue was misleading or confusing to consumers. (MPSJ at 6-7.)

These cases are inapposite because American does not in its motion contest that Yahoo!'s

Sponsored Search advertisements make nominative fair use of American's marks, are not

confusing, and do not violate the Lanham Act. (MPSJ at 2 n.1.) Because the speech at issue in

this case is not misleading, it is Constitutionally protected even though commercial in nature.

For this reason and because American seeks to enjoin non-commerical speech as well, American

is not entitled to judgment as a matter of law on Yahoo!'s affirmative defense of free speech.

**C.      Yahoo!'s Defense of Limited Remedy by Contract Applies to American
         Airlines' First Measure of Damages**

American seeks as its first measure of damages the return of money that it has paid for

American's own advertising on Yahoo!. American claims to have paid $1.8 million to

$2.3 million in such "excess payments" to Yahoo!. (Opp App. 038 (Jackson Rpt. ¶ 1(a)).)

Yahoo!'s affirmative defense of limited remedy by contract prevents American from collecting

an award of this size.

American's purchase of advertisements on Yahoo! is governed by the terms and conditions of the standard contract governing the sale of advertising in Yahoo!'s Search Marketing program. (Opp App. 319-326 (Master Terms and Conditions); 312 (Insertion Order); 308, 309 (Weiss Decl. ¶¶ 1-2, 4).) One term of this contract limits Yahoo!'s liability "to the lesser of the amount already paid by" the advertiser in the preceding six months, or $250,000. (App. 320, 332 (Master Terms and Conditions ¶ 10).) The contract specifies that this limit applies to "any cause of action or theory" asserted in connection with the agreement. (*Id.*) Such contractual limitations on liability are routinely enforced in the courts of this Circuit (including at American's behest). *See, e.g., Casas v. Am. Airlines, Inc.*, 304 F.3d 517, 524 (5th Cir. 2002) (American's limitation on liability enforceable as a condition of contract attached to American's airline ticket).

American does not dispute that the agreement governs the parties' prior and current advertising relationship. Instead, American argues that its claims are unrelated to the contract because they relate to Yahoo!'s dealings with third parties. (MPSJ at 7.) American's claim to "excess payments" does not relate to Yahoo!'s dealings with third parties, however. These payments *would not have been made to Yahoo!* if American had not entered into the agreement to purchase its own advertising on Yahoo!. Any liability Yahoo! has for allegedly overcharging American for its advertisements arises directly from American's advertising contract with Yahoo!, not from Yahoo!'s conduct in relation to any third-party. Nor has this Court held otherwise in its previous order construing the forum selection clause of the agreement. (*See* Jan. 16, 2009 Order (Dkt. No. 32) (clause requires American to submit to jurisdiction of specified courts if Yahoo! initiates action, but does not limit American's choice of forum as a plaintiff).) One element of American's theory is that it has overpaid for the advertising it

secured under the contract (*see* FAC ¶ 168), and as to that claim American's remedy is limited

by the contract. Summary judgment as to this affirmative defense should accordingly be denied.

### D.     American Airlines' Complaint Is A Misuse Of Its Trademarks

American made a business choice to appoint travel agents so that it could benefit from

the sales they would generate. Having authorized these competing distribution channels,

American now seeks to block Yahoo! from displaying their truthful advertisements. American's

apparent goal is to monopolize for itself the right to place advertisements on Yahoo!'s search

results pages for any Internet user seeking information about American Airlines. American

would deprive Internet users of accurate information that they are entitled to under the law. *See*

*Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 856 (N.D. Tex. 2009) (trademark law does not

prevent a search engine "from doing what [search engines] are designed to do: present users

with the information they seek as well as related information the user may also find helpful or

interesting"); *see also Mary Kay, Inc. v. Weber*, No. 3:08-CV-0776-G, 2009 U.S. Dist. LEXIS

90358, at *28 (N.D. Tex. Sept. 29, 2009) (same).

American's complaint is, accordingly, a misuse of the trademark laws and deserves to fail

as a matter of law. (*See* Defendants' Motion for Summary Judgment (Dkt No. 112).) Yahoo! no

longer asserts, however, that these facts constitute a separate affirmative defense of trademark

misuse.

### E.     Yahoo!'s Statute of Limitations Defense Bars Recovery for Any Conduct Before December 19, 2002

The parties agree that a four-year statute of limitations applies to each of the causes of

action in the complaint. *Mary Kay,* 601 F. Supp. 2d at 859-60; *Derrick Mfg. Corp. v. Sw. Wire*

*Cloth, Inc.*, 934 F. Supp. 796, 805 (S.D. Tex. 1996); MPSJ at 9. The parties also agree that this

statute bars any recovery for Sponsor Search advertisements displayed on or before

December 19, 2002. (MPSJ at 9.) Had American moved for partial summary judgment that Yahoo!'s statute of limitations defense does not bar recovery for conduct occurring after December 19, 2002, Yahoo! would not contest that motion.

American overreaches, however, when it moves for partial summary judgment that Yahoo!'s statute of limitations defense does not apply at all. Yahoo! has been displaying Sponsor Results using keywords that include "American Airlines" since before December 19, 2002. (Opp App. 050, 087 (AAG-00204843, AAG-00204880).) American does not dispute this fact, and thus cannot dispute that the four-year statute of limitations bars recovery for *some* of the conduct alleged in its complaint. *See Derrick Mfg.*, 934 F. Supp. at 808 (separate infringing sales are separate trademark violations, each creating a separate cause of action with its own limitations period). American is therefore not entitled to judgment as a matter of law on this affirmative defense.

### F.     Yahoo!'s Laches Defense Applies Because American's Delay Is Not Within the Statute of Limitations Period

American's argument against Yahoo!'s laches defense rests entirely on a premise that American does not and cannot support — that "the alleged delay is within the statute of limitations period." (MPSJ at 10.) The only support American cites for this assertion is the fact that it is not seeking damages for conduct occurring before December 2002. (*Id.*) This is a *non sequiter*. American does not seek damages for conduct before December 2002 because the statute of limitations bars any such claim. That does not mean that the conduct about which American complains did not occur before December 2002.

In fact, Yahoo! *was* displaying advertising using "American Airlines" as a keyword well before December 2002. American Airlines itself was bidding on this term as a trigger for advertising on Yahoo!'s search results page at least as early as the beginning of 2001, almost two

years before the statutory period began. (Opp App. 050, 087 (AAG-00204843, AAG-00204880).) Since American knew about Yahoo!'s program, it could have determined merely by executing a Yahoo! search on "American Airlines," who was engaged in the practice about which it now complains. Thus, the laches period, which begins when American "knew or should have known" of the alleged infringement, *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998), began at least in early 2001 (almost two years before the statute of limitations period began in December 2002).

Because American's constructive knowledge predates the statutory period, a presumption arises that laches bars this claim. *See, e.g., Nartron Corp. v. STMicroelectronics, Inc.*, 305 F.3d 397, 408-10 (6th Cir. 2002) (presumption of laches where trademark plaintiff failed to bring action within three years of gaining constructive knowledge); *Santana Prods., Inc. v. Bobrick Washroom Equip., Inc.*, 401 F.3d 123, 138-39 (3rd. Cir. 2005) (presumption of laches applies where Lanham Act plaintiff fails to bring action within statutory period); 6 *McCarthy on Trademarks and Unfair Competition* § 31:23 (4th ed. 2009) (majority of circuits have adopted presumption in trademark cases); *Bd. of Regents v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 667 (W.D. Tex. 2008) (presumption of laches applies four years after trademark owner gains constructive knowledge); *Novell, Inc. v. CPU Distrib., Inc.*, No. H-97-2326, 2000 U.S. Dist. LEXIS 9975, at *22, 25-26 (S.D. Tex. May 4, 2000) (summary judgment for defendant because presumption of laches applies after four years and is not rebutted); *see also Studiengesellschaft Kohle mbH v. Eastman Kodak Co.*, 616 F.2d 1315, 1326 (5th Cir. 1980) (statute of limitations period establishes rebuttable presumption of unreasonable delay in patent infringement cases).

Here, American makes no effort to overcome the presumption that laches applies. The presumption shifts to American the burden of proving both that its delay was excusable *and* that

the delay did not prejudice Yahoo!. *Santana Prods.,* 401 F.3d at 139-40 ("all of our cases addressing this issue . . . have held that the plaintiff's burden to rebut the presumption of laches is conjunctive"); *Novell,* 2000 U.S. Dist. LEXIS 9975, at \*22 (presumption is "that the delay was unreasonable and that undue prejudice resulted"). American makes no argument and cites to no evidence to excuse its delay, nor does American attempt to establish that the delay has not prejudiced Yahoo!. American does mention a tolling agreement it entered into with Yahoo! (MPSJ at 10), but American's delay in pursuing its claims gave rise to a presumption of laches *before* the parties entered into this agreement in December 2006, and Yahoo! did not waive the laches defense in the agreement. (App. 37 ( "shall not constitute a waiver or release of any . . . defenses by either Party").) Thus, the tolling agreement is irrelevant to Yahoo!'s laches defense. Without any evidence to rebut the presumption of laches, American's motion with respect to this affirmative defense fails.[4] American is not entitled to judgment as a matter of law.

## G. American Airlines Has Unclean Hands Because It Purchases Keyword Advertising On Others' Marks

The doctrine of unclean hands "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Precision Instrument*

---

[4] It would be improper for American to introduce such evidence for the first time on reply. *Dethrow v. Parkland Health Hosp. Sys.,* 204 F.R.D. 102, 104 (N.D. Tex. 2001) (striking reply appendix filed in support of summary judgment because not permitted under the local civil rules, absent leave of court). In any event, there is no excuse for American's delay, and there is evidence of prejudice in *at least* the following facts: (1) American's alleged "lost profits" continued to mount while American failed to pursue its claims (and far exceed Yahoo!'s gain from the accused conduct) (Opp App. 038 (Jackson Rpt. at 1)); (2) American's own expert could not locate documents for 2003, 2004, and 2005 that gave him conversion rate information for his damages calculations, although such data was apparently collected (*id.,* at attachment 11 (citing reports from 2002 and 2006 but no source from 2003, 2004, or 2005) (Opp App. 044.1); and (3) at TM, the advertising agency that represented American Airlines in placing AA.com's Internet advertisements, a number of the people with knowledge in the areas sought by Yahoo!'s Rule 30(b)(6) notice are no longer with the company (Opp App. 344-348 (Hogan Oct. 20, 2009 email), 349-352 (Hogan Oct. 23, 2009 email).).

*Mfg. Co., v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945). Here, American is tainted with

bad faith because it comes to this Court asking for "lost profits" and other damages for conduct

similar to what American itself has done and is doing.

Consider the following three examples. In 2007, apparently undetected by Yahoo!'s

editors, American bid to have advertisements for AA.com run in response to searches on "sky

miles." (*See* Opp App. 352 (AAG-TM-00420126).) This is the name of the frequent flyer

reward program run by Delta Airlines, and "SKYMILES" is a Delta trademark. (Opp App. 354-

357.) Also, American Airlines Vacations sought to run its advertisements "where there [sic]

competitors are" on Google's search engine, explaining that such advertisements might "allow

them to steel [sic] business." (Opp App. 358 (AAG-TM-00028104).) American's lawyers may

have put an end to that particular bidding strategy once the company began this litigation

campaign, but American cannot excuse or dismiss such behavior on the grounds that it occurred

"long before this suit was brought." *See Coca-Cola Co. v. The Koke Company of Am.*, 254 U.S.

143, 145-46 (1920) (cited in MPSJ at 10). Indeed, it is still true today that American bids on

search terms designed to display its advertisements when Internet users search on the

trademarked brand name of another airline. Even as it comes to this Court seeking "lost profits"

for keyword advertising placed on Yahoo!'s search page by America West Airlines, (Opp App.

040-044 (Jackson Rpt. at 27 and Exh. 5F)), American is bidding on the trademarked keyword

"America West Airlines" (*see* Opp App. 360-363), causing its advertisements for AA.com to

display as the top result in an Internet search for "America West Airlines." Here is a search,

conducted just last week, on this trademarked term:



(Opp App. 300, 303-304 (Tucher Decl. ¶ 4, Ex. B).)[5]  In light of its own conduct relative to the

matter of keyword searching on trademarked terms, American's action targeting this practice is

barred by the doctrine of unclean hands.  Certainly American is not entitled to judgment as a

matter of law on this affirmative defense.

### H.    Yahoo!'s Estoppel Defense Applies Because American Airlines Appointed and Encouraged Yahoo!'s Advertisers to Sell American Airlines Tickets Without Restricting Them From Bidding on American Airlines' Keywords

In its motion, American summarizes its claim for damages this way: "when consumers

were looking for American Airlines, Yahoo instead often directed them to websites that . . . book

---

[5] Lest there be any question that it is American's own strategy for Sponsored Search advertising that is responsible for the display of this advertisement, note that American has since March 2008 consistently bid on the raw keyword "america west airlines" as a trigger for displaying its advertisements in Yahoo!'s Sponsored Search program.  (Opp App. 036 (Slottje Decl. ¶ 10).)

or advertise air travel not only on American Airlines but also for a variety of airlines that compete directly with American Airlines." (MPSJ at 1.) American makes this claim without any support for its assumption that Internet users searching on terms such as "air lines american," "flights american," or even "American Airlines," are always and only searching for the official American Airlines website, AA.com. (*See* Opp App. 256, 258 ((May 4, 2009 Berg letter, Ex. B).) The evidence is to the contrary. But even if American could prove that Yahoo!'s Sponsored Search advertising confused and diverted Internet users in violation of the Lanham Act and caused the alleged injury (which it cannot), American is estopped from seeking damages in this case.

The Lanham Act entitles a prevailing plaintiff to monetary relief only "subject to the principles of equity." 15 U.S.C. § 1117(a). Here, the principles of equity bar the monetary relief American seeks because American itself created the "competition" it now decries. American empowered and encouraged websites other than AA.com to advertise and book American Airlines tickets. (*Supra* at 3.) It knew full well in deciding to set up these "competing" distribution channels that many of these websites also booked tickets for, or referred Internet users to, other airlines as well. (Opp App. 184-185 (Curry Depo. at 33:9-34:5); 169-170 (Cush Depo. at 54:14-55:11).) In fact, American not only appointed numerous OTAs as its agents to sell American Airlines travel, it was instrumental in founding one of them (Orbitz) and once owned through a subsidiary another (Travelocity). (Opp App. 367 (Expedia Inc. Form S-1 Securities Registration Statement, filed Sept. 23, 1999 at 11); 371 (Orbitz Form S-1, filed May 20, 2002, at 28); *see also* Opp App. 374 (Jessop Rough Depo. at 166:8-167:12).) American caused the OTAs to market American Airlines travel, and it controlled the terms and conditions under which they did so.

If the OTAs' marketing strategy for American Airlines tickets caused American to lose profits, then American has only itself to blame. American "cannot acquiesce in and benefit from a customary practice and then attempt to recover through litigation what it has lost through competition." *Kasco Corp. v. Gen. Servs., Inc.*, 905 F. Supp. 29, 35 (D. Mass. 1995). Such a claim is "subject to the equitable defenses of acquiescence, estoppel, laches and the like." *Id.*; *see also Travelodge Hotels, Inc. v. Elkins Motel Assocs., Inc.*, No. 03-799 (WHW), 2005 U.S. Dist. LEXIS 24534, at *45 (D.N.J. Oct. 18, 2005) ("[d]amages will not be recovered to the extent that the injured party could have avoided his losses through reasonable efforts") (internal citation omitted).

American misconstrues Yahoo!'s estoppel defense and relies solely on an inapposite insurance coverage case decided under state law. (MPSJ at 12-14.) The estoppel defense that Yahoo! asserts is estoppel by laches and by acquiescence. 6 *McCarthy on Trademarks and Unfair Competition* § 31.41 ("There is much semantic confusion in the case opinions over the distinction, if any, between 'laches,' 'estoppel by laches' and 'acquiesence.'"). Yahoo!'s estoppel defense applies therefore for the additional reasons set forth in Section E above and Section J below.

### I. Yahoo!'s Privilege and Justification Defense Applies because Yahoo!'s Conduct Resulted from the Exercise of its Own Legal Rights or From a Good Faith Claim to a Colorable Legal Right

American moves for summary judgment on Yahoo!'s privilege and justification defense to American's tortious interference claim on the grounds that Yahoo! has not identified the legal right upon which the defense relies. The justification defense is based on either the exercise of one's own legal rights or a good-faith claim to a colorable legal right, even if that claim proves to be mistaken. *Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 80 (Tex. 2000). *See also Tenn. Gas Pipeline Co. v. Lenape Res. Corp.*, 870 S.W.2d 286, 304 (Tex.

App. 1993) ("The proper exercise of a legal right cannot constitute a legal wrong for which a cause of action will lie."), *aff'd in part and rev'd in part on other grounds*, 925 S.W.2d 565 (Tex. 1996). Here, the nominative fair use doctrine affords Yahoo! the legal right to permit OTAs and MSEs truthfully to advertise that they sell American Airlines' travel.

Under the nominative fair use doctrine, an advertiser has a right to use another's mark truthfully to identify the markholder's goods or services in order to describe the advertiser's product. *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 484 (5th Cir. 2004); *Mary Kay,* 601 F. Supp. 2d at 855-56. In particular, the nominative fair use doctrine permits Yahoo! to sell advertising space to American's authorized travel agents, who in turn have a right to inform their potential customers that they sell American's genuine product. *See Mary Kay*, 601 F. Supp. 2d at 855–56 (holding that nominative fair use doctrine permits second hand sellers to advertise on the Internet). Even if the Court concludes that Yahoo! did not have an actual legal right to sell advertising to American's travel agents, however, the substantial body of case law holding that the practice of using trademarked terms as keywords to trigger advertisements on Internet search engines (specifically, on Yahoo! and Google) constitutes nominative fair use is enough to show that Yahoo! was justified in its belief that it was exercising a colorable legal right. *See, e.g., Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 501 (S.D.N.Y. 2008); *Designer Skin, LLC v. S & L Vitamins, Inc.*, 560 F. Supp. 2d 811, 819-20 (D. Ariz. 2008); *Mary Kay*, 601 F. Supp. 2d at 855-56.

American complains that Yahoo! did not previously identify this legal right as supporting Yahoo!'s privilege and justification defense. However, Yahoo! has asserted nominative fair use as a justification for its conduct throughout this litigation (Defs' Answer and Affirmative Defenses (Dkt No. 35) at 21), and in response to American's interrogatory Yahoo! cited its

trademark policy allowing for nominative fair use, Yahoo!'s procedures for enforcing the policy,

and the fact that for years American itself expressed no concern about search-engine advertising

although it must have known that advertisements other than its own were running in response to

searches on "American Airlines" and similar terms. (*See* App. at 8–10 (trademark policy).) To

the extent Yahoo! did not identify nominative fair use by name, American only asked for "all

facts" supporting its defense, not for legal theories. (App. at 10.)

Accordingly, because there is evidence that Yahoo! was exercising its own rights by

selling advertising space to American's travel agents (and certainly was exercising this right in

good faith), American's motion for summary judgment on the privilege and justification defense

should be denied.

> **J.** **Yahoo!'s Acquiescence Defense Applies Because American Airlines**
> **Appointed and Encouraged Yahoo!'s Advertisers to Sell American Airlines**
> **Tickets Without Restricting Them From Bidding on American Airlines'**
> **Keywords**

American's motion argues that Yahoo! has "no evidence of prejudice" and thus cannot

prevail on its affirmative defense of acquiescence. Prejudice is not an element of this affirmative

defense, however. "Acquiescence involves the plaintiff's implicit or explicit assurances to the

defendant which induce reliance by the defendant," nothing more. *Elvis Presley Enters., Inc.*,

141 F.3d at 20 (quoting *Conan Props. v. Conans Pizza, Inc.*, 752 F.2d 145, 153 (5th Cir. 1985));

*see also Bd. of Regents*, 550 F. Supp. 2d at 664-65 ("In order to establish the defense of

acquiescence, a defendant must prove that: (1) the plaintiff knew or should have known of the

defendant's use of the trademark; (2) the plaintiff made implicit or explicit assurances to the

defendant; and (3) the defendants relied on the assurances").

In assuming that "prejudice" is relevant to a defense of acquiescence, American misreads

language in *Conan Properties* discussing which party has the burden of proving an affirmative

defense. 752 F.2d at 153. The affirmative defenses of laches and acquiescence were both at issue in *Conan Properties*. After setting forth the elements of each of these two defenses, including "prejudice" only in the definition of laches, the opinion discusses together the "prejudice" element of laches and the "reliance" element of acquiescence. *Id*. The opinion does not make "prejudice" an additional element of acquiescence.

Yahoo! has ample evidence of each of the elements of acquiescence. American was bidding on keywords such as "American Airlines" back in 2001 (*see* Opp App. 045-088 (AAG-00204838-00204881)), and had only to execute a Yahoo! search on the term to determine who else was doing so. American also made implicit assurances to Yahoo! and to its marketing partners, when it empowered and encouraged the OTAs and MSEs to market American Airlines travel by name, without asking that they refrain from keyword advertising. (*See, e.g.,* Opp App. 108-110 (RFA Nos. 58, 65 and 72).) Yahoo! and its advertisers then relied on those implicit assurances, purchasing and displaying the keyword advertising at issue here. Yahoo! established a significant business in this area, such that American is now seeking damages in the tens of millions of dollars from Yahoo!.

The defense of acquiescence prevents recovery for trademark infringement where, as here, the mark holder was previously involved without complaint in the distribution of the allegedly infringing articles. For example, in *Artcraft Novelties Corp. v. Baxter Lane Co.*, 685 F.2d 988, 899 (5th Cir. 1982), the defendant had distributed for six years plaintiff's "Texas Housefly" and "Texas Fly Swatter" gag gifts alongside its own line of similarly oversized "Texas brag" products. After six years defendant distributor discontinued plaintiff's products and began marketing its own "Texas Housefly" and "Texas Fly Swatter," prompting plaintiff to file an action for trademark infringement. *Id*. at 990. The defendant argued that its own trademark on

oversized "Texas brag" products gave it a right to market a "Texas Housefly" and "Texas Fly Swatter," which the Fifth Circuit acknowledged would otherwise have been true. However, the court held that, because defendant had "allowed and aided those sales," it could not now argue that they were infringing. *Id.* at 991.

Similarly here, American allowed and aided the OTAs' and MSEs' sales of American's products to consumers who clicked on the OTAs' keyword ads. It could have, but did not, put a stop to those sales by promulgating the ARC Addendum years earlier. Thus, American can not now be heard to complain of any confusion that these sales infringe. *Accord Westinghouse Elec. Corp. v. Gen. Cir. Breaker & Elec. Supply Inc.*, 106 F.3d 894, 900 (9th Cir. 1997) ("defendants escaped liability . . . because they proved Westinghouse knew or should have known they were using the Westinghouse trademark" in distributing reconditioned circuit breakers, and Westinghouse had itself purchased and resold defendant's reconditioned circuit breakers); *Kasco Corp.*, 905 F. Supp. at 35 ("Kasco cannot acquiesce in and benefit from a customary practice and then attempt to recover through litigation what it has lost through competition"); *Getty Petroleum Corp. v. Shore Line Oil Co.*, 642 F. Supp. 203, 206 (E.D.N.Y. 1986) ("where the owner of the trademark has participated by its acquiescence in" the allegedly infringing distribution of the trademarked goods, enforcement of the trademark "should be denied"); *De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 241-42 (1927) (by furnishing the United States information necessary to the manufacture of a patented product, and otherwise assisting the Government to make and use the product, telephone company granted Government an implied license and cannot maintain a suit for infringement).

American's motion for partial summary judgment on the affirmative defense of acquiescence should accordingly be denied, and summary judgment for Yahoo! entered on this basis.

### K. Yahoo!'s Implied License Defense Applies Because American Airlines Appointed and Encouraged Yahoo!'s Advertisers to Sell American Airlines Tickets Without Restricting Them From Bidding on American Airlines' Keywords

Analogous to the affirmative defense of acquiescence is Yahoo!'s implied license defense. *Coach House Rest., Inc. v. Coach & Six Rests., Inc.*, 934 F.2d 1551, 1563 (11th Cir. 1991).

The law may imply a license from a patent or trademark owner to an accused infringer in order "to make effective the contracts of the patentee" or trademark holder. *McCoy v. Mitsuboshi Cutlery, Inc.*, 67 F.3d 917, 920 (Fed. Cir. 1995) (citation omitted). This principle applies in the Fifth Circuit, *Exxon Corp. v. Oxxford Clothes, Inc.*, 109 F.3d 1070 (5th Cir. 1997), and governs this case. American entered into a contract with a number of OTAs, appointing them as its agents under the ARC Agreement to book American Airlines travel. (*Supra*, at II.A.) For this appointment to be effective, the agents had to be able to inform the purchasing public that they were selling American Airlines travel. They had to use American Airlines' name to identify their product. Thus, their contract with American gave these OTAs at least an implied license to use American Airlines' trademarks. Until American unilaterally imposed the ARC Addendum at the end of 2006, this implied license never excluded from its scope keyword advertising using American's trademarks. Thus, at least until December 19, 2006, American's OTAs were licensed to engage in the very activity American now condemns. *See Birthright v. Birthright Inc.*, 827 F. Supp. 1114, 1135 (D.N.J. 1993) (license implied in favor of an entity that

"used the mark subject to the authorization and control of" the mark owner, where "both parties

understood this arrangement").

American argues that any implied license benefits the "specific advertisers" of American

Airlines tickets, such as Travelocity, but not Yahoo!. (MPSJ at 16.) American's argument

ignores that, to the extent the "specific advertisers" were licensed to use American's trademarks

in advertising on Yahoo!'s search engine, Yahoo! cannot have violated the Lanham Act by

displaying their advertisements. American could as well argue that Yahoo! infringed its

trademarks by displaying American's own advertisement. That the advertisers' implied license

absolves Yahoo! of liability is especially clear with regard to American's allegations of

contributory infringement. A finding of contributory infringement is "dependent upon the

existence of an act of direct infringement." *MetroPCS Wireless, Inc. v. Virgin Mobile USA, L.P.*,

No. 3:08-cv-1658-D, 2009 U.S. Dist. LEXIS 88527, at *48 (N.D. Tex. Sept. 25, 2009). Because

the OTAs were licensed, displaying their advertisements was no act of direct infringement.

Thus, American is not entitled to judgment as a matter of law on Yahoo!'s defense of implied

license.

**L.** **Texas's Proportionate Responsibility Statute Provides An Affirmative
Defense Limiting Yahoo!'s Liability To The Extent Joint Tortfeasors Have
Already Settled with American Airlines, And Precluding Liability Based On
American Airlines' Own Responsibility For Damages**

Yahoo!'s nineteenth and twentieth defenses raise American's settlements with non-

parties and American's own responsibility for the alleged damages. (Answer to FAC (Dkt

No. 105) at 30-31.) As to the state law claims, these defenses are governed by Chapter 33 of the

Texas Civil Practice and Remedies Code, and American does not challenge them. American

moves for partial summary judgment on these defenses only to the extent they apply to the

Lanham Act causes of action in American's complaint. (MPSJ at 16-17.) Even as to the federal causes of action, however, American's motion fails, for two reasons.

First, there is authority for applying the Texas Proportionate Responsibility Statute to reduce an award, even in a federal cause of action, for amounts obtained from non-parties in settlement. By its own terms, Chapter 33 reduces a defendant's liability for harm to a percentage equal to the defendant's percentage of responsibility. Tex. Civ. Prac. & Rem. Code § 33.013. It also prevents recovery entirely if a claimant's percentage of responsibility for his injuries exceeds 50 percent. *Id.* The statute applies to any cause of action based in tort, including any conduct that violates an applicable legal standard. *JCW Elecs., Inc. v. Garza*, 257 S.W.3d 701, 705 (Tex. 2008); *see* Tex. Civ. Prac. & Rem. Code §§ 33.002(a), 33.003. Federal courts in Texas have applied Chapter 33 to limit liability even where the cause of action arose under a federal statute. *See Davis v. Dallas County*, No. 3:07-CV-0318-D, 2007 U.S. Dist. LEXIS 58666, at *3-4 (N.D. Tex. Aug. 10, 2007). And federal courts in other states have used analogous state laws, specifically in trademark cases, to "govern[] the issue of a reduction based on amounts obtained in settlements of federal claims." *Pac. Info. Res., Inc. v. Simple Commc'ns*, No. C-07-4131 MMC, 2008 U.S. Dist. LEXIS 98943, at *9 n.8 (N.D. Cal. Nov. 26, 2008) (applying Cal. Civ. Proc. Code § 877); *Getty Petroleum Corp. v. Island Transp. Corp.*, 862 F.2d 10, 15 (2d Cir. 1988) ("Section 15-108 applies to actions brought under federal statutes in New York"). American's motion rests on a legal theory at odds with this case law.

There is evidence that American has already obtained settlements from some of the advertisers for a portion of the conduct at issue in this case. In December 2007, American sued the "CheapoAir defendants" (BizTravelDeals.com d/b/a CheapoAir.com, Shailesh "Sam" Jain, Fareportal, Inc., and Travelong, Inc.) for "purchas[ing] American's name and related trademarks

for use as search engine keywords on the Internet," so that "CheapoAir's advertisement will appear at the top of the search page." (Opp App. 216-218 (¶¶ 25 and 29 of AA Original Petition).) American subsequently settled with and released the CheapoAir defendants. (Opp App. 232-238 (Settlement Agreement).) According to the Texas Proportionate Responsibility Statute, the amounts these defendants paid in settlement must accordingly be set-off against any award to American made as a result of the same keyword advertising displayed for CheapoAir.com. This includes, for example, the first advertisement in the first screenshot that American cites in support of its motion. (App. 54.)

The second reason that American's motion fails is that these two affirmative defenses are not limited only to the Texas Proportionate Share statute, but allege more broadly that American cannot collect from Yahoo! on the basis of conduct for which third parties have already paid, or that American itself largely caused. (Answer to FAC at 30-31.) These principles are not unique to Texas law. American argues that Yahoo! and its advertisers are "subject to the principle of joint and several liability, and thus not susceptible to proportionate liability." (MPSJ at 16.) The authority it cites for this proposition, however, supports only the first half of the statement. Even if Yahoo! and its advertisers were subject to joint and several liability, that would not preclude Yahoo! from obtaining a set-off for settling advertisers, according to the principles of proportionate share. "It is generally agreed that when a plaintiff settles with one of several joint tortfeasors, the nonsettling defendants are entitled to a credit for that settlement." *McDermott, Inc. v. AmClyde & River Don Castings Ltd.*, 511 U.S. 202, 208 (1994). In *McDermott*, the United States Supreme Court determined, after a careful evaluation of alternative methods for calculating that set-off, to apply the same principle as governs under Texas law: "The money paid . . . diminishes the claim that the injured party has against the other tortfeasors by the

amount of the equitable share of the obligation of the released tortfeasor." *Id.* (quoting American

Law Institute (ALI), Restatement (Second) of Torts § 886A, pp. 343-44 (1977)); *id.* at 212, 217.

Applying the principle of *McDermott* to this case, because American has already released

several advertisers for the same conduct it now claims Yahoo! is jointly and severally liable for,

set-off is warranted if any award is made. Summary judgment as to these defenses should

accordingly be denied.

## IV.    CONCLUSION

For the reasons set forth above, Yahoo! respectfully requests that the Court deny

American's motion for partial summary judgment as to all of Yahoo!'s affirmative defenses,

other than that of trademark misuse.

Dated:   October 27, 2009          Respectfully submitted,

                                   David F. Chappell
                                   Texas State Bar No. 04141000
                                   Scott A. Fredricks
                                   Texas State Bar No. 24012657
                                   CANTEY HANGER LLP
                                   Cantey Hanger Plaza
                                   600 West Sixth Street, Suite 300
                                   Fort Worth, Texas 76102
                                   Telephone:  (817) 877-2800
                                   Fax:  (817) 877-2807

                                   Michael A. Jacobs (*pro hac vice*)
                                   D. Anthony Rodriguez (*pro hac vice*)
                                   Alison M. Tucher (*pro hac vice*)
                                   Brooks M. Beard (*pro hac vice*)
                                   Lynn M. Humphreys (*pro hac vice*)
                                   Daniel P. Muino (*pro hac vice*)
                                   MORRISON & FOERSTER LLP
                                   425 Market Street
                                   San Francisco, CA  94105-2482
                                   Telephone:  (415) 268-7000
                                   Fax:  (415) 268-7522

                                   Attorneys for Defendants
                                   YAHOO! INC. and OVERTURE SERVICES,
                                   INC. d/b/a YAHOO! SEARCH MARKETING

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Defendants' counsel, as indicated below, on the __27__ day of October 2009:

Dee J. Kelly       ***Via Hand Delivery and e-mail***
Dee J. Kelly, Jr.
Lars L. Berg
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Frederick Brown      ***Via Federal Express and e-mail***
George A. Nicoud III
Jason Stavers
GIBSON, DUNN & CRUTCHER LLP
One Montgomery Street, Suite 3100
San Francisco, CA 94104

Howard S. Hogan      ***Via Federal Express and e-mail***
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

Scott A. Fredricks