

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,

    Plaintiff,

-v.-

YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH
MARKETING,

    Defendants.

Case No. 4:08-CV-626-A

## DEFENDANTS' UNOPPOSED
## MOTION FOR LEAVE TO FILE SUR-REPLY TO AMERICAN
## AIRLINES' REPLY TO YAHOO!'S RESPONSE TO MOTION FOR SANCTIONS

Defendants Yahoo! Inc. and Overture Services, Inc. d/b/a Yahoo! Search Marketing

(collectively "Yahoo!") submit this Unopposed Motion for Leave to File a Sur-Reply to respond

to new arguments and evidence presented by American Airlines Inc. ("American") in its Reply

brief.

On September 23, 2009, Plaintiff filed a Motion for Sanctions for Failure to Produce and

Preserve Documents (Doc. 100). On October 13, Yahoo! filed its Response (Doc. 121). On

November 2, American filed its Reply to Yahoo!'s Response (Doc. 136). Attached to

American's Reply was an Appendix containing 15 documents that had not been originally

submitted with American's Motion for Sanctions. In addition, portions of American's Reply

brief contain arguments that American did not present in its Motion for Sanctions, some of which

rely on the newly presented evidence. Yahoo! respectfully seeks leave to file the attached sur-

reply and appendix to address American's newly presented arguments and evidence.

In general, "the party with the burden on a particular matter" has the option to open and close briefing. *Dondi Properties Corp. v. Commerce Sav. & Loan Ass'n*, 121 F.R.D. 284, 291 (N.D. Tex. 1988)(en banc). However, a nonmovant should be permitted to file a sur-reply when the movant files a reply brief containing new argument or new evidence. *Blanchard & Co., Inc. v. Heritage Capital Corp.*, No. 3:97-CV-0690-H, 2007 U.S. Dist LEXIS 19395, at *3 (N.D. Tex. December 2, 1997)(mem. op.)(citing *Spring Indus., Inc.*, 137 F.R.D. at 240). *See also Schimek v. MCI, Inc.*, 3:05-CV-0045-P, 2006 U.S. Dist. LEXIS 54747 (N.D. Tex. Aug. 7, 2006)(allowing the nonmovant to file a sur-reply when the movant filed a reply brief containing new argument and new evidence).

The Appendix American filed with its Reply brief contained 15 documents. (Doc. 138). All of those documents constitute new evidence in support of American's Motion for Sanctions. In addition, much of American's Reply focuses on events that have transpired since it filed its Motion for Sanctions, including: (1) additional data produced by Yahoo! pertaining to its Toplink advertising program; and (2) a few additional documents produced by Yahoo! regarding one of its studies.

Because American presented new argument and evidence in its Reply brief, Yahoo! was not given a fair opportunity to respond to all of the arguments and evidence presented by American in support of its Motion for Sanctions. Therefore, Yahoo! respectfully requests leave to file the attached sur-reply and accompanying evidence.[1]

---

[1] The proposed sur-reply and evidence to be attached thereto are attached as Exhibit 1.

Respectfully submitted,

_Scott Fredricks_

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
D. Anthony Rodriguez (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH MARKETING

## CERTIFICATE OF CONFERENCE

I certify that on November 3, 2009, I conferred with counsel for Plaintiff, Lars Berg, regarding the relief requested herein. Counsel for Plaintiff informed me that American does not oppose the relief sought in this motion.

_Scott Fredricks_

Scott A. Fredricks

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Plaintiff's counsel, as indicated below, on the 3rd day of November 2009:

Dee J. Kelly                          *Via Hand Delivery*
Dee J. Kelly, Jr.
Lars L. Berg
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, TX  76102

Frederick Brown                       *Via Federal Express*
George A. Nicoud III
Jason Stavers
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA  94104

Howard S. Hogan                       *Via Federal Express*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036

_____
Scott A. Fredricks



**EXHIBIT 1**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., | Case No. 4:08-CV-626-A |
| Plaintiff, | |
| -v.- | |
| YAHOO! INC. and OVERTURE SERVICES, INC. d/b/a YAHOO! SEARCH MARKETING, | |
| Defendants. | |

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

American's reply brief fails to respond to Yahoo!'s direct refutation of claims in American's opening brief, and instead inappropriately raises several new matters. Yahoo! respectfully submits this brief to respond to American's new assertions.

## I.    INTRODUCTION

American persists in accusing Yahoo! of willfully concealing and failing to preserve relevant evidence, even while the record shows that nothing was concealed or destroyed and that Yahoo! has done its utmost to produce responsive materials. As discussed in Yahoo!'s opening brief, the following facts (among others) have been established:

- Yahoo! has produced data for nearly **20,000,000** clicked advertisements of potential relevance to this case, including the text of **98%** of all accused advertisements displayed (both clicked and non-clicked).

- At her deposition in May 2009, Yahoo!'s corporate designee on data issues fully disclosed the existence of the small set of duplicative data about which American now complains.

- Yahoo! produced numerous documents pertaining to its various studies and has produced, at American's request, any additional responsive documents uncovered during discovery.

1

- Yahoo! produced roughly 200,000 pages of documents pertaining to the eighteen custodians cited in American's motion.

- Yahoo! hired roughly 50 document reviewers and spent approximately $700,000 to review its document production, in compliance with the Court's order.

American's reply brief barely addresses these crucial facts, yet they completely undermine the premise of American's motion. They establish that Yahoo! concealed nothing and produced everything that was requested.

American's opposition to Yahoo!'s summary judgment motion makes clear that the data sought by its sanctions motion (and provided by Yahoo!) is, at best, of tangential relevance to its legal theories. In its opposition brief, American argues that it is appropriate to "speak in generalities" about the accused Sponsor Results advertisements "because the central issue is Yahoo's general and systematic violation of trademark rights." (American's Opp. to Yahoo!'s MSJ at 40.) American also argues that its expert is allowed to extrapolate from the data Yahoo! has provided to formulate his damages calculation. (*Id.* at 50.) While Yahoo! has issues with these arguments, it is clear that American does not believe it needs additional data to make its case. Yet, it filed a sanctions motion anyway in an apparent effort to impose added costs on Yahoo! and gain tactical advantage.

As the November 16, 2009 discovery cut-off approaches, both sides are completing their document productions. For example, American produced in October approximately 90,000 pages of documents (in response to discovery that Yahoo! served in August) and extensive Excel spreadsheets regarding revenues (but without information for all of 2003). Likewise, Yahoo! has produced some additional data and documents. Yahoo! has not sought to sanction American for its supplemental productions, though it would have liked to have received the materials much sooner. American, however, has sought to portray any supplemental production by Yahoo! as evidence of willful misconduct. The ongoing discovery exchanges between the parties are part of the ordinary process of litigation, not the stuff of a sanctions motion.

Compounding the substantive defects in American's motion, the issues raised were not even ripe for the Court's consideration, due to American's failure to meet and confer. This alone

2

is reason to deny American's motion. For lack of this procedural prerequisite, as well as the failure to show any misconduct by Yahoo!, American's sanctions motion should be denied and Yahoo! should be awarded its fees incurred in opposing the motion.

Because it cannot reply to Yahoo!'s response brief, American's brief instead raises new issues and makes new arguments that Yahoo! responds to in this sur-reply.

## II.    YAHOO!'S RESPONSES TO AMERICAN'S NEW ASSERTIONS.

Yahoo! provides the following responses to the new points raised in American's reply brief:

1.    **Non-Clicked Impressions Data**: American characterizes the 40 days' of non-clicked impressions data that Yahoo! produced from the "Offers" table as a "dramatic late production" of data that was somehow concealed from American. (Reply (Dkt. No. 136) at 3-4.) Contrary to American's assertion, the data was not concealed but was plainly and specifically described by Catherine Cameron, Yahoo!'s designee on data issues, during her May 29, 2009 deposition. Yahoo!'s opposition brief quoted at length from Ms. Cameron's May 2009 testimony describing in detail the "Offers" table and the data it contains. (Opp. at 9-10.) American's reply brief is *completely silent* regarding this testimony. It is undisputed that Ms. Cameron fully disclosed the non-clicked impressions data at issue in American's motion. Accordingly, American has absolutely no basis to claim that this information was concealed.[1]

American now asserts that the data's availability was misrepresented by Yahoo!'s counsel. (Reply at 4.) As explained in Yahoo!'s opposition brief, statements by counsel accurately reflected that for the full seven-year period of alleged damages at issue in this case,

---

[1] On October 15, 2009, American again took the deposition of Ms. Cameron, one of Yahoo!'s most knowledgeable employees regarding the contents of the massive Sage database. (*See* Defs' Opp App. 361 (Supp. Cameron Decl.) ¶ 1.) Ms. Cameron again confirmed, as she had done in her May 2009 deposition, that Yahoo! maintains data regarding impressions in the "Offers" table of the Sage database for a limited period of time (currently 40 days). (Defs' Opp App. 367 (Cameron Oct. 15 Depo.) at 93:14-25.) She also confirmed that this data substantially overlaps with the clicked impressions data already provided, due to the high likelihood that impressions displayed over a period of time will be clicked by a user at some point. (Defs' Opp App. 368-369 (Cameron Oct. 15 Depo.) at 95:16-96:1.)

Yahoo! only maintains active data for clicked advertisements. Yahoo! was focused on providing data for this longer period, not the much shorter 40 days of *duplicative* data from the "Offers" table. In any event, Ms. Cameron's detailed testimony makes clear that the "Offers" data was in no way concealed.

Moreover, the data from the "Offers" table is not new, but instead is duplicative of the nearly 20,000,000 impressions Yahoo! has already provided covering the full seven-year "damages" period. American criticizes the analysis of Yahoo!'s expert showing that the text of the large majority of accused advertisements in the "Offers" table were already provided in the click data. (Reply at 5.) Specifically, American argues that Yahoo! made the "false assumption that Yahoo!'s Creative IDs are not used for more than a single ad text over time." (*Id.*) In response, Yahoo!'s expert has compared the *actual text* of the advertisements in the "Offers" table and the click data (including the supplemental click data recently produced for June 1, 2009, to October 11, 2009). (Defs' Opp App. 358 (Supp. Slottje Decl. ¶ 4).) As expected, the advertisement text of nearly all (*96%*) of the non-clicked impressions from August and September 2009 are contained in the clicked impressions data. (*Id.*) Looking at just the accused advertisements (i.e., excluding those ads attributable to American Airlines, American Eagle Outfitters, and other non-accused advertisers), the overlap is *98%*. (*Id.*) This demonstrates that the click data Yahoo! already provided for the nearly 20,000,000 clicked impressions contains the text of almost every advertisement (both clicked and non-clicked) that appeared in response to searches on American's trademarks and allegedly related terms. Accordingly, American has the text of the accused advertisements.

American also argues that the data produced by Yahoo! does not disclose the number of accused non-clicked impressions displayed to consumers. (Reply at 5.) This, too, is untrue. Yahoo! has recently supplemented its production of data showing the aggregate number of impressions displayed (both clicked and non-clicked) in 2008 and 2009. (Defs' Opp App. 359-360 (Supp. Cameron Decl.) ¶ 5.) Back in May 2009, Yahoo! had produced a record of the exact number of impressions displayed (both clicked and non-clicked) from August 2007 to April 2009

4

triggered by any of thousands of terms comprising or containing American's trademarks. (Defs' Opp App. 359 (Supp. Cameron Decl.) ¶ 4.) The supplemental data that Yahoo! recently provided breaks those numbers down by advertiser for 2008 and 2009. Accordingly, American has the numbers of impressions displayed by each advertiser during the last two years (both clicked and non-clicked).

2.    **Additional Clicked Impressions**: American criticizes Yahoo! for producing an additional set of 70,000 clicked impressions on October 19, 2009. This click data pertains to a now-discontinued Yahoo! advertising program known as Toplink. (Defs' Opp App. 360 (Supp. Cameron Decl.) ¶ 6.) American faults Yahoo! for not producing this data sooner, but the timing of the production was simply the result of an honest oversight. Yahoo!'s data personnel had previously understood that the Toplink clicks were included within the click data already collected and provided. (*Id.*) Upon further analysis, it was determined that the Toplink clicks were actually collected in a separate location and Yahoo! promptly produced the additional data. (*Id.*) As noted in Yahoo!'s opposition brief, Yahoo! has collected data for almost 20,000,000 clicked impressions spanning a nearly seven year period. Yahoo!'s collection of data has been a complicated and time-consuming process, given the tremendous size and complexity of Yahoo!'s databases. (Defs' Opp App. 0091 (Cameron Decl.) ¶ 3 ; 0104 (Cameron May 29 Depo) at 26:6-24.) The timing of the Toplink data production was an accident, nothing more.

3.    **Data Underlying Yahoo!'s Studies**: American does not contest that Yahoo! produced numerous documents (listed in Yahoo!'s opposition brief) pertaining to the studies that American cited in its motion. (*See* Opp. at 15-17.) American's reply focuses on just one study – a June 2009 study entitled "North Ad Click Survey Refresh." (Reply at 2-3.) Strangely, American faults Yahoo! for *producing* a few additional documents regarding this study. As recited in Yahoo!'s opposition brief, Yahoo! had searched for additional documents pertaining to this recent study, beginning with the custodian of the particular document within Yahoo!'s group of more than 125 custodians. Yahoo! learned of three additional documents in the possession of Mr. Ramaswamy as he was prepared for deposition and promptly produced those documents.

This reflects nothing more than the ordinary working of the discovery process, not willful misconduct subject to sanctions.

4. **Page Impressions (i.e., screenshots)**: Yahoo! has repeatedly explained to American that Yahoo! does not and has never created screenshots of its search results pages in the ordinary course of its business. (Defs' Opp App. 0094 (Cameron Decl.) ¶ 11.) Despite this, American's reply brief now insists that Yahoo! is somehow obligated to produce screenshots it does not possess. American is entirely wrong. (Reply at 8.) Under the Federal Rules, a party is obligated to produce business records as they are kept in the ordinary course of business, but has no obligation to *create* data and documents for litigation. Rule 34 requires a party to produce electronically stored information "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or form." Fed. R. Civ. P. 34(b)(2)(E)(ii). Yahoo! does not have the screenshots American seeks in any form. Under American's approach, Yahoo! would be obligated to re-design its data processes and infrastructure to create a type of data record that it has never routinely generated in its business. This is far beyond the scope of a party's discovery obligations and only serves to demonstrate the degree to which American has sought to abuse the discovery process for tactical advantage.

5. **American's Failure to Properly Meet and Confer**: As noted in Yahoo!'s opposition brief (Opp. at 6), the Court's Local Rules require a party to confer with the opposing party prior to filing a motion in order to determine whether the motion is opposed. ND Tex. Loc. R. 7.1(a). American's reply brief is *completely silent* regarding this Local Rule. The reason is quite obvious – American did not comply with the Rule prior to filing its motion. American does not and cannot deny that it never raised with Yahoo! its intention to file a sanctions motion and never sought a phone call or meeting to attempt a resolution of the issues in the weeks prior to filing the motion. This alone warrants denial of American's motion and awarding Yahoo! its costs of opposing the motion.[2]

---

[2] In footnote 12 of its reply brief, American states that Yahoo! "failed to raise its claims about the meet-and-confer process" for several weeks after the sanctions motion was filed. (Reply at 10 n.12.) Of

(Footnote continues on next page.)

Unable to say that it complied with the Local Rules, American's reply brief now makes additional representations about the August 25, 2009 meeting in Seattle regarding the restoration of 2007 data.[3]  This meeting was conducted in accordance with the Court's Order of August 11, 2009, directing that technological experts for both parties meet to discuss *the 2007 data* that was at issue in American's motion to compel and the Court's earlier orders.  The discussion was kept primarily between Yahoo!'s technological personnel and American's outside data consultants and did not cover the data in the "Offers" table at any length.  It is entirely misleading for American in its reply brief to characterize this meeting as a meet-and-confer regarding non-clicked impressions data.[4]

## III.    CONCLUSION

As set forth in Yahoo!'s opposition brief and herein, Yahoo! has gone to great lengths and tremendous expense to collect and produce all relevant information sought by American.  There has been no discovery misconduct by Yahoo! of any kind, let alone the sort of willful and bad-faith misconduct that would justify the severe sanctions that American seeks.  American's motion for sanctions should be denied and Yahoo! should be awarded its costs incurred in opposing American's motion.

---

(Footnote continued from previous page.)

course, it was American's duty to properly meet and confer *before* filing its motion, not Yahoo!'s duty to seek a meet-and-confer with American afterwards.  Yahoo! contacted American to see if American would agree to withdraw its improper motion and seek to resolve any disputes informally.  American's counsel rejected this overture.

[3] American refers to "the extensive correspondence" between the parties as evidence of a meet-and-confer effort (Reply at 9), but as described in Yahoo!'s opposition brief, only one of those letters addressed some issues eventually raised in American's motion, and that letter only briefly addressed two of the issues.  (Opp. at 6-7.)

[4] American did not submit a declaration supporting its characterization of the August 25, 2009 meeting, leaving its statements without evidentiary support.

Dated: November 3, 2009

Respectfully submitted,

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
Anthony D. Rodriguez (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH MARKETING

8

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Defendants' counsel, as indicated below, on the 3rd day of November 2009:

| | |
|---|---|
| Dee J. Kelly<br>Dee J. Kelly, Jr.<br>Lars L. Berg<br>KELLY HART & HALLMAN, LLP<br>201 Main Street, Suite 2500<br>Fort Worth, TX 76102 | *Via Hand Delivery* |
| Frederick Brown<br>George A. Nicoud III<br>Jason Stavers<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94104 | *Via Federal Express* |
| Howard S. Hogan<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036 | *Via Federal Express* |

Scott A. Fredricks

sf-2758519

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,

        Plaintiff,

V.

YAHOO! INC., and
OVERTURE SERVICES, INC. d/b/a YAHOO!
SEARCH MARKETING,

        Defendants.

§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 4-08-CV-626-A

## APPENDIX IN SUPPORT OF DEFENDANTS' SUR-REPLY IN OPPOSITION
## TO PLAINTIFF'S MOTION FOR SANCTIONS

| EXHIBIT | DOCUMENT | PAGE |
|---------|----------|------|
| V | Supplemental Declaration of Daniel J. Slottje in Support of Defendants' Sur-Reply in Opposition to Plainitff's Motion for Sanctions, dated November 2, 2009 | 357 |
| W | Supplemental Declaration of Catherine Cameron in Support of Defendants' Sur-Reply in Opposition to Plainitff's Motion for Sanctions, dated November 2, 2009 | 360 |
| X | Excerpts from Deposition of Catherine Cameron, taken on October 15, 2009 | 363 |

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true copy of the foregoing document has been served on counsel of record as follows:

Dee J. Kelly
Dee J. Kelly, Jr.
Lars L. Berg
Kelly Hart & Hallman, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

*Via Hand Delivery*

Frederick Brown
Jason Stavers
Gibson, Dunn & Crutcher LLP
One Montgomery Street, Suite 3100
San Francisco, CA 94104

*Via FedEx*

Howard S. Hogan
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

*Via FedEx*

Date: November 3, 2009

_____
Scott A. Fredericks



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br> Plaintiff, <br><br> -v.- <br><br> YAHOO! INC. and OVERTURE SERVICES, INC. d/b/a YAHOO! SEARCH MARKETING, <br><br> Defendants. | Case No. 4:08-CV-626-A |

**SUPPLEMENTAL DECLARATION OF DANIEL J. SLOTTJE
IN SUPPORT OF DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS**

I, Daniel J. Slottje, declare as follows:

1.　　I am a Senior Managing Director at FTI Consulting and a Professor of Economics at Southern Methodist University in Dallas, Texas. I have been retained by Morrison & Foerster LLP on behalf of Defendants Yahoo! Inc. and Overture Services, Inc. d/b/a Yahoo! Search Marketing (collectively, "Yahoo!") to provide an independent analysis regarding the damages alleged by Plaintiff American Airlines, Inc. ("American").

2.　　I make this supplemental declaration in support of Yahoo!'s Sur-Reply in Opposition to Plaintiff's Motion for Sanctions. I have personal knowledge of the facts set forth herein, and if called upon to do so, I could and would competently testify thereto.

3.　　I recently received a data file produced by Yahoo! bearing the Bates-label YAH-AA 4388862. I understand that this file contains supplemental click data for the period June 1, 2009, to October 11, 2009, pertaining to impressions that were displayed and clicked when users of Yahoo!'s search engine conducted searches on American Airlines trademarks and terms allegedly similar to those trademarks. I also reviewed the October 26, 2009 declaration of Daniel L. Jackson in support of American's Reply in Support of Its Motion for Sanctions and American's Opposition to Yahoo's Motion for Summary Judgment.

4.　　In response to Mr. Jackson's criticism from his October 26, 2009 declaration that Creative IDs are not unique identifiers for advertisement text, my team has compared the actual text (not Creative ID) of the advertisements from the Offers table (YAH-AA 4388861) to the actual text (not Creative ID) of the advertisements from the click data (YAH-AA 4019780, 4277437-438, and 4388862).[1] 3,154,211 of the 3,294,229 impressions (96%) from the Offers table were of advertisements whose actual text is contained in the click data files YAH-AA 4019780, 4277437-438, or 4388862. Isolating the impressions which come from Mr. Jackson's Category C accounts, 188,327 of these 192,310 impressions (98%) were of advertisements

---

[1] My team identified the advertisement text using the data field CRTV_SHORT_DESC.

Defs' Opp App. 358

whose actual text is contained in the click data files YAH-AA 4019780, 4277437-438, or 4388862.

     5.     Mr. Jackson also claims that "Generation 6 search data was missing several critical fields."[2] He claims that "YAH-AA 4277437 appears to be missing, among other things, fields indicating the keyword entered by the internet user." However, the "Product Hash" field contains the keyword entered by the internet user (as well as other relevant information, such as the canonicalized form of the keyword and the Match Type.) Mr. Jackson also claims that "YAH-AA 4277438 appears to be missing, among other things, any information with regards to the amounts advertisers paid for each click on a Sponsor Result." However, this information was contained within the "BID" field.

     I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of November, 2009.

_____
Daniel J. Slottje

---

[2] Declaration of Daniel L. Jackson, p. 3.



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br> Plaintiff, <br><br> -v.- <br><br> YAHOO! INC. and OVERTURE SERVICES, INC. d/b/a YAHOO! SEARCH MARKETING, <br><br> Defendants. | Case No. 4:08-CV-626-A |

**SUPPLEMENTAL DECLARATION OF CATHERINE CAMERON
IN SUPPORT OF DEFENDANTS' SUR-REPLY IN OPPOSITION TO
PLAINTIFF'S MOTION FOR SANCTIONS**

I, Catherine Cameron, declare as follows:

1.     I am the Senior Engineering Manager of Internal Reporting at Yahoo! Inc. I manage a department within Yahoo! responsible for maintaining, accessing, and analyzing data stored within Yahoo!'s Sage database. I have been employed in a data analysis or management capacity at Yahoo! or Overture Services, Inc. since September 2002.

2.     I make this supplemental declaration in support of Yahoo!'s Sur-Reply in Opposition to Plaintiff's Motion for Sanctions. I have personal knowledge of the facts set forth herein, and if called upon to do so, I could and would competently testify thereto.

3.     In October 2009, my team collected supplemental click data for the period June 1, 2009, to October 11, 2009, pertaining to impressions that were displayed and clicked when users of Yahoo!'s search engine conducted searches on American Airlines trademarks and terms allegedly similar to those trademarks. The specific criteria used to collect this data were the same as described in Paragraph 5 of my October 12, 2009 declaration. My team provided the supplemental data to outside counsel for Yahoo! and I have been informed that it was produced to American Airlines in the file Bates-labeled YAH-AA 4388862.

4.     In May 2009, my team collected data from the Sage database identifying the aggregate number of impressions displayed (both clicked and non-clicked) from August 2007 to April 2009 triggered by any of thousands of terms comprising or containing American's trademarks. For each term, the data specified (1) the number of searches conducted on that term, (2) the number of bidded searches conducted (i.e., those searches in response to which Sponsor Results were displayed), (3) the number of bidded results displayed (i.e., impressions, both clicked and non-clicked), (4) the number of bidded clicks (i.e., impressions that were clicked), and (5) the gross revenue generated. My team provided this data to outside counsel for Yahoo! and I have been informed that it was produced to American Airlines in the spreadsheets Bates-labeled YAH-AA 454822-825.

5.     In October 2009, my team collected supplemental data from the Sage database identifying the aggregate number of impressions displayed (both clicked and non-clicked) in

response to searches on American Airlines trademarks and allegedly similar terms from January 21, 2008, to October 21, 2009. Among other things, this data identifies the advertisers for the displayed impressions and, thus, allows the number of impressions for each advertiser to be determined. My team provided this data to outside counsel for Yahoo! and I have been informed that it was produced to American Airlines in the file Bates-labeled YAH-AA 4628326.

6.     In late September 2009, my team collected data pertaining to clicked advertisements from an advertising program known as Toplink which were displayed in response to searches on American Airlines trademarks and allegedly similar terms from November 2005 to October 2006. I and my team had previously understood that these Toplink clicks were included within the click data already collected and provided to American Airlines. Upon further analysis, we determined that the Toplink clicks were actually collected in a separate location within the Live Stor database, the predecessor of Sage. My team provided the Toplink data to outside counsel for Yahoo! and I have been informed that it was produced to American Airlines in the file Bates-labeled YAH-AA 4628258.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 2nd day of November, 2009.

_Catherine Cameron_
Catherine Cameron



IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF TEXAS

FORT WORTH DIVISION


AMERICAN AIRLINES, INC.,     )

              Plaintiff,  )

      vs.             )  Civil Action No.

YAHOO! INC., and OVERTURE    )  4:08-CV-626-A

SERVICES, INC., d/b/a YAHOO!  )

SEARCH MARKETING,          )

            Defendants. )

_____ )


THIS TRANSCRIPT IS DEEMED CONFIDENTIAL


DEPOSITION OF:

      YAHOO! INC. AND OVERTURE SERVICES, INC. D/B/A

      YAHOO! SEARCH MARKETING BY:

      CATHERINE CAMERON

      THURSDAY, OCTOBER 15, 2009

      9:30 A.M.

Reported by:

      Kathleen E. McCarthy

      CSR No. 4483

**Defs' Opp App. 363**

1      LOS ANGELES, CALIFORNIA; THURSDAY, OCTOBER 15, 2009

2                    9:30 A.M.

3

4        (Whereupon, Plaintiff's Exhibit 400

5        was marked for identification.)

6

7             CATHERINE CAMERON,

8        having been first duly sworn, was

9        examined and testified as follows:

10

11            EXAMINATION

12   BY MR. STAVERS:

13      Q.   Hello, Ms. Cameron.  My name is Jason Stavers

14   with Gibson, Dunn & Crutcher, and I'll be representing

15   American Airlines.

16           I believe you've had your deposition taken before

17   in this case; is that correct?

18      A.   Yes.

19      Q.   So you remember the basic ground rules?

20      A.   Yes.

21      Q.   Have you changed your job since your last

22   deposition in this case?

23      A.   No.

24      Q.   You report to the same person?

25      A.   Yes.

6

Defs' Opp App. 364

14    Q.    Paragraph 8, the last sentence of this paragraph

15    states that data in the offers table of the SAGE database

16    is retained for 40 days and then -- now I'm quoting --

17    "after which time the data is retained on back-up tapes,"

18    end quote.  Am I correct in understanding this, then, that

19    approximately on the forty-first day data from the offers

20    table is copied onto back-up tape or tapes?

21    A.    That could be the case, or it could be it may

22    happen earlier that it's backed up on tape.  The offers

23    table is required to be in SAGE for 30 days.  However, we

24    tend to keep it there longer as space permits, in this

25    case, 40 days, which is accurate as of yesterday.

93

Defs' Opp App. 365

16      Q.    Paragraph 9, in this paragraph could you explain

17   what you mean by overlaps?

18      A.    Sure.  So for something to show up as an offer,

19   it needs to be relevant to the search term.  It needs to

20   be something that somebody would want to click on, and we

21   don't make any money.  Therefore, what you will see in

22   offers table are ads.  Even though that ad might not have

23   been clicked on at that particular time, it is extremely

24   highly likely that that ad will be clicked on at some

25   point in time, which means that anything that shows up in

Defs' Opp App. 366

1    the offer table will have shown up in the click table.

96

Defs' Opp App. 367

```
 1   STATE OF CALIFORNIA     )

 2                           )   ss.

 3   COUNTY OF LOS ANGELES   )

 4        I, Kathleen E. McCarthy, Certified Shorthand Reporter

 5   No. 4483 for the State of California, do hereby certify:

 6        That prior to being examined, the witness named in the

 7   foregoing deposition was duly sworn to testify the truth,

 8   the whole truth, and nothing but the truth;

 9        That said deposition was taken down by me in shorthand

10   at the time and place therein named and thereafter reduced

11   by me to typewritten form and that the same is a true,

12   correct, and complete transcript of said proceedings.

13        Before completion of the deposition, review of

14   the transcript [ ] was [X] was not requested.  If

15   requested, any changes made by the deponent (and provided

16   to the reporter) during the period allowed are appended

17   hereto.

18        I further certify that I am not interested in the

19   outcome of the action.

20        Witness my hand this 27 day of October, 2009.

21

22            Kaitlen E. McCarthy

23            Kathleen E. McCarthy, CSR No. 4483

24

25
```

**Defs' Opp App. 368**