American Airlines, Inc. v. Yahoo! Inc. et al										Doc. 101

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DROP BOX
NOV − 6 2009
11:33
CLERK, U.S. DISTRICT COURT
By _____ Deputy

AMERICAN AIRLINES, INC.,

    Plaintiff,

-v.-

YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH
MARKETING,

    Defendants.

Case No. 4:08-CV-626-A

## DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DANIEL L. JACKSON

Dockets.Justia.com

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ................................................................................................1

THE JACKSON REPORT ...................................................................................2

LEGAL STANDARD............................................................................................3

ARGUMENT.........................................................................................................4

I.     MR. JACKSON'S LOST PROFITS TESTIMONY SHOULD BE EXCLUDED BECAUSE THE "100% INTENT" ASSUMPTION IS NOT BASED ON SUFFICIENT FACTS AND DATA OR RELIABLE METHODS AND PRINCIPLES ........................................4

II.    MR. JACKSON'S LOST PROFITS TESTIMONY SHOULD BE EXCLUDED BECAUSE IT LACKS A BASIS FOR CAUSATION AND IS IMPERMISSIBLY BASED ON NON-ACTIONABLE SPONSOR RESULTS.................................................7

III.   MR. JACKSON'S LOST PROFITS FIGURES FOR AT LEAST 2003, 2004 AND 2005 FAIL TO SATISFY RULE 702 ............................9

CONCLUSION....................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bracco Diagnostics, Inc., v. Amersham Health, Inc.*,
   627 F. Supp. 2d 384 (2009 D. N.J.) ..................................................................8, 9

*Daubert v. Merrill Dow Pharms, Inc.*,
   509 U.S. 579, 590 (1993) ...................................................................................6

*Diabetes Ctrs. of Am., Inc., v. Healthpia Am., Inc.*,
   No. H-06-3457, 2008 U.S. Dist. LEXIS 10052 (S.D. Tex. February 11, 2008) ........6

*DSU Medical Corp. v. JMS Co., Ltd.*,
   471 F.3d 1293 (Fed. Cir. 2006) .......................................................................7, 8

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997) .........................................................................................10

*I.Q. Prods. Co. v. Pennzoil Prods. Co.*,
   305 F.3d 368 (5th Cir. 2002) ..............................................................................8

*JRL Enters. v. Procorp Assocs.*,
   No. 01-2893, 2003 U.S. Dist. LEXIS 9397 (E.D. La. June 3, 2003) .....................6

*Lust v. Merrell Dow Pharms., Inc.*,
   89 F.3d 594 (9th Cir. 1996) ................................................................................6

*Moore v. Ashland Chem., Inc.*,
   157 F.3d 269 (5th Cir. 1998) .........................................................................4, 10

*Otis v. Doctor's Assocs.*,
   No. 94 C 4227, 1998 U.S. Dist. LEXIS 15414 (N.D. Ill. September 14, 1998) .......7

**RULES**

Fed. R. of Evid. 702 ............................................................................... *passim*

## INTRODUCTION

The testimony of American's damages expert, Daniel Jackson, should be excluded for the following independent reasons.

First, Mr. Jackson rests his opinion about American's "lost profits" on an assumption about the intent that millions of Internet users had when they entered search terms into Yahoo! from 2002 to 2009. Mr. Jackson's assumption is that 100% of these people intended to go directly to, and only to, American's website, AA.com, but they were "diverted" by a Sponsor Results advertisement. He totally fails to consider that people loyal to or aware of Travelocity, Expedia, Orbitz, or Kayak intended to seek out those websites when searching for fare information. Because Mr. Jackson lacks sufficient facts or data to support his "100% intent assumption," his lost profits testimony must not be presented to the jury.

Second, many of the Sponsor Results on which Mr. Jackson bases his calculation were placed by online travel agencies ("OTAs") and meta search engines ("MSEs") that American itself authorized to resell American Airline tickets or display fare information. Thus, American is the party responsible for any profits it "lost." Because Mr. Jackson fails to acknowledge this, his assertions are not grounded in reliable principles of damages calculation. Mr. Jackson's report thus creates a jumbled combination of "damages" from non-actionable OTA and MSE Sponsor Results and, (for the sake of argument) potentially actionable Sponsor Results. This type of combination is grounds for excluding damages testimony.

Third, for at least 2003, 2004, and 2005, Mr. Jackson provides no facts or data to support his opinion that a certain percentage—a "conversion rate"—of the so-called "diverted clicks" would have resulted in ticket sales on AA.com in those years. Nor does Mr. Jackson offer any basis to excuse the lack of facts and data.

For these reasons, Yahoo! moves to exclude Mr. Jackson's testimony.

## THE JACKSON REPORT

Reprising his role from the *American Airlines v. Google* case, Mr. Jackson claims to have calculated "within a reasonable degree of certainty" American's "lost profits" from "diverted clicks," and to have done so "based on an independent third-party perspective, utilizing generally accepted procedures." (Appendix in Support of Defendants' Motion to Exclude Testimony of Daniel L. Jackson ("Jackson App.") 004-005 (Excerpts from Jackson Expert Report ("Rpt.") ¶¶ 1, 7, 9).) Mr. Jackson assumes that Sponsor Results diverted people who were "searching for American Airlines." (Jackson App. 007 (Rpt. ¶ 47).) Mr. Jackson seems to equate "searching for American Airlines" with searching for AA.com, though he never says so. (*Id.*) Mr. Jackson assumes that six million clicks were "diverted" by Sponsor Results that otherwise would have gone directly to AA.com. (Jackson App. 006-007 (Rpt. ¶ 45).)

A "diversion," by definition, requires an original intended destination. Mr. Jackson assumes—using what we refer to as the "100% intent assumption"—that anybody who used any of hundreds of search term combinations (*See* Jackson App. 011-072 (Rpt. Attachment 4)) was (1) "searching for American Airlines" (Jackson App. 007 (Rpt. ¶ 47)), and (2) intended to go directly to, and only to, AA.com in their search session. As shown below in detail, the 100% intent assumption is contrary to: (1) American's deposition testimony; (2) known industry statistics; (3) documents regarding AA.com; and (4) American's parent's filings with the United States Securities and Exchange Commission. (Jackson App. 078-083, 084-088, 089-090, 091-098, 099, 100-101.)

Mr. Jackson makes various judgments and takes steps to arrive at the "lost profits" that supposedly resulted from the "diversion" of the six million clicks. One step Mr. Jackson took

was to combine the "damages" supposedly attributable to Sponsor Results by OTAs and MSEs with the "damages" attributable to other Sponsor Results.

Mr. Jackson, however, does not acknowledge that Sponsor Results placed by OTAs and MSEs simply cannot have caused any "lost profits," because American authorized those sites to be in the online distribution channel in the first place. Nor does Mr. Jackson's damages opinion break out the OTA/MSE "damages" from the non-OTA/MSE "damages." Instead, he lumps everything together.

Another judgment is Mr. Jackson's selection of a "conversion rate"—the percentage of the "diverted clicks" that ostensibly would have resulted in a ticket purchase on AA.com—for the entire 2002-2009 period. Mr. Jackson selected a conversion rate and an alternative, higher, conversion rate. For neither rate, however, does Mr. Jackson identify supporting facts or data from 2003, 2004, or 2005. These three years account for nearly 75% of Mr. Jackson's lost profit figures. (Jackson App. 074-077 (Rpt. Attachment 18).) Mr. Jackson does not list *any* conversion rate data from those years as among the "available data points identified in the document production." (Jackson App. 007-008, 073 (Rpt. ¶ 48, n.46 & Attachment 11.) American offers no explanation for the failure to provide him this data.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that "scientific, technical, or other specialized knowledge" may be admissible where such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." FED. R. EVID. 702. This testimony is admissible only "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.*

American proffers Mr. Jackson's testimony, and therefore bears the burden of demonstrating its admissibility. *Moore v. Ashland Chem., Inc.*, 157 F.3d 269, 276 (5th Cir. 1998) (en banc).

## ARGUMENT

### I. MR. JACKSON'S LOST PROFITS TESTIMONY SHOULD BE EXCLUDED BECAUSE THE "100% INTENT" ASSUMPTION IS NOT BASED ON SUFFICIENT FACTS AND DATA OR RELIABLE METHODS AND PRINCIPLES

The 100% intent assumption is the foundation of Mr. Jackson's lost profits figures. That assumption is not based on sufficient facts and data, or reliable methods and principles, and therefore Mr. Jackson's lost profits testimony cannot satisfy Rule 702.

Mr. Jackson has built his "lost profits" conclusions on the "100% intent" assumption, but cites no study, test, or data to back up this assumption. Indeed, Mr. Jackson ignores:

- The Rule 30(b)(6) testimony of Rick Wilbins, American's Managing Director of Brand and Advertising, that he does not know the intent of someone who enters the search term "American Airlines tickets" (Jackson App. 081 (Wilbins Depo. at 160:3-14 ("The person that is typing in "American Airline tickets" I can't speak for, because I don't know their motivation"));[1]

- The Rule 30(b)(6) testimony by the Managing Director of AA.com that the basis for his belief of what an Internet user's intended web destination is when entering a search term is only "I think the words would be an indication," and his acknowledgement that he knows of no "document, memo, e-mail, analysis that

---

[1] Mr. Wilbins stated his *belief* about what others intend when searching (Jackson App 080 (Wilbins Depo. at 159:12-21)), but provided no supporting *data or facts*.

discusses how to determine an internet user's original intended end destination." (Jackson App. 086-087 (De Cross 6/26/09 Depo at 75:1-7; 75:23-27:3).);

- The testimony of a former Manager in AA.com that she is aware of industry literature that the typical online purchaser visits multiple websites in the course of researching a travel interest (Jackson App. 090 (Curry Depo Ex. 112 at AAG00208995), 093-094 (Curry 9/29/09 Depo. at 97:19-98:18));

- A document produced by American that refers to the "Leisure Audience" as price sensitive, with "not a great deal of flight activity on AA," and a "history of booking on Online Travel Agencies (OTA)." (Jackson App. 099 (Curry Depo Ex. 109 at AAG-00126180)); and

- Statements by AMR Corporation, American's parent, in Form 10-K filings with the United States Securities and Exchange Commission that "a continuous increase in pricing transparency" on the Internet has reduced American's pricing power (in other words, American acknowledges that people can and do browse the Internet to find cheaper fares that match their travel needs) (Jackson App. 101 (AMR Corp. Form 10-K for 2004 at 36).).

Mr. Jackson cannot even look to the other proposed experts that American retained in this case for supporting facts or data, for neither of them attempt to support the 100% intent assumption. All Mr. Jackson cites for his core assumption are a few words in four Yahoo! emails or other writings, none of which claim to know an Internet user's state of mind, much less the intentions that were associated with six million clicks on Sponsor Results over nearly seven years. (Jackson App. 009-010 (Rpt. ¶ 70).)

DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DANIEL L. JACKSON

Page 5

Mr. Jackson also fails to demonstrate that reliable methods or principles underlie the 100% intent assumption. In fact, he does not even attempt to demonstrate that any methods or principles make it possible to know the intentions of millions of people, much less conclude that *all* of those people intended the very same thing in millions of different search sessions. Nor does Mr. Jackson try to demonstrate that any method or principle allows him to base his damages estimates on *any* number of "diverted clicks," let alone six million. Courts have rejected expert testimony where the expert claimed to have used a method, but failed to show it was reliable. *See Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 597-98 (9th Cir. 1996) (excluding expert testimony where witness failed to identify objective source showing reliability of method)). Here, Mr. Jackson *does not even claim to have used a particular method* to justify the 100% intent assumption. All Mr. Jackson has is unsupported speculation and subjective belief (apparently emanating from American Airlines), which is never enough to satisfy Rule 702. *See Daubert v. Merrill Dow Pharms, Inc.*, 509 U.S. 579, 590 (1993) (word "knowledge" in Rule 702 "connotes more than subjective beliefs or unsupported speculation").

The 100% intent assumption is arbitrary, and thus inadequate to satisfy Rule 702's clear requirements for the reliable application of principles and methods to sufficient facts or data. *See JRL Enters. v. Procorp Assocs.*, No. 01-2893, 2003 U.S. Dist. LEXIS 9397, at * 23 (E.D. La. June 3, 2003) (excluding damages opinion where expert "performed no independent analysis of the numbers given him" and "plaintiff is presenting its own estimation of damages in the guise of an expert opinion"); *Diabetes Ctrs. of Am., Inc., v. Healthpia Am., Inc.*, No. H-06-3457, 2008 U.S. Dist. LEXIS 10052, at * 7 (S.D. Tex. February 11, 2008) (excluding opinion on lost profits where expert "simply accepted DCOA's projection that their number of patients would increase from 7,000 in 2006 to 284,000 in 2007. The Federal Rules of Evidence and the

requirements of *Daubert* are not satisfied where, as here, the expert fails to show any basis for believing someone else's projections.")

If American argues that Mr. Jackson is allowed to assume Yahoo!'s liability, and to build a damages figure on that assumption, it will miss the point. Mr. Jackson has done more than assume the *concept* of liability, he *also has assumed a critical, outcome-shaping fact*: how many people were "diverted" from their intended destination. This core assumption lacks essential supporting data, facts, methods, or principles, yet it is the starting point for Mr. Jackson's calculations. Those calculations cannot pass Rule 702 muster. *See Otis v. Doctor's Assocs.*, No. 94 C 4227, 1998 U.S. Dist. LEXIS 15414, at * 14 (N.D. Ill. September 14, 1998) (excluding lost profits expert testimony, noting plaintiff had "shown no evidence indicating that the methodology [the expert] used is anything more than an exercise in arithmetic based on inherently unreliable values").

For these reasons, Mr. Jackson's lost profits opinion fails Rule 702's requirements and should be excluded from evidence.

## II. MR. JACKSON'S LOST PROFITS TESTIMONY SHOULD BE EXCLUDED BECAUSE IT LACKS A BASIS FOR CAUSATION AND IS IMPERMISSIBLY BASED ON NON-ACTIONABLE SPONSOR RESULTS

American's lawsuit has long had a schizophrenic aspect to it: American set up OTAs with authority to sell as many American tickets as they liked, and encouraged MSEs to feed potential customers to it, then later launched not one but two expensive lawsuits based on truthful advertising by those same OTAs and MSEs. Mr. Jackson fails to acknowledge what American did to set up OTAs and MSEs as authorized sellers of tickets and providers of information, and thus his reports fails to comply with "established legal principle." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1308-09 (Fed. Cir. 2006).

Try though it might to claim damages, American must first demonstrate the basic legal principle of causation. Mr. Jackson—American's sole damages expert—disregards the law, by failing to establish how legally protected advertising can support a damages claim. Similarly, in *DSU,* the Federal Circuit affirmed the exclusion of an expert's testimony on lost profits damages because the expert assumed—contrary to the law—that sales of acceptable infringing substitutes could support a claim for patent infringement damages. *Id.* Mr. Jackson makes a similar error, by failing to recognize in his calculations that the law protects the advertisements by the OTAs and MSEs that American chose to establish in the same channel as AA.com. Mr. Jackson's failure to ground his calculations in "established legal principles" dooms his lost profits testimony. *See id.*

Moreover, if certain Sponsor Results, such as the many Sponsor Results placed by the OTAs and MSEs that American chose to allow to sell American tickets and to provide American information, are non-actionable, Mr. Jackson's lost profits and other damages estimates reflects a combination of actionable and non-actionable claims, and thus should be excluded. The Fifth Circuit has held a damages expert's testimony fails to satisfy Rule 702 when the expert's damages calculations are a combination of actionable and non-actionable claims. *See I.Q. Prods Co. v. Pennzoil Prods. Co.,* 305 F.3d 368, 376-77 (5th Cir. 2002). In *I.Q.Products*, plaintiff's experts had prepared materiality and damages opinions based on a non-actionable claim and an actionable claim. *Id.* The district court excluded the testimony, citing this combination, and the Fifth Circuit affirmed. *Id.*

Moreover, the Fifth Circuit did not give the experts the opportunity to revise their opinions to excise the non-actionable claims. *Id.* As a result, I.Q. Products and its experts had to stand on, and sink with, the rejected expert opinions. *See Bracco Diagnostics, Inc. v. Amersham*

*Health, Inc.*, 627 F. Supp. 2d 384, 443-44 (2009 D. N.J.) (excluding expert's damages calculations in false advertising case because expert, who "did not attempt to break down the injury to Bracco by particular ads or brochures," included effects of non-actionable activity, which was "fatal to the validity of his calculations"). So too must American and Mr. Jackson, notwithstanding Mr. Jackson's attempt to leave the door open to back out non-actionable Sponsor Results from his damages figures. (Jackson App. 010 (Rpt ¶ 71).) *See Bracco*, 627 F. Supp. 2d at 444 (describing expert's failure even to attempt to break down injury by particular ads or brochures: "The Court recognizes this as an attempt to avoid having to apportion any amount of damage . . . to any particular advertisement or type of advertisement.")

### III. MR. JACKSON'S LOST PROFITS FIGURES FOR AT LEAST 2003, 2004 AND 2005 FAIL TO SATISFY RULE 702

Mr. Jackson's "lost profits" figures reflect his assumption that a certain percentage (a "conversion rate") of the six million "diverted" clicks from December 2002 through April 2009 would have resulted in the purchase of a ticket on AA.com.[2] Mr. Jackson appears to have relied entirely on American to provide its conversion rates over the nearly seven years damages period, and cites American records from December 2002 and in 2006 through 2009. (Jackson App. 007-008, 073 (Rpt ¶ 48 & Attachment 11.) Mr. Jackson cites, however, *no* conversion rates for 2003, 2004, or 2005. (*Id.*) Despite lacking these rates for three consecutive years, Mr. Jackson claims somehow to have calculated, with "a reasonable degree of certainty," lost profits of between $9.6 million and $22.2 million for each of those years. (Jackson App. 074-077 (Rpt. Attachment 18).) How he can do this without conversion rates from American goes unsaid. Mr. Jackson's

---

[2] Mr. Jackson opines on how many of the "lost bookings" were potentially "recaptured" through purchases of an American ticket on AA.com or on an OTA site. That opinion is not the focus of this motion, and Yahoo! reserves its rights regarding it.

assertion of having followed "generally accepted procedures," is suspect, and certainly is insufficient. *See Moore*, 151 F.3d at 276 ("The expert's assurances that he has utilized generally accepted scientific methodology is insufficient.")

Mr. Jackson likewise cites no method or principle to demonstrate why his grafted-on conversion rate estimates for 2003, 2004, or 2005 are reliable, especially in light of the range in rates for other years from 2.2% to 8.8%. (Jackson App. 073 (Rpt. Attachment 11).) Nowhere does Mr. Jackson demonstrate how or why he may apply conversion rates from and after 2006 up to six years earlier, much less that peer-reviewed literature or accepted methodology support what he has done. Mr. Jackson provides no basis to justify the papering over of American's failure to preserve, or to produce in this litigation, something as basic as conversion rates for three full years. When an expert lacks sufficient data—or, as here, *any* data for three years that account for nearly 75% of his lost profits estimate—his testimony fails to satisfy Rule 702. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) (exclusion proper where district court concluded there was "too great an analytical gap between the data and the opinion proffered").

Rule 702 does not allow anyone, even a professional expert witness, to create damages out of whole cloth. Mr. Jackson lacks the conversion data that is essential to his lost profits figures for at least 2003, 2004, and 2005. For this independent reason, Mr. Jackson's lost profit testimony for 2003, 2004, and 2005 should be excluded.

## CONCLUSION

Mr. Jackson builds his calculations on the unsupported "100% intent" assumption, disregards that American chose to allow OTAs and MSEs to operate in the same online channel as AA.com, and lacks the critical "conversion rate" for three full years that account for almost three-quarters of the purported lost profits. These defects independently—and certainly

DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF DANIEL L. JACKSON

Page 10

together—make it impossible for Mr. Jackson's testimony to satisfy Rule 702. The Court should exclude Mr. Jackson's testimony.[3]

Dated: November 6, 2009

Respectfully submitted,

*Scott Fredricks*

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
D. Anthony Rodriguez (*pro hac vice*)
Alison M. Tucher (*pro hac vice*)
Brooks M. Beard (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH MARKETING

---

[3] Yahoo! does not waive any other challenge to Mr. Jackson's report or to any testimony, such as, but not limited to, *limine* motions or examination at trial.

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 6th day of November, 2009, I conferred with Lars Berg, counsel for Plaintiff, and Mr. Berg confirmed that Plaintiff was opposed to the relief sought herein.

_____
Scott A. Fredricks

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Plaintiff's counsel, as indicated below, on the ___6th___ day of November 2009:

Dee J. Kelly                              *Via Hand Delivery*
Dee J. Kelly, Jr.
Lars L. Berg
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Frederick Brown                           *Via Federal Express*
George A. Nicoud III
Jason Stavers
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94104

Howard S. Hogan                           *Via Federal Express*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

_____
Scott A. Fredricks