CTJ/RMT

ORIGINAL



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**
DROP BOX
NOV - 6 2009
11:33

CLERK, U.S. DISTRICT COURT
By _____
Deputy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,                    §
                                            §
                    Plaintiff,              §
                                            §
V.                                          §
                                            §        Civil Action No. 4-08-CV-626-A
                                            §
YAHOO! INC., and                            §
OVERTURE SERVICES, INC. d/b/a YAHOO!        §
SEARCH MARKETING,                           §
                                            §
                    Defendants.             §

## APPENDIX IN SUPPORT OF DEFENDANTS' MOTION TO
## EXCLUDE TESTIMONY OF DANIEL L. JACKSON

| EXHIBIT | DOCUMENT | PAGE |
|---------|----------|------|
| A | Excerpts from Expert Report of Daniel L. Jackson, dated August 17, 2009 | 003 |
| B | Excerpts from the Deposition of Rick Wilbins, taken June 24, 2009 | 078 |
| C | Excerpts from Deposition of Derek DeCross, taken June 26, 2009 | 084 |
| D | Excerpts from Deposition Exhibit 112 | 089 |
| E | Excerpts from the Deposition of Alice Curry, taken September 29, 2009 | 091 |
| F | Deposition Exhibit 109 (AAG-00126180) | 099 |
| G | Excerpt from AMR Form 10-K for fiscal year ended December 31, 2004 | 100 |

sf-2762547

Dockets.Justia.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true copy of the foregoing document has been served on counsel of record as follows:

Dee J. Kelly                    *Via Hand Delivery*
Dee J. Kelly, Jr.
Lars L. Berg
Kelly Hart & Hallman, LLP
201 Main Street, Suite 2500
Fort Worth, TX  76102

Frederick Brown                 *Via FedEx*
Jason Stavers
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105

Howard S. Hogan                 *Via FedEx*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036

Date:   November 6, 2009

_____
Scott A. Fredricks

A

**EXHIBIT A**

**Highly Confidential**
**Access Limited by Confidentiality Agreement**

**Submitted in Proposed Supplemental Appendix Filed With**
**Defendants' Second Unopposed Motion For Leave To**
**File Documents Under Seal Filed on November 6, 2009**

B

1          IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF TEXAS
2                  FORT WORTH DIVISION
3     AMERICAN AIRLINES, INC.,      )
          Plaintiff                 )
4                                   )
      v.                            )  Civil Action No.
5                                   )  4-08CV-626-A
      YAHOO! INC. and OVERTURE      )
6     SERVICES, INC. d/b/a          )
      YAHOO! SEARCH MARKETING,      )
7         Defendants.               )
8
       ********************************************************
9
10          ORAL AND VIDEOTAPED DEPOSITION OF
11     AMERICAN AIRLINES, INC. REPRESENTATIVE RICK WILBINS
12                   JUNE 24, 2009
13     ********************************************************
14        ORAL AND VIDEOTAPED DEPOSITION OF AMERICAN
15     AIRLINES, INC. REPRESENTATIVE RICK WILBINS, produced as
16     a witness at the instance of the DEFENDANTS, and duly
17     sworn, was taken in the above-styled and numbered cause
18     on the 24th day of June, 2009, from 8:52 a.m. to 3:52
19     p.m., before Julie C. Brandt, RMR, CRR, and CSR in and
20     for the State of Texas, reported by machine shorthand,
21     at the offices of Gibson, Dunn & Crutcher, LLP, 2100
22     McKinney Avenue, Suite 1100, Dallas, Texas, pursuant to
23     the Federal Rules of Civil Procedure.
24
25

COPY

1    THE VIDEOGRAPHER:  The court reporter

2    today is Julie Brandt of Merrill Legal Solutions.

3    Would the reporter please swear in the

4    witness.

5    RICK WILBINS,

6    having been first duly sworn, testified as follows:

7    EXAMINATION

8    BY MR. RODRIGUEZ:

9    Q.  Good morning.

10    A.  Good morning.

11    Q.  Thank you for being here today.  Do you

12    understand you're here for your deposition as a

13    representative of American Airlines?

14    A.  I do.

15    Q.  Can you think of any reason why your

16    deposition can't go forward today, such as any medical

17    issue or not feeling well or intense heat outside?

18    A.  No.  I'm good.

19    Q.  Okay.  If at any time during the deposition

20    you need to take a break, just say so.  I'll ask that

21    you answer the question pending unless there's a

22    privilege objection.  But this is not meant to be any

23    kind of endurance contest, and you should remain

24    comfortable at all times.  So if there's anything you

25    need, just say so; and if we need to take a break to

Jackson App. 079

1      A.   I didn't say there were agreements at issue.

2      Q.   Understood.  But the question nevertheless is

3  what agreements were at issue?

4           MR. BERG:  Objection.  Outside the scope

5  of the 30(b)(6).

6      A.   The issue in the Google suit, similar to the

7  issue in the Yahoo! suit, is about confusion --

8  confusing the consumer who inputs an American trademark

9  and expects to do business with American and is diverted

10  to another site or encouraged to do business away from

11  American.

12      Q.   You've used that phrase "do business with" a

13  couple of times.  What are you describing?

14           MR. BERG:  Objection.  Outside the scope

15  of the 30(b)(6).

16      A.   In the simplest terms, if I type in the words

17  "American Airlines," my intent is to do -- to be

18  transacting with American, buying a ticket, doing some

19  search on the different products and services, perhaps

20  even looking at the TV commercials that have won awards,

21  many awards.

22      Q.   Congratulations.

23      A.   Thank you.

24           And if I'm -- if I find that I'm not going to

25  American Airlines, then I'm not transacting or

Jackson App. 080

1   interacting, and perhaps the word "interacting" might be

2   even more broad than the word "do business with."

3       Q.   Just to understand the term you've used a

4   couple of times, "do business with," if this person

5   types in "American Airlines tickets," what's the   the

6   intent --

7           MR. BERG:   Objection.

8       Q.   -- that American Airlines thinks this person

9   here?

10          MR. BERG:   Objection.   Outside the scope

11  of the 30(b)(6), calls for speculation.

12      A.   The person that is typing in "American

13  Airlines tickets" I can't speak for, because I don't

14  know their motivation.

15      Q.   Are you able to testify about the inclusion in

16  any agreement with Expedia, a provision limiting

17  Expedia's ability to use American marks in keywords?

18      A.   No, I cannot.

19      Q.   Or American's view of Expedia's compliance

20  with any such agreement?

21      A.   No.

22      Q.   Steps that American has taken to enforce any

23  of its claimed rights under such agreements?

24      A.   No.

25      Q.   To whom would you direct me?

Jackson App. 081

## Page 193

```
1        CHANGES AND SIGNATURE
2 PAGE   LINE  CHANGE    REASON
3   _____
4   _____
5   _____
6   _____
7   _____
8   _____
9   _____
10  _____
11  _____
12  _____
13  _____
14  _____
15  _____
16  _____
17  _____
18  _____
19  _____
20  _____
21  _____
22  _____
23  _____
24  _____
25  _____
```

## Page 194

```
1      I, RICK WILBINS, have read the foregoing
   deposition and hereby affix my signature that same is
2  true and correct, except as noted above.
3
4
5              RICK WILBINS
6
7
8  THE STATE OF _____ )
   COUNTY OF _____ )
9
      Before me, _____, on
10 this day personally appeared RICK WILBINS, known to me
   (or proved to me under oath or through
11 _____ ) (description of identity
   card or other document) to be the person whose name is
12 subscribed to the foregoing instrument and acknowledged
   to me that they executed the same for the purposes and
13 consideration therein expressed.
      Given under my hand and seal of office this
14 _____ day of _____, _____.
15
16
17         NOTARY PUBLIC IN AND FOR
           THE STATE OF _____
18         COMMISSION EXPIRES: _____
19
20
21
22
23
24
25
```

## Page 195

```
1        IN THE UNITED STATES DISTRICT COURT
           FOR THE NORTHERN DISTRICT OF TEXAS
2             FORT WORTH DIVISION
3  AMERICAN AIRLINES, INC., )
      Plaintiff        )
4                       )
   v.                   )
5                       ) Civil Action No.
                        ) 4-08CV-626-A
   YAHOO! INC. and OVERTURE )
6  SERVICES, INC. d/b/a    )
   YAHOO! SEARCH MARKETING, )
7     Defendants.        )
8                        )
9
10       REPORTER'S CERTIFICATION
11 DEPOSITION OF AMERICAN AIRLINES, INC. REPRESENTATIVE
12              RICK WILBINS
13              JUNE 24, 2009
14
15     I, Julie C. Brandt, Certified Shorthand Reporter in
16 and for the State of Texas, hereby certify to the
17 following:
18     That the witness, RICK WILBINS, was duly sworn by
19 the officer and that the transcript of the oral
20 deposition is a true record of the testimony given by
21 the witness;
22     That the deposition transcript was submitted on
23 _____ to the witness or to the attorney
24 for the witness for examination, signature and return to
25 Merrill Legal Solutions by _____ ;
```

## Page 196

```
1      That the amount of time used by each party at the
2  deposition is as follows:
3  MR. RODRIGUEZ.....05 HOUR(S):14 MINUTE(S)
4  MR. BERG.....00 HOUR(S):00 MINUTE(S)
5      That pursuant to information given to the
6  deposition officer at the time said testimony was taken,
7  the following includes counsel for all parties of
8  record:
9  FOR THE PLAINTIFF:
10    Lars L. Berg
      KELLY HART & HALLMAN
11    201 Main Street
      Suite 2500
12    Fort Worth, Texas  76102
      817.878.3524
13    817.878.9280 (fax)
      lars.berg@khh.com
14
      Howard S. Hogan
15    GIBSON, DUNN & CRUTCHER LLP
      1050 Connecticut Avenue, N.W.
16    Washington, D.C.  20036-5306
      202.887.3640
17    202.530.9550 (fax)
      hhogan@gibsondunn.com
18
   FOR THE DEFENDANTS:
19
      D. Anthony Rodriguez
20    MORRISON & FOERSTER LLP
      425 Market Street
21    San Francisco, California  94105-2482
      415.268.6685
22    415.268.7522 (fax)
      drodriguez@mofo.com
23
      Scott Fredricks
24    CANTEY HANGER LLP
      600 West Sixth Street
25    Suite 300
```

49 (Pages 193 to 196)

Jackson App. 082

Page 197

```
 1   Fort Worth, Texas 76102
       817.877.2800
 2     817.877.2807 (fax)
       sfredricks@canteyhanger.com
 3
 4      That $          is the deposition officer's
 5   charges to the Defendants for preparing the original
 6   deposition transcript and any copies of exhibits;
 7      I further certify that I am neither counsel for,
 8   related to, nor employed by any of the parties or
 9   attorneys in the action in which this proceeding was
10   taken, and further that I am not financially or
11   otherwise interested in the outcome of the action.
12      Certified to by me                    , 2009.
13
14
15      _____
16      Julie J Brandt, CSR, RMR, CRR
        Texas CSR No. 4018
17      Expiration Date: 12/31/10
18      Merrill Legal Solutions
        Reg. No. 191
19      4144 North Central Expressway
        Suite 850
20      Dallas, Texas 75204
        800-966-4567
21
22
23
24
25
```

50  (Page 197)

Jackson App. 083



1              IN THE UNITED STATES DISTRICT COURT

              FOR THE NORTHERN DISTRICT OF TEXAS

2                   FORT WORTH DIVISION

3    AMERICAN AIRLINES, INC.,      )

         Plaintiff                 )

4                                  )

     v.                            )  Civil Action No.

5                                  )  4-08CV-626-A

     YAHOO! INC. and OVERTURE      )

6    SERVICES, INC. d/b/a          )

     YAHOO! SEARCH MARKETING,      )

7        Defendants.               )

8

     *********************************************************

9

10      "HIGHLY CONFIDENTIAL - OUTSIDE COUNSEL ONLY"

11          ORAL AND VIDEOTAPED DEPOSITION OF

12    AMERICAN AIRLINES, INC. REPRESENTATIVE DEREK DeCROSS

13                   JUNE 26, 2009

14      *********************************************************

15       ORAL AND VIDEOTAPED DEPOSITION OF AMERICAN

16    AIRLINES, INC. REPRESENTATIVE DEREK DeCROSS, produced as

17    a witness at the instance of the DEFENDANTS, and duly

18    sworn, was taken in the above-styled and numbered cause

19    on the 26th day of June, 2009, from 9:08 a.m. to 3:55

20    p.m., before Julie C. Brandt, RMR, CRR, and CSR in and

21    for the State of Texas, reported by machine shorthand,

22    at the offices of Kelly Hart & Hallman, 201 Main Street,

23    Suite 2500, Fort Worth, Texas, pursuant to the Federal

24    Rules of Civil Procedure.

25

```
 1                    P R O C E E D I N G  S

 2              THE VIDEOGRAPHER:  Good morning.  This is

 3    June 26, 2009.  The time is 9:08 a.m.  This is Videotape

 4    1 of the deposition of Derek DeCross in the matter of

 5    American Airlines, Inc. versus Yahoo!, Inc., et al. in

 6    the U. S. District Court for the Northern District of

 7    Texas, Fort Worth Division.  Case number 4-08CV-626-A.

 8    This deposition is located at 201 Main Street, Fort

 9    Worth.  My name is Debbie Pullen with Merrill Legal

10    Solutions.

11              For the video record, counsel will now state

12    their appearances.  Then the witness may be sworn in.

13              MR. BERG:  Lars Berg for American

14    Airlines.

15              MR. HOGAN:  Howard Hogan for American

16    Airlines.

17              MR. BROADFIELD:  Don Broadfield for

18    American Airlines.

19              MR. NICHOLS:  Taylor Nichols for American

20    Airlines.

21              MR. CHAPPELL:  David Chappell for Yahoo!.

22              MR. RODRIGUEZ:  Tony Rodriguez for the

23    Defendant.

24              DEREK DeCROSS,

25    having been first duly sworn, testified as follows:
```

1    Q.   Sure.   Other than the words the internet user

2    puts into its search, are there any other bases on which

3    American relies for knowing or claiming to know the

4    original intended web destination of an internet user?

5         MR. BERG:  Objection.  Outside the scope

6    of 30(b)(6).

7         A.   I think the words would be the indication.

8    Q.   And was it American's testimony that the words

9    "American Airlines" could also signify an intent to

10   reach AAvacations.com?

11        MR. BERG:  Objection.  Outside the scope

12   of the 30(b)(6).  I think it mischaracterizes his

13   testimony.

14   A.   If someone was looking for a package, that

15   would be a website.  We connect to AAvacation.com via

16   AA.com.

17   Q.   Does American Airlines have any records of

18   search terms it considers to reflect a user's original

19   intended web destination?

20        MR. BERG:  Objection.  Outside the

21   30(b)(6).

22   A.   Can you restate the question?

23   Q.   Does American have any document, memo, e-mail,

24   analysis that discusses how to determine an internet

25   user's original intended web destination?

1          MR. BERG:  Objection.  Outside the

2     30(b)(6).

3          A.   Not that I'm aware of.

4          Q.   If we start from the premise that a user who's

5     keyed in American Airlines wants to reach an American

6     site, how does American record what that person -- does

7     American Airlines have a document that records or

8     analyzes what that person intends to do or is likely to

9     do on the American site?

10          MR. BERG:  Objection.  Vague.  Ambiguous.

11     It's compound.  It's outside the scope of 30(b)(6).

12          A.   I don't believe we would know from the word

13     "American Airlines" what action they want to take on

14     AA.com.

15          Q.   Why not?

16          MR. BERG:  Objection.  Outside the scope

17     of 30(b)(6).

18          A.   They could want to book a ticket.  They could

19     want to check on their flight information.

20          Q.   You can do a lot of things on AA.com besides

21     buy tickets.  Right?

22          A.   Yes.

23          Q.   Does American have any formula or any method

24     by which it's attempted to calculate or estimate the

25     number of internet users who have been diverted from

Jackson App. 087

Page 213

1    I, DEREK DeCROSS, have read the foregoing
     deposition and hereby affix my signature that same is
2    true and correct, except as noted above.
3
4
     _____
5              DEREK DeCROSS
6
7
8    THE STATE OF _____ )
     COUNTY OF _____ )
9
         Before me, _____, on
10   this day personally appeared DEREK DeCROSS, known to me
     (or proved to me under oath or through
11   _____ )(description of identity
     card or other document)) to be the person whose name is
12   subscribed to the foregoing instrument and acknowledged
     to me that they executed the same for the purposes and
13   consideration therein expressed.
         Given under my hand and seal of office this
14   _____ day of _____, _____.
15
16
17   _____
     NOTARY PUBLIC IN AND FOR
18   THE STATE OF _____
     COMMISSION EXPIRES: _____
19
20
21
22
23
24
25

Page 214

1        IN THE UNITED STATES DISTRICT COURT
         FOR THE NORTHERN DISTRICT OF TEXAS
2               FORT WORTH DIVISION
3    AMERICAN AIRLINES, INC., )
         Plaintiff              )
4                              )
         v.                    ) Civil Action No.
5                              ) 4-08CV-626-A
     YAHOO! INC. and OVERTURE  )
6    SERVICES, INC. d/b/a      )
     YAHOO! SEARCH MARKETING,  )
7        Defendants.           )
8
9
10        REPORTER'S CERTIFICATION
11   DEPOSITION OF AMERICAN AIRLINES, INC. REPRESENTATIVE
12            DEREK DeCROSS
13            JUNE 26, 2009
14
15   I, Julie C. Brandt, Certified Shorthand Reporter in
16   and for the State of Texas, hereby certify to the
17   following:
18   That the witness, DEREK DeCROSS, was duly sworn by
19   the officer and that the transcript of the oral
20   deposition is a true record of the testimony given by
21   the witness;
22       That the deposition transcript was submitted on
23   _____ to the witness or to the attorney
24   for the witness for examination, signature and return to
25   Merrill Legal Solutions by _____ ;

Page 215

1    That the amount of time used by each party at the
2    deposition is as follows:
3    MR. RODRIGUEZ.....04 HOUR(S):52 MINUTE(S)
4    MR. BERG.....00 HOUR(S):00 MINUTE(S)
5        That pursuant to information given to the
6    deposition officer at the time said testimony was taken,
7    the following includes counsel for all parties of
8    record:
9    FOR THE PLAINTIFF:
10       Lars L. Berg
         KELLY HART & HALLMAN
11       201 Main Street
         Suite 2500
12       Fort Worth, Texas 76102
         817.878.3524
13       817.878.9280 (fax)
         lars.berg@khh.com
14
         Howard S. Hogan
15       GIBSON, DUNN & CRUTCHER LLP
         1050 Connecticut Avenue, N.W.
16       Washington, D.C. 20036-5306
         202.887.3640
17       202.530.9550 (fax)
         hhogan@gibsondunn.com
18
     FOR THE DEFENDANTS:
19
         D. Anthony Rodriguez
20       MORRISON & FOERSTER LLP
         425 Market Street
21       San Francisco, California 94105-2482
         415.268.6685
22       415.268.7522 (fax)
         drodriguez@mofo.com
23
         David Chappell
24       CANTEY HANGER LLP
         600 West Sixth Street
25       Suite 300

Page 216

1    Fort Worth, Texas 76102
     817.877.2800
2    817.877.2807 (fax)
     dchappell@canteyhanger.com
3
4        That $_____ is the deposition officer's
5    charges to the Defendants for preparing the original
6    deposition transcript and any copies of exhibits;
7        I further certify that I am neither counsel for,
8    related to, nor employed by any of the parties or
9    attorneys in the action in which this proceeding was
10   taken, and further that I am not financially or
11   otherwise interested in the outcome of the action.
12       Certified to by me _____, 2009.
13
14
15   _____
     Julie C. Brandt, CSR, RMR, CRR
16   Texas CSR No. 4018
     Expiration Date: 12/31/10
17
     Merrill Legal Solutions
18   Reg. No. 191
     4144 North Central Expressway
19   Suite 850
     Dallas, Texas 75204
20   800-966-4567
21
22
23
24
25

54 (Pages 213 to 216)

Jackson App. 088



October 24, 2006

# AA.COM BOOKING BONUS PLAN

EXHIBIT 112

WIT: Curry

DATE: 09/29/09

MERRILL LEGAL SOLUTIONS

Confidential-Access Limited by Confidentiality Agreement

# BONUS MILE RESEARCH

In August 2006, JupiterResearch published a report on consumer reaction to bonus miles as an influencer in online airline purchases, showing the following:

- Bonus miles are a key differentiator and motivator for members of loyalty programs, like the AAdvantage program, to book through the airline's website

- While price remains the most influential criteria for customers who shop and book online, miles are shown as a main reason our members book directly
  - Over 41% of loyalty customers surveyed stated bonus miles as a reason for booking directly through the airline website

- Given that customers typically shop at 2-3 online travel sites prior to making a purchase, JupiterResearch recommends that airlines continue to offer miles as a booking incentive and also include targeted bonus offers to motivate travelers to purchase directly

Confidential-Access Limited by Confidentiality Agreement

AAG-00208995

E

1            IN THE UNITED STATES DISTRICT COURT

            FOR THE NORTHERN DISTRICT OF TEXAS

2                   FORT WORTH DIVISION

3      AMERICAN AIRLINES, INC.,    )

            Plaintiff,             )

4                                  )

      v.                           ) CIVIL ACTION NO.

5                                  ) 4-08-CV-626-A

      YAHOO! INC. and OVERTURE     )

6      SERVICES, INC. d/b/a        )

      YAHOO! SEARCH MARKETING,     )

7          Defendants.             )

8

9      ****************************************************

10                  "HIGHLY CONFIDENTIAL"

11             ORAL VIDEOTAPED DEPOSITION OF

12                     ALICE CURRY

13                  SEPTEMBER 29, 2009

14      ****************************************************

15          ORAL VIDEOTAPED DEPOSITION OF ALICE CURRY, produced

16      as a witness at the instance of the Defendants, and duly

17      sworn, was taken in the above-styled and numbered cause

18      on the 29th day of September, 2009, from 9:18 a.m. to

19      4:52 p.m., before Julie C. Brandt, RMR, CRR, and CSR in

20      and for the State of Texas, reported by machine

21      shorthand, at the offices of Gibson Dunn & Crutcher,

22      2100 McKinney Avenue, Suite 1100, Dallas, Texas,

23      pursuant to the Federal Rules of Civil Procedure and the

24      provisions stated on the record or attached hereto.

25

**Jackson App. 091**

```
 1                P R O C E E D I N G S
 2              THE VIDEOGRAPHER:  Good morning.  This is
 3    Tuesday, September 29, 2009.  The time is 9:18 a.m.
 4    This is videotape 1 of the deposition of Alice Curry, in
 5    the matter of American Airlines, Inc. versus Yahoo!,
 6    Inc., et al., in the United States District Court for
 7    the Northern District of Texas, Case No. 4-08-CV-626-A.
 8    This deposition is located at 2100 McKinney Avenue,
 9    Suite 1100, Dallas, Texas.  My name is Debbie Pullen
10    with Merrill Legal Solutions.
11              For the video record, counsel will now state
12    their appearances, then the witness may be sworn in.
13              MR. BROWN:  Fred Brown and Dee Kelly on
14    behalf of Plaintiff, American Airlines, with Don
15    Broadfield as our client representative.
16              MR. RODRIGUEZ:  This is Tony Rodriguez
17    for the Defendants.
18              MR. FREDRICKS:  Scott Fredricks for the
19    Defendants.
20                    ALICE CURRY,
21    having been first duly sworn, testified as follows:
22                    EXAMINATION
23    BY MR. RODRIGUEZ:
24         Q.   Good morning.
25         A.   Good morning.
```

1    elsewhere.  The page ending 995 --

2              MR. BROWN:  Excuse me.  She is reading

3    the document, and I think she intends to read the

4    document.

5              MR. RODRIGUEZ:  I withdrew the question,

6    and I'm just saying what I said at the beginning, which

7    is when there was a document I would mention what my

8    question would concern, and then she could make her

9    decision.  That's all I'm trying to do, be efficient

10   here.

11        Q.   So I'm looking at page 995.

12        A.   Okay.

13        Q.   Have you seen this document recently?

14        A.   Not recently.

15        Q.   Going back to page 995, it has the capital

16   letters BONUS MILE RESEARCH.  Let me know when you're

17   there, please.

18        A.   Okay.

19        Q.   The last block of text states, Given that

20   customers typically shop at two to three online travel

21   sites prior to making a purchase, JupiterResearch

22   recommends that airlines continue to offer miles as a

23   bonus incentive and also utilize targeted bonus offers

24   to motivate travelers to purchase directly.  Did you

25   attend the meeting where this Exhibit 112 was discussed?

1    A.    Yes.

2    Q.    Was that the first time you had learned that

3  any research firm had information that customers

4  typically shop at two to three online travel sites

5  before making a purchase?

6              MR. BROWN:  Objection.  Lack of

7  foundation.

8    A.    I don't know when I learned that fact.

9    Q.    Were you a senior analyst when you first

10  learned about people visiting multiple travel sites?

11    A.    I don't recall.

12    Q.    Just sometime when you were at AA.com?

13    A.    I'm not sure when I learned that fact.

14    Q.    When you say "that fact," I would like to have

15  it if you can tell me what you're referring to.

16    A.    I am not sure when I became aware that

17  customers typically shopped two to three online travel

18  sites.

19    Q.    Is that something you -- did you assume it to

20  be the case when you were at AA.com, that customers

21  typically searched on more than one site in the course

22  of looking for -- researching a trip?

23              MR. BROWN:  Objection.  Vague.

24    A.    I think there are all sorts of different types

25  of customers, and I didn't make assumptions.

1      I, ALICE CURRY, have read the foregoing
deposition and hereby affix my signature that same is
2  true and correct, except as noted above.

3

4

_____
5                    ALICE CURRY

6

7

8  THE STATE OF  TEXAS    )
   COUNTY OF  TARRANT     )
9

       Before me, DEBORAH DAVIS              , on
10  this day personally appeared ALICE CURRY, known to me
   (or proved to me under oath or through
11  ___Known Personally____) (description of identity
   card or other document)) to be the person whose name is
12  subscribed to the foregoing instrument and acknowledged
   to me that they executed the same for the purposes and
13  consideration therein expressed.
       Given under my hand and seal of office this
14  __2nd__ day of __November_____, __2009__.

15

16

_____
17  NOTARY PUBLIC IN AND FOR
   THE STATE OF  TEXAS
18  COMMISSION EXPIRES: Oct 2, 2012

19

20

21              DEBORAH DAVIS
22              My Commission Expires
                October 2, 2012
23

24

25

Merrill Corporation - Dallas
800-966-4567 www.merrillcorp.com/law
bc21000f-63b4-4450-93da-b38a3f6f6020

```
 1              IN THE UNITED STATES DISTRICT COURT
            FOR THE NORTHERN DISTRICT OF TEXAS
 2                   FORT WORTH DIVISION
 3      AMERICAN AIRLINES, INC.,      )
               Plaintiff             )
 4                                   )
        v.                           ) Civil Action No.
 5                                   ) 4-08CV-626-A
        YAHOO! INC. and OVERTURE     )
 6      SERVICES, INC. d/b/a         )
        YAHOO! SEARCH MARKETING,     )
 7           Defendants.             )
 8
 9
10                REPORTER'S CERTIFICATION
11              DEPOSITION OF ALICE CURRY
12                 SEPTEMBER 29, 2009
13
14          I, Julie C. Brandt, Certified Shorthand Reporter in
15      and for the State of Texas, hereby certify to the
16      following:
17          That the witness, ALICE CURRY, was duly sworn by
18      the officer and that the transcript of the oral
19      deposition is a true record of the testimony given by
20      the witness;
21          That the deposition transcript was submitted on
22      _____10-5-09_____ to the witness or to the attorney
23      for the witness for examination, signature and return to
24      Merrill Legal Solutions by ____11-5-09____;
25          That the amount of time used by each party at the
```

```
 1   deposition is as follows:
 2   MR. RODRIGUEZ.....04 HOUR(S):58 MINUTE(S)
 3   MR. BROWN.....00 HOUR(S):00 MINUTE(S)
 4        That pursuant to information given to the
 5   deposition officer at the time said testimony was taken,
 6   the following includes counsel for all parties of
 7   record:
 8   FOR THE PLAINTIFF:
 9        Frederick Brown
          GIBSON, DUNN & CRUTCHER LLP
10        555 Mission Street
          Suite 3000
11        San Francisco, California  94105-2933
          415.393.8204
12        415.374.8420 (fax)
          fbrown@gibsondunn.com
13
          Dee Kelly
14        KELLY HART & HALLMAN
          201 Main Street
15        Suite 2500
          Fort Worth, Texas  76102
16        817.878.3524
          817.878.9280 (fax)
17        dee.kelly@khh.com
18
19   FOR THE DEFENDANTS:

20        D. Anthony Rodriguez
          MORRISON & FOERSTER LLP
          425 Market Street
21        San Francisco, California  94105-2482
          415.268.6685
22        415.268.7522 (fax)
          drodriguez@mofo.com
23
          Scott Fredricks
24        CANTEY HANGER LLP
          600 West Sixth Street
25        Suite 300
```

Jackson App. 097

1    Fort Worth, Texas   76102
     817.877.2800
2    817.877.2807 (fax)
     sfredricks@canteyhanger.com
3
4        That $ _____ is the deposition officer's
5    charges to the Defendants for preparing the original
6    deposition transcript and any copies of exhibits;
7        I further certify that I am neither counsel for,
8    related to, nor employed by any of the parties or
9    attorneys in the action in which this proceeding was
10   taken, and further that I am not financially or
11   otherwise interested in the outcome of the action.
12       Certified to by me _____10-5_____·, 2009.
13
14
15                   _Julie C. Brandt_____
                     Julie C. Brandt, CSR, RMR, CRR
16                   Texas CSR No. 4018
                     Expiration Date: 12/31/10
17
                     Merrill Legal Solutions
18                   Reg. No. 191
                     4144 North Central Expressway
19                   Suite 850
                     Dallas, Texas 75204
20                   800-966-4567
21
22
23
24
25

AUTHENTIC
The Original Copy of this
file was electronically E-Transcript
using RealLegal technology digitally signed

**Jackson App. 098**



**July 2007**
**"See What's New at AA.com" Direct Mail & Email Brief**

## Background

AA.com is launching a new campaign to support the introduction of three new functional tools that have been added to the site. The slogan for the campaign is: *See what's new at AA.com.*

This audience will be more leisure focused and less engaged with AA.com. We want to intrigue and induce this audience to visit AA.com. And, once we get them to the site, we want to further encourage them to take a trip by offering a 2K AAdvantage bonus mile offer to AAdvantage members and a 10% discount to Non-AAdvantage members.

We'd like to launch at the end of September.
Size of Audience: TBD

## Objectives

1) Show off what's new at AA.com: AAdvantage Award Flight Search, Search by Price & Schedule and DealFinder®.
2) Encourage bookings on AA.com

## Target Audience

Focus on Leisure Audience; Exclude Business Audiences
Not a great deal of flight activity on AA; and not a lot of bookings on AA.com (again, this is an audience that is more price sensitive)
Audience has history of booking on Online Travel Agencies (OTA)

## Messaging

Call-To-Action:
1- See What's New at AA.com
2- Save by using the exclusive promotion code or bonus mile offer

## Tone/Positioning

Exactly what the slogan says: *Come See What's New at AA.com.* Encouraging—enticing!

## Concepting Assignment

We're open to some interesting pieces. Something different that will catch the eyes of viewers—enough so that the viewer can't or shouldn't wait another minute to visit AA.com.

## Deliverables

Direct mail/Email
Graphics/Banners

## Mandatories

➢ AA.com logo/nose cone
➢ DealFinder®, Price & Schedule, AAdvantage Award Booking Tool logos

EXHIBIT 109
WIT: Curry
DATE: 09/22/09
MERRILL LEGAL SOLUTIONS

Confidential-Access Limited by Confidentiality Agreement

AAG-00126180

**Jackson App. 099**



# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

# FORM 10-K

☑ Annual Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934
For fiscal year ended December 31, 2004.

☐ Transition Report Pursuant to Section 13 or 15(d) of the Securities Exchange Act of 1934

Commission file number 1-8400 .

# AMR Corporation

(Exact name of registrant as specified in its charter)

| | |
|---|---|
| Delaware | 75-1825172 |
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |
| 4333 Amon Carter Blvd. Fort Worth, Texas | 76155 |
| (Address of principal executive offices) | (Zip Code) |

Registrant's telephone number, including area code (817) 963-1234
Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of exchange on which registered |
|---|---|
| Common stock, $1 par value per share | New York Stock Exchange |
| 9.00% Debentures due 2016 | New York Stock Exchange |
| 7.875% Public Income Notes due 2039 | New York Stock Exchange |

Securities registered pursuant to Section 12(g) of the Act:

## NONE

(Title of Class)

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days. Yes ☑ No ☐ .

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§ 229.405 of this chapter) is not contained herein, and will not be contained, to the best of the registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K. ☑

Indicate by check mark whether the registrant is an accelerated filer (as defined in Exchange Act Rule 12b-2). Yes ☑ No ☐ .

The aggregate market value of the voting stock held by non-affiliates of the registrant as of June 30, 2004, was approximately $1.9 billion. As of February 18, 2005, 161,161,254 shares of the registrant's common stock were outstanding.

DOCUMENTS INCORPORATED BY REFERENCE

**Increasing Competition and Historically Low Fare Levels** Service over almost all of the Company's routes is highly competitive and fares remain at historically low levels. The Company faces vigorous competition from major domestic airlines, national, regional, all-cargo and charter carriers, foreign air carriers, LCCs, and, particularly on shorter segments, ground and rail transportation. Increasingly, the Company faces significant competition from LCCs and marketing/operational alliances formed by its competitors. The percentage of routes on which the Company competes with carriers having substantially lower operating costs has grown significantly over the past decade, and the Company now competes with LCCs on most of its domestic network. In addition, the Company must compete with carriers that have recently reorganized or are reorganizing, including under the protection of Chapter 11 of the Bankruptcy Code. It is possible that one or more other competitors may seek to reorganize in or out of Chapter 11. Successful completion of such out-of-court or Chapter 11 reorganizations could present the Company with competitors with lower operating costs derived from renegotiated labor, supply and financing contracts.

Certain alliances have been granted immunity from anti-trust regulations by governmental authorities for specific areas of cooperation, such as joint pricing decisions. To the extent alliances formed by its competitors can undertake activities that are not available to the Company, the Company's ability to effectively compete may be hindered.

Pricing decisions are significantly affected by competition from other airlines. Fare discounting by competitors has historically had a negative effect on the Company's financial results because the Company is generally required to match competitors' fares because failing to match would provide even less revenue. More recently, the Company has faced increased competition from carriers with simplified fare structures, which are generally preferred by travelers. In addition, in January 2005, Delta implemented a U.S.-wide simplified fare structure initiative, which the Company matched in most domestic markets. No assurance can be given that any fare reduction or fare simplification initiative will be offset by increases in passenger traffic, a reduction in costs or changes in the mix of traffic that would improve yields. In addition, several air carriers have recently reorganized or are reorganizing under Chapter 11 of the United States Bankruptcy Code, including United and US Airways. It is possible that other competitors may seek to reorganize in or out of Chapter 11. Historically, air carriers involved in reorganizations have undertaken substantial fare discounting in order to maintain cash flows and enhance customer loyalty.

**Increased Pricing Transparency** The increased use of the Internet as a travel distribution channel is resulting in a continuous increase in pricing transparency. The Internet has enabled cost conscious customers, including business travelers, to more easily obtain the lowest fare on any given route, which has reduced the Company's pricing power.

**Cost Reduction Efforts** As discussed in the Overview to this Item, the Company continues to seek to reduce its costs. The ability of the Company to further reduce its costs, particularly without affecting operational performance and service levels, is not assured.

**Credit Ratings** Since the Terrorist Attacks, AMR's and American's credit ratings have been lowered to significantly below investment grade. These reductions have increased borrowing costs and otherwise adversely affected borrowing terms, and limited borrowing options. Additional reductions in the credit ratings could further increase borrowing or other costs and further restrict the availability of future financing.

**Availability and Terms of Financing** To maintain sufficient liquidity as the Company continues to implement its restructuring and cost reduction initiatives, and because the Company has significant debt obligations maturing in the next several years, as well as substantial pension funding obligations, the Company will need continued access to additional financing, but there can be no assurance that such financing will be available on acceptable terms, if at all. The Company's ability to obtain future financing or to sell assets could be adversely affected because American has fewer unencumbered assets available than in years past. A very large majority of the Company's aircraft assets (including virtually all of the aircraft eligible for the benefits of Section 1110 of the U.S. Bankruptcy Code) have been encumbered. In addition, the market value of the Company's aircraft assets has declined in recent years and those assets may not maintain their current market value. Moreover, the Company's recent financial results, its substantial indebtedness, the difficult revenue environment it faces, and its reduced credit ratings, coupled with high fuel prices and the financial difficulties experienced in the airline industry, adversely affect the availability and terms of financing for the Company. The inability of the Company to obtain additional financing on acceptable terms would have a material adverse impact on its operations.

**Jackson App. 101**