American Airlines, Inc. v. Yahoo! Inc. et al                                                                              Doc. 163

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br> Plaintiff, <br><br> -v.- <br><br> YAHOO! INC. and OVERTURE SERVICES, INC. d/b/a YAHOO! SEARCH MARKETING, <br><br> Defendants. | Case No. 4:08-CV-626-A |

## DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF BASIL G. ENGLIS

Dockets.Justia.com

## TABLE OF CONTENTS

                                                                                                          **Page**

TABLE OF AUTHORITIES ............................................................................................... ii

INTRODUCTION ............................................................................................................... 1

FACTUAL BACKGROUND .............................................................................................. 3

LEGAL STANDARD .......................................................................................................... 5

ARGUMENT ....................................................................................................................... 6

I.      DR. ENGLIS' TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS BASED ON A SURVEY THAT DOES NOT MEASURE CONFUSION. ................................................................................................ 6

II.     DR. ENGLIS' TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS BASED ON IRRELEVANT RESULTS AND THEREFORE UNRELIABLE METHODOLOGY. .................................................................. 8

III.    DR. ENGLIS' TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS NOT BASED ON A REPRESENTATIVE SAMPLE OF THE RELEVANT POPULATION. ........................................................................ 9

IV.    DR. ENGLIS' TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS NOT BASED ON THE APPROPRIATE SURVEY UNIVERSE. ............................ 10

V.     THE CONFUSION MEASURED BY DR. ENGLIS' TEST SCREENSHOTS IS NOT THE RELEVANT CONFUSION THAT IS REPRESENTED IN THE ENGLIS REPORT. ................................................ 11

VI.    DR. ENGLIS' TESTIMONY SHOULD BE EXCLUDED BECAUSE THE SURVEY QUESTIONS ASKED ARE LEADING AND VAGUE, AND DO NOT ELICIT RELEVANT EVIDENCE OF CONFUSION. ......................... 13

CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Amstar Corp. v. Domino's Pizza, Inc.*,
   615 F. 2d 252 (5th Cir. 1980) ............................................................................10, 11

*Daubert v. Merrell Dow Pharms., Inc.*,
   509 U.S. 579 (1993) ............................................................................................5, 6

*IQ Prods. Co. v. Pennzoil Prods. Co.*,
   305 F.3d 368 (5th Cir. 2002) ....................................................................................9

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ............................................................................................5, 6

*Mary Kay, Inc. v. Weber*,
   601 F. Supp. 2d 839 (N.D. Tex. 2009) ........................................................7, 9, 10

*MasterCard Int'l, Inc. v. First Nat'l Bank of Omaha, Inc.*,
   No. 02 CIV.3691 (DLC), 2004 U.S. Dist. LEXIS 2485 (S.D. N.Y. Feb. 23, 2004) ...............14

*Moore v. Ashland Chem., Inc.*,
   157 F.3d 269 (5th Cir. 1998) ....................................................................................5

*Scott Fetzer Co. v. House of Vacuums Inc.*,
   381 F.3d 477 (5th Cir. 2004) ................................................................6, 8, 10, 11

*Sears, Roebuck and Co. v. Menard, Inc.*,
   No. 01 C 9843, 2003 U.S. Dist. LEXIS 951 (N.D. Ill. Jan. 24., 2003) ...........13, 14

**RULES**

Fed. R. of Evid. 702 ............................................................................................1, 3, 5

## INTRODUCTION

Defendants move to exclude the testimony of Dr. Basil G. Englis, an expert for American Airlines who opines that a "significant number of consumers" are "likely to be confused" when conducting a search for the term "American Airlines" and being presented with search results containing Sponsor Results. (*See* Appendix in Support of Defendants' Motion to Exclude Testimony of Basil Englis ("Englis App") 007 (Englis Expert Report ("Rpt.") ¶ 11).) Dr. Englis' opinions, however, fail to pass muster under Federal Rule of Evidence 702 for reasons amply in evidence during his deposition, which was taken just today.[1] Among those reasons are:

- Dr. Englis' survey results suggest that people were less "confused" by the Sponsor Results than they were by the search results linking to American Airlines' own websites. When shown a stimulus purporting to represent a Yahoo! Search page and asked to identify all links that would take an internet user to an American Airlines website, three people gave the "wrong" answer for the eBay Sponsor Result (Englis App. 048-049 (Stimuli 1 document Q3_1).) Twenty-two people gave the wrong answer for the globe-travels.com Sponsor Result. (*Id.*) But these numbers are dwarfed by the 101 people who gave the wrong answer for AA.com (*Id.*), and the 166 people and 193 people, respectively, who gave the "wrong" answer for the two American Airlines-owned listings just below AA.com in the organic search results (*Id.*). Whatever "confusion" Dr. Englis was finding, it was clearly not the result of Yahoo!'s Sponsored Search advertisements.

---

[1] Dr. Englis' deposition was taken on Friday, November 6, 2009. The rough transcript was received by counsel this evening, too late for specific references to be included in this brief. Defendants will submit relevant excerpts from the Englis transcript with its Reply papers.

- Dr. Englis' question about whether American "endorsed" websites was so confusing that even Dr. Englis himself could not answer it. His testimony was that he understood that Yahoo!'s advertisers globe-travels.com, airline.bookcheaptickets.com, and buy-cheaptickets.com all sold American Airlines tickets, once he reviewed the landing pages for those websites during his deposition. He accordingly could not say whether American Airlines endorsed these three websites. How then could he have expected his respondents to be able to answer that question, when asked about these websites that sold American Airlines tickets?

- Verbatim responses from survey respondents that Dr. Englis classified as "confused" show that the respondents were not confused by the websites or the links to them, but by the questions that Dr. Englis' team was posing. (Englis App. 050-052 (Test 1, Qn 1 (Q3_1) Verbatim; Test 1, Qn 2 (Q4_3) Verbatim; and Test 2, Qn 1 (Q3_18)).)

- Dr. Englis' test screenshot dates from August 2007, when Orbitz, Expedia, Travelocity, and Cheaptickets had all promised American Airlines that they would no longer bid on American's marks in search marketing. Thus, his survey includes none of these household names (three of them familiar to Dr. Englis from before he began this work). The test stimulus is instead comprised entirely of lesser-known entities (other than EBay, which generated an insignificant portion of the alleged "confusion"), which Dr. Englis had never heard of before beginning this study.

- Dr. Englis claims to have chosen this unrepresentative sample in significant part because it was a screenshot about which American Airlines had complained to Yahoo!. American Airlines' complaint about the screenshot was limited to the text of a single link, however, and Yahoo! promptly resolved American's concern to American's full satisfaction. Although Yahoo! took down the advertisement for airline.bookcheaptickets.com in response to American's request, Dr. Englis did not separate out any confusion this advertisement may have caused.

- Dr. Englis cannot identify the "confusion" generated by *any* of the specific advertisements in the sample, as he chose not to capture that information from his survey data. Yet the law requires any analysis of confusion in a nominative fair use case to pay close attention to the text and context of the specific advertisements in question.

The most Dr. Englis has done is measure irrelevant confusion, a type of confusion that he concedes should be deducted from any "confusion" calculation. Dr. Englis conducted a survey, but it was unrepresentative and used irrelevant advertisements. Dr. Englis compounds his work's failings by extrapolating his limited and flawed data to the entire set of purportedly infringing advertisements at issue in this litigation. These errors and omissions cause Dr. Englis to base his ultimate opinion on insufficient data and unreliable methods. Accordingly, his testimony should be excluded under Federal Rule of Evidence 702.

## FACTUAL BACKGROUND

Dr. Englis conducted a mall survey (meaning his team approached people who were walking in shopping centers). In the survey, respondents were instructed to type "American Airlines" into a simulated Yahoo! search engine search field, then instructed to look at a page

that was displayed. Respondents were then presented with one of three pages, each of which displayed advertisements for online travel agencies that were approved by American Airlines to act as agents, or were otherwise permitted to display an advertisement: 1) a simulated Yahoo! search results page that Dr. Englis represents was actually taken from the Yahoo! website (called "Stimulus 1" (Englis App. 028)); 2) a similar Yahoo! search result page that removed the term "American" from the advertisements displayed on the page ("Stimulus 2" (Englis App. 029)); or 3) an entirely invented "control" page that purported to screen out irrelevant confusion, or "noise" (the "Control Stimulus" (Englis App. 030)). Respondents were then asked which link or links would take the respondent to an American Airlines company website, and which link or links were *endorsed* by American Airlines.

Dr. Englis added together the alleged measured confusion for each ad in Stimulus 1 and Stimulus 2, and subtracted the measured confusion from the Control Stimulus in each Stimulus to arrive at what he terms a confusion rate. Among the so-called "clicks" that Dr. Englis tallied were clicks on American Airlines' approved online ticketing agents, clicks on an eBay Sponsor Result that advertised American Airlines collectibles, and clicks on a link to sign up for an American Airlines-endorsed AAdvantage MasterCard. Dr. Englis states 49.6% of respondents to Stimulus 1 clicked on one of the non-American Airlines website links described there (Englis App 022 (Rpt. ¶ 64)), and 24.8% of respondents to Stimulus 2 clicked on a non-American Airlines website link (Englis App. 023 (Rpt. ¶ 68)). After subtracting 9.6% (the confusion rate he claims to have identified in the Control Stimulus), Dr. Englis concludes that the total confusion rate in Stimulus 1 and Stimulus 2 was 40.0% and 15.2%, respectively. (Englis App. 022-024 (Rpt. ¶¶ 65, 69, 72).)

In the course of his work, Dr. Englis used a screenshot that was altered from what in fact had been displayed on the Yahoo! search engine. Moreover, ads that were included in Dr. Englis' survey screenshots included ads for companies that were among the least frequent ads to appear on Yahoo! search results pages for searches for "american airlines."

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that "scientific, technical, or other specialized knowledge" may be admissible where such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." FED. R. EVID. 702. However, such testimony is only admissible "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* The party who proffers the expert testimony bears the burden of demonstrating its admissibility. *Moore v. Ashland Chem., Inc.*, 157 F.3d 269, 276 (5th Cir. 1998) (en banc).

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and its progeny, the district court is a "gatekeeper," charged with the duty to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), the United States Supreme Court held that the district court's gatekeeping obligation applies to *all* expert testimony, not just "scientific" testimony of the sort addressed in *Daubert*. Regardless of whether an expert relies "upon professional studies or personal experience," he or she must employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. In determining the admissibility of expert testimony, the focus is on the specifics of the testimony: the "particular method of analy[sis]" and its reasonableness "regarding *the*

*particular matter to which the expert testimony was directly relevant.*" *Id.* at 154 (emphasis in original). Subjectivity is to be avoided, and "*ipse dixit* of the expert" will not suffice. *Id.* at 155, 157. The law requires some form of "reasonable reliability criteria." *Id.* at 158. Exclusion is the only remedy sufficient to protect against the inherent power of expert evidence—which can be "quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.

The Fifth Circuit has made clear that "serious flaws in a survey will make any reliance on that survey unreasonable. . . . Otherwise, any survey, no matter how tendentious, would force the parties to trial." *Scott Fetzer Co. v. House of Vacuums Inc.*, 381 F.3d 477, 488 (5th Cir. 2004) (affirming grant of summary judgment for defendant where survey failed to present a material issue of fact as to consumer confusion).

## ARGUMENT

### I. DR. ENGLIS' TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS BASED ON A SURVEY THAT DOES NOT MEASURE CONFUSION

Dr. Englis opines that clicks on links to American-approved online travel agents, to American Airlines collectibles on eBay, or to sign up for an American Airlines-endorsed AAdvantage MasterCard demonstrate confusion. Even using his faulty methodology, Dr. Englis was only able to reach a 21.9% rate of confusion for Test 1 (Englis App. 023 (Rpt. Table 3)) and a 10.0% rate of confusion for Test 2 (Englis App. 024 (Rpt. Table 4)) for the question "Which link or links, if any, do you think would take you to an American Airlines company website?" (Englis App. 017 (Rpt. ¶ 51).) Dr. Englis used a second question in order to increase the number of clicks on non-American websites: "Now please look at the links *that you did not mention.* Which link or links, if any, do you think are endorsed by American Airlines?" (Englis App. (Rpt. ¶ 52 (emphasis added)).) Dr. Englis provided no guidance to the meaning of "endorsed" other than to have interviewers offer the word "approved" if a respondent "asked for

clarification." (*Id.* ("Which link or links, if any, do you think are *approved* of by American Airlines?" (emphasis added)).)

Even putting aside what "endorsed" and "approved" meant to people who had just been walking around a shopping mall, Dr. Englis does not acknowledge in his report that American certainly can be said to approve the OTAs that it authorizes to sell American tickets. At his deposition, he himself was unable to say whether American endorsed any of the three websites for companies that sell American tickets, yet he expected his survey respondents to make that assessment.

Indeed, in *Mary Kay, Inc. v. Weber*, a recent case in the Northern District of Texas involving keyword advertising on the internet, the district court deemed purported confusion based on the mere fact that a website sells a trademarked product to be "legally irrelevant confusion [which] must be weeded out before the evidence can be presented to the jury." *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 849 (N.D. Tex. 2009) (stating "the court cannot allow the jury to hear the bald statement that forty five percent of consumers were confused" where the statistic was based on "legally irrelevant confusion"). Accordingly, the number of respondents clicking on OTA website links in response to the "endorsed by" question is irrelevant because those clicks do not demonstrate confusion.

The other ads are similarly irrelevant to identifying confusion. Of the seven ads displayed on each of the stimuli pages, only two link to websites that are not or were not OTAs. (Englis App. 032-034 (AA RFA Nos. 42, 45, 55).) The first is the worldwide famous auction website eBay offering "American Airlines Collectibles." (Englis App. 027-030 (Rpt. Ex. I).) The second is creditstep.com, which offered customers the opportunity to apply for "American Airlines AAdvantage MasterCard" and earn 15,000 American "bonus miles." (*Id.*) American

not only "approves of" or "endorses" a credit card in this manner, but even *promotes* such a card with airline incentive "bonus miles."

Because clicks on links to OTAs and other advertiser websites in Stimulus 1 and 2 do not show confusion, Dr. Englis should not be allowed to testify that respondents who clicked on OTA links were confused.[2]

## II. DR. ENGLIS' TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS BASED ON IRRELEVANT RESULTS AND THEREFORE UNRELIABLE METHODOLOGY

Dr. Englis' survey is not based upon sufficient facts or reliable methods: any "confusion" he claims to have found merely is based on the aggregation of clicks on several different advertisements, with no determination of the amount of confusion attributable to each advertisement. This methodology is inherently flawed, because the stimuli advertisements include non-actionable advertisements. For example, three of the results, "globe-travels.com," "BookAirlineTickets.com," and "Airlines.Buy-Cheaptickets.com" are not actionable because the advertisers were American Airlines' agents and American had authorized them to sell American Airlines' tickets. This constitutes nominative fair use, and therefore is a non-infringing use of the mark. *See Fetzer*, 381 F.3d at 484. An additional reason why "Airlines-BuyCheapTickets.com" is not actionable is because when American requested that the advertisement be taken down, Yahoo! complied immediately — even by American's standards. (*See* Englis App. 042-044 (AAG-0128141-43 ("Wow — talk about responsive!")).) The remaining stimuli websites included one for American Airlines "collectibles" on eBay, and one for an American Airlines AAdvantage Mastercard (even though the instructions to the

---

[2] Indeed, as became apparent in his deposition, respondents were less "confused" by the Sponsor Results than they were by the search results linking to American Airlines' own websites. (Englis App. 048-049 (Stimuli 1 document Q3_1).)

participants were to assume they were searching for airline tickets). (*see* Englis App. 018-019 (Rpt. Tables 1 and 2 ).) Dr. Englis testified that he does not know how much confusion is attributable to each advertisement.

Where expert testimony is based on more than one factor, and one of those factors is deemed to be irrelevant, the expert's findings are flawed and therefore inadmissible. *See IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376-377 (5th Cir. 2002). Here, Dr. Englis has based his entire opinion on the aggregate effect of several advertisements, some of which are, on their face, clearly irrelevant to the question of confusion. Dr. Englis has testified that he has not determined from his own data the amount of confusion that is attributable to each advertisement. Dr. Englis' testimony should therefore be excluded. *See Mary Kay*, 601 F. Supp. 2d at 849. Both Dr. Englis' data and methodology are deeply flawed and Dr. Englis' testimony must therefore be excluded in its entirety.

### III. DR. ENGLIS' TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS NOT BASED ON A REPRESENTATIVE SAMPLE OF THE SPONSOR RESULTS AT ISSUE IN THIS LAWSUIT

Dr. Englis' survey is not based upon sufficient facts or reliable methods for an independent reason: it does not evaluate a representative sample of the allegedly confusing Sponsor Results at issue in this case even for the one mark "American Airlines." (Englis App. 024 (Rpt. ¶ 72).) Rather than include advertisements for any of the well-known online travel agents, *e.g.*, Orbitz, Expedia, Travelocity and Cheaptickets, Dr. Englis' test screenshot included only advertisements for lesser known entities that he himself did not know before beginning his research.

Dr. Englis' survey constructs and treats as representative a single "test stimulus" screenshot. This is not representative of all Yahoo! Sponsor Results, even just for the one mark "American Airlines," for at least two reasons. First, American Airlines' official website is not

among the Sponsor Results, as is usually the case. By contrast, Paragraphs 61 and 62 of the Complaint show more typical screen shots, where one of the listed Sponsor Results is American Airlines' and clearly marked "Official Site."

Second, none of the major OTAs or MSEs is among the Sponsor Results. Yahoo!'s click data reveals that the combined total of clicks represented by "globe-travels.com," "BookAirlineTickets.com," and "Airlines.Buy-CheapTickets.com" together pales in comparison to the click volume that goes to "orbitz.com," "travelocity.com," "kayak.com," and other large advertisers, one or more of whose Sponsor Results usually appears in response to a keyword search for "American Airlines." (see, e.g., Defs' MSJ App. 0654-658 (filed October 7, 2009); see, e.g., First Am.Compl. (Docket No. 98) ¶ 66.)

In this sort of case the Fifth Circuit explains, "[c]ontext is especially critical." *Fetzer*, 381 F.3d at 485; *accord Mary Kay*, 601 F. Supp. 2d at 857 (purchase of trademarked keywords to advertise on Google the sale of cosmetics is nominative fair use unless the "actual language of the [accused] ad improperly suggests affiliation"). And where "context is especially critical," a survey where the context is *atypical* — where the stimulus omits Sponsor Results for "aa.com," "travelocity.com," "orbitz.com," and so on — is not reliable evidence for what survey participants would have thought if they were confronted with search results including these more representative terms. It is therefore unreliable and unscientific to extrapolate from an unrepresentative "sample" of the allegedly confusing advertisements, as Dr. Englis has done here. Dr. Englis' testimony should accordingly be excluded.

### IV. DR. ENGLIS' TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS NOT BASED ON THE APPROPRIATE SURVEY UNIVERSE

Dr. Englis' survey is inherently unreliable because it is not based on the relevant survey universe. For surveys on consumer confusion, "[t]he appropriate universe should include a fair

sampling of those purchasers most likely to partake of the alleged infringer's goods or services." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980) (completely discounting survey results of women at home during the day because the primary customers of accused infringer Domino's Pizza are "young, single, male college students"). In assessing the validity of a consumer survey, courts in the Fifth Circuit look to the manner in which the survey was conducted, and look "especially" to the adequacy of the universe. *Fetzer*, 381 F.3d at 487.

Dr. Englis does not even attempt to assert that the sampling is representative of the relevant population. (*See* Englis App. 012-014 (Rpt ¶¶30-36).) In fact, Dr. Englis himself has stated that, where the sample was selected using the mall intercept approach, as he did here, "[a]ny resulting sample is, at best, representative of those who shop in malls and not of the [relevant] population." (Englis App. 047 ("Exhibit 21" – critique of Deborah Jay's report at 4).) Therefore, by Dr. Englis' own statements, the sampling on which he bases his opinion in this case is not in fact representative of the relevant population. *See also* Fallows 2008 Pew Research.

The inadequacies of the survey universe make Englis' survey results inherently unreliable, and should therefore be excluded. *See Amstar Corp.*, 615 F.2d at 264; *Fetzer*, 381 F.3d at 488.

## V. THE TEST SCREENSHOTS IN DR. ENGLIS' SURVEY WERE IMPROPERLY MODIFIED FROM THE ACTUAL YAHOO! SCREENSHOT

Dr Englis claims that test stimulus #1 is a screenshot taken from Yahoo! in August, 2007 (Englis App. 028 (Ex. I at 2 ("Original Yahoo! search results page…"); *see also* Englis App. 018 (Rpt. ¶ 54 & n. 40 (claims the first test stimulus was replicated from the actual screenshot in AAY-15302).) Therefore, he claims to be measuring confusion from an actual Yahoo! screenshot in the survey. However, despite his representations through the report, Dr. Englis

changed that screenshot in ways that American's own expert Dr. Goodstein claims increases the likelihood of confusion. Stimulus #1 never appeared on Yahoo! as he represents.

Dr. Englis cites AAY-15302 (the "original screenshot") as the stimulus screenshot being tested for confusion. (Englis App. 018 (Rpt. fn 40); 037-041 (AAY-15298-15302).) When the original and the actual screenshot he used to measure confusion are compared side by side, numerous material changes are apparent:

- In the original, the URLs identifying the source of the top ads appear right under the ad links. In Englis' test stimulus the URLs are moved to a third line below the ad copy further away from the links. (Englis App. 027-030 (Rpt. Ex. I); *compare* Englis App. 041 (AAY-000015302).)

- In the original, the shading of the advertisement boxes is far easier to see than in Dr. Englis altered version. (*Id.*)

- In the original, "SPONSOR RESULTS" appears in the top ad box very near the end of the ad text. In the altered screenshot the "SPONSOR RESULTS" text appears much farther to the right across the page away from the top ads. Similarly, in the original the "SPONSOR RESULTS" text also appears directly above the ads on the right side of the page. The altered screenshot moves the "SPONSOR RESULTS" text from directly above the ads on the right side to the farthest point on the right that it could be placed on the page, separated from the ads entirely.

Each of these issues outlined above are equally true of the ads displayed at the bottom of the altered screenshot.

Dr. Englis should not be permitted to testify that he measured confusion for a screenshot that he did not use. His results are predicated on the methodology of using an actual Yahoo! screenshot, and he claims to have done so. He did not. Dr. Englis' testimony should be entirely excluded on this ground.

VI. **DR. ENGLIS' TESTIMONY SHOULD BE EXCLUDED BECAUSE THE SURVEY QUESTIONS ASKED ARE LEADING AND VAGUE, AND DO NOT ELICIT RELEVANT EVIDENCE OF CONFUSION**

Respondents were asked two questions to elicit evidence of confusion: "Which link or links, if any, do you think would take you to an American Airlines company website?" and "Now please look at the links that you did not mention. Which link or links, if any, do you think are endorsed by American Airlines?" These questions are closed questions, and are leading questions in that they suggest an answer is possible based on the scant evidence available from a single screenshot (*i.e.*, "I don't know" or "no opinion" were not offered as options). Leading questions produce unreliable results. *Sears, Roebuck and Co. v. Menard, Inc.*, No. 01 C 9843, 2003 U.S. Dist. LEXIS 951, at *8 (N.D. Ill. Jan. 24., 2003). The second question, by asking the participant to focus on the links he or she did not mention the first time, further suggests that there was something incomplete or inadequate about the initial response, and falsely prods respondents to identify additional websites as "endorsed by" American Airlines.

The ambiguity and confusion in the survey questions is exacerbated by a "bait and switch" aspect to the survey's structure. Survey participants are initially told to "imagine you are planning a trip and are going to search for information about airline tickets using the internet." (Englis App. 017 (Rpt. ¶ 50).) They are further told to enter the search term "American Airlines" to begin this search. Up to this point, the survey is taking a reasonable strategy for finding "information about airline tickets." However, the respondents are then asked questions that have little or no bearing on how one finds "information about airline tickets." Whether or not a link

takes one to an American Airlines company website, or is endorsed by American Airlines, is likely irrelevant to finding "information about airline tickets." This technique ensures confusion as to the task rather than actual confusion as to what each link represents. This artificially inflates the rate of confusion.

Finally, none of the survey questions is designed to measure relevant confusion because the survey does not allow the user to click through to the associated website, and thus the survey asks respondents to make judgments about the source and sponsorship of websites without the information on which they would normally rely in making such an assessment. "This exercise bears little resemblance to the lengthy and thoughtful decision-making process that occurs in the real world" before a consumer spends (usually) hundreds of dollars on purchasing an airline ticket, and therefore the relevance of the survey results is not established. *See MasterCard Int'l, Inc. v. First Nat'l Bank of Omaha, Inc.*, No. 02 CIV.3691 (DLC), 2004 U.S. Dist. LEXIS 2485, at *29 (S.D. N.Y. Feb. 23, 2004); *Sears*, 2003 U.S. Dist. LEXIS 951, at *5-6 ("survey distorted marketplace conditions by taking the advertisements out of context," presenting just clips rather than the entire 30-second television commercial or 10-second radio advertisements). Irrelevant confusion should be given no weight. Dr. Englis' inaccurate calculations of rates of confusion for Test 1 and Test 2, which include irrelevant confusion, should not be allowed to be presented as actual calculations of rates of confusion.

## CONCLUSION

For all of the foregoing reasons, the Court should exclude the testimony of Dr. Basil Englis.

Dated: November 6, 2009

Respectfully submitted,

_____
David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
D. Anthony Rodriguez (*pro hac vice*)
Alison M. Tucher (*pro hac vice*)
Brooks M. Beard (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH MARKETING

### CERTIFICATE OF CONFERENCE

I hereby certify that on the 6th day of November, 2009, I conferred with Lars Berg, counsel for Plaintiff, and Mr. Berg confirmed that Plaintiff was opposed to the relief sought herein.

_____
Scott A. Fredricks

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Plaintiff's counsel, as indicated below, on the ___6th___ day of November 2009:

| | |
|---|---|
| Dee J. Kelly<br>Dee J. Kelly, Jr.<br>Lars L. Berg<br>KELLY HART & HALLMAN, LLP<br>201 Main Street, Suite 2500<br>Fort Worth, TX 76102 | ***Via Hand Delivery*** |
| Frederick Brown<br>George A. Nicoud III<br>Jason Stavers<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94104 | ***Via Federal Express*** |
| Howard S. Hogan<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036 | ***Via Federal Express*** |

_____
Scott A. Fredricks

sf-2761815