American Airlines, Inc. v. Yahoo! Inc. et al | Doc. 165

CTJ/RMT

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DROP BOX
NOV - 6 2009
11:33
CLERK, U.S. DISTRICT COURT
By _____
Deputy

AMERICAN AIRLINES, INC.,

   Plaintiff,

 -v.-

YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH
MARKETING,

   Defendants.

Case No. 4:08-CV-626-A

## DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF RONALD C. GOODSTEIN

Dockets.Justia.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ........................................................................................................................ 1

FACTUAL BACKGROUND ....................................................................................................... 1

LEGAL STANDARD .................................................................................................................. 3

ARGUMENT ............................................................................................................................... 4

I.    DR. GOODSTEIN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HIS PURPORTED ANALYSIS, ON ITS FACE, IS INCOMPLETE AND IRRELEVANT. ......................................................................... 4

II.    DR. GOODSTEIN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS NOT BASED ON SUFFICIENT FACTS OR RELIABLE METHODS. ........................................................................................ 7

III.    DR. GOODSTEIN'S TESTIMONY REGARDING THE ENGLIS SURVEY IS UNRELIABLE AND CUMULATIVE. ............................................ 9

CONCLUSION ............................................................................................................................ 9

CERTIFICATE OF CONFERENCE ........................................................................................... 10

CERTIFICATE OF SERVICE .................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Bracco Diagnostics, Inc. v. Amersham Health, Inc.,*
  No. 03-6025, 2009 U.S. Dist. LEXIS 23560 (D.N.J. Mar. 25, 2009)..................8, 9

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
  509 U.S. 579 (1993)..................3, 4

*IQ Products Co. v. Pennzoil Products Co.,*
  305 F.3d 368 (5th Cir. 2002) ..................7

*Kumho Tire Co. v. Carmichael,*
  526 U.S. 137 (1999)..................3, 4

*Leverette v. Louisville Ladder Co.,*
  183 F.3d 339 (5th Cir. 1999) ..................4

*Louis Vuitton Malletier v. Dooney & Bourke, Inc.,*
  525 F. Supp. 2d 576 (S.D.N.Y. 2007)..................4

*Marlin v. Moody Nat'l Bank, N.A.,*
  248 Fed. Appx. 534 (5th Cir. 2007)..................8

*Martinez v. Porta,*
  601 F. Supp. 2d 865 (N.D. Tex. 2009) ..................4, 6

*Moore v. Ashland Chem., Inc.,*
  157 F.3d 269 (5th Cir. 1998) ..................3

*New Kids on the Block v. News America Pub., Inc.,*
  971 F.2d 302 (9th Cir. 1992) ..................5

*Salas v. Carpenter,*
  980 F.2d 299 (5th Cir. 1992) ..................7, 9

*Scott Fetzer Co. v. House of Vacuums, Inc.,*
  381 F.3d 477 (5th Cir. 2004) ..................5, 6

*Smith v. Ames Department Stores, Inc.,*
  988 F. Supp. 827 (D.N.J. 1997)..................8

*Tiffany (NJ) Inc. v. eBay, Inc.,*
  576 F. Supp. 2d 463 (S.D.N.Y. 2008)..................8

**RULES**

FED. R. OF EVID.
   403...................................................................................................................9
   702.......................................................................................................1, 3, 7, 9

**OTHER AUTHORITIES**

Kirkpatrick, Richard L., *Likelihood of Confusion in Trademark Law*,
   § 1.8.4, at 1-58 (PLI 2008)...........................................................................7

Plevan, Kenneth A., *Daubert's Impact on Survey Experts in Lanham Act Litigation*,
   95 Trademark Rep. 596, 600 (May-June 2005) ............................................7

# INTRODUCTION

Defendants Yahoo! Inc. and Overture Services, Inc., d/b/a Yahoo! Search Marketing (together "Yahoo!"), move to exclude the testimony of Dr. Ronald C. Goodstein, a marketing professor whom Plaintiff American Airlines, Inc. ("American") has retained to testify that there is a "strong likelihood" of customer confusion as a "direct result" of Yahoo!'s Sponsored Search advertising practices. *See* Appendix in Support of Defendants' Motion to Exclude Testimony of Ronald C. Goodstein ("Goodstein App.") 07 (Expert Report of Ronald C. Goodstein, dated Aug. 2009 ("Goodstein Rpt") ¶ 9). Dr. Goodstein's testimony should be excluded under Federal Rule of Evidence 702 because (i) he fails to acknowledge the doctrine of nominative fair use and relies on irrelevant facts to offer a useless opinion on an ultimate issue, and (ii) his opinion is not based on sufficient facts or reliable methods.

# FACTUAL BACKGROUND

Dr. Goodstein would opine on an ultimate issue — consumer confusion. He bases his opinion on what he calls his analysis of the following factors:

> (a) the strength of the plaintiff's trademark; (b) the similarity between the trademarks at issue; (c) the similarity between the products or services; (d) the identity of the retail outlets and purchasers; (e) the identity of the advertising media used; (f) evidence of actual confusion; (g) the intent of the defendant; and (h) the conditions under which consumers make purchase decisions.

(Goodstein App. 11 (Rpt. ¶ 21); *see also* Goodstein App. 11-42 (Goodstein Rpt. ¶¶ 22-110).) He opines that he believes purchase confusion and initial interest confusion have occurred. (Goodstein App. 42-45 (Goodstein Rpt. ¶¶ 111-118).) He also states that the study performed by another of American's offered experts, Dr. Basil Englis, is valid. (Goodstein App. 45-47 (Rpt. ¶¶ 119-122).) Dr. Goodstein makes no mention whatsoever of the doctrine of nominative fair use. Dr. Goodstein offers a number of conclusions, each of which do not tie to facts:

- "[T]he American trademarks at issue in this case have significant brand equity and are very strong, . . . significantly contribut[ing] to consumer confusion when these marks are used by others." (Goodstein App. 16 (Rpt. ¶ 36); *see also* Goodstein App. 16-17 (Rpt. ¶ 37.).) This conclusory statement is provided without any evidence whatsoever.

- Yahoo!'s "sponsor result" label for its paid search results is "inherently confusing." (Goodstein App. 08 (Rpt. ¶ 12).) He bases his conclusion on speculation as to people's mental perceptions. (Goodstein App. 18 (Rpt. ¶ 41).)

- Online travel agencies ("OTA's") are in competition with American, and this "close competitive proximity" contributes to consumer confusion. (Goodstein App. 20 (Rpt. ¶ 47).) However, Dr. Goodstein fails to acknowledge that OTA's sell American's products pursuant to a contractual relationship that American created and can alter at will, and thus the responsibility for any "competition" (if that even is what authorized distribution channels can be called) lies solely with American.

- American has "received complaints from consumers either about specific paid search results, or about [consumers'] belief that they had booked tickets through American when, in reality, they had booked through one of the online travel agents for whom Yahoo published sponsor results." (Goodstein App. 26 (Rpt. ¶ 62.).) However, none of the cited complaints support his assertion that consumers are confused as to whether they are booking through an OTA or AA.com as a result of Yahoo!'s search advertising programs. For example, one of the cited complaints reads: "AA almost never notifies me about delays, even

though I put a request in my profile. AA 'rewards' people for booking directly with them but ORBITZ (your partner) always notifies me about delays at least 2-3 hours before departure. Why can't you notify me before ORBITZ does?" (Goodstein App. 74 (AAY-000627637).) This is a complaint about American's service, not an example of confusion. The consumer clearly understands that American has provided poorer quality service than the OTA.

## LEGAL STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 provides that "scientific, technical, or other specialized knowledge" may be admissible where such testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue . . . ." FED. R. EVID. 702. However, such testimony is only admissible "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." *Id.* The party who proffers the expert testimony bears the burden of demonstrating its admissibility. *Moore v. Ashland Chem., Inc.*, 151 F.3d 269, 276 (5th Cir. 1998) (en banc).

Under *Daubert v. Merrell Dow Pharmaceuticals, Inc.* and its progeny, the district court is a "gatekeeper," charged with the duty to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. 579, 597 (1993). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), the United States Supreme Court held that the district court's gate-keeping obligation applies to *all* expert testimony, not just "scientific" testimony of the sort addressed in *Daubert*. Regardless of whether an expert relies "upon professional studies or personal experience," he or she must employ "the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Id.* at 152. In determining the admissibility of expert testimony, the focus is on the specifics of the

testimony – the "particular method of analy[sis]" and its reasonableness "regarding *the particular matter to which the expert testimony was directly relevant.*" *Id.* at 154 (emphasis in original). Subjectivity is to be avoided, and "*ipse dixit* of the expert" will not suffice. *Id.* at 155, 157. The law requires some form of "reasonable reliability criteria." *Id.* at 158. Exclusion is the only remedy sufficient to protect against the inherent power of expert evidence—which can be "quite misleading because of the difficulty in evaluating it." *Daubert*, 509 U.S. at 595.

Expert testimony premised on an incorrect statement of law is particularly amenable to exclusion by the Court. Such expert testimony is inherently irrelevant and rests on unreliable methodology. In fact, such testimony can serve no purpose other than to mislead the jury into adopting an improper, and unlawful, analysis to reach its conclusion. Expert testimony therefore is properly excluded where the expert ignored the proper legal standard in reaching his conclusion. *See Leverette v. Louisville Ladder Co.*, 183 F.3d 339, 341 (5th Cir. 1999) (affirming exclusion of expert testimony where expert failed to consider requirements under Mississippi law for finding a manufacturing defect); *Martinez v. Porta*, 601 F. Supp. 2d 865, 866-67 (N.D. Tex. 2009) (excluding expert testimony as irrelevant because it was based on an erroneous legal premise). Accordingly, in trademark cases, courts have refused to allow expert testimony where that testimony was not premised on the correct legal standard. *See Louis Vuitton Malletier v. Dooney & Bourke, Inc.*, 525 F. Supp. 2d 576, 661, 663-64 (S.D.N.Y. 2007) (excluding expert testimony where expert's opinion did not fit the legal standards for dilution).

## ARGUMENT

### I. DR. GOODSTEIN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE HIS PURPORTED ANALYSIS, ON ITS FACE, IS INCOMPLETE AND IRRELEVANT.

Dr. Goodstein seeks to offer an opinion regarding whether Yahoo!'s advertising practices are likely to cause confusion among consumers with respect to American's marks. (Goodstein

App. 07 (Rpt. ¶ 9.).) However, Dr. Goodstein ignores the relevant legal standard for determining customer confusion in two key respects. First, he performs the "digits of confusion" analysis without regard to the doctrine of nominative fair use, contrary to the law in the Fifth Circuit. *See Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 485 (5th Cir. 2004). Second, Dr. Goodstein relies on facts that are irrelevant to the proper legal standard for consumer confusion.

Yahoo!'s search advertising practices come within the doctrine of nominative fair use, and therefore do not violate the Lanham Act. American persistently gives this short shrift, and its expert does the same. Dr. Goodstein fails to even consider nominative fair use. Dr. Goodstein purports to examine several factors commonly considered by courts in determining whether a likelihood of confusion exists (referred to as the "digits of confusion"). (Goodstein App. 11 (Rpt. ¶ 21); *see also Fetzer*, 381 F.3d at 484-85 (listing the "digits of confusion").) The Fifth Circuit has held that the digits of confusion must be considered in light of the particular circumstances of the case, including the doctrine of nominative fair use where applicable. *Fetzer*, 381 F.3d at 485. In *Fetzer*, the court found that failure to consider such circumstances in the digits analysis can lead to the incorrect result. *Id.*; *see also New Kids on the Block v. News Am. Pub., Inc.*, 971 F.2d 302, 309 (9th Cir. 1992) (establishing separate test for nominative fair use, explaining that such nominative use "lies outside the strictures of trademark law"). The court noted that, in the nominative fair use context, where an independent dealer advertises that it sells a marked product in competition with the markholder, "several of the digits will *appear* to indicate confusion *even if no confusion is likely*." *Fetzer*, 381 F.3d at 485 (emphasis added). By way of illustration, the court discussed two yellow page ads, one of which would "plainly" create a likelihood of confusion and one that "plainly would not." *Id.* The court

found that, if it were to apply the digits *without regard to context*, the majority of the digits would seem to weigh in favor of a finding of likelihood of confusion for *both* ads. *Id.* In light of this, the court cautioned that failure to consider circumstances such as nominative fair use would risk lowering the standard for confusion. *Id.*

Yahoo! has designed its search advertising programs to permit keyword searching that will make only nominative fair use of American's and others' marks. Accordingly, Yahoo! allows independent dealers who sell American's tickets (such as online travel agencies, or OTA's), and entities that provide information about American's services (such as meta-search engines, or MSE's) to truthfully state that they offer American tickets or information. *See id.* at 484. Given the facts of this case, Dr. Goodstein's analysis is inherently irrelevant because it fails even to consider that the use in question of American's marks is nominative fair use.

Moreover, Dr. Goodstein purports to answer an irrelevant question. Dr. Goodstein relies on irrelevant facts to reach his opinion as to the ultimate issue of consumer confusion. An expert's reliance on facts that are not relevant to the applicable legal standard can only serve to mislead the jury and improperly intrude on the Court's realm to instruct the jury on the law. *See Martinez*, 601 F. Supp. 2d at 866-67 (excluding expert testimony as to ultimate issue where expert relied on facts not relevant under the applicable legal standard). In this case, the relevant inquiry for consumer confusion is whether Yahoo!'s practices are likely to cause confusion among consumers as to the "*source, affiliation, or sponsorship*" of the advertised products or services. *Fetzer*, 381 F.3d at 483. Dr. Goodstein, however, bases his opinion of confusion on evidence that purportedly shows that customers are confused about whether search results are paid or natural results. (*See* Goodstein App. 23-25 (Rpt. ¶¶ 55-56).) These "facts" are irrelevant to the actual inquiry of whether consumers are confused about whether the advertised products or

services are *from, affiliated with, or sponsored by* American Airlines. Dr. Goodstein has based his analysis on information which purportedly answers an irrelevant question.

In sum, Dr. Goodstein misreads the law by ignoring nominative fair use and misses the point by examining and relying on irrelevant facts (the generic topics of paid vs. natural results, rather than the claimed confusion about American's affiliation with its authorized OTAs and MSEs). Accordingly, Dr. Goodstein's testimony should be excluded.

## II. DR. GOODSTEIN'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS NOT BASED ON SUFFICIENT FACTS OR RELIABLE METHODS.

Dr. Goodstein's expert testimony also should be excluded because it is not based on any reliable method or principles, scientific or otherwise, but rather merely regurgitates American's own theories as to confusion. In order to "assist the trier of fact to understand the evidence or to determine a fact in issue," an expert witness must bring more to the jury than the lawyers can offer by way of argument. FED. R. EVID. 702; *Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir. 1992). Dr. Goodstein fails this test.

Expert testimony is properly excluded where, as here, a marketing expert has not conducted any reliable survey or market research. *IQ Products Co. v. Pennzoil Products Co.*, 305 F.3d 368, 376-77 (5th Cir. 2002) (magistrate properly excluded testimony of experts who had not conducted survey or market research into effect on consumers of allegedly false statements). Lanham Act litigants offering expert opinion testimony on consumer confusion or similar issues will "face an uphill battle in convincing a court that their testimony is admissible" if the expert's opinion "is not based on the results of a survey." Kenneth A. Plevan, *Daubert's Impact on Survey Experts in Lanham Act Litigation*, 95 Trademark Rep. 596, 600 (May-June 2005) (Goodstein Non-Fed Auth App. 05-06); *accord* Richard L. Kirkpatrick, *Likelihood of Confusion in Trademark Law*, § 1.8.4, at 1-58 (PLI 2008) (Goodstein Non-Fed Auth. App. 21)

("lay or even expert opinion about likelihood of confusion is inadmissible or entitled to little weight" unless given by survey expert); *Bracco Diagnostics, Inc. v. Amersham Health, Inc.*, No. 03-6025, 2009 U.S. Dist. LEXIS 23560 (D.N.J. Mar. 25, 2009) (expert's opinions excluded to the extent they "reflected no more than his summary of, and spin on, internal [defendant] documents"). Dr. Goodstein is a "hired gun with an empty holster — a survey expert who has not conducted a survey." *Smith v. Ames Department Stores, Inc.*, 988 F. Supp. 827, 834 (D.N.J. 1997) (internal quotation omitted) (declining to consider plaintiff's expert opinion that consumers would be confused and granting defendants summary judgment).

Even in his "hired gun" capacity, Dr. Goodstein cannot make up for fundamental flaws in his work. For example, he concludes that American's "significant brand equity" contributes to consumer confusion, when in fact it logically means the opposite, as it would be quite confusing for consumers if Yahoo!'s advertisers attempted to market American Airlines tickets without using the American Airline brand name. *See, e.g., Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463, 497 (S.D.N.Y. 2008) ("were eBay precluded from using the term 'Tiffany' to describe Tiffany jewelry, eBay would be forced into absurd circumlocutions" such as describing 'silver jewelry from a prestigious New York company where Audrey Hepburn once liked to breakfast'). Dr. Goodstein similarly makes the conclusory assertion that consumers are confused as to whether they are booking through an OTA or AA.com because of Yahoo!'s search advertising programs. All Dr. Goodstein cites, however, are consumer complaints that lack any relevance to the ultimate question of confusion about the source of Yahoo!'s ads and instead demonstrate that many consumers are dissatisfied with American's services in comparison to the OTAs.

Dr. Goodstein even goes so far as to make conclusory assertions as to Yahoo!'s intent, which is neither helpful to the trier of fact nor admissible. *Marlin v. Moody Nat'l Bank, N.A.*,

248 Fed. Appx. 534, 541 (5th Cir. 2007) ("an expert's conclusory assertions regarding a defendant's state of mind are not helpful or admissible") (citing *Salas*, 980 F.2d at 305); *Bracco*, 2009 U.S. Dist. LEXIS at *440-41 (excluding expert testimony as unreliable and outside the proper scope of expert testimony where expert "purported to divine" the defendant's intent with respect to its marketing strategy). In sum, Dr. Goodstein has failed to present any reliable evidence or methodology in support of his conclusions.

### III. DR. GOODSTEIN'S TESTIMONY REGARDING THE ENGLIS SURVEY IS UNRELIABLE AND CUMULATIVE.

Dr. Goodstein's secondary opinion in support of the validity of Dr. Basil Englis' expert report does not save his testimony. Respecting or endorsing another's deficient work does not save either expert. For all of the reasons set forth in Defendants' Motion to Exclude Testimony of Dr. Basil Englis, the survey performed by Dr. Englis is not "based upon sufficient facts or data" as required by Federal Rule of Evidence 702, and therefore should be excluded. In any event, Dr. Goodstein's testimony adopting and endorsing Dr. Englis' work is merely cumulative of Dr. Englis' testimony, and thus should be excluded under Federal Rule of Evidence 403.

### CONCLUSION

For all of the foregoing reasons, the Court should exclude the testimony of Dr. Ronald C. Goodstein.

Dated: November 6, 2009

Respectfully submitted,

_____
David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
D. Anthony Rodriguez (*pro hac vice*)
Alison M. Tucher (*pro hac vice*)
Brooks M. Beard (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH MARKETING

## CERTIFICATE OF CONFERENCE

I hereby certify that on the 6th day of November, 2009, I conferred with Lars Berg, counsel for Plaintiff, and Mr. Berg confirmed that Plaintiff was opposed to the relief sought herein.

_____
Scott A. Fredricks

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Plaintiff's counsel, as indicated below, on the ___6th___ day of November 2009:

| | |
|---|---|
| Dee J. Kelly<br>Dee J. Kelly, Jr.<br>Lars L. Berg<br>KELLY HART & HALLMAN, LLP<br>201 Main Street, Suite 2500<br>Fort Worth, TX 76102 | *Via Hand Delivery* |
| Frederick Brown<br>George A. Nicoud III<br>Jason Stavers<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94104 | *Via Federal Express* |
| Howard S. Hogan<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036 | *Via Federal Express* |

_____
Scott A. Fredricks