CTJ/RMT

ORIGINAL

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DROP BOX
NOV - 6 2009
11.33
CLERK, U.S. DISTRICT COURT
By _____
Deputy

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,     §
    §
       Plaintiff,     §
    §
V.     §
    §    Civil Action No. 4-08-CV-626-A
    §
YAHOO! INC., and     §
OVERTURE SERVICES, INC. d/b/a YAHOO!     §
SEARCH MARKETING,     §
    §
       Defendants.     §

## APPENDIX OF NON-FEDERAL AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO EXCLUDE TESTIMONY OF RONALD C. GOODSTEIN

| EXHIBIT | DOCUMENT | PAGE |
|---------|----------|------|
| A | Kenneth A. Plevan, "*Daubert*'s Impact on Survey Experts in Lanham Act Litigation," 95 Trademark Rptr. 596, 600 (May-June 2005) | 03 |
| B | *Excerpt from* Richard L. Kirkpatrick, LIKELIHOOD OF CONFUSION IN TRADEMARK LAW, § 1.8.4 (PLI 2008) | 20 |

Goodstein Non-Fed Auth App. 01

sf-2762332

Dockets.Justia.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true copy of the foregoing document has been served on counsel of record as follows:

Dee J. Kelly                                  *Via Hand Delivery*
Dee J. Kelly, Jr.
Lars L. Berg
Kelly Hart & Hallman, LLP
201 Main Street, Suite 2500
Fort Worth, TX  76102

Frederick Brown                               *Via FedEx*
Jason Stavers
Gibson, Dunn & Crutcher LLP
555 Mission Street, Suite 3000
San Francisco, CA  94105

Howard S. Hogan                               *Via FedEx*
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC  20036

Date:   November 6, 2009

_____
Scott A. Fredricks





LEXSEE 95 TRADEMARK REPORTER 596

Copyright © 2005, International Trademark Association,
The Trademark Reporter

May, 2005 - June, 2005

*95 TMR 596*

LENGTH: 7359 words

DAUBERT'S IMPACT ON SURVEY EXPERTS IN LANHAM ACT LITIGATION

Kenneth A. Plevan *

* Partner in the New York City office of Skadden, Arps, Slate, Meagher & Flom LLP, Associate Member of the International Trademark Association. Mr. Plevan is the co-chair of the Firm's Intellectual Property and Technology Practice. The author gratefully acknowledges the assistance of Brendan McKeon, Brooklyn Law School Class of 2006, in the preparation of this article.

TEXT:

[*596] I. INTRODUCTION

It has been more than ten years since the Supreme Court's now-celebrated *Daubert* decision began to define the "gate-keeping function" of the district court judge with respect to the admissibility of expert testimony. n1 The Supreme Court's later decision in *Kumho Tire Co. v. Carmichael* n2 ensured the wide applicability of the *Daubert* principles to all experts.

> n1 *Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993).*
>
> n2 *526 U.S. 137 (1999).*

The goal of this article is to gauge the impact of *Daubert* on experts, particularly survey experts, who testify in Lanham Act lawsuits. We sought to determine whether and to what extent courts are, in fact, finding that proffered survey expert testimony in Lanham Act cases is inadmissible, and whether a Daubert-based motion *in limine* is now an inevitable "tool of the trade" of the Lanham Act litigator.

We attempted to locate all the reported decisions during the eight-year period from January 1, 1997, through December 31, 2004, in which surveys have been excluded entirely. We found fourteen such decisions. To put this number into the proper context, we also report on decisions in which it appears from the opinion that the admissibility of a survey was challenged, but the survey was not excluded. In total, we found thirty such cases. In many of these cases, of course, although the surveys were considered, they were accorded little weight. Also, these totals do not include numerous other cases in which surveys were admitted in the absence of a challenge to admissibility. A table of these forty-four cases can be found at the end of this article.

We also discuss (but do not systematically survey) decisions where experts have presented evidence on topics such as likelihood of confusion and consumer perception of statements in advertising without performing consumer surveys. In addition, we also comment on an interesting litigation twist in which one party's [*597] expert attempted to rely on the survey evidence prepared by the opposing party's expert, after the latter's survey was withdrawn.

Of the fourteen cases in which the expert testimony was held inadmissible, exclusion or rejection of the expert came about on a motion *in limine* on eight occasions, and on a motion for summary judgment on three occasions. The remaining exclusions were decided by appellate courts, once in an affirmance of a grant of summary judgment, once in a reversal of the grant of a permanent injunction and once in a reversal of the grant of a preliminary injunction.

In *all* of the cases of exclusion of the expert testimony, one or more of the parties had requested a jury. In one case, however, a request for a jury trial was stricken on the grounds that the only issue left to be decided, a request for an accounting of the infringer's profits, was an equitable issue only. The jury/non-jury distinction is a key one. As might be expected, courts are far more likely to exclude what they regard as weak or spotty survey evidence in cases heading for a jury trial, whereas in bench trials a judge will be more inclined to admit the survey and parse its persuasiveness (or lack thereof) in the fact-finding process.

In general, it appears that the *Daubert* era has given Lanham Act litigators a greater opportunity to challenge an opponent's survey evidence in advance of a trial, particularly a jury trial. Even in the non-jury context, a ruling on a *Daubert* motion *in limine* could help the parties gauge their relative chances of success at trial, and thus it could provide insights relevant to settlement. On the other hand, *Daubert* is not likely to have much of an impact on those many Lanham Act cases that, as a practical matter, are resolved on emergency motions for injunctions.

It appears that a *Daubert* motion *in limine* has become an acceptable strategy in Lanham Act cases that proceed past the emergency injunction stage. The threat of total exclusion of a survey should also serve as a reminder to counsel that they should strive to obtain an unbiased survey, even at the risk of obtaining results that do not support the sponsor's position.

## II. BACKGROUND

### A. Subjects Commonly Addressed by Lanham Act Experts and Surveys

Typically, although not exclusively, experts are employed in Lanham Act litigation to conduct and critique surveys on a variety of key issues. These issues include: (1) perception of implied claims in false advertising disputes; (2) likelihood of confusion in trademark and trade dress cases; (3) whether a mark has acquired secondary meaning; and (4) dilution. These are all uniquely Lanham Act issues.

[*598] Expert evidence in Lanham Act litigation can, of course, also be used to address other issues, such as damages or the need for corrective advertising. For example, see *Zelinski v. Columbia 300, Inc.* n3 (affirming the district court's admission of an expert's testimony on damages in a trademark infringement lawsuit); *EFCO Corp. v. Symons Corp.* n4 (damages in a false advertising lawsuit); *Playtex Prods., Inc. v. Procter & Gamble Co.* n5 (lost profits and corrective advertising in a false advertising lawsuit); *Newport Elecs., Inc. v. Newport Corp.* n6 (granting plaintiff's motion to strike an affidavit written by a marketing expert in a trademark infringement lawsuit); *First Sav. Bank F.S.B. v. U.S. Bancorp* n7 (granting defendants' motions to exclude the testimony of experts on lost profits and corrective advertising in a trademark infringement lawsuit).

> n3 *335 F.3d 633, 640-41 (7th Cir. 2003).*
>
> n4 *219 F.3d 734, 739-40 (8th Cir. 2000).*
>
> n5 *No. 02 Civ. 8046, 2003 U.S. Dist. LEXIS 8913,* at *11-20 (S.D.N.Y. May 28, 2003).
>
> n6 *157 F. Supp. 2d 202, 211-12 (D. Conn. 2001).*
>
> n7 *117 F. Supp. 2d 1078, 1082-86 (D. Kan. 2000).*

Finally, experts have from time to time been offered to present opinions on the issue of confusion (or the consumer communication of an advertisement) based on professional experience only, *i.e.,* without a survey. A number of post-Daubert decisions that fall within this category are also briefly discussed below.

### B. Basic Legal Standards

There are many excellent articles on the *Daubert* principles and we have not attempted to cover that topic in any depth. n8

**Goodstein Non-Fed Auth App. 04**

n8 A reader seeking more background may wish to consult Richard J. Leighton, *Using Daubert-Kumho Gatekeeping to Admit and Exclude Surveys in Lanham Act Advertising and Trademark Cases, 92 TMR 743 (2002).*

Not all of the cases discussed herein specifically cited *Daubert* or its progeny. Several cases relied on Federal Rule of Evidence 702, which was amended in 2000 to codify *Daubert* principles, while others relied on Federal Rule of Evidence 403, by weighing the prejudice of permitting the expert to testify against the probative value of the testimony. A few cases, presumably because a thorough discussion of rules or case law did not lend itself to the nature of the opinion, did not cite any of these authorities.

### 1. Procedural Context

Arguments relating to the admissibility or weight of expert evidence arise in a number of contexts: preliminary injunction motions, summary judgment motions, motions *in limine,* rulings **[*599]** during trial, post-trial rulings and appellate decisions. Courts granting summary judgments that dismiss Lanham Act claims are often confronted with the argument that the plaintiff's survey raises a factual question that precludes the granting of the motion.

### 2. *Daubert* Standards

*Daubert* set forth a two-part inquiry into the relevance and reliability of an expert's testimony. n9 It also set out a non-exclusive list of four factors to be taken into account when determining the reliability of testimony: (1) whether the theory or technique relied upon has been tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) whether there is a known or potential rate of error and the existence and maintenance of standards controlling the technique's operation; and (4) whether the theory or method has been generally accepted by the scientific community. n10 In general, one would assume that these factors have little direct relevance to Lanham Act surveys, since the use of surveys to show confusion, or secondary meaning, for example, is well-accepted. n11

n9 *See Daubert, 509 U.S. at 592-93.*

n10 *Id. at 593-94.*

n11 *See, e.g., Betterbox Communications Ltd. v. BB Techs., Inc., 300 F.3d 325 (3d Cir. 2002); Bacardi & Co. v. N.Y. Lighter Co., 54 U.S.P.Q.2d 1335 (E.D.N.Y. 2000).* We note, for example, that surveys are also now commonly conducted on the Internet. *See Empresa Cubana Del Tabaco v. Culbro Corp., 70 U.S.P.Q.2d 1650, 1672-73 (S.D.N.Y. 2004)* (discussing the validity of evidence of actual confusion taken from a survey completed via Internet questionnaire); *1-800 Contacts, Inc. v. WhenU.com, 309 F. Supp. 2d 467, 479-81, 499-501 & n.54 (S.D.N.Y. 2003).* The courts seem to have accepted online surveys as an appropriate approach with no reported discussion about the validity of this new research method. In this respect, the courts appear to have simply followed the lead of the marketing research profession.

### 3. Federal Rule of Evidence 702

Federal Rule of Evidence 702 states that a qualified expert witness may testify "if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." n12 To the extent this is a "gate-keeping" rule, it arguably gives trial judges significant discretion in admitting or excluding survey expert testimony.

n12 Fed. R. Evid. 702.

### 4. Federal Rule of Evidence 403

This familiar rule permits judges to exclude "relevant" evidence "if its probative value is outweighed by the danger of **[*600]** unfair prejudice, confusion of the issues, or misleading the jury." n13 One can readily see why this rule is adaptable to the *Daubert* challenge: if a judge believes that a survey's probative value is weak, it can be excluded because of the concern that the appearance of an expert sponsoring a discredited survey will unfairly prejudice or confuse the jury. With respect to non-jury cases, the trial judge is, of course, free to use Rule 403 to exclude evidence in order to set forth the court's views on the expert in advance of trial.

n13 Fed. R. Evid. 403.

### 5. The General "Weight of the Evidence" Rule

Lanham Act surveys, of course, have been the subject of close scrutiny for many years, and one can easily find citations to pre-Daubert cases disregarding or excluding a party's survey expert. Nevertheless, historically most surveys were admitted, albeit usually in non-jury trials.

In the post-Daubert case of *Schering Corp. v. Pfizer Inc.,* n14 the Second Circuit reiterated the long-established general rule that "errors in methodology . . . properly go only to the weight of the evidence." n15 The court in *Schering Corp.* relied heavily on a seven-factor test used to evaluate the credibility of survey evidence that has its origins in the 1960 *Manual for Complex Litigation.* n16

    n14 *189 F.3d 218 (2d Cir. 1999).*

    n15 *Id. at 228.*

    n16 *See Schering Corp., 189 F.3d at 224-25.* For additional information on the history of the standards in the *Manual for Complex Litigation, see Leighton, supra* note 8, at 744 & n.6. *See also Toys "R" Us, Inc. v. Canarsie Kiddie Shop, Inc., 559 F. Supp. 1189, 1205 (E.D.N.Y. 1983)* (paraphrasing the seven factors to be considered when assessing the reliability of a survey, as forth in the *Manual for Complex Litigation* § 2.712 (5th ed. 1981)); *Manual for Complex Litigation, (Fourth) § 11.493 (2004)* (setting forth these seven factors).

### C. Cases Involving Expert Opinion on Confusion Without Survey Evidence

As noted above, Lanham Act litigants have on occasion offered expert opinion testimony on confusion or similar issues that is not based on the results of a survey. Generally, such experts face an uphill battle in convincing a court that their testimony is admissible. For example, see *IQ Prods. Co. v. Pennzoil Prods. Co.* n17 (affirming the exclusion of an expert whose testimony on the materiality of allegedly false statements was not based on any market or survey research); *Utah Med. Prods., Inc. v. Clinical* **[\*601]** *Innovations Assocs., Inc.* n18 (affirming the exclusion of expert testimony that was not based on evidence of how an allegedly false term would be interpreted by the target audience); *Playboy Enters., Inc. v. Terri Welles, Inc.* n19 (giving no weight to "legal" opinions on likelihood of confusion that were not supported by either anecdotal or survey evidence); *Smith v. Ames Dep't Stores, Inc.* n20 (excluding an expert report and declaration on consumer perception of the parties' trademarks because it was not based on survey evidence); *Nat'l Football League Props., Inc. v. ProStyle, Inc.* n21

    n17 *305 F.3d 368, 376-77 (5th Cir. 2002).*

    n18 *No. 00-1140, 2000 U.S. App. LEXIS 31756,* at *10-12 (Fed. Cir. Dec. 13, 2000).

    n19 *78 F. Supp. 2d 1066, 1082-83 (S.D. Cal. 1999), aff'd, 30 Fed. Appx. 734 (9th Cir. 2002).*

    n20 *988 F. Supp. 827, 834 (D.N.J. 1997).*

    n21 *57 F. Supp. 2d 665, 668-73 (E.D. Wis. 1999).*

In *Pharmacia Corp. v. Alcon Laboratories, Inc.,* n22 the court gave very little weight to evidence presented by four of plaintiffs' experts, whose testimony on the issue of confusion between two drug names, XALATAN and TRAVATAN, was not based on survey research. The testimony of plaintiffs' first expert, Dr. Stephen Ostbaum, on the likelihood of "medication substitution" between the parties' medications due to the similarity of their names had been held inadmissible by the court in its ruling on an earlier motion *in limine.* n23 Plaintiffs' second expert, Dr. Dan Eisenberg, testified that, in his opinion, it was not "unreasonable" to anticipate confusion between the two medications. n24 His testimony, however, was not supported by any survey or other research, and the court found his opinion to be "of little value" given his lack of experience in trademark-related matters and given the absence of any statistical analysis. n25 Plaintiffs' third expert, Mr. George Di Domizio, a retired Chairman of the Merck Trademark Committee, testified that the name similarity between the two medications led him to "conclude" that medication errors were likely to occur. n26 The court found his testimony unpersuasive based on the fact that he had little knowledge of the prevalence of the "TAN" or "AN" suffixes in the pharmaceutical market and because he used no statistical model in reaching his opinion on confusion. n27

    n22 *201 F. Supp. 2d 335 (D.N.J. 2002).*

**Goodstein Non-Fed Auth App. 06**

n23 *Id. at 354.*

n24 *Id.*

n25 *Id. at 355.*

n26 *Id.*

n27 *Id. at 355-56.*

Plaintiffs' final expert on confusion, Dr. Bruce Lambert, a professor of pharmacology with a degree in speech communication, [*602] used a statistical model that measured the similarity in spelling and pronunciation of pairs of drug names to determine likelihood of confusion between names. n28 Based on this mathematical model, Dr. Lambert concluded that XALATAN and TRAVATAN were substantially similar, and found that the pair would likely be involved in medication error. n29 However, in a pre-litigation publication, he described his method as having "'poor positive predictive value.'" n30 The court found his computations could lead to "spurious" results n31 and his entire methodology was suspect. n32 The court doubted the "real world" reliability of Dr. Lambert's model and found that his methodology was not a "reliable predictor" of actual medical substitution, let alone trademark confusion. n33

n28 *Id. at 356.*

n29 *Id. at 357.*

n30 *Id.* (citation omitted).

n31 *Id.*

n32 *Id. at 360.*

n33 *Id. at 361-62.*

Ultimately, the court held that the evidence on confusion presented by plaintiffs' experts was insufficient to overcome the evidence presented by the defendant that confusion was unlikely. n34 The court stated that, "apart from consumer surveys, 'lay or even expert opinion about the likelihood of confusion is inadmissible or entitled to little weight.'" n35 The court found no reported trademark cases in which a court based its findings on either likelihood of confusion or dilution based upon opinions such as those of Dr. Eisenberg or Mr. Di Domizio and found that Dr. Lambert's opinion on likelihood of confusion was similarly entitled to little weight. n36

n34 *Id. at 377.*

n35 *Id.* (quoting Richard L. Kirkpatrick, *Likelihood of Confusion in Trademark Law,* § 1.8c, at 1-45 (1995)).

n36 *Pharmacia Corp., 201 F. Supp. 2d at 377-78.*

However, in *Betterbox Communications Ltd. v. BB Technologies, Inc.,* n37 the Third Circuit found it appropriate to analyze an expert's testimony based solely on his experience and absent any formal survey evidence. In that case, BB Technologies and Black Box Corporation, defendants in the original declaratory judgment action, argued on appeal that the district court had erred in admitting the expert testimony submitted by Betterbox, the alleged infringer who had sought a declaration of no infringement, on the likelihood of confusion issue regarding the alleged infringement of defendants' BLACK BOX mark. n38 Defendants [*603] argued, *inter alia,* that the expert should not have been allowed to testify because his methodology was deficient, since he did not conduct any formal surveys, but instead testified based only upon his personal knowledge and experience. n39

n37 *300 F.3d 325 (3d Cir. 2002).*

n38 *See id. at 327-29.*

n39 *See id. at 329.*

In addressing this argument, the court discussed the holding in *Kumho Tire Co. v. Carmichael,* n40 that *Daubert* applies to all expert testimony, not just scientific testimony. n41 The court noted, however, that in cases not involving

scientific testimony, the *Daubert* factors may not be pertinent given the particular nature of the issue and the expertise and testimony of the expert. n42 In the present case, the court found that the expert's testimony was based on the expert's "'personal knowledge or experience.'" n43 As such, it was appropriate to analyze the expert's testimony based on his knowledge and experience, rather than under the *Daubert* factors. n44

    n40 *526 U.S. 137 (1999).*

    n41 *Betterbox Communications, 300 F.3d at 329* (citing *Kumho Tire, 526 U.S. at 149-50*).

    n42 *Id.* (citing *Kumho Tire, 526 U.S. at 150*).

    n43 *Id.* (quoting *Kumho Tire, 526 U.S. at 150*).

    n44 *Id.*

    The Third Circuit ultimately found it unnecessary to decide the question of whether the lower court had erred in admitting the testimony of Betterbox's expert because it was "convinced that even if the District Court erred, the error was harmless." n45 In explaining its conclusion, the court noted that the methodology of defendants' own expert, whose testimony had also been admitted, "was even simpler" than that of Betterbox's expert. n46 The court also noted that the district court had admitted the testimony of both parties' experts and that, if it had agreed with defendants' arguments regarding Betterbox's expert, it would have been compelled to exclude the testimony of defendants' expert as well. n47 Thus, any error produced by admitting the testimony of Betterbox's expert was harmless because the admission of the testimony of defendants' expert effectively canceled out any potential harm.

    n45 *Id.*

    n46 *Id.* at 330.

    n47 *Id.*

    In *Half Price Books, Records, Magazines, Inc. v. Barnesandnoble.com, LLC,* n48 civil plaintiff bookseller brought an action for alleged infringement of its HALF PRICE BOOKS, RECORDS, MAGAZINES mark by defendant, which had begun to **[*604]** use phrases such as "Half-Price Books & Special Values" and "Half-Price Books" in selling its products. n49 In the course of responding to defendant's motion for summary judgment, plaintiff moved to strike certain evidence presented by defendant in support of its motion, including the expert report of Gabriel M. Gelb, n50 which, without the aid of a consumer survey, sought to demonstrate that the term "Half Price Books" did not indicate a single source to consumers. n51 Plaintiff argued that the report should be stricken, *inter alia,* because Gelb did not explain what specialized knowledge he had to support his opinions and because his opinions were unreliable. n52

    n48 Action No. 3:02-*CV-2518-G, 2004 U.S. Dist. LEXIS 23691* (N.D. Tex. Nov. 22, 2004).

    n49 *Id.* at *2-3.

    n50 *See id.* at *4.

    n51 *See id.* at *12.

    n52 *Id.* at *9-10.

    The court found that Gelb's experience and knowledge was "specialized" enough to allow the admission of his report and that a valid connection existed between Gelb's testimony and the issues in the case. n53 In responding to plaintiff's contention that Gelb had failed to adequately explain how he reached the conclusions in his report, including conclusions on whether certain terms were generic, the court stated that it "should not determine the merits of the case," that is, "the quality or effect of the testimony," but rather only rule on admissibility. n54 The court held that Gelb's report met the standard for admissibility under Federal Rule of Evidence 702, noting that plaintiff could "attack the content and sufficiency of Gelb's testimony" in a response to defendant's summary judgment motion or at trial. n55

    n53 *Id.* at *10-13.

    n54 *Id.* at *15-17.

n55 *Id.* at *17.

### D. Reliance on the Opposing Party's Survey Evidence

In *Verizon Directories Corp. v. Yellow Book USA, Inc.,* n56 plaintiff asserted a claim for false advertising based on defendant's campaign promoting its telephone directory. The advertisements in this campaign included depictions of the "Other Book" as undesirable or "light," *i.e.,* not containing as much information as a Yellow Book. n57 In its decision of March 22, 2004, the court denied defendant's motion to dismiss plaintiff's false advertising claims as puffery, stating that the issue of consumer interpretation of the **[*605]** visual imagery of the commercials could only be resolved with surveys and expert testimony. n58

n56 *309 F. Supp. 2d 401 (E.D.N.Y. 2004).*

n57 *See id. at 402-03.*

n58 *See id. at 407-08.*

In a later opinion, plaintiff's motion *in limine* to exclude survey testimony on puffery was denied. n59 The court found that it would be useful to examine surveys concerning consumer and advertiser reaction to defendant's statements and that because the current phase of the trial was non-jury, the court could "untangle" the aspects of law and fact from the testimony. n60 The court reached this result while observing that "[the expert's] 'puffery' survey is subject to serious objection." n61

n59 *See Verizon Directories Corp. v. Yellow Book USA, Inc.,* No. 04-*CV-0251, 2004 WL 1598916,* at *1, (E.D.N.Y. July 19, 2004).

n60 *Id.*

n61 *Id.*

Ultimately, defendant decided not to call the expert as a witness at trial, and then moved to strike portions of plaintiff's experts' reports when these experts amended their own reports to incorporate research data from defendant's expert report. n62 Judge Weinstein held that defendant's expert could not be compelled to testify, nor could the opinions expressed in his deposition be used; but the court allowed plaintiff to cite and rely upon information taken from defendant's expert report. n63 Nevertheless, the court indicated that little weight would be given to the data and report of defendant's expert, in part because "neither has been adequately tested." n64

n62 *See Verizon Directories Corp. v. Yellow Book USA, Inc.,* 331 F. Supp. 2d 134, 135 (E.D.N.Y. 2004).

n63 *See id. at 135-36.*

n64 *Id. at 136.*

### III. CONCLUSION

As noted, of forty-four cases decided over an eight-year period, in a not-insignificant number (fourteen), surveys were excluded from evidence or accorded no weight whatsoever. During calendar year 2004, of eleven cases decided, surveys were excluded in four.

These are impressive numbers, given the traditional presumption in favor of admissibility of Lanham Act surveys, with the alleged defects going to the weight of the evidence. In all of the fourteen cases in which surveys were excluded, however, a jury trial had been demanded, generally by the party offering the survey evidence. Certainly in the context of a jury trial, federal judges in Lanham Act cases are carefully weighing the **[*606]** admissibility of survey evidence, and the trend toward the use of motions to exclude such testimony appears to be on the increase.

**[*607]** **Decisions Addressing Admissibility of Surveys in Lanham Act Cases From January 1, 1997, to December 31, 2004**

| Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|------|---------|------------------|------------------|-----------|

**Goodstein Non-Fed Auth App. 09**

| | Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|---|---|---|---|---|---|
| 1. | Starter Corp. v. Converse, Inc., *170 F.3d 286* (2d Cir. 1999) | Infringement | Starter STAR MARKS and Converse STAR MARKS | Excluded | Probative value of the survey was outweighed by potential prejudice under Rule 403 |
| 2. | National Football League Properties, Inc. v. ProStyle, Inc., 57 F. Supp. 2d 665 (E.D. Wis. 1999) | Infringement and Dilution | Green Bay Packer apparel | Excluded | Survey's flaws (especially lack of control) warranted exclusion; non-case-specific conclusions did not warrant admission |
| 3. | Dick's Sporting Goods, Inc. v. Dick's Clothing & Sporting Goods, Inc., No. 98-1653, 1999 U.S. App. LEXIS 19942 (4th Cir. Aug. 20, 1999) | Trade Name Infringement | DICK'S | Excluded | Survey was excluded as inadmissible hearsay because of flaws in methodology |
| 4. | Simon Property Group L.P. v. mySimon, Inc., 104 F. Supp. 2d 1033 (S.D. Ind. 2000) | Infringement | SIMON and www.mysimon.Com | Excluded | Survey was excluded under Daubert, Rule 702, and Rule 403 because of lack of probative value and potential to create prejudice |
| 5. | Learning Network, Inc. v. Discovery Communications, Inc., 153 F. Supp. 2d 785 (D. Md. 2001) | Infringement | LEARNING NETWORK and THE LEARNING CHANNEL | Excluded | Survey defects, including method of display of marks and vague questions, warranted exclusion |
| 6. | Trouble v. Wet Seal, Inc., 179 F. Supp. 2d 291 | Infringement and Dilution | AGNES B. and ARDEN B. | Excluded | Under Rule 403, prejudicial effect of the |

| | Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|---|------|---------|------------------|------------------|-----------|
| | (S.D.N.Y. 2001) | | | | survey outweighed probative value |
| 7. | J & J Snack Foods Corp. v. Earthgrains Co., 220 F. Supp. 2d 358 (D.N.J. 2002) | Infringement | BREAK & BAKE | Excluded | Survey's definitional flaws and improper universe rendered it inadmissible under Rule 702 |
| 8. | Scotts Co. v. United Industries Corp., 315 F.3d 264 (4th Cir. 2002) | False Advertising | CRABGRASS BUSTER logo on crabgrass control product | Excluded | Survey was unreliable and not probative of the main question of the case (whether the packaging conveyed a false message regarding killing crabgrass) |
| 9. | Sears, Roebuck & Co. v. Menard, Inc., No. 01 C 9843, 2003 U.S. Dist. LEXIS 951 (N.D. Ill. Jan. 22, 2003) | Infringement | WHERE ELSE? | Excluded | Under Daubert and Rule 403, the survey was excluded because it distorted marketplace conditions and asked leading questions |
| 10. | Straumann Co. v. Lifecore Biomedical Inc., 278 F. Supp. 2d 130 (D. Mass. 2003) | False Designation of Origin | STAGE-1 and STRAUMANN-ITI dental implants | Excluded | Flaws in distinguishing between functional and non-functional features of the implant and in wording of questions resulted in exclusion of the survey |
| 11. | MasterCard International | Infringement | ONESMART and SMART ONE | Excluded | Under Rules 402, 403 and |

| | Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|---|---|---|---|---|---|
| | Inc. v. First National Bank of Omaha, Inc., Nos. 02 CIV 3691, 03 CIV 707, 2004 U.S. Dist. LEXIS 2485 (S.D.N.Y. Feb. 23, 2004) | | | | 702, the survey was excluded because its universe was too small, its questions never "reached" the appropriate targets, and it bore little resemblance to the decision-making process it was meant to analyze |
| 12. | Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP, 325 F. Supp. 2d 841 (M.D. Tenn. 2004) | Trademark and Trade Dress Infringement and Dilution | "Singlecut" guitar design and "Les Paul single cutaway" guitar | Excluded | Because the survey did not "fit" the facts of the case under Daubert (confusion is irrelevant to recovery of damages), it was excluded |
| 13. | Scott Fetzer Co. v. House of Vacuums Inc., *381 F.3d 477* (5th Cir. 2004) | False Advertising | Vacuum distributor's ad in Yellow Pages insinuating it was a KIRBY distributor | Survey given no weight on summary judgment | Survey questions "prodded" participants to find a connection between the two companies |
| 14. | Citizens Financial Group, Inc. v. Citizens National Bank of Evans City, 383 F.3d 110 (3d Cir. 2004) | Infringement | CITIZENS, CITIZENS BANK, and CITIZENS NATIONAL BANK | Excluded | Survey was "fundamentally" and fatally flawed because survey universe was improper |
| 15. | Schering Corp. v. Pfizer Inc., *189 F.3d 218* (2d Cir. 1999) | False Advertising | Misrepresentation of the somnolent side effects of ZYRTEC by sales representatives | Admitted | Surveys should be admitted as a general rule, with weight determined through a seven factor analysis; flaws |

| | Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|---|---|---|---|---|---|
| | | | | | go to weight as evidence, not admissibility |
| 16. | Southland Sod Farms v. Stover Seed Co., 108 F.3d 1134 (9th Cir. 1997) | False Advertising | Turfgrass advertising | Admitted | Exclusion of the survey was an abuse of discretion because the survey was probative and had been conducted according to "accepted principles"; objections to the technical reliability of a survey go only to its weight, not its admissibility |
| 17. | Clicks Billiards, Inc. v. Sixshooters, Inc., 251 F.3d 1252 (9th Cir. 2001) | Trade Dress Infringement | Pool Hall appearance | Admitted | A survey must be relevant and conducted according to accepted principles; then, any flaws go to its weight, not its admissibility |
| 18. | Coach, Inc. v. We Care Trading Co., 67 Fed. Appx. 626 (2d Cir. 2002) | Trade Dress Infringement | Handbag trade dress | Admitted | Relevance of the survey's results outweighed its prejudicial effect under Rule 403 |
| 19. | Sports Authority, Inc. v. Abercrombie & Fitch, Inc., 965 F. Supp. 925 (E.D. Mich. 1997) | Infringement | The word "authority" | Admitted, though deemed "deficient" | Flaws go to a survey's weight, not its admissibility |
| 20. | United States | Infringement | Resterilization | Admitted | Deficiencies go |

| | Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|---|---|---|---|---|---|
| | Surgical Corp. v. Orris, Inc., *983 F. Supp. 963* (D. Kan. 1997) | | and reuse of disposable medical instruments bearing plaintiff's trademark | | to a survey's weight, not its admissibility; a survey should be excluded if its representative sample does not represent the universe it is intended to reflect |
| 21. | Breuer Electric Manufacturing Co. v. Hoover Co., No. 97 C 7443, 1998 U.S. Dist. LEXIS 11613 (N.D. Ill. July 23, 1998) | Infringement and Dilution | Tornado graphic on TORNADO and WINDTUNNEL vacuums | Admitted | Attacks on methodology of a survey go to weight and not admissibility |
| 22. | Mattel, Inc. v. MCA Records, Inc., 28 F. Supp. 2d 1120 (C.D. Cal. 1998) | Infringement and Dilution | BARBIE | Admitted, but given little weight | Technical problems go to the weight of a survey as evidence, and not to admissibility |
| 23. | Procter & Gamble Co. v. Colgate-Palmolive Co., No. 96 Civ. 9123, 1998 U.S. Dist. LEXIS 17773 (S.D.N.Y. Nov. 9, 1998) | Trade Dress Infringement | SEASHELL toothpaste marketing demonstration and EGGSHELL demonstration | Admitted | Survey was relevant under Rule 702, and criticisms went to weight as evidence, not admissibility |
| 24. | Bacardi & Co. v. New York Lighter Co., 54 U.S.P.Q.2d 1335 (E.D.N.Y. 2000) | Infringement | BACARDI and lighter bearing BACARBI designation | Admitted | Although Daubert's relevancy standard should be applied, errors in the methodology of a survey go to weight, not admissibility, subject to Rule 403's test |

| | Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|---|---|---|---|---|---|
| 25. | Ironclad, L.P. v. Poly-America, Inc., No. 3:98-CV-2600-P, 2000 U.S. Dist. LEXIS 10728 (N.D. Tex. July 28, 2000) | Infringement | IRON SAK and IRONMAN | Admitted, but weight discounted | Deficiencies in a survey go to its weight as evidence, not to its admissibility |
| 26. | KIS, S.A. v. Foto Fantasy, Inc., 204 F. Supp. 2d 968 (N.D. Tex. 2001) | False Endorsement | Use of celebrity photographs on photo booths | Admitted | Defects go to weight, not admissibility; survey evidence should only be excluded when the sample is clearly not representative of the universe it is intended to reflect |
| 27. | Pharmacia Corp. v. Alcon Laboratories, Inc., 201 F. Supp. 2d 335 (D.N.J. 2002) | Infringement and Dilution | XALATAN and TRAVATAN | Admitted, but given very little weight | Survey had limited value due to its mechanical and conceptual problems |
| 28. | Minnesota Specialty Crops, Inc. v. Minnesota Wild Hockey Club, LP, Civ. No. 00-2317, 2002 U.S. Dist. LEXIS 13991 (D. Minn. July 26, 2002) | Infringement | MINNESOTA WILD | Admitted | Surveys are not generally excluded due to flaws, and flaws bear on a survey's weight, not its admissibility |
| 29. | YKK Corp. v. Jungwoo Zipper Co., 213 F. Supp. 2d 1195 (C.D. Cal. 2002) | Infringement and Dilution | YPP | Admitted | Although surveys are only admissible if conducted according to accepted principles, deficiencies generally go to weight, and not admissibility |

| | Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|---|---|---|---|---|---|
| 30. | Friesland Brands, B.V. v. Vietnam National Milk Co., 221 F. Supp. 2d 457 (S.D.N.Y. 2002) | Infringement | GOD OF LONGEVITY | Admitted | Flaws go to a survey's weight as evidence, not its admissibility |
| 31. | Beacon Mutual Insurance Co. v. OneBeacon Insurance Group, 253 F. Supp. 2d 221 (D.R.I. 2003) | Infringement | BEACON MUTUAL and ONEBEACON | Admitted | Under the "Daubert/Kumho analytical scheme," the survey was not excluded despite criticisms |
| 32. | Hill's Pet Nutrition, Inc. v. Nutro Products, Inc., 258 F. Supp. 2d 1197 (D. Kan. 2003) | False Advertising | "Natural Choice - # 1 in America's Pet Stores" | Admitted, but given little weight | Under Daubert, although the survey lacked validity, it was not excluded |
| 33. | Greenwich Industries, L.P. v. Specialized Seating, Inc., No. 02 C 5000, 2003 U.S. Dist. LEXIS 8369 (N.D. Ill. May 16, 2003) | Trade Dress Infringement | Chair design | Admitted | Objections to a survey go to its weight and do not necessarily preclude admissibility |
| 34. | Playtex Products, Inc. v. Procter & Gamble Co., No. 02 Civ. 8046, 2003 U.S. Dist. LEXIS 8913 (S.D.N.Y. May 28, 2003) | False Advertising | Tampon efficacy advertising | Admitted | Methodological deficiencies in a survey go to its weight, not its admissibility, subject to a Rule 403 relevance analysis |
| 35. | Mark Bric Display Corp. v. Joseph Struhl Co., C.A. No. 98-532ML, 2003 U.S. Dist. LEXIS 12933 (D.R.I. | Trade Dress Infringement | Point-of-purchase advertising displays | Admitted | Deficiencies go to a survey's weight, not its admissibility; infirmities in a survey can be addressed |

| | Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|---|---|---|---|---|---|
| | July 9, 2003) | | | | during cross-examination or by presentation of contrary evidence |
| 36. | Wells Fargo & Co. v. WhenU.com, Inc., 293 F. Supp. 2d 734 (E.D. Mich. 2003) | Infringement | Pop-up advertisements containing plaintiffs' marks | Admitted, but given little weight | Although the survey was criticized and deemed an unreliable indicator of likelihood of confusion, it was not excluded |
| 37. | Medical Economics Co. v. Prescribing Reference, Inc., 294 F. Supp. 2d 456 (S.D.N.Y. 2003) | Infringement | "PDR Monthly Prescribing Reference" and "Monthly Prescribing Guide" | Admitted | Survey was admitted for purposes of preliminary injunction analysis despite flaws, but no ruling was made on admissibility for trial |
| 38. | Deere & Co. v. MTD Holdings Inc., 70 U.S.P.Q.2d 1009 (S.D.N.Y. 2004) | Trademark and Trade Dress Infringement | Lawn tractor appearance | Admitted | Court did not rule on admissibility for trial, but stated that if any errors were present, they went to weight and not admissibility |
| 39. | Puritan-Bennett Corp. v. Penox Technologies, Inc., No. IP 02-0762-C-M/S, 2004 U.S. Dist. LEXIS 6896 (S.D. Ind. Mar. 2, 2004) | Trade Dress Infringement | ESCO<2>RT and HELiOS liquid oxygen devices | Admitted | Survey universe was proper |
| 40. | New Colt Holding Corp. v. RJG | Trade Dress Infringement | Revolvers' trade dress | Admitted | Under Rule 403, the probative |

95 TMR 596, *

| | Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|---|------|---------|------------------|------------------|-----------|
| | Holdings of Florida, Inc., 312 F. Supp. 2d 195 (D. Conn. 2004) | | | | value of the survey outweighed prejudice; its flaws went to weight and not admissibility |
| 41. | Millennium Import Co. v. Sidney Frank Importing Co., Civil No. 03-5141, 2004 U.S. Dist. LEXIS 11871 (D. Minn. June 11, 2004) | False Advertising | Vodka taste test advertising | Admitted | Value of a survey depends on its objectivity; none of the criticisms presented warranted the exclusion of the survey |
| 42. | Meeker v. Meeker, No. C 02-0741, 2004 U.S. Dist. LEXIS 22708 (N.D. Cal. July 6, 2004) | Infringement | MEEKER VINE-YARD | Admitted | Challenges to a survey's relevance and methodology go to weight and not admissibility |
| 43. | Verizon Directories Corp. v. Yellow Book USA, Inc., No. 04-CV-0251, 2004 WL 1598916 (E.D.N.Y. July 19, 2004) | False Advertising | Phone Book advertising | Admitted, but given little weight | Puffery survey, although subject to serious objection, was admitted because the court was able to "untangle" law and fact; defendant's motion to strike portions of plaintiff's expert report that included data from defendant's expert denied, but survey data given little weight |
| 44. | Northwest | Infringement | NWA and NWA | Admitted | Although the |

95 TMR 596, *

| Case | Context | Mark(s) at Issue | Survey Treatment | Rationale |
|------|---------|------------------|------------------|-----------|
| Airlines, Inc. v. NWA Federal Credit Union, Civil No. 03-3625 (DWF/SRN), 2004 U.S. Dist LEXIS 17766 (D. Minn. Sept. 2, 2004) | and Dilution | FEDERAL CREDIT UNION | | survey had some flaws, it met "the legal test for admissibility" and had probative value |



Practising Law Institute, Likelihood of Confusion in Trademark Law, Chapter 1, Principles of Likelihood of Confusion (11/01/2008)          Page 1

☐   **Likelihood of Confusion in Trademark Law**

## Likelihood of Confusion in Trademark Law

### *Richard L. Kirkpatrick*

**November 2008**

---

### *Chapter 1*

---------- 1-1 ----------

### Principles of Likelihood of Confusion

---------- 1-2 ----------

### § 1:1 "Likely to Cause Confusion" Is an Element of Pleading and Proof

Proving that a mark is "likely to cause confusion" is an element of

- civil actions for infringement of federally registered marks;[1]
- civil actions for infringement of unregistered marks, names and trade dress and for other kinds of unfair competition;[2] and
- criminal actions for counterfeiting of federally registered marks.[3]

Likelihood of confusion is a basis in the PTO for examiners' refusals of registration; [4] for opposing applications;[5] and for canceling registrations,[6] whether of trademarks, service marks, certification marks,[7] or collective membership marks.[8] It is a basis for the U.S. Customs Service to prevent importations.[9] Likelihood of confusion is also an element of state statutory and common law claims of infringement and unfair competition generally.[10]

Likelihood of confusion is often the "core element" [11] or "key question" [12] in infringement cases. "Generally speaking, the determination

### § 1:8.3 Evidentiary Effect of Registration

Registration does not automatically entitle the registrant's mark to protection. [194] The evidentiary presumptions raised by federal registration of a mark on the Principal Register[195] do not remove or reduce the burden of proof of likelihood of confusion to be carried by the

---------- 1-58 ----------

registrant.[196] Incontestability creates no "independent cause of action;" the registrant must establish the applicable elements of infringement, including likelihood of confusion.[197] (Courts differ, however, on whether registration and incontestability are relevant to the strength of the mark in the likelihood of confusion analysis. See section 3:7.) "Although the *validity* of a registered mark extends only to the listed goods or services, an owner's *remedies* against confusion with its valid mark are not so circumscribed." [198] (See section 5:1.1.)

### § 1:8.4 Lay and Expert Opinion

As a general rule, lay or even expert opinion about likelihood of confusion is inadmissible or entitled to little weight, except for opinions of survey experts. (See section 7:10.) Likelihood of confusion is said to be within the realm of everyone's common knowledge and experience, and the tribunal has the duty to make up its own mind on the issue.[199] Expert testimony is, however, sometimes

---------- 1-59 ----------

admitted and given weight on issues relating to the analytical factors—for example, sound similarity o marks; degree of care; channels of trade.[200]

---------- 1-60 ----------

### § 1:8.5 PTO Actions

**Goodstein Non-Fed Auth App. 21**