

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., <br><br>Plaintiff, <br><br>-v.- <br><br>YAHOO! INC. and OVERTURE SERVICES, INC. d/b/a YAHOO! SEARCH MARKETING, <br><br>Defendants. | Case No. 4:08-CV-626-A |



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
- 3 2009
CLERK, U.S. DISTRICT COURT
By _____
Deputy

## DEFENDANTS' SUR-REPLY IN OPPOSITION TO PLAINTIFF'S MOTION FOR SANCTIONS

American's reply brief fails to respond to Yahoo!'s direct refutation of claims in American's opening brief, and instead inappropriately raises several new matters. Yahoo! respectfully submits this brief to respond to American's new assertions.

## I. INTRODUCTION

American persists in accusing Yahoo! of willfully concealing and failing to preserve relevant evidence, even while the record shows that nothing was concealed or destroyed and that Yahoo! has done its utmost to produce responsive materials. As discussed in Yahoo!'s opening brief, the following facts (among others) have been established:

- Yahoo! has produced data for nearly **20,000,000** clicked advertisements of potential relevance to this case, including the text of **98%** of all accused advertisements displayed (both clicked and non-clicked).

- At her deposition in May 2009, Yahoo!'s corporate designee on data issues fully disclosed the existence of the small set of duplicative data about which American now complains.

- Yahoo! produced numerous documents pertaining to its various studies and has produced, at American's request, any additional responsive documents uncovered during discovery.

- Yahoo! produced roughly 200,000 pages of documents pertaining to the eighteen custodians cited in American's motion.

- Yahoo! hired roughly 50 document reviewers and spent approximately $700,000 to review its document production, in compliance with the Court's order.

American's reply brief barely addresses these crucial facts, yet they completely undermine the premise of American's motion. They establish that Yahoo! concealed nothing and produced everything that was requested.

American's opposition to Yahoo!'s summary judgment motion makes clear that the data sought by its sanctions motion (and provided by Yahoo!) is, at best, of tangential relevance to its legal theories. In its opposition brief, American argues that it is appropriate to "speak in generalities" about the accused Sponsor Results advertisements "because the central issue is Yahoo's general and systematic violation of trademark rights." (American's Opp. to Yahoo!'s MSJ at 40.) American also argues that its expert is allowed to extrapolate from the data Yahoo! has provided to formulate his damages calculation. (*Id.* at 50.) While Yahoo! has issues with these arguments, it is clear that American does not believe it needs additional data to make its case. Yet, it filed a sanctions motion anyway in an apparent effort to impose added costs on Yahoo! and gain tactical advantage.

As the November 16, 2009 discovery cut-off approaches, both sides are completing their document productions. For example, American produced in October approximately 90,000 pages of documents (in response to discovery that Yahoo! served in August) and extensive Excel spreadsheets regarding revenues (but without information for all of 2003). Likewise, Yahoo! has produced some additional data and documents. Yahoo! has not sought to sanction American for its supplemental productions, though it would have liked to have received the materials much sooner. American, however, has sought to portray any supplemental production by Yahoo! as evidence of willful misconduct. The ongoing discovery exchanges between the parties are part of the ordinary process of litigation, not the stuff of a sanctions motion.

Compounding the substantive defects in American's motion, the issues raised were not even ripe for the Court's consideration, due to American's failure to meet and confer. This alone

sf-2758519

is reason to deny American's motion. For lack of this procedural prerequisite, as well as the failure to show any misconduct by Yahoo!, American's sanctions motion should be denied and Yahoo! should be awarded its fees incurred in opposing the motion.

Because it cannot reply to Yahoo!'s response brief, American's brief instead raises new issues and makes new arguments that Yahoo! responds to in this sur-reply.

## II. YAHOO!'S RESPONSES TO AMERICAN'S NEW ASSERTIONS.

Yahoo! provides the following responses to the new points raised in American's reply brief:

1. **Non-Clicked Impressions Data**: American characterizes the 40 days' of non-clicked impressions data that Yahoo! produced from the "Offers" table as a "dramatic late production" of data that was somehow concealed from American. (Reply (Dkt. No. 136) at 3-4.) Contrary to American's assertion, the data was not concealed but was plainly and specifically described by Catherine Cameron, Yahoo!'s designee on data issues, during her May 29, 2009 deposition. Yahoo!'s opposition brief quoted at length from Ms. Cameron's May 2009 testimony describing in detail the "Offers" table and the data it contains. (Opp. at 9-10.) American's reply brief is *completely silent* regarding this testimony. It is undisputed that Ms. Cameron fully disclosed the non-clicked impressions data at issue in American's motion. Accordingly, American has absolutely no basis to claim that this information was concealed.[1]

American now asserts that the data's availability was misrepresented by Yahoo!'s counsel. (Reply at 4.) As explained in Yahoo!'s opposition brief, statements by counsel accurately reflected that for the full seven-year period of alleged damages at issue in this case,

---

[1] On October 15, 2009, American again took the deposition of Ms. Cameron, one of Yahoo!'s most knowledgeable employees regarding the contents of the massive Sage database. (*See* Defs' Opp App. 361 (Supp. Cameron Decl.) ¶ 1.) Ms. Cameron again confirmed, as she had done in her May 2009 deposition, that Yahoo! maintains data regarding impressions in the "Offers" table of the Sage database for a limited period of time (currently 40 days). (Defs' Opp App. 367 (Cameron Oct. 15 Depo.) at 93:14-25.) She also confirmed that this data substantially overlaps with the clicked impressions data already provided, due to the high likelihood that impressions displayed over a period of time will be clicked by a user at some point. (Defs' Opp App. 368-369 (Cameron Oct. 15 Depo.) at 95:16-96:1.)

3

sf-2758519

Yahoo! only maintains active data for clicked advertisements. Yahoo! was focused on providing data for this longer period, not the much shorter 40 days of *duplicative* data from the "Offers" table. In any event, Ms. Cameron's detailed testimony makes clear that the "Offers" data was in no way concealed.

Moreover, the data from the "Offers" table is not new, but instead is duplicative of the nearly 20,000,000 impressions Yahoo! has already provided covering the full seven-year "damages" period. American criticizes the analysis of Yahoo!'s expert showing that the text of the large majority of accused advertisements in the "Offers" table were already provided in the click data. (Reply at 5.) Specifically, American argues that Yahoo! made the "false assumption that Yahoo!'s Creative IDs are not used for more than a single ad text over time." (*Id.*) In response, Yahoo!'s expert has compared the *actual text* of the advertisements in the "Offers" table and the click data (including the supplemental click data recently produced for June 1, 2009, to October 11, 2009). (Defs' Opp App. 358 (Supp. Slottje Decl. ¶ 4).) As expected, the advertisement text of nearly all (*96%*) of the non-clicked impressions from August and September 2009 are contained in the clicked impressions data. (*Id.*) Looking at just the accused advertisements (i.e., excluding those ads attributable to American Airlines, American Eagle Outfitters, and other non-accused advertisers), the overlap is *98%*. (*Id.*) This demonstrates that the click data Yahoo! already provided for the nearly 20,000,000 clicked impressions contains the text of almost every advertisement (both clicked and non-clicked) that appeared in response to searches on American's trademarks and allegedly related terms. Accordingly, American has the text of the accused advertisements.

American also argues that the data produced by Yahoo! does not disclose the number of accused non-clicked impressions displayed to consumers. (Reply at 5.) This, too, is untrue. Yahoo! has recently supplemented its production of data showing the aggregate number of impressions displayed (both clicked and non-clicked) in 2008 and 2009. (Defs' Opp App. 359-360 (Supp. Cameron Decl.) ¶ 5.) Back in May 2009, Yahoo! had produced a record of the exact number of impressions displayed (both clicked and non-clicked) from August 2007 to April 2009

triggered by any of thousands of terms comprising or containing American's trademarks. (Defs' Opp App. 359 (Supp. Cameron Decl.) ¶ 4.) The supplemental data that Yahoo! recently provided breaks those numbers down by advertiser for 2008 and 2009. Accordingly, American has the numbers of impressions displayed by each advertiser during the last two years (both clicked and non-clicked).

2. **Additional Clicked Impressions**: American criticizes Yahoo! for producing an additional set of 70,000 clicked impressions on October 19, 2009. This click data pertains to a now-discontinued Yahoo! advertising program known as Toplink. (Defs' Opp App. 360 (Supp. Cameron Decl.) ¶ 6.) American faults Yahoo! for not producing this data sooner, but the timing of the production was simply the result of an honest oversight. Yahoo!'s data personnel had previously understood that the Toplink clicks were included within the click data already collected and provided. (*Id.*) Upon further analysis, it was determined that the Toplink clicks were actually collected in a separate location and Yahoo! promptly produced the additional data. (*Id.*) As noted in Yahoo!'s opposition brief, Yahoo! has collected data for almost 20,000,000 clicked impressions spanning a nearly seven year period. Yahoo!'s collection of data has been a complicated and time-consuming process, given the tremendous size and complexity of Yahoo!'s databases. (Defs' Opp App. 0091 (Cameron Decl.) ¶ 3 ; 0104 (Cameron May 29 Depo) at 26:6-24.) The timing of the Toplink data production was an accident, nothing more.

3. **Data Underlying Yahoo!'s Studies**: American does not contest that Yahoo! produced numerous documents (listed in Yahoo!'s opposition brief) pertaining to the studies that American cited in its motion. (*See* Opp. at 15-17.) American's reply focuses on just one study – a June 2009 study entitled "North Ad Click Survey Refresh." (Reply at 2-3.) Strangely, American faults Yahoo! for *producing* a few additional documents regarding this study. As recited in Yahoo!'s opposition brief, Yahoo! had searched for additional documents pertaining to this recent study, beginning with the custodian of the particular document within Yahoo!'s group of more than 125 custodians. Yahoo! learned of three additional documents in the possession of Mr. Ramaswamy as he was prepared for deposition and promptly produced those documents.

5

sf-2758519

This reflects nothing more than the ordinary working of the discovery process, not willful misconduct subject to sanctions.

4. **Page Impressions (i.e., screenshots)**: Yahoo! has repeatedly explained to American that Yahoo! does not and has never created screenshots of its search results pages in the ordinary course of its business. (Defs' Opp App. 0094 (Cameron Decl.) ¶ 11.) Despite this, American's reply brief now insists that Yahoo! is somehow obligated to produce screenshots it does not possess. American is entirely wrong. (Reply at 8.) Under the Federal Rules, a party is obligated to produce business records as they are kept in the ordinary course of business, but has no obligation to *create* data and documents for litigation. Rule 34 requires a party to produce electronically stored information "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or form." Fed. R. Civ. P. 34(b)(2)(E)(ii). Yahoo! does not have the screenshots American seeks in any form. Under American's approach, Yahoo! would be obligated to re-design its data processes and infrastructure to create a type of data record that it has never routinely generated in its business. This is far beyond the scope of a party's discovery obligations and only serves to demonstrate the degree to which American has sought to abuse the discovery process for tactical advantage.

5. **American's Failure to Properly Meet and Confer**: As noted in Yahoo!'s opposition brief (Opp. at 6), the Court's Local Rules require a party to confer with the opposing party prior to filing a motion in order to determine whether the motion is opposed. ND Tex. Loc. R. 7.1(a). American's reply brief is *completely silent* regarding this Local Rule. The reason is quite obvious – American did not comply with the Rule prior to filing its motion. American does not and cannot deny that it never raised with Yahoo! its intention to file a sanctions motion and never sought a phone call or meeting to attempt a resolution of the issues in the weeks prior to filing the motion. This alone warrants denial of American's motion and awarding Yahoo! its costs of opposing the motion.[2]

---

[2] In footnote 12 of its reply brief, American states that Yahoo! "failed to raise its claims about the meet-and-confer process" for several weeks after the sanctions motion was filed. (Reply at 10 n.12.) Of
(Footnote continues on next page.)

6

sf-2758519

Unable to say that it complied with the Local Rules, American's reply brief now makes additional representations about the August 25, 2009 meeting in Seattle regarding the restoration of 2007 data.[3] This meeting was conducted in accordance with the Court's Order of August 11, 2009, directing that technological experts for both parties meet to discuss *the 2007 data* that was at issue in American's motion to compel and the Court's earlier orders. The discussion was kept primarily between Yahoo!'s technological personnel and American's outside data consultants and did not cover the data in the "Offers" table at any length. It is entirely misleading for American in its reply brief to characterize this meeting as a meet-and-confer regarding non-clicked impressions data.[4]

## III. CONCLUSION

As set forth in Yahoo!'s opposition brief and herein, Yahoo! has gone to great lengths and tremendous expense to collect and produce all relevant information sought by American. There has been no discovery misconduct by Yahoo! of any kind, let alone the sort of willful and bad-faith misconduct that would justify the severe sanctions that American seeks. American's motion for sanctions should be denied and Yahoo! should be awarded its costs incurred in opposing American's motion.

---

(Footnote continued from previous page.)

course, it was American's duty to properly meet and confer *before* filing its motion, not Yahoo!'s duty to seek a meet-and-confer with American afterwards. Yahoo! contacted American to see if American would agree to withdraw its improper motion and seek to resolve any disputes informally. American's counsel rejected this overture.

[3] American refers to "the extensive correspondence" between the parties as evidence of a meet-and-confer effort (Reply at 9), but as described in Yahoo!'s opposition brief, only one of those letters addressed some issues eventually raised in American's motion, and that letter only briefly addressed two of the issues. (Opp. at 6-7.)

[4] American did not submit a declaration supporting its characterization of the August 25, 2009 meeting, leaving its statements without evidentiary support.

Dated: November 3, 2009

Respectfully submitted,

_Scott Fredricks_
David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
Anthony D. Rodriguez (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH MARKETING

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Defendants' counsel, as indicated below, on the 3rd day of November 2009:

| | |
|---|---|
| Dee J. Kelly<br>Dee J. Kelly, Jr.<br>Lars L. Berg<br>KELLY HART & HALLMAN, LLP<br>201 Main Street, Suite 2500<br>Fort Worth, TX 76102 | *Via Hand Delivery* |
| Frederick Brown<br>George A. Nicoud III<br>Jason Stavers<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94104 | *Via Federal Express* |
| Howard S. Hogan<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036 | *Via Federal Express* |

Scott A. Fredricks