CTJ/RMT
WD
ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
DROP BOX
NOV 12 2009
454
CLERK, U.S. DISTRICT COURT
By _____ Deputy

| | | |
|---|---|---|
| AMERICAN AIRLINES, INC., | § | |
| Plaintiff, | § § § | |
| v. | § § | Civil Action No. 4-08CV-626-A |
| YAHOO! INC., and OVERTURE SERVICES, INC. d/b/a YAHOO! SEARCH MARKETING, | § § § § § | |
| Defendants. | § § | |

# DEFENDANTS' OBJECTIONS AND MOTION TO STRIKE AMERICAN AIRLINES, INC.'S SUMMARY JUDGMENT EVIDENCE AND BRIEF IN SUPPORT

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | ii |
| INTRODUCTION | | 1 |
| ARGUMENT | | 4 |
| 1. | HEARSAY OBJECTIONS | 4 |
| 2. | OBJECTIONS BASED ON AUTHENTICITY | 6 |
| 3. | OBJECTIONS BASED ON RELEVANCE | 7 |
| 4. | OBJECTIONS TO SETTLEMENT AGREEMENTS UNDER RULE 408 | 9 |
| 5. | OBJECTIONS UNDER RULE OF COMPLETENESS | 10 |
| 6. | OBJECTIONS TO UNRELIABLE EXPERT TESTIMONY | 11 |
|   | a. Expert Report of Daniel L. Jackson | 11 |
|   | b. Expert Report of Ronald C. Goodstein | 11 |
|   | c. Expert Report of Basil L. Englis | 11 |
| PRAYER | | 13 |

# TABLE OF AUTHORITIES

**CASES**                                                                                       **Page(s)**

*Amstar Corp. v. Domino's Pizza, Inc.*,
   615 F.2d 252 (5th Cir. 1980) ..................................................................................13

*Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co*,
   550 F.3d 465 (5th Cir. 2008) ................................................................................7, 8

*Duplantis v. Shell Offshore, Inc.*,
   948 F.2d 187 (5th Cir. 1991) ....................................................................................4

*Fowler v. Smith*,
   68 F.3d 124 (5th Cir. 1995) ......................................................................................4

*Helen of Troy, L.P. v. Zotos Corp.*,
   235 F.R.D. 634 (W.D. Tex. 2006) ............................................................................6

*IQ Prods. Co. v. Pennzoil Prods. Co.*,
   305 F.3d 368 (5th Cir. 2002) ..................................................................................13

*James v. Tex. Collin County*,
   535 F.3d 365 (5th Cir. 2008) ....................................................................................4

*Mary Kay, Inc. v. Weber*,
   601 F. Supp. 2d 839 (N.D. Tex. 2009) ....................................................................5

*Provident Life and Accident Ins. Co. v. Goel*,
   274 F.3d 984 (5th Cir. 2001) ....................................................................................6

*Scott Fetzer Co. v. House of Vacuums, Inc.*,
   381 F.3d 477, 488 (5th Cir. 2004) ..........................................................................11

*Starter Corp. v. Converse, Inc.*,
   170 F.3d 286 (2d Cir. 1999) .....................................................................................9

*The Law Co., Inc. v. Mohawk Const. & Supply Co., Inc.*,
   523 F. Supp. 2d 1276 (D. Kan. 2007) ......................................................................6

*United States v. $92,203.00 in United States Currency*,
   537 F.3d 504 (5th Cir. 2008) .................................................................................4, 5

*United States v. Richards*,
   204 F.3d 177, 202 (5th Cir. 2000) ............................................................................5

# TABLE OF AUTHORITIES
## (continued)

**CASES** Page(s)

*Wells v. Franzen,*
   777 F.2d 1258 (7th Cir. 1985) ............................................................................... 6


**STATUTES AND RULES**

FED. R. CIV. PROC. 56(e) ............................................................................................ 4, 5

FED. R. OF EVID.
   106 ............................................................................................................................. 9
   402 ............................................................................................................................. 7
   403 ............................................................................................................................. 8
   408 ....................................................................................................................... 9, 10
   702 ..................................................................................................................... 10, 11
   801(c) ........................................................................................................................ 4
   801(d)(2) ................................................................................................................... 6
   805 ............................................................................................................................. 5
   901 ............................................................................................................................. 7

## INTRODUCTION

On November 2, 2009, Plaintiff American Airlines, Inc. ("American") filed its memorandum of law in opposition to Defendants Yahoo! Inc. and Overture Services, Inc.'s (collectively "Yahoo!") motion for summary judgment along with an Appendix containing American's responsive summary judgment evidence.

Yahoo! objects to and moves the Court to strike the following exhibits in American's responsive summary judgment evidence (Appendix Supporting Plaintiff's Motion for Partial Summary Judgment ("Opp. App.")):

| Exhibit | Description & Starting Appendix Number | Objections |
|---|---|---|
| 1 | Expert Report of Daniel L. Jackson [Sealed Document] (Opp. App. 1) | Unreliable |
| 2 | Expert Report of Ronald C. Goodstein [Sealed Document] (Opp. App. 273) | Unreliable |
| 3 | Expert Report of Basil Englis [Sealed Document] (Opp. App. 345) | Unreliable |
| 22, Ex. C | E-Mail from Rebecca O'Reilly to Don Aydon (Opp. App. 1058) | Incomplete |
| 27 | Publication: "The Internet Travel Industry: What Consumers Should Expect and Need to Know and Options for a Better Marketplace" (Opp. App. 1152) | Lacks Authenticity Hearsay |
| 28 | Publication: "Eye Tracking Report: Google, MSN, and Yahoo! Compared" (Opp. App. 1204) | Lacks Authenticity Hearsay |
| 29 | Publication: "Visual attention to Online Search Engine Results" (Opp. App. 1223) | Lacks Authenticity Hearsay |
| 31 | Publication: "Search Engine Users: Internet searchers are confident, satisfied and trusting – but they are also unaware and naïve." (Opp. App. 1243) | Lacks Authenticity Hearsay |

| 32 | Publication: "The Comparative Effectiveness of Sponsored and Nonsponsored Links for Web E-commerce" (Opp. App. 1279) | Lacks Authenticity Hearsay |
| --- | --- | --- |
| 33 | Publication: "Examining Searcher Perceptions of and Interactions with Sponsored Results" (Opp. App. 1304) | Lacks Authenticity Hearsay |
| 34 | Publication: "Search Engine Usage in North America" (Opp. App. 1312) | Lacks Authenticity Hearsay |
| 35 | Publication: "A Matter of Trust: What Users Want from Websites" (Opp. App. 1371) | Lacks Authenticity Hearsay |
| 36 | Publication: "Search Marketing Fact Pack 2006" (Opp. App. 1415) | Lacks Authenticity Hearsay |
| 37 | Publication: "Still in Search of Disclosure: Re-Evaluating How Search Engines Explain the Presence of Advertising in Search Results" (Opp. App. 1442) | Lacks Authenticity Hearsay |
| 38 | Publication: "False Oracles: Consumer Reaction to Learning the Truth About How Search Engines Work" (Opp. App. 1474) | Lacks Authenticity Hearsay |
| 39 | Publication: "Brand Protection Online: 11 Graphic Examples of Brand Abuse Online" (Opp. App. 1540) | Lacks Authenticity Hearsay |
| 40 | Publication: "How America Searches: Report June 2005" (Opp. App. 1553) | Lacks Authenticity Hearsay |
| 43 | E-Mail "complaint" from Henry S. Paul (Opp. App. 1612) | Double Hearsay |
| 45 | Publication: "Airline Web Sites Continue to Power Online Channel as Airlines Rebound" (Opp. App. 1620) | Lacks Authenticity Hearsay |
| 46 | E-Mail "complaint" from Gary W. Fisher (Opp. App. 1623) | Double Hearsay |
| 47 | E-Mail "complaint" from Manish Patel (Opp. App. 1625) | Double Hearsay |
| 49 | E-Mail "complaint" from Glenn A. Thompson (Opp. App. 1627) | Double Hearsay |
| 50 | E-Mail "complaint" from Wendelene Turner (Opp. App. 1628) | Double Hearsay |

| 51 | E-Mail "complaint" from Ron S. Canups (Opp. App. 1629) | Double Hearsay |
|---|---|---|
| 52 | E-Mail "complaint" Amiya Nayak (Opp. App. 1630) | Double Hearsay |
| 53 | Settlement Agreement between Overture and third parties (Opp. App. 1631) | Relevance Rule 408 (settlement agreement) |
| 55 | E-Mail from Bradley King to Elizabeth Gardenhire (Opp. App. 1654) | Double Hearsay |
| 59 | E-Mail from Jim Stothard to Chip Jessopp and Don Aydon (Opp. App. 1671-1674) | Hearsay |
| 64 | Slideshow: "Calibration Test Analysis" (Opp. App. 1700) | Relevance Hearsay |
| 65 | Slideshow: "Y! Category Overview" (Opp. App. 1709) | Relevance Hearsay |
| 69 | Slideshow: "Keynote Customer Experience Rankings" (Opp. App. 1721) | Relevance Hearsay |
| 97 | Slideshow: [Sealed Document] YAH-AA 1142092 (Opp. App. 1901) | Relevance Hearsay |
| 110 | Slideshow: [Sealed Document] YAH-AA 1911842 (Opp. App. 1946) | Relevance Hearsay |
| 111 | E-Mail from Don Aydon to Elizabeth Gardenhire and Peter Hagerty (Opp. App. 1948) | Double Hearsay |
| 112 | E-Mail from Dina Freeman (Opp. App. 1951) | Double Hearsay |
| 114 | E-Mail from Jennifer Booze to Rene Woodruff and Raoul Gatepin (Opp. App. 1956) | Double Hearsay |
| 129 | Slideshow: [Sealed Document] YAH-AA 3542534 (Opp. App. 2059) | Relevance Hearsay |
| 131 | Slideshow: [Sealed Document] YAH-AA 1230299 (Opp. App. 2064) | Relevance Hearsay |
| 132 | Settlement Agreement between Yahoo! and a third party (Opp. App. 2079) | Relevance Rule 408 (settlement agreement) |
| 139 | Slideshow: [Sealed Document] dated July 2009 (Opp. App. 1630) | Relevance Hearsay |

## ARGUMENT

When responding to Yahoo!'s motion for summary judgment, Federal Rule of Civil Procedure 56(e) requires American to set forth facts that would be admissible in evidence at trial. *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991). Material that is inadmissible should not be considered on a motion for summary judgment because it would not establish a genuine issue of material fact if offered at trial, rendering any continuation of the action useless. *Id.* For example, evidence on summary judgment may not be considered by the court if it is based on hearsay or is otherwise excludable at trial. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995); *United States v. $92,203.00 in United States Currency*, 537 F.3d 504, 506 (5th Cir. 2008).

Yahoo! moves to exclude evidence that is inadmissible for the following reasons:

**1. Hearsay Objections**

Exhibits 27–29, 31–40, 43, 45–52, 55, 59, 64–65, 69, 97, 110–112, 114, 129, 131, and 139 are inadmissible hearsay.

Evidence is inadmissible hearsay if it is an out-of-court statement that is offered into evidence to prove the truth of the matter asserted. FED. R. EVID. 801(c).

Exhibits 27–29, 31–40, and 45, which consist of reports and articles authored by third parties, are inadmissible hearsay because they are out-of-court statements relied upon by American to prove the truth of the matters asserted (*see* Plaintiff American Airlines, Inc.'s Memorandum of Law in Opposition to Defendant Yahoo! Inc.'s Motion for Summary Judgment ("Opp.") [Doc. No. 148] at 7, 10, 23, 33, 36, and 40). *See James v. Tex. Collin County*, 535 F.3d 365 (5th Cir. 2008) (holding that newspaper articles are not proper summary judgment evidence to prove the truth of the facts that they report because they are inadmissible hearsay).

Similarly, Exhibits 43, 46–52, 55, 111, 112, and 114 should be struck because they contain inadmissible double hearsay. Hearsay contained within hearsay is not admissible unless

both parts are shown to be admissible. FED. R. EVID. 805; *United States*, 537 F.3d at 506. These exhibits contains all or portions of e-mails, each recounting or summarizing what some third-party declarant said about a given matter. For example, Exhibits 4, 46–47, 49–52, and 114 contain the contents of third-party "complaints" to American or Yahoo! (Opp. App. 1612, 1623–30, 1957), all of which are double hearsay and not subject to any hearsay exception. *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 850–51 (N.D. Tex. 2009) (holding that e-mail complaints are inadmissible double hearsay that cannot be considered when ruling on a motion for summary judgment). Exhibit 55 contains *quadruple* hearsay (Elizabeth Gardenhire telling Bradley King what Renee Whittingstall told her was said by David Gideon) without any indication that all four statements are subject to any hearsay exception. (Opp. App. 1654–56.) Similarly, Exhibit 111 contains a discussion about what Renee Whittingstall told Elizabeth Gardenire and Gita Bhatia about what she remembered was contained in an unidentified "study." (Opp. App. 1949–50.) And Exhibit 112 also contains statements about the content of several "studies" that are not identified. (Opp. App. 1951.)

Finally, American's slideshow exhibits, Exhibits 64, 65, 69, 97, 110, 129, 131, and 139, contain out-of-court statements cited by American for the truth of the matter asserted, and American has not established that any of the documents fall into any hearsay exception, as is its burden. *See, e.g., United States v. Richards*, 204 F.3d 177, 202 (5th Cir. 2000) ("The proponent of the evidence must prove the preliminary facts that bring the statement within Rule 801(d)(2)(D), by a preponderance of the evidence."). American has no evidence to establish who made the statements in the slides; whether that person was authorized by Yahoo! to make the statements; whether the person was an employee or agent acting within the scope of his or her employment or agency in making the statements; or whether Yahoo! manifested its adoption of the statement. FED. R. EVID. 801(d)(2). Also, Exhibits 65, 69, 97, 131, and 139, recount out-

of-court statements by others that fall within the Rule 805 double hearsay exclusion (*see* Opp. App. 1710–11, 1722, 1904–06, 2065–78, 2104–2120). Though several of the presentations contain the Yahoo! logo, American has not proven that the hearsay *and double hearsay* statements exacting standards of any of the Rule 801(d)(2) exceptions. On their face, the exhibits are inadmissible hearsay and American has not met its burden to prove otherwise.

### 2. Objections Based on Authenticity

Evidence that has not been authenticated by affidavit or other proper means may not be considered by a court in determining a summary judgment motion. *See, e.g., Wells v. Franzen*, 777 F.2d 1258, 1262 (7th Cir. 1985) (holding that papers that were unaccompanied by certifying affidavits or other means of authentication, as required by Rule 56(e), could not be considered as summary judgment evidence); *Provident Life and Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) ("Unsworn expert reports . . . do not qualify as affidavits or otherwise admissible evidence for [the] purpose of Rule 56, and may be disregarded by the court when ruling on a motion for summary judgment."); *Helen of Troy, L.P. v. Zotos Corp.*, 235 F.R.D. 634 (W.D. Tex. 2006) ("To be admissible [as summary judgment evidence], documents must be authenticated by and attached to an affidavit that meets the requirements of [Federal Rule of Civil Procedure] 56(e)." (quoting *Haynes v. Pennzoil Co.*, 141 F.3d 1163, 1998 WL 197784, at *2 (5th Cir. 1998)); *The Law Co., Inc. v. Mohawk Const. & Supply Co., Inc.*, 523 F. Supp. 2d 1276, 1282 (D. Kan. 2007) (refusing to consider facts supplied in response to motion for summary judgment that were premised on unauthenticated documents).

American has not authenticated Exhibits 27–29, 31–40, and 45—each of which appears to be a report or publication prepared by some third-party—by affidavit or other proper means showing that each exhibit is what American purports it to be as required by Rule 901. FED. R. EVID. 901. Rather, American has simply photocopied publications purportedly containing

"facts" proffered in opposition to Yahoo!'s summary judgment motion without providing any proper foundation. Such evidence may not be considered by the Court on summary judgment and must be struck.[1]

### 3. Objections Based on Relevance

Irrelevant evidence is not admissible. FED. R. EVID. 402. American's Exhibits 53, 64, 65, 69, 97, 110, 129, 131, 132, and 139 are all irrelevant to the issues in this case and represent an attempt by American to expand the issues beyond the dispute concerning American's trademark terms.

To prevail on its trademark infringement claims, American must demonstrate (a) ownership of a legally protectable trademark, and (b) infringement by demonstrating a likelihood of confusion in the minds of potential customers as to the source, affiliation, or sponsorship of the product at issue. *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co*, 550 F.3d 465, 474, 478 (5th Cir. 2008) ("*Smack Apparel Co.*"). Indeed, the singular thrust of the allegations in American's First Amended Complaint (hereafter "FAC") is that Yahoo!'s conduct causes "consumer confusion" as to the source of services offered by Yahoo! Sponsored Search advertisers, thereby damaging American's interest in its marks. (FAC, ¶¶ 1, 5, 42, 50–51, 54, 56–57, 61–75, 78–82, 83–90, 93–100, 103–106, 113–116, 122–123, 130–133, 140, 144, 148, 154, 160, 167).

Exhibits 53 and 132, both settlement agreements between a Defendant and a third party, bear no relevance to the issue of whether American's marks are legally protectable. (Opp. App. 1644, 2079.) The agreements do not relate to American's marks in any sense. Rather, American cites the settlement agreements in a discussion about whether Yahoo! has the ability to prevent

---

[1] Further, to the extent American suggests that these reports are some sort of authoritative evidence on the matters asserted, American has not designated the authors as experts under the Court's scheduling order.

trademark infringement. (Opp. at 14). American's reference to the two settlement agreements is an attempt by American to expand this suit into a trial over Yahoo!'s Sponsored Search program as a whole and to introduce unfairly prejudicial and confusing evidence that have no bearing on the triable issues surrounding American's marks.

Further, the slideshows in American's evidence, Exhibits 64, 65, 69, 97, 110, 129, 131, and 139, are irrelevant to the question of whether Yahoo! has infringed American's marks. The slideshows contain assessments of Yahoo!'s algorithmic and Sponsored Search programs as a whole. Where the exhibits discuss keyword terms, most of the analyses do not distinguish between generic trademarked terms or generic terms. Rather, the exhibits contain generalized statements about Yahoo!'s Sponsored Search program and are of no probative value when answering whether American has evidence of a likelihood of confusion as to American's marks.

To the extent any discussion in the exhibits on the topic of keyword bidding may be of tangential relevance, the danger of confusion or unfair prejudice of the information outweighs any probative value. FED. R. EVID. 403. For example, Exhibits 97, 110, and 139 are internal Yahoo! presentations by Yahoo! employees that are designed to analyze and improve Yahoo!'s competitiveness in the search engine marketplace. (Opp. App. 1906, 1947, 2105–2120.) These exhibits contain frank internal discussions of the search engine market and ways to improve Yahoo!'s competitive standing in the marketplace. The exhibits also discuss ways to improve Yahoo!'s search product and to enhance user experience. (*See* Opp. App. 1722, 2105–2120.) Further, where the slide shows discuss "confusion," the discussions do not relate to or bear on the type of confusion necessary to establish trademark infringement—"confusion as to the source, affiliation, or sponsorship" of any American or other trademarked product. *Smack Apparel Co.*, 550 F.3d at 473. Therefore, to the extent any of the slideshows are relevant, the

relevance is outweighed by the danger posed by possible confusion or unfair prejudice and the evidence should be excluded.

### 4. Objections to Settlement Agreements under Rule 408

Evidence that a party furnished or offered or promised to furnish valuable consideration in compromising or attempting to compromise a claim is inadmissible if offered to prove liability for a claim that was disputed as to validity or amount. FED. R. EVID. 408.

Exhibits 53 and 132 are copies of settlement agreements between one or more of the defendants and a third party (Opp. App. 1631 and 2079). The exhibits are evidence of promises to compromise disputed claims that is inadmissible under Rule 408 because they are introduced to prove Yahoo!'s liability on American's trademark infringement claims. *See Starter Corp. v. Converse, Inc.*, 170 F.3d 286, 293 (2d Cir. 1999) ("Rule 408 bars the use of settlement evidence to establish the validity or invalidity of a claim of trademark infringement."). American cites to the agreements in the midst of a discussion about Yahoo!'s ability to "prevent trademarks from being used under these confusing circumstances." (Opp. at 14.) Again, American is attempting to expand the scope of the inquiry beyond its own terms. Rather, American cites the agreements as a diversionary tactic to suggest that because Yahoo! has agreed in settlement to treat third-parties' marks in a certain way, Yahoo!'s ordinary procedures must have been deficient. Because American offers this evidence to counter Yahoo!'s motion for summary judgment on liability and to prove the validity of American's infringement claim, the evidence falls squarely within the scope of Rule of Evidence 408 and must be struck.

### 5. Objections under Rule of Completeness

The e-mail attached as Exhibit C to Exhibit 22, the declaration of Rebecca O'Reilly, (Opp. App. 1058) is incomplete. Although Ms. O'Reilly attests that Exhibit C "is a true and accurate copy of [O'Reilly's] August 15, 2007 e-mail to Don Aydon," (Opp. App. 1040), Ms.

O'Reilly did not include the entire email, but omitted the documents attached to the email. Ms. O'Reilly's omission is significant because the attachment reveals that American was concerned about a single advertisement among several shown on the screenshot, and that American did not take issue with the other advertisements that appeared after a Yahoo! search for "american airlines." (Appendix in Support of Defendants' Objections and Motion to Strike American Airlines, Inc.'s Motion for Summary Judgment Evidence and Brief in Support ("Defs' Mtn. Strike Appx.") at 95-98.) Further, Ms. O'Reilly failed to include the remainder of the email string related to Exhibit C. (Defs' Mtn. Strike Appx. at 99-101.) Accordingly, pursuant to Federal Rule of Evidence 106, Yahoo! is submitting the entire email string, which was produced by American and Bates Labeled AAY-15298 through AAY-15302 and AAY-128141 through 128143, in an accompanying appendix (Defs' Mtn. Strike Appx. at 94-98, 99-101).

### 6. Objections to Unreliable Expert Testimony

Exhibits 1, 2, and 3, the expert reports of Daniel L. Jackson, Ronald C. Goodstein, Ph.D., and Basil L. Englis, respectively, should be excluded because they do not meet the qualifications of Rule 702 of the Rules of Evidence. Specifically, they should be struck because (1) they are not based on sufficient facts and data, (2) the testimony is not the product of reliable principles and methods, and (3) the experts have not applied the principles and methods reliably to the facts. FED. R. EVID. 702.

### a. Expert Report of Daniel L. Jackson

As more fully stated in Yahoo!'s motion to exclude the evidence of Daniel L. Jackson, filed on November 6, 2009, the Expert Report of Daniel L. Jackson is unreliable and should be struck because Mr. Jackson's lost profits testimony is based on a faulty "100% assumption", because Mr. Jackson's lost profits testimony lacks a basis for causation and is impermissibly based on non-actionable sponsor results, and because Mr. Jackson's damages figures for at least 2003, 2004, and 2005 fail to satisfy Rule 702. Indeed, even Dr. Englis admits that a new study would need to be conducted in order to determine the intention of Internet users when they enter a brand term in a keyword search. (Defs' Mtn. Strike Appx. at 56-59.)

### b. Expert Report of Ronald C. Goodstein

As more fully stated in Yahoo!'s motion to exclude the evidence of Ronald C. Goodstein, filed on November 6, 2009, the Expert Report of Ronald C. Goodstein is unreliable and should be struck because his opinion as to consumer confusion is based on a faulty analysis by failing to acknowledge the doctrine of nominative fair use and by relying on irrelevant facts, and because his opinion is not based on sufficient facts or reliable methods.

### c. Expert Report of Basil L. Englis

As more fully argued in Yahoo!'s motion to exclude the evidence of Basil L. Englis, filed on November 6, 2009, the Expert Report of Basil L. Englis is unreliable and should be struck because Dr. Englis' survey has "serious flaws [that] . . . make any reliance on [it] unreasonable." *See Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 488 (5th Cir. 2004), (*see* Defendants' Brief in Support of Motion for Summary Judgment ("Br.") at 34-36.)

First is the problem of Dr. Englis' test stimulus. American argues that it "was perfectly typical," but offers absolutely no evidence to support this claim. "[A]ctual search results" are not "typical" of the issues in this case where they were generated after all the major advertisers

had stopped keyword bidding in deference to American's requests. (*See, e.g.*, Appendix in Support of Defendants' Motion for Summary Judgment ("App.") at 263, 264.) In fact, Dr. Englis had not heard of any of the travel-related Sponsor Results in the screenshot prior to his work on this case, but had heard of Orbitz, Expedia, and Travelocity. (Appx. at 5-6, 8.) Because the screenshot dates to August 2007, eBay is the only household name among the advertisers (Opp. at 23), and eBay contributed almost nothing to the "confusion" Dr. Englis purported to observe. (Defs' Mtn. Strike Appx. at 38, 52-53.) The fact that American complained to Yahoo! about the screenshot also does not bolster its legitimacy, since American complained about only one of the advertisements and Yahoo! promptly and fully addressed American's complaint. (*Supra*, at 9-10; *see also* Defs' Mtn. Strike Appx. at 7, 44-46.) Finally, Dr. Englis has admitted that he altered the screenshot in constructing his test stimulus, making changes to the advertisements that he thought made his test stimulus "more confusing" than the screenshot on which it was modeled. (Defs' Mtn. Strike Appx. at 23-29; *see also id.* at 12, 111.) The "'survey cannot be assumed to be representative,'" so "'judgment as a matter of law is proper.'" (Br. at 36 (quoting *Bank of Tex. v. Commerce Sw., Inc.*, 741 F.2d 785, 789 (5th Cir. 1984).)

Second, Dr. Englis' survey creates no triable issue of material fact because it aggregates the "confusion" said to result from several different advertisements, even though three of them are not actionable because they were placed by American's own agents. (App. 236, 245, 246; Defs' Mtn. Strike Appx. at 18-19 ("globe travels.com," "BookAirlineTickets.com," and "Airlines.Buy-Cheaptickets.com" are American agents); *see also id.* at 20-22, 33-41, 74, 87, 92-93.) Aggregating actionable and not actionable statements in this manner renders the entire survey irrelevant and therefore inadmissible. *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376-77 (5th Cir. 2002).

Third, the survey creates no triable issue of fact because Dr. Englis surveyed a population that was not "a fair sampling of those purchasers most likely to partake of the alleged infringer's goods or services." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980). Dr. Englis' survey universe includes respondents who have never used the Internet (Defs' Mtn. Strike Appx. at 84-85) and respondents who would never purchase an airline ticket from a website. (*Id.* at 86.) The sample universe is therefore unrepresentative of the more educated and affluent population likely to encounter the accused advertisements. (Defs' Mtn. Strike Appx. at 79-83; 111, 120-125.)

Fourth, Dr. Englis' survey creates no triable issue of fact because it was constructed and administered in a fashion so confusing that even Dr. Englis could not answer some of his own questions. (Defs' Mtn. Strike Appx. at 9-11, 13-19, 30-32, 42-43, 54-55, 88-90.) The result was that consumers measured three times as "confused" by the organic link for AA.com as by the sponsor results. (Defs' Mtn. Strike Appx. at 60-67.) And when given an opportunity to explain their answers, they showed they were more confused by the questions than by the simulated search results. (Defs' Mtn. Strike Appx. at 47-53, 68-73, 75-78, 102-105.)

## PRAYER

Yahoo! respectfully requests that the Court grant its objections and motion to strike the Exhibits 1, 2, 3, 22 Ex. C, 27, 28, 29, 31, 32, 33, 34, 35, 36, 37, 38, 39, 40, 43, 45, 46, 47, 49, 50, 51, 52, 53, 55, 59, 64, 65, 69, 97, 110, 111, 112, 114, 129, 131, 132, and 139 from the evidence proffered by American in response to Yahoo!'s motion for summary judgment.

Dated: November 12, 2009

Respectfully submitted,

*[signature]*

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
D. Anthony Rodriguez (*pro hac vice*)
Alison M. Tucher (*pro hac vice*)
Brooks M. Beard (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants YAHOO! INC. and OVERTURE SERVICES, INC. d/b/a YAHOO! SEARCH MARKETING

## CERTIFICATE OF CONFERENCE

On November 12, 2009, I conferred with Dee J. Kelly, Jr., counsel for American, who indicated that American is opposed to the relief sought in this motion.

_____
Scott A. Fredricks

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Plaintiff's counsel on the 12th day of November, 2009 as follows:

Dee J. Kelly  *Via Hand Delivery*
Dee J. Kelly, Jr.
Lars L. Berg
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Frederick Brown  *Via FedEx*
George A. Nicoud III
Jason Stavers
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105

Howard S. Hogan  *Via FedEx*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

_____
Scott A. Fredricks