American Airlines, Inc. v. Yahoo! Inc. et al                                    Doc. 184

CTJ/RMT

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

DROP BOX
NOV 1 2 2009
4:55

CLERK, U.S. DISTRICT COURT

By _____
        Deputy

AMERICAN AIRLINES, INC.,

        Plaintiff,

    -v.-

YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH
MARKETING,

        Defendants.

Case No. 4:08-CV-626-A

## DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

sf-2759593

Dockets.Justia.com

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........................................................................................... ii

I.      INTRODUCTION ................................................................................................ 1

II.     YAHOO! IS NOT LIABLE TO AMERICAN FOR THE CONDUCT OF
        AMERICAN'S OWN AGENTS ......................................................................... 2

        A.      There Is No Confusion Because Its Agents Are Affiliated With
                American .................................................................................................. 3

        B.      Yahoo! Is Not the Proximate Cause of Any Damages ............................ 4

        C.      American Acquiesced In the Accused Advertising ................................. 5

III.    CONTRARY TO THE LEGAL PROTECTION FOR NOMINATIVE FAIR
        USE, AMERICAN SEEKS TO SHUT DOWN SEARCH ENGINE
        ADVERTISING FOR TRADEMARKED GOODS ........................................... 7

        A.      American's Theory—that Nobody Can Truthfully Advertise Sale
                of a Trademarked Service Absent the Mark Holder's Express
                Permission—Is Contrary to Controlling Fifth Circuit Precedent .......... 8

        B.      American's Theory Is Contrary to the Holding of District Courts
                That Have Considered Nominative Fair Use In Keyword Searching .... 10

IV.     AMERICAN CITES NO MATERIAL ISSUE OF FACT PREVENTING
        SUMMARY JUDGMENT OF NO INFRINGEMENT ................................... 13

        A.      There Are No Disputes of Material Fact as to Yahoo!'s Conduct ........ 13

        B.      There Are No Material Issues of Fact As to the Conduct of
                Yahoo!'s Advertisers ............................................................................ 15

V.      IF ANY ADVERTISEMENTS INFRINGE, YAHOO! IS AN INNOCENT
        INFRINGER NOT LIABLE FOR DAMAGES .............................................. 19

VI.     AMERICAN CITES NO MATERIAL ISSUE OF FACT TO PREVENT
        SUMMARY JUDGMENT ON ITS OTHER CAUSES OF ACTION ........... 21

        A.      Additional Elements for Contributory Infringement ........................... 21

        B.      Additional Elements for Vicarious Infringement ................................ 21

        C.      Dilution ................................................................................................ 22

        D.      State Law Claims ................................................................................. 22

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*800-JR Cigar, Inc. v. GoTo.com, Inc.,*
437 F. Supp. 2d 273 (D.N.J. 2006) ..................................................................10

*Abramson v. Am. Online, Inc.,*
393 F. Supp. 2d 438 (N.D. Tex. 2005) ...............................................................6

*Amstar Corp. v. Domino's Pizza, Inc.,*
615 F.2d 252 (5th Cir. 1980) ...........................................................................18

*Artcraft Novelties Corp. v. Baxter Lane Co.,*
685 F.2d 988 (5th Cir. 1982) .............................................................................5

*AT&T v. Winback & Conserve Program,*
42 F.3d 1421 (3d Cir. 1994)............................................................................5, 6

*Australian Gold, Inc. v. Hatfield,*
436 F.3d 1228 (10th Cir. 2006) .......................................................................12

*Bandag, Inc. v. Al Bolster's Tire Stores, Inc.,*
750 F.2d 903 ......................................................................................................4

*Bd. of Regents, The Univ. of Tex. v. KST Elec., Ltd.,*
550 F. Supp. 2d 657 (W.D. Tex. 2008)...............................................................6

*Dallas Cowboys Football Club, Ltd. v. America's Team Props., Inc.,*
616 F. Supp. 2d 622 (N.D. Tex. 2009) ...............................................................9

*Designer Skin, LLC v. S&L Vitamins, Inc.,*
560 F. Supp. 2d 811 (D. Ariz. 2008) ...............................................................12

*Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.,*
841 F. Supp. 1339 (E.D.N.Y. 1994) ...................................................................5

*DS Waters of Am. Inc. v. Princess Abita Water, L.L.C.,*
539 F. Supp. 2d 853 (E.D. La. 2008) .................................................................9

*Edina Realty, Inc. v. Themlsonline.com,*
No. Civ. 04-4371JRTLN, 2006 WL 737064 (D. Minn. Mar. 20, 2006) ................11

*Elvis Presley Enters. v. Capece,*
141 F.3d 188 (5th Cir. 1998) ..........................................................................7, 9

*Equibrand Corp. v. Reinsman Equestrian Prods., Inc.,*
No. 3:07-CV-0536-P, 2007 WL 1461393 (N.D. Tex. May 17, 2007)......................2

*Fare Deals, Ltd. v. World Choice Travel.com, Inc.,*
    180 F. Supp. 2d 678 (D. Md. 2001) ....................................................................................22

*Fin. Express LLC v. Nowcom Corp.,*
    564 F. Supp. 2d 1160 (C.D. Cal. 2008) ...........................................................................10

*Google v. American Blind & Wallpaper,*
    No. C 03-5340 JF(RS), 2007 WL 1159950 (N.D. Cal. April 18, 2007)..................................9

*Gov't Employees Ins. Co. v. Google, Inc.,*
    330 F. Supp. 2d 700 (E.D. Va. 2004) ..............................................................................22

*H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.,*
    879 F.2d 1005 (2d Cir. 1989).............................................................................................4

*Hendrickson v. eBay,*
    165 F. Supp. 2d 1082 (C.D. Cal. 2001) ...........................................................................19

*Hysitron Inc. v. MTS Systems Corp.,*
    No. Civ. 07-01533 ADM/AJB, 2008 WL 3161969 (D. Minn. Aug. 1, 2008).........................10

*In re Seagate Tech., LLC,*
    497 F.3d 1360 (Fed. Cir. 2007), *cert. denied,* 128 S. Ct. 1445 (2007)....................................20

*Int'l Profit Assocs., Inc. v. Paisola,*
    461 F. Supp. 2d 672 (N.D. Ill. 2006) ...............................................................................10

*IQ Prods. Co. v. Pennzoil Prods. Co.,*
    305 F.3d 368 (5th Cir. 2002) ...........................................................................................18

*Kasco Corp. v. Gen. Servs., Inc.,*
    905 F. Supp. 29 (D. Mass. 1995) .......................................................................................5

*Kinetic Concepts, Inc. v. Bluesky Medical Group Inc.,*
    No. SA-03-CA-0832-RF, 2005 WL 3068223 (W.D. Tex. Nov. 1, 2005) ...............................10

*Martins' Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.,*
    112 F.3d 1296 (5th Cir. 1997) ..........................................................................................3

*Mary Kay, Inc. v. Weber,*
    601 F. Supp. 2d 839 (N.D. Tex. 2009) ...................................................................... *passim*

*NBA Props. v. Untertainment Records LLC,*
    1999 WL 335147 (S.D.N.Y. May 26, 1999) ......................................................................21

*Pebble Beach Co. v. Tour 18,*
    155 F.3d 526 (5th Cir. 1998) ...........................................................................................14

*Perfumebay.com v. eBay,*
    506 F.3d 1165 (9th Cir. 2007) ............................................................9

*Rescuecom Corp. v. Google Inc.,*
    562 F.3d 123 (2d Cir. 2009)...............................................................13

*RFE Indus. v. SPM Corp.,*
    No. 94-20-L, 1998 U.S. Dist. LEXIS 6245 (W.D. Va. Mar. 23, 1998)....................4

*Royal Aviation, Inc. v. Aetna Cas. & Surety Co.,*
    770 F.2d 1298 (5th Cir. 1985) ............................................................6

*Scott Fetzer Co. v. House of Vacuums, Inc.,*
    381 F.3d 477 (5th Cir. 2004) ("*Fetzer*").....................................passim

*Soilworks, LLC v. Midwest Indus. Supply, Inc.,*
    575 F. Supp. 2d 1118 (D. Ariz. 2008) ...................................................10

*Sport Supply Group, Inc. v. Columbia Cas. Co.,*
    335 F.3d 453 (5th Cir. 2003) ............................................................4

*Standard Process, Inc. v. Total Health Discount, Inc.,*
    559 F. Supp. 2d 932 (E.D. Wis. 2008)...................................................11

*Storus Corp. v. Aroa Mktg., Inc.,*
    No. C-06-2454 MMC, 2008 WL 449835 (N.D. Cal. Feb. 15, 2008) .....................10

*Tiffany (NJ) Inc. v. eBay, Inc.,*
    576 F. Supp. 2d 463 (S.D.N.Y. 2008)..............................................passim

*Topalian v. Ehrman,*
    954 F.2d 1125 (5th Cir. 1992) ...........................................................19

*Trail Chevrolet, Inc. v. Gen. Motors Corp.,*
    381 F.2d 353 (5th Cir. 1967) ..........................................................8, 17

*Trail Chevrolet, Inc. v. Gen. Motors Corp.,*
    381 F.2d 353-54 (5th Cir. 1967) .........................................................15

*Xtreme Lashes, LLC v. Xtended Beauty, Inc.,*
    576 F.3d 221 (5th Cir. 2009) ............................................................9

**STATUTES**

15 U.S.C. § 1114(2)(B)...................................................................19

15 U.S.C.A. 1114(1)(a)...................................................................12

# I.    INTRODUCTION

American is confused.  It continues to litigate this case as if it were still fighting Google, whose search marketing program does not provide the same robust protection for trademarks that Yahoo!'s does.  Yahoo! allows its advertisers to use the trademark of another company in keyword advertising *only* if the advertised website has a legitimate reason for doing so. (Appendix in Support of Defendants' Motion for Summary Judgment ("App.") at 293-095.) Websites selling airline tickets may advertise using "American Airlines" as a keyword only if their advertisements are protected by the trademark doctrine of nominative fair use.  (*Id.*) Because of this policy, Yahoo!'s biggest advertisers for keywords such as "American Airlines" are American Airlines and its agents who are advertising websites that sell American Airlines tickets.

American ignores this central fact.  It does not dispute that it empowered and encouraged its Online Travel Agents ("OTAs") to sell American Airlines tickets.  American even offered incentives to some of the largest OTAs to boost their American Airlines sales.  (Defendants' Brief in Support of Motion for Summary Judgment ("Br.") at 6.)  American agents such as Orbitz, Travelocity, Expedia, and CheapTickets, therefore purchased advertising designed specifically to boost their sales of American flights.  They became Yahoo!'s largest advertisers for searches on "American Airlines" and related terms.  (App. at 655-56, ¶ 4; *see also* Appendix in Support of Defendants' Response and Brief in Opposition to Plaintiffs' Motion for Partial Summary Judgment, at 33-34, ¶ 4.)  For years, American reaped the benefits of this advertising, as its agents booked travelers on American Airlines flights.  Now, American seeks to punish Yahoo! for allowing the advertisements in the first place.

American objects that it never expressly authorized this keyword advertising (Plaintiff American Airlines, Inc.'s Memorandum of Law in Opposition to Defendant Yahoo! Inc.'s Motion for Summary Judgment ("Opp.") at 7, 19), which, even if true, is irrelevant.  The doctrine of nominative fair use protects advertisements displayed without the markholder's permission.  Summary judgment is appropriate because the issue that decides the case is one of

law. Nominative fair use allows a search engine to display on its search results page advertisements that truthfully inform the public that a website sells a trademarked product, even without trademark owner's authorization. American disputes this conclusion because it refuses to accept the doctrine of nominative fair use. Because nominative fair use is the law, Yahoo! is entitled to summary judgment.

## II. YAHOO! IS NOT LIABLE TO AMERICAN FOR THE CONDUCT OF AMERICAN'S OWN AGENTS

American chose a business model in which its website, AA.com, operates alongside the websites of multiple online agents that also book travel for American. Now American complains that Yahoo! failed to hamper the "competition" between its multiple retail outlets. Having empowered its agents to traffic in American's travel services and given them incentives to sell more American tickets, American expresses shock that these agents advertised American's services to garner more customers. American's opposition confuses its agents' lawful advertising to gain customers with advertising that causes illegal trademark confusion.

American does not dispute that OTAs are authorized to book American tickets, or that MSEs are authorized to display American fares. (Opp. at 7 n.2.) American also does not dispute that the owners of these websites—Orbitz, Expedia, Travelocity, CheapTickets and a host of other advertisers—are American's agents. The ARC Agreement, which governs the terms of the OTA relationship, even uses the word "agent" to describe these third parties. (App. at 0226-230.) American instead asserts that it has never allowed its agents to use its marks "without specific written consent," which it did not give. (Opp. at 7.) Based on this version of the facts, American claims that Yahoo!'s advertisers cannot make "fair use" of American's marks because "they have never been given that permission." (Opp. at 19.)

Tellingly, the only case American cites to support this proposition does not involve nominative fair use. *Equibrand Corp. v. Reinsman Equestrian Prods., Inc.*, No. 3:07-CV-0536-P, 2007 WL 1461393, at *12-14 (N.D. Tex. May 17, 2007) (addressing statutory fair use defense). American ignores settled law that nominative fair use does not require the permission

of the trademark owner. *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 484 (5th Cir. 2004) ("*Fetzer*"). Anyone who is selling American tickets, authorized or unauthorized, may use the American marks truthfully to advertise this fact, as long as consumers are not confused as to affiliation or source. *Id.* Here, consumers are not confused.

### A. There Is No Confusion Because Its Agents *Are* Affiliated With American

American cannot show that its agents' Yahoo! advertising confuses consumers for a simple reason. Advertisements cannot confuse consumers into *wrongly* believing that the agents are affiliated with American because the advertisers *are*, in fact affiliated with American. *See id.* 487 n.6 (that 87% of survey participants expected they could buy a new Kirby vacuum cleaner from defendant House of Vacuums "does not speak to any sort of confusion" when House of Vacuums occasionally sells these vacuum cleaners).

Aware, perhaps, of this shortcoming in its theory, American argues that the "package of services offered by OTAs" is somehow inferior to those offered on AA.com. (Opp. at 19-20.) Some of the evidence American introduces to support this assertion proves exactly the opposite.[1] But the relative benefits of booking on AA.com or on Orbitz are not material. Whatever "package of services" Orbitz offers, American has approved and endorsed it by appointing Orbitz as its agent to book tickets. Every American Airlines ticket Orbitz books is approved by American. Otherwise these passengers would be turned away at the airport when checking in for American Airlines flights. So, too, American authorizes every ticket that Expedia, Globe-Travels, and its other agents write. American's reliance on *Martins' Herend Imps., Inc. v. Diamond & Gem Trading USA, Co.*, 112 F.3d 1296, 1303 (5th Cir. 1997), is thus unavailing.

American also cites two cases for the proposition that a re-seller with a legitimate right to sell trademarked goods is liable for infringement if it sells "such merchandise 'in a manner . . .

---

[1] One customer complained that AA.com never notified him about delays, while "ORBITZ (your partner) always notifies me about delays at least 2-3 hours before departure. Why can't you notify me before ORBITZ does?," the customer asks. (American Airlines, Inc.'s Appendix in Support of its Memorandum of Law in Opposition to Defendant Yahoo! Inc.'s Motion for Summary Judgment ("Opp. App.") at 527.)

likely to suggest to prospective customers that it was a part of the trademark holder's organization.'" (Opp. at 20 n.6.) What American leaves out is that its two cases involved defendants who were not authorized resellers or franchisees. Thus, there was a risk that people would be confused into thinking that they were authorized. *See H.L. Hayden Co. of N.Y. v. Siemens Med. Sys., Inc.*, 879 F.2d 1005, 1023-24 (2d Cir. 1989); *Bandag, Inc. v. Al Bolster's Tire Stores, Inc.*, 750 F.2d 903, 911 Fed. Cir. 1984) (defendant may advertise that it sold plaintiff's branded goods, as long as it did not "do so in a manner which would have been likely to suggest to prospective customers that it was part of the [plaintiff's] organization *of franchisees*") (emphasis added to highlight words American omitted). Because the OTAs and MSEs are American-authorized agents, these cases are inapplicable.

## B. Yahoo! Is Not the Proximate Cause of Any Damages

Because American chose to do business with on-line agents, empowered them to sell and to advertise for sale American Airlines tickets, and did not negotiate or enforce contractual prohibitions on their using American's marks in keyword advertising, American alone has caused any damages it claims. Yahoo! made this argument in its opening brief (Br. at 49), and American does not dispute it in its Opposition.

In particular, American does not dispute that it has always had the authority to limit its agents' use of American trademarks as keywords, *and* that it largely put a stop to the allegedly infringing advertisements after expressly prohibiting them in the December 2006 ARC Addendum. (Br. at 7-8). American concedes that it has the ability to control the advertising of its agents. (*See, e.g.* Opp. at 7-8.) Thus, American concedes that it is seeking damages in this case for a "problem" that it caused, and that it largely solved, on its own.

American bears the burden of proving any damages were "proximately caused" by Yahoo!'s wrongful conduct. *RFE Indus. v. SPM Corp.*, No. 94-20-L, 1998 U.S. Dist. LEXIS 6245, at *34-36 (W.D. Va. Mar. 23, 1998) (dismissing trademark infringement claim on summary judgment where plaintiff's "causation model" was severely flawed.). Proximate cause is an essential element of a tort claim, *Sport Supply Group, Inc. v. Columbia Cas. Co.*, 335 F.3d

453, 466 (5th Cir. 2003), and thus limits the scope of a Lanham Act claim. *AT&T v. Winback & Conserve Program*, 42 F.3d 1421, 1433 (3d Cir. 1994). American's concessions preclude damages in this action because they establish that American, not Yahoo!, was the proximate cause of any damages.

## C.  American Acquiesced In the Accused Advertising

Having actively participated in the marketing of its products on its agents' websites, American is also estopped from challenging the advertisements by the affirmative defense of acquiescence. American cannot now object to the use of its marks as keywords after participating for years in the sales this advertising generated. Yahoo! made this argument in its opening brief, relying on cases such as *Artcraft Novelties Corp. v. Baxter Lane Co.*, 685 F.2d 988, 991 (5th Cir. 1982). (Br. at 47-48.) The equitable principle is that American "cannot acquiesce in and benefit from a customary practice and then attempt to recover through litigation what it has lost through competition." *Kasco Corp. v. Gen. Servs., Inc.*, 905 F. Supp. 29, 35 (D. Mass. 1995).

American responds that acquiescence is a "personal defense," but it relies on cases where secondary liability was not at issue and defendants argued acquiescence from unrelated acts of infringement. (Opp. at 49 (citing *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895-96 (6th Cir. 1991) (no acquiescence from plaintiff's actions towards other sellers of different merchandise); *Sweetheart Plastics, Inc. v. Detroit Forming, Inc.*, 743 F.2d 1039 (4th Cir. 1984) (no acquiescence from failure to prosecute other manufacturers of different devices).) Here, Yahoo!'s acquiescence defense is founded upon American's on-going participation in the sale of tickets that its agents booked when Internet users responded to the accused advertisements. Thus, acquiescence bars American's claims. *See Dial-A-Mattress Operating Corp. v. Mattress Madness, Inc.*, 841 F. Supp. 1339, 1356 (E.D.N.Y. 1994) ("affirmative conduct that gives rise to actual or apparent consent to another's use of a trademark may bar the trademark owner from initiating a lawsuit *founded upon the consensual use*") (emphasis added).

In any event, American made assurances *to Yahoo!*, assurances on which Yahoo! relied. Through Orbitz, Expedia, and its other appointed agents, American assured Yahoo! that the advertisements these companies were placing complied with trademark law. Yahoo!'s trademark policy requires advertisers using American's marks to make such assurances when they sign the contract for sponsored search. (App. at 294.) American is bound by the assurances of its agents because agency principles apply to Lanham Act cases, *AT&T*, 42 F.3d at 1433, and a principal is responsible for the acts of its agents acting within the scope of their actual or apparent authority. *Bd. of Regents, The Univ. of Tex. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657 (W.D. Tex. 2008).

American disputes that it gave its agents actual authority to bid on keywords using American's marks, but it cannot dispute that its agents had at least apparent authority. American authorized its agents to sell, and to advertise the sale of, American Airlines tickets.[2] Yahoo! therefore reasonably believed that these agents had authority to place with Yahoo! advertisements using American's marks. American is accordingly bound by its agents' assurances. *Royal Aviation, Inc. v. Aetna Cas. & Surety Co.*, 770 F.2d 1298, 1301 (5th Cir. 1985) (apparent authority requires "that the purported principal engaged in conduct that would lead a reasonably prudent person to believe that the supposed agent has the authority that he purports to exercise"); *Abramson v. Am. Online, Inc.*, 393 F. Supp. 2d 438, 441 (N.D. Tex. 2005)

---

[2] *See, e.g.*, App. 257 (American reminds Orbitz their "Charter Agreement states that Orbitz may use the American trademarks 'solely for the purpose of fairly and accurately describing and referring to the [Orbitz] site'"); 258 (American Airlines reminds Travelocity their "Participation Agreement states that Travelocity may use the American trademarks 'solely for the purpose of fairly and accurately describing and referring to the products and services of American being sold on the Travelocity Website.'").)

American cites its interactions with Yahoo! in 2005 as evidence that Yahoo! knew American's agents were prohibited from bidding on American's marks as keywords. (Opp. at 8 (citing Opp. App. 504-05; 545-54).) In fact, American's contract with Yahoo! expressly authorizes Yahoo! to use American's marks "for the purposes of referring to American in any search results," as long as Yahoo! gets American's permission to run the advertising. (App. at 549.)

(plaintiff's son had apparent authority to bind her to the defendant's Member Agreement because she gave him permission to contract).[3]

In sum, at least three independent legal theories explain why Yahoo! is not liable for the allegedly infringing advertisements placed by American's agents. First, the advertisements cannot "confuse" consumers into believing that the website owners were somehow affiliated with American because the website owners were in fact American's agents. Second, American cannot establish the causal connection for obtaining damages, as it caused the "injury" of which it complains. Third, even if liability were established, the affirmative defense of acquiescence would bar any award of damages for the advertisements of American's agents.

## III. CONTRARY TO THE LEGAL PROTECTION FOR NOMINATIVE FAIR USE, AMERICAN SEEKS TO SHUT DOWN SEARCH ENGINE ADVERTISING FOR TRADEMARKED GOODS

Although American's agents sponsored the majority of the disputed advertisements, American's case against Yahoo! is much broader. American seeks nothing less than to shut down search engine advertising for trademarked goods. American's theory is that nobody can truthfully advertise sale of a trademarked good, unless the trademark holder expressly consents to the advertisement. American's theory is contrary to Fifth Circuit law, and to the law in most district courts. It negates the law's protection for nominative fair use.

American does not refute Yahoo!'s assertion in the opening brief that American is making a global attack on Yahoo!'s search marketing business. In fact, American's opposition confirms that it has no interest in analyzing the display or text of any particular advertisements, but seeks instead a blanket prohibition against the use of trademarks in keyword advertising. "[I]t is appropriate to 'speak in generalities' in this case," American asserts, "because the central issue is Yahoo's general and systemic violation of trademark rights." (Opp. at 40.) In

---

[3] American also argues that it has known of its agents' advertisements only since 2005. (Opp. at 4.) The date of actual notice is irrelevant because American does not dispute that it had constructive notice of its agents' conduct in 2001. (Br. at 48.) Constructive notice suffices for estoppel. *See Elvis Presley Enters. v. Capece*, 141 F.3d 188, 205 (5th Cir. 1998). Moreover, acquiescence does not require the passage of years. (*See* Opp. at 48.)

American's view, the use of its marks as keywords is trademark infringement "no matter what the text of the advertisement is." (*Id.*)

### A. American's Theory—that Nobody Can Truthfully Advertise Sale of a Trademarked Service Absent the Mark Holder's Express Permission—Is Contrary to Controlling Fifth Circuit Precedent

American's theory fails because it is contrary to trademark law, including to the controlling Fifth Circuit case *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 486 (5th Cir. 2004). *Fetzer* sets forth how the doctrine of nominative fair use applies to a retailer's advertisements for another's trademarked goods. *Fetzer* establishes the principle that truthful advertising, using a brand name, by those who sell trademarked goods is nominative fair use and is protected under the law, so long as the advertisement is not confusing. *Fetzer*, 381 F.3d at 484.

American's theory is inconsistent with the holding of *Fetzer* because American refuses to recognize that an appropriately worded Sponsor Result is a protected nominative fair use. *Fetzer* parses the language of the advertisement at issue. It cautions that "the particular context in which the mark appears must receive special emphasis." *Id.* at 486. To illustrate its point that language is key, the Fifth Circuit contrasts the language of two hypothetical advertisements, one that "would plainly create a likelihood of confusion as to affiliation," while "the second one just as plainly would not." *Id.* at 485. American postulates that *every* advertisement infringes "no matter what the text of the advertisement is." (Opp. at 40.) It implausibly argues that *every* Sponsored Result that is not a link to American's own website causes consumer confusion. American urges a blanket prohibition on truthful advertising that is contrary to Fifth Circuit law. *Fetzer*, 381 F.3d at 485; *Trail Chevrolet, Inc. v. Gen. Motors Corp.*, 381 F.2d 353, (5th Cir. 1967).

American's analysis of the "digits of confusion" is also inconsistent with the approach *Fetzer* requires. *Fetzer* teaches that any "digits" analysis must be flexible, attentive to the context of nominative fair use. *Fetzer*, 381 F.3d at 486. Otherwise, "several of the digits will appear to indicate confusion even if no confusion is likely." *Id.* at 485. For example, the marks

will be the same and the goods will be the same in a case involving nominative fair use, so these "digits" will falsely suggest confusion. *Id.* Similarly, in a nominative fair use case "a defendant will always use the plaintiff's mark with the knowledge that the plaintiff owns the mark," falsely suggesting bad intent. *Id.* at 486. An "intent to compete" for sales of the trademarked product is not an unlawful "intent to confuse." *Id.* In spite of *Fetzer*, American marches through a wooden application of the digits of confusion without reference to the nominative fair use context. (Opp. at 29-37.) It even makes some of the same arguments that *Fetzer* expressly rejects. (*Id.* at 31-32 (inferring confusion from the identity of the marks and from the fact that Yahoo!'s advertisers and AA.com "compete" for customers).

Most of the cases on which American relies in its likelihood of confusion analysis are not nominative fair use cases. *See, e.g. Elvis Presley Enters. v. Velvet Ltd.*, 141 F.3d 188 (5th Cir. 1998) (parody case); *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221 (5th Cir. 2009) (traditional trademark infringement case); *Perfumebay.com v. eBay*, 506 F.3d 1165 (9th Cir. 2007) (same); *Dallas Cowboys Football Club, Ltd. v. America's Team Props., Inc.*, 616 F. Supp. 2d 622 (N.D. Tex. 2009) (same); *DS Waters of Am. Inc. v. Princess Abita Water, L.L.C.*, 539 F. Supp. 2d 853 (E.D. La. 2008) (same); *Google v. American Blind & Wallpaper*, No. C 03-5340 JF(RS), 2007 WL 1159950 (N.D. Cal. April 18, 2007) (sponsored search advertiser does not sell the trademarked product).

Even in those cases that did involve nominative fair use, American relies on other portions of the case, not on the analysis of nominative fair use. (*See* Opp. at 33 (quoting a portion of *Brookfield Commc'ns., Inc. v. West Coast Entm't*, 174 F.3d 1036, 1045 (9th Cir. 1999), discussing the relatedness of the products, before the court addressed whether nominative fair use applied); *id.* at 35 (citing a portion of *Century 21 Real Estate Corp. v. Lendingtree, Inc.*, 425 F.3d 211, 227 (3d Cir. 2005), referring to defendant's intent in "traditional trademark infringement cases"); *id.* at 34 (citing language taken from traditional trademark infringement analysis in *Kinetic Concepts, Inc. v. Bluesky Medical Group Inc.*, No. SA-03-CA-0832-RF, 2005

WL 3068223, at *8 (W.D. Tex. Nov. 1, 2005)); *see also id.* at 26 (citing as "holding" of *Kinetic Concepts* language from a parenthetical in a footnote).)

In sum, American's method for analyzing confusion and the conclusion American reaches are both contrary to Fifth Circuit law.

### B. American's Theory Is Contrary to the Holding of District Courts That Have Considered Nominative Fair Use In Keyword Searching

American's theory of the case also fails because it runs contrary to the holdings of the district courts that have considered the issue, including the court in *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839 (N.D. Tex. 2009). In its opening brief, Yahoo! explained how *Mary Kay* and two district court cases on which it relied decided, in defendants' favor, the issue this case raises. American attempts to distinguish or discredit these cases, and then falsely asserts that Yahoo! overlooked nine contrary cases.

American claims its nine cases "establish that a nominative fair use defense *does not* preclude a claim that the use of trademarks to trigger sponsor results constitutes trademark infringement." (Opp. at 25-27.) American is mistaken. In six of its nine cases, nominative fair use was not an issue. *See Hysitron Inc. v. MTS Systems Corp.*, No. Civ. 07-01533 ADM/AJB, 2008 WL 3161969, at *2 (D. Minn. Aug. 1, 2008); *800-JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273 (D.N.J. 2006); *Soilworks, LLC v. Midwest Indus. Supply, Inc.*, 575 F. Supp. 2d 1118 (D. Ariz. 2008); *Storus Corp. v. Aroa Mktg., Inc.*, No. C-06-2454 MMC, 2008 WL 449835 (N.D. Cal. Feb. 15, 2008); *Fin. Express LLC v. Nowcom Corp.*, 564 F. Supp. 2d 1160 (C.D. Cal. 2008); *Int'l Profit Assocs., Inc. v. Paisola*, 461 F. Supp. 2d 672 (N.D. Ill. 2006).

Even the three cases that do mention nominative fair use do not support American. In *Kinetic Concepts, Inc. v. Bluesky Medical Group Inc.*, No. SA-03-CA-0832-RF, 2005 WL 3068223, at *3 n.27 (W.D. Tex. Nov. 1, 2005), the defendant was using a competitor's trademark as a keyword but did not sell the competitor's products. The court thus dispensed with the nominative fair use argument without comment in a footnote. Here, Yahoo!'s

advertisers sell American's tickets, and this distinguishing fact lies at the heart of Yahoo!'s nominative fair use argument.

In *Standard Process, Inc. v. Total Health Discount, Inc.*, 559 F. Supp. 2d 932, 938-39 (E.D. Wis. 2008), nominative fair use did not protect an unauthorized dealer that referred on its website to the plaintiff and its products using the words "we" and "our." The court concluded this language gave consumers the false impression that defendant was an authorized dealer. *See also Mary Kay*, 601 F. Supp. 2d at 855 (rejecting a broader reading of *Standard Process*). Here, there is no evidence that Yahoo!'s advertisers are similarly misrepresenting on their websites their relationship with American.

American's best case may be the unreported decision *Edina Realty, Inc. v. Themlsonline.com*, No. Civ. 04-4371JRTLN, 2006 WL 737064, at *7 (D. Minn. Mar. 20, 2006), in which the court declined to grant summary judgment on defendant's nominative fair use defense. However, the *Edina Realty* court based its decision on a close analysis of the language of the advertisement at issue in that case—precisely the sort of analysis that American rejects as unnecessary here. (*See* Opp. at 40.) And the District of Minnesota's concern that consumers might improperly infer from the language of the advertisement a relationship between the defendant and the plaintiff does not apply in this case. Internet users would be right to infer a relationship between Yahoo!'s advertisers and American since American authorizes the OTAs to book American tickets, and the MSEs to display American fare and schedule information.

American also fails in its attempt to distinguish Yahoo!'s three cases addressing nominative fair use in the context of Internet search marketing. American highlights *Mary Kay*'s acknowledgement that the use of keywords to trigger Sponsored Results "inherently suggests some relationship" between the search term and the sponsored link. (Opp. at 28.) American ignores that the *very next sentence* reads: "To find that this relationship leads to liability for trademark infringement . . . stretches the legal concept of affiliation too far." *Mary Kay*, 601 F. Supp. at 856. The court thus refused broadly to enjoin the advertiser from keyword bidding on Mary Kay's mark. *Mary Kay*, Mem. Opp. dtd. Sept. 29, 2009, at *22. American also

suggests that the nominative fair use defense does not apply because of "material differences between Yahoo!'s advertisers and AA.com." (Opp. at 28.) However, the cited language discusses the first sale doctrine, not nominative fair use. *Mary Kay*, 601 F. Supp at 852-54. And any such differences are not material to this case, as American accepted them when it authorized the OTAs to sell American Airlines tickets. (*Supra*, at 3.)

American tries to distinguish *Designer Skin, LLC v. S&L Vitamins, Inc.*, 560 F. Supp. 2d 811 (D. Ariz. 2008), as "irreconcilable" with Fifth Circuit law because it requires plaintiff to show "deception" rather than "confusion." (Opp. at 28-29.) However, use of "deceptive" in *Designer Skin* did not have the effect of imposing a higher level of proof. Rather, the court appropriately held that in order to prevail on the theory that initial interest confusion results when keywords cause the defendant's website to appear higher on the search results page, the plaintiff had to show that this was "likely to confuse an *appreciable* number of people as to the source of the product." *Designer Skin*, 560 F. Supp. 2d at 819 (quotation omitted). As a matter of law, the court found no such confusion was likely. *Id.* ("such users, if any, will be the naïve few").[4] American's argument also ignores that its complaint rests on a section of the Lanham Act that penalizes trademark use "likely to cause confusion ... *or to deceive*." 15 U.S.C.A. 1114(1)(a) (emphasis added). Moreover, a court in this district expressly approved the holding of *Designer Skin* as applied in this case, *Mary Kay*, 601 F. Supp. at 855-57.

American's criticism of *Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 463 (S.D.N.Y. 2008), is that the court's analysis of the keyword issue is somehow too "brief," although it goes

---

[4] *Designer Skin* declined to follow *Australian Gold, Inc. v. Hatfield*, 436 F.3d 1228, 1239 (10th Cir. 2006), for a reason completely different from the one American suggests. (Opp. at 28.) As the court explained, "there is a meaningful distinction between (1) using a mark to attract potential customers to a website that only offers products of the mark holder's competitors and (2) using a mark to attract potential customers to a website that offers the mark holder's genuine products as well as the products of competitors." 560 F. Supp. 2d at 820. *Australian Gold* involved the former. 436 F.3d at 1239. *Designer Skin*, like this case, involved the latter. 560 F. Supp. 2d at 819 ("The fact that . . . customers will have the opportunity to purchase competing products when they arrive at S & L Vitamins' sites is irrelevant. The customers searching for Designer Skin's products find exactly what they are looking for when they arrive at these sites.")

on for several pages and incorporates by reference additional analysis. *Id.* at 498-501. American also points out that *Tiffany* was decided before *Rescuecom Corp. v. Google Inc.*, 562 F.3d 123 (2d Cir. 2009), decided the issue of trademark "use." (Opp. at 29.) However, Yahoo!'s motion does not argue that keyword searching is not trademark "use," only that any such use is nominative fair use. American's attempts to discredit *Tiffany*, like its attempts to distinguish *Designer Skin* and *Mary Kay*, thus fail.

The case law in the district courts, like the controlling authority from the Fifth Circuit, points toward one conclusion: advertisers other than the mark holder can lawfully advertise in response to an Internet user's search on a trademarked term (provided that the advertisement in question does not falsely suggest an affiliation between the mark holder and the advertiser). Because American's claim to the contrary is so broad that no reasonable jury could accept it, summary judgment is warranted. *Fetzer*, 381 F.3d at 483.

## IV. AMERICAN CITES NO MATERIAL ISSUE OF FACT PREVENTING SUMMARY JUDGMENT OF NO INFRINGEMENT

American's infringement case also fails because there are no disputes of material fact over Yahoo!'s conduct, or over the conduct of its advertisers. Thus, summary judgment is proper as to both direct infringement (Yahoo!'s conduct) and indirect infringement (the conduct of Yahoo!'s advertisers).

### A. There Are No Disputes of Material Fact as to Yahoo!'s Conduct

American argues that the doctrine of nominative fair use does not apply because American's marks are not used in the Sponsor Results to identify *Yahoo!*'s services, and are not necessary to describe *Yahoo!*'s services. (Opp. at 16; *id.* at 44 n.15). While factually true, this curious argument misses the mark. American does not claim that consumers are confused as to whether American Airlines owns, authorizes, or endorses Yahoo! and its search marketing business. Rather, it claims that advertisements placed by Yahoo!'s advertisers compete with AA.com and infringe its trademarks. (*Id.* at 19-20 (complaining about Yahoo!'s *advertisers'* conduct).) American's argument concedes that there is no consumer confusion between

American *and Yahoo!*, and thus concedes that no material issue of fact bars summary judgment that Yahoo! does not directly infringe American's marks. *Pebble Beach Co. v. Tour 18*, 155 F.3d 526, 546 (5th Cir. 1998).

In an effort to obscure this fact, American looks to issues that are irrelevant to a proper trademark analysis. It takes issue with Yahoo!'s practice of displaying Sponsor Results above natural search results. (Opp. at 9, 23-24.) It complains that Sponsor Results are not relevant. (*Id.* at 29.) American even misrepresents Yahoo!'s position by running together two unrelated clauses from Yahoo!'s brief to suggest Yahoo! agrees the difference between organic results and advertisements is relevant to the trademark analysis. (*Id.* at 1.)[5] American's complaints ignore Yahoo! efforts to ensure the relevance of its Sponsor Results. (App. at 294 (limiting participation to websites that sell or facilitate the sale of trademarked services, or that are otherwise relevant).) More fundamentally, American's complaints ignore that how Yahoo! displays its search results does not determine whether the advertisements make nominative fair use of American's marks.

The relevant inquiry is whether consumers are confused as to the "source, affiliation, or sponsorship" of the advertised products or services. *Fetzer*, 381 F.3d at 483. Trademark law does not concern itself with whether consumers can distinguish editorial content from advertising, or with a consumer's perception of relevance. American has no legal authority to support its contention that the "facts" it purports to prove are material to the issue of nominative fair use. Thus, American's evidence cannot defeat summary judgment of no direct infringement.

---

[5] In one place Yahoo! explained why a specific Sponsor Result was "not likely to confuse Internet users as to its source" or affiliation. (Br. at 30.) Elsewhere it offered a general description of its Sponsor Results. (Br. at 11.) Yahoo! *never* linked these two points to argue that Sponsor Results are not likely to confuse "because they are 'distinguished from the algorithmic results by a colored background ....'" (Opp. at 1.)

**B.    There Are No Material Issues of Fact As to the Conduct of Yahoo!'s Advertisers**

American alleges not only direct infringement, but also that Yahoo! is contributorily and vicariously liable for the infringing conduct of its advertisers. These claims fail because American establishes no material issue of fact as to the allegedly infringing conduct of Yahoo!'s advertisers (as well as for the additional reasons set forth in Section V). Yahoo!'s advertisers use American's marks in order truthfully to advertise the fact that they sell or facilitate the sale of American Airlines tickets. Yahoo! established this point in its opening brief (Br. at 12-13; 26-27; App. at 657 (Slottje Decl. ¶ 6)), and American does not dispute it.[6]

Instead, American argues that Yahoo!'s advertisers do not need to use American's marks to describe the fact that they book tickets on American Airlines because they can instead "use generic air travel terms." (Opp. at 17.) American's argument ignores that it is not enough to inform an Internet user that a website offers generic travel booking services. Advertisers need to use "American Airlines" to convey fully to consumers that the website offers American Airlines tickets for sale if a Internet user is searching with the words "American Airlines." (Br. at 31.) Generic airline travel is not what he or she is searching for.[7]

Trademark law does not require Yahoo! to deprive those who use its search engine of the potentially useful information that an advertiser books American Airlines tickets. *See Trail Chevrolet, Inc. v. Gen. Motors Corp.*, 381 F.2d 353-54 (5th Cir. 1967) (directing district court to modify injunction because "appellants should be free to advertise that they sell used Chevrolets, that they repair Chevrolet cars, that they have a number of Chevrolets to choose from, or that

---

[6] American asserts that many advertisers were "not authorized to book flights on American" (Opp. at 12), but this proves little because it ignores the roll of MSEs. American allows and encourages MSEs to display American's fare and flight information, but MSEs do not book flights. (*Id.* at 7 n.2.) American pointedly does not address the number of accused advertisements placed by neither an OTA nor an MSE.

[7] This is not to say that an Internet user searching for "American Airlines" is looking for AA.com. American asserts this as an article of faith, but the evidence on which it relies proves no such thing. (*See* Opp. at 8-9 (relying on Opp. App. 1942-43; 1710; 1720; 1725-32, none of which says or implies that an Internet search for a brand name shows an intent to locate the website of the brand owner).

they sell used Chevrolets and other fine cars"); *Tiffany*, 576 F. Supp. 2d at 497 ("To identify Tiffany jewelry without using the term Tiffany -- perhaps by describing it as 'silver jewelry from a prestigious New York company where Audrey Hepburn once liked to breakfast,' or 'jewelry bearing the same name as a 1980s pop star' -- would be both impractical and ineffectual"). In the words of another court in this district, "the law will destroy the valuable resource that search engines have become if it prevents those search engines from doing what they are designed to do: present users with the information they seek as well as related information the user may also find helpful or interesting." *Mary Kay*, 601 F. Supp. 2d at 859.

American also challenges the extent to which Yahoo!'s advertisers use its marks, particularly the fact that "American Airlines" appears in bold text and large font. (Opp. at 16-18.) American improperly elevates a single criteria—typeface—over all of the other factors important to assessing the "particular context in which the mark appears." *Fetzer*, 381 F.3d at 485-86. In its opening brief, Yahoo! discussed the advertising copy used in six different advertisements from American's complaint. (Br. at 30-32 (*e.g.*, "Sort flights by price, departure time, duration and airline at Orbitz").)[8] American ignores the advertising copy. Yahoo! pointed out that each advertisement bears a distinguishing URL. (*Id.*) American dismisses this point with an inaccurate record cite. (That the display URL is not "always the same as the landing page" does *not* mean that a display URL will not "take Internet users to" the landing page. *Compare* Opp. at 17 *and* Opp. App. 439.) Yahoo! explained that advertisers who bid on a trademarked keyword must use that keyword in their advertisement so as to inform the public of the relevance of their advertisement to the user's search. (Br. at 26.) American ignores this need.

American may prefer that Sponsor Results be generic or that their typeface be uniform, but the law does not require it. The mere fact that a Sponsor Result highlights the products or

---

[8] Because American has not introduced any evidence that creates a triable issue of fact with respect to these six advertisements, the issue of infringement for these six advertisements is thus ripe for determination on summary judgment, even if the Court does not grant Yahoo!'s motion in its entirety. A decision with respect to these six advertisements would serve to dispose of, or significantly clarify, many of the issues in this case.

services being advertised—when an Internet user appears to be looking specifically for that information—does not improperly suggest affiliation, especially when the source of the advertisement is also identified in the advertisement. *See, e.g., Tiffany*, 560 F. Supp. 2d at 500-01 (Sponsored Result highlights "Tiffany for sale" by repeating phrase twice); *Trail Chevrolet, Inc.*, 381 F.2d at 354 ("Appellants should be free to advertise that they sell used Chevrolets, that they repair Chevrolet cars, that they have a number of Chevrolets to choose from," whether or not they also advertise that they sell "other fine cars").

American also offers Dr. Englis's survey as evidence of consumers' "actual confusion," but this study cannot create a triable issue of material fact because its "serious flaws . . . make any reliance on" it "unreasonable." *Fetzer*, 381 F.3d at 488. The survey should be excluded from the summary judgment record for the reasons stated in Defendants' Objections and Motion to Strike American Airlines, Inc.'s Motion for Summary Judgment Evidence ("Obj."), or if admitted, then given no weight. (*See* Br. at 34-36.)

First is the problem of Dr. Englis's test stimulus. American argues that it "was perfectly typical," but offers absolutely no evidence to support this claim. "[A]ctual search results" are not "typical" of the issues in this case where they were generated after all the major advertisers had stopped keyword bidding in deference to American's requests. (Opp. at 22; *see, e.g.*, App. at 263-64.) Because the screenshot dates to August 2007, eBay is the only household name among the advertisers, and eBay contributed almost nothing to the "confusion" Dr. Englis purported to observe. (Obj., at 12.) Dr. Englis also admitted that he altered the screenshot in constructing his test stimulus, making changes to the advertisements that he thought made his test stimulus "more confusing." (*Id.*) The "'survey cannot be assumed to be representative,'" so "'judgment as a matter of law is proper.'" (Br. at 36 (quoting *Bank of Tex. v. Commerce Sw., Inc.*, 741 F.2d 785, 789 (5th Cir. 1984).)

Second, Dr. Englis's survey creates no triable issue of material fact because it aggregates the "confusion" said to result from several different advertisements, even though three of them are not actionable because they were placed by American's own agents. (Obj. at 11-13.)

Aggregating actionable and not actionable statements in this manner renders the entire survey irrelevant. *IQ Prods. Co. v. Pennzoil Prods. Co.*, 305 F.3d 368, 376-77 (5th Cir. 2002).

Third, the survey creates no triable issue of fact because Dr. Englis surveyed a population that was not "a fair sampling of those purchasers most likely to partake of the alleged infringer's goods or services." *Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 264 (5th Cir. 1980). Dr. Englis's survey universe includes respondents who have never used the Internet and respondents who would never purchase an airline ticket from a website. (Obj. at 12-13) The sample universe is therefore unrepresentative of the more educated and affluent population likely to encounter the accused advertisements. (*Id.*)

Fourth, Dr. Englis's survey creates no triable issue of fact because it was constructed and administered in a fashion so confusing that even Dr. Englis could not answer some of his own questions. (*Id.*) The result was that consumers measured several times more "confused" by the organic link for AA.com than by the accused sponsor results. (*Id.*) And when given an opportunity to explain their answers, respondents showed they were more confused by the questions than by the simulated search results. (*Id.*)

In addition to its survey evidence, American also cites but misconstrues documents produced in discovery. American argues Yahoo! has admitted it was confusing consumers, but it relies on a document addressing *advertiser* confusion caused by a program called Toplink, not consumer confusion at all. (Opp. at 25.) Yahoo!'s Toplink program allowed a single advertiser to purchase placement in the top spot on a search results page. One Yahoo! employee expressed concern that American, unaware of the Toplink program and stymied in its efforts to bid enough to land the top spot itself, might find this confusing. (*See* Opp. App. at 1671-74.) The document does not address consumer confusion, and is in no way relevant to American's trademark complaint. (*See also* Obj. 3-4.)

American also relies on complaints it received from customers (Opp. Br. at 25), but *none* of the cited complaints relates to confusion caused by Yahoo!'s search advertising programs. For example, one indicates that a consumer who clearly differentiates between American and

Orbitz is unhappy that American does not provide a service he gets from Orbitz. (*See supra*, at 3 n.1.) None of these documents creates a material issue of fact as to whether Yahoo! or its advertisers confuse consumers or infringe American's marks.

## V.  IF ANY ADVERTISEMENTS INFRINGE, YAHOO! IS AN INNOCENT INFRINGER NOT LIABLE FOR DAMAGES

American fails to rebut that as a matter of law damages are not available because, *if* Yahoo! infringes, it is an "innocent infringer" protected under 15 U.S.C. § 1114(2)(B). (Br. at 45.) American asserts that Yahoo!'s objective reasonableness is a factual question not appropriate for summary judgment. (Opp. at 47-48.) American ignores that a factual question cannot defeat summary judgment where the evidence is such that "no reasonable juror could find for the nonmovant." *Fetzer*, 381 F.3d at 483.

American's argument that Yahoo! is not an innocent infringer because it is more than an electronic classified advertising service (Opp. at 48), fails for two reasons. First, Yahoo! is not an "online auction house." *See Tiffany*, 576 F. Supp. 2d at 507 n.33. Yahoo! provides free search engine services and sells space for sponsored advertisements. Second, *Hendrickson v. eBay*, 165 F. Supp. 2d 1082, 1095 (C.D. Cal. 2001), teaches that the safe harbor for "innocent infringers" applies even to an online auction house.

American also argues that Yahoo!'s trademark policy was "carelessly enforced" (Opp. at 48), but such conclusory allegations are insufficient to defeat summary judgment. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Yahoo! has never "admit[ted] that its policy is insufficient to catch even the majority of noncompliant ads. " (Opp. at 35.) Even though it reviews only a small percentage of all the advertisements that run, Yahoo! believes that it achieves substantial compliance with its trademark policy with a robust complaint procedure, a phalanx of editors, and multiple methods for identifying noncompliant advertisements once a trademark concern is brought to its attention. (Br. at 12-14.)[9]

---

[9] That Yahoo! does not screen most of the advertisements it displays means American is wrong "that Yahoo! 'exerts' extensive control over the accused ads." (Opp. at 48.)

American cites a single advertisement that it identified as noncompliant, and when it raised this advertisement with Yahoo! it got an immediate and fully satisfying response. American states that it complained to Yahoo! about the advertisements in the screenshot on which Dr. Englis based his survey, but its complaint was limited to a single advertisement in the screenshot. (Obj. 11-13; Appendix in Support of Defendants' Objections and Motion to Strike American Airlines, Inc.'s Motion for Summary Judgment Evidence ("Appx."), at 94-98).) As soon as it received the complaint, Yahoo! contacted the owners of the allegedly infringing website and took down their advertisement. (*See* Opp. at 22; Opp. App. at 1057-1061; Obj. 9-10; Appx. 99-101.) American's evidence thus demonstrates the effectiveness of Yahoo!'s trademark policy. It corroborates rather than refutes Yahoo!'s assertion of good faith.

American also argues that Yahoo! "encouraged composition of infringing advertisements" by requiring advertisers to include trademarked keywords in the text of their listings. (Opp. at 48.) However, Yahoo! imposed this requirement to help consumers understand how an advertiser's site is responsive to their search. (Br. at 11.) By analogy to printed classified listings, it would be appropriate for a newspaper to require an advertisement for the sale of a used car to begin with the brand name of the car. Only that way will a consumer searching for a "Ford Mustang" be able easily to locate all of the relevant listings.

Yahoo! believes that American's trademark infringement claims fail for the reasons it states in support of this motion. But even if the Court were to find that Yahoo!'s search advertising program infringes American's marks, such a finding would be a novel application of the law. (Opp. at 29) (keyword issue is a "complex and novel legal frontier"). In developing and implementing its trademark policy, Yahoo! was objectively reasonable in relying on the nominative fair use doctrine as set forth above. Because Yahoo!'s belief that its conduct did not infringe was *at least* objectively reasonable, whether or not it proves ultimately right, any infringement was unquestionably innocent. *See, e.g., In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007) (patent infringement not willful unless patentee shows that "the infringer acted despite an objectively high likelihood that its actions constituted infringement"), *cert.*

*denied*, 128 S. Ct. 1445 (2007); *NBA Props. v. Untertainment Records LLC*, 1999 WL 335147 at

*14 (S.D.N.Y. May 26, 1999) (infringement "innocent" unless defendant knew or acted with

reckless disregard of another's trademark rights). The Lanham Act's safe harbor for innocent

infringers thus precludes damages in this case.

## VI. AMERICAN CITES NO MATERIAL ISSUE OF FACT TO PREVENT SUMMARY JUDGMENT ON ITS OTHER CAUSES OF ACTION

### A. Additional Elements for Contributory Infringement

American has not shown a material issue of fact as to the additional elements necessary

to establish liability as a contributory infringer. First, American's evidence purporting to show

intentional inducement to infringe does no such thing. (*See* Opp. at 37-38.) The evidence is all

equally consistent with a program of lawful search advertising, one that allows advertisers to

make nominal fair use of another's trademarks. *See, e.g., Mary Kay*, 601 F. Supp. at 855 (use of

keyword advertising alone does not defeat nominative fair use defense). Second, American does

not establish a material issue of fact as to whether Yahoo! continues to supply services to

advertisers it knows are engaged in trademark infringement. (Opp. at 38.) American cites only

Yahoo!'s regular review of advertisements, conducted once a trademark owner brings a

trademark concern to Yahoo!'s attention. (Br. at 13; App. 390, 377.3-377.4; 431-36.) American

has no evidence that it requested such a review before 2007, however. (Opp. at 8; *supra* at 7-8

n.2.) And knowledge that one advertiser was using keywords in an infringing manner is not

sufficient to impute knowledge as to other instances of infringement. *See Tiffany Inc.*, 576

F. Supp. 2d at 509. Here, when American complained, Yahoo! promptly responded. (*Supra*, at

22-23.) Thus, Yahoo! did not contributorily infringe American's trademarks.

### B. Additional Elements for Vicarious Infringement

American's opposition ignores Yahoo!'s argument that the appropriate standard for

vicarious trademark infringement is narrower than the standard used in copyright cases. (Br. at

38 n.11; Opp. at 39.) American found a few trademark cases that apply, without comment, the

standard for vicarious copyright infringement, but these cases are not binding as Yahoo!'s

Supreme Court authority is. (Br. at 38 n.11; Opp. at 39.) Because American does not dispute that it has not and cannot allege the requisite relationship, its claim fails as a matter of law. *See Fare Deals, Ltd. v. World Choice Travel.com, Inc.*, 180 F. Supp. 2d 678, 696 (D. Md. 2001) (no triable issue of vicarious trademark liability where plaintiff produced insufficient evidence of principal-agent relationship between defendant and alleged infringer).

Even under the erroneous standard, American's vicarious infringement claim fails as a matter of law. American cannot show that Yahoo! has the "right and ability to supervise" the activities of its advertisers. The only case American cites does not hold otherwise, as it was decided on a motion to dismiss (and in any event, it does not apply the copyright standard for which American advocates). *Gov't Employees Ins. Co. v. Google, Inc.*, 330 F. Supp. 2d 700, 705 (E.D. Va. 2004).

## C. Dilution

American does not dispute that its dilution claim fails, to the extent the use of its marks as keywords is found to be nominative fair use. (Opp. at 41.) Although American's analysis of dilution suffers various other infirmities, this concession establishes that Yahoo! is entitled to summary judgment on American's dilution claim.

## D. State Law Claims

American does not dispute that its state law claims for trademark infringement, unfair competition, trademark dilution, and misappropriation all rise or fall with their federal counterparts. (Opp. at 44-45.) Accordingly, summary judgment as to each is proper.

In opposing Yahoo!'s motion with respect to the claim for tortious interference with contract, American makes two mistakes. American distorts and therefore fails to respond to Yahoo!'s argument that Yahoo! did not know *which* advertisers were parties to the ARC Addendum, and *as of when*. And American ignores the requirement that any interference be intentional and willful. (*Compare* Opp. at 46 *and* Br. at 42-43.) A dispute over what Yahoo! "should have known" (Opp. at 46), cannot defeat summary judgment.

Finally, in opposing Yahoo!'s motion with respect to the claim for money had and received, American argues there are no elements that it must prove to be entitled to an award under this theory. (Opp. at 47.) Even if the Court were to accept this standardless jurisprudence and look "'only to the justice of the case'" (*id.*), Yahoo! would be entitled to summary judgment. Yahoo! has adopted and implemented a trademark policy that vigorously protects the trademark rights of others. Only advertisers that make nominal fair use of a trademark are entitled to bid on trademarked terms as keywords. If the "justice of the case" penalizes even Yahoo!'s careful approach to search advertising, then search engines are prevented "from doing what [search engines] are designed to do: present users with the information they seek as well as related information the user may also find helpful or interesting." *Mary Kay*, 601 F. Supp. 2d at 859.

*   *   *   *

For the reasons above and in Yahoo!'s opening brief, Yahoo! accordingly requests summary judgment against American's claims.

Dated: November 12 2009

Respectfully submitted,

*David F. Chappell*

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
D. Anthony Rodriguez (*pro hac vice*)
Alison M. Tucher (*pro hac vice*)
Brooks M. Beard (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE SERVICES,
INC. d/b/a YAHOO! SEARCH MARKETING

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Plaintiff's counsel, as indicated below, on the ___12th___ day of November 2009:

Dee J. Kelly                                    *Via Hand Delivery and e-mail*
Dee J. Kelly, Jr.
Lars L. Berg
KELLY HART & HALLMAN, LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102

Frederick Brown                                 *Via Federal Express*
George A. Nicoud III
Jason Stavers
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105

Howard S. Hogan                                 *Via Federal Express*
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036

_____
Scott A. Fredricks