IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

AMERICAN AIRLINES, INC.,  §
                          §
        Plaintiff,        §
                          §
v.                        §
                          §   Civil Action No. 4-08CV-626-A
YAHOO! INC., and          §
OVERTURE SERVICES, INC. d/b/a §
YAHOO! SEARCH MARKETING,  §
                          §
        Defendants.       §

### DEFENDANTS' MOTION TO COMPEL AND BRIEF IN SUPPORT AND MOTION FOR EXPEDITED CONSIDERATION

Pursuant to Rule 37 of the Federal Rules of Civil Procedure, Defendants Yahoo! Inc. and Overture Services, Inc. (collectively "Yahoo!") move this Court for an order compelling Plaintiff American Airlines, Inc. ("American") to produce ticket revenue and passenger count information from December 19, 2002, through December 31, 2003, (the "2002-2003 MIRS Information") as American did for 2004 through 2009, and to do so by November 23, 2009. Given the imminent pre-trial deadlines, Yahoo! respectfully requests expedited consideration of this motion.

Yahoo! would respectfully show the Court that the requested Order is appropriate and necessary as follows:

### PRELIMINARY STATEMENT

An American Airlines' Rule 30(b)(6) designee regarding American's costs, margins, and profits from revenue on airline ticket sales testified that American retains information about ticket revenue in its "MIRS" database. (Appendix in Support of Defendants' Motion to Compel and Brief in Support and Motion for Expedited Hearing ("Defs' Compel Appx.") 005-009

(DeCross 6/26/09 Dep. 49:6-50:7; 161:3-6; 161-18-162:1; 163:6-20).) MIRS allows American to track revenue from ticket sales from its many authorized agents, including online travel agencies ("OTAs"), such as Orbitz, Expedia, and Travelocity. (*Id.*) American has produced ticket revenue and passenger count information from MIRS for 2004 to 2009. The information shows revenue and passenger count, route by route, from every source that sold a ticket on American Airlines, including AA.com and OTAs.

American claims to have lost profits on Internet purchases from OTAs from December 31, 2002, through 2009. (First Am. Compl. (Dkt. No. 98) ("FAC") at ¶¶ 5, 84, 86).) In calculating American's purported lost profits, American's damages expert, Daniel Jackson, opines on the incremental contribution of a ticket sold on American's website, AA.com, versus a ticket sold to OTAs. (Defs' Compel Appx. 014-015 (Jackson Report at ¶¶ 62-65).) Mr. Jackson's damages calculations trace 18% of American's purported lost profits damages to the period December 19, 2002, to December 31, 2003. (Defs' Compel Appx. 016-019 (Jackson Report Attachments 18A through 18D).) Information from MIRS for the years that American has provided so far appears to differ from amounts in Mr. Jackson's report. (Defs' Compel Appx. 021-022 (Rodriguez 11/10/09 letter).)

Another American Rule 30(b)(6) designee, Don Broadfield, an associate general counsel at American, testified in July 2009 that "Whatever information is put into MIRS stays there." (Defs' Compel Appx. 025-027 (Broadfield Dep. 127:7-129:1).) That testimony was false. On November 10, 2009, American revealed that the December 2002 to December 2003 ticket revenue and passenger count information was *not* in MIRS but instead was on backup tapes. (Defs' Compel Appx. 032-033 (Stavers email 11/10/09).) American states that it is unlikely to be able to produce the 2002-2003 MIRS Information before the end of 2009 (*id.*), and

American's counsel has stated American will refuse to do so unless Yahoo! pays for the production.

## CERTIFICATE OF CONFERENCE

Counsel for Yahoo! certifies that, in accordance with Fed. R. Civ. P. 37(a)(1) and LR 7.1, it has met and conferred in good faith in person, over the phone, and through correspondence with counsel for American in an attempt to avoid bringing this motion. The latest conference occurred in San Francisco on Friday, November 13, 2009 between Anthony Rodriguez (counsel for Yahoo!) and George A. Nicoud III and Jason Stavers (counsel for American). At that meeting, American stated that it did not believe the 2002-2003 MIRS Information could be produced in 2009, and further stated that American would condition production on Yahoo! paying for it. Accordingly, this matter is presented to the Court for consideration.

## ARGUMENT

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1). Under federal law, "[r]elevancy is broadly construed, and a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party." *Merrill v. Waffle House, Inc.*, 227 F.R.D. 467, 470 (N.D. Tex. 2005). The 2002-2003 MIRS Information easily falls within these broad parameters.

    **A.**     **American Should Produce the 2002-2003 MIRS Information At its Cost or Waive its Damages Claim for that Period**

        **1.**     **The 2002-2003 MIRS Information is Relevant to American's Claim and to Yahoo!'s Defense**

The 2002-2003 MIRS Information is relevant for the following reasons.

American has placed the revenues on tickets sold over the Internet from December 2002 into 2009, whether through AA.com or through OTAs, squarely at issue. American alleges that it has incurred lost profits because some Internet users purchased airline tickets, including tickets on American Airlines, that they would have purchased on AA.com but for advertisements on Yahoo!, the great majority of which come from OTAs. (First Amended Complaint ("FAC") ¶¶ 5, 84, 86.) American's damages expert, Mr. Jackson, claims to have calculated the amount of those lost profits as part of his total lost profits figures. (Defs' Compel Appx. 016-019 (Jackson Report Attachments 18A through 18D).) The December 2002 to December 2003 period accounts for 18% of the lost profits that Mr. Jackson claims to have identified, and the great majority of this 18% is attributable to OTAs. (*Id.*) In the course of calculating American's purported lost profits, Mr. Jackson claims to have identified the revenue that American received from AA.com purchasers and OTA purchasers, and to have determined the incremental contribution to American's margin from each ticket that was purchased via those channels. (*Id.*)

Yahoo!'s damages expert, among other things, has analyzed the effect—or lack thereof—on AA.com-generated and OTA-generated revenues of the December 2006 "ARC Addendum," a form agreement with travel agents that is central to American's case. Yahoo!'s expert has indicated that the 2004 and later MIRS figures differ from the figures that Mr. Jackson used, sometimes by hundreds of millions of dollars. (Defs' Compel Appx. 021-022 (Rodriguez 11/10/09 letter).) American may claim to know the reason for some of these variances, but has provided no confirming data. (Defs' Compel Appx. 037 (Stavers 11/12/09 letter).) In any event, Yahoo! is not obligated to accept American's hypothesis for the variance, much less accept it in lieu of receiving MIRS information about a time period that accounts for 18% of American's purported lost profits.

Having the 2002-2003 MIRS Information will allow Yahoo! to identify and compare, by OTA (and for AA.com), the revenue received and passengers flown on each American route for which the OTA or AA.com sold tickets. Yahoo! will be able to compare the information to later years, including identifying the presence or absence of statistically significant changes or trends over time. If the variance between MIRS revenue and the revenue figures that Mr. Jackson uses persists, it could reflect further defects in Mr. Jackson's work. In sum, having the 2002-2003 MIRS Information will give Yahoo! what the Federal Rules of Civil Procedure entitle it to: the opportunity to review information that is relevant to American's claim and to Yahoo!'s defense.

### 2. American Should Be Responsible for the Cost of Producing the 2002-2003 MIRS Information, or Should Waive its Damages Claim for that Period

There is no reason to excuse American from its presumptive obligation to pay for its own production. If American is unwilling or unable to produce the 2002-2003 MIRS Information by November 23, 2009, it should not be able to introduce evidence of purported damages from 2002 and 2003. The last-minute crisis regarding the 2002-2003 MIRS Information is entirely of American's own making. American's errors and omissions regarding this information include the following.

First, American's associate general counsel, serving as American's Rule 30(b)(6) designee on topics regarding data retention, testified in July 2009 about the retention of information in MIRS. Yahoo! had no way of knowing, however, that the following testimony about MIRS was erroneous.[1]

> Q. Is there -- well, have you made inquiry as to the process
> retention -- let me do it this way. Have you made inquiry as to

---

[1] The references to SPARS and to PNR are to other American databases or systems that are not at issue in this motion.

the retention of data on SPARS and whether any is either deleted or rolled off to another database?

A. Have I made inquiry as to this case?

Q. No, sir. I'm asking in general if you've made inquiry as to whether that on a regular basis information, electronically stored information on the database SPARS is moved to another location or is just routinely discarded?

A. **Information is not removed from SPARS or MIRS or PNR or fares.**

Q. **Is it removed or taken to a different database on a regular basis on any of those?**

MR. BROWN: Asked and answered.

A. **Nothing is removed from those four databases.**

Q. Mr. DeCross, I believe, testified that he wasn't sure whether there was any SPARS data back before 2008. Do you know whether SPARS data is available before 2008?

A. I know that SPARS data goes back to roughly 2000. SPARS wasn't created before then.

Q. Okay. So any inquiry related to data that would be on SPARS from its creation in 2000 would be available today?

MR. BROWN: What do you mean by "any inquiry"?

MR. CHAPPELL: Okay. Good point.

Q. My question is: If an inquiry was desired to be made of the SPARS system, has there been any data -- well, first of all, do I understand you to be saying that whatever electronic data was put into SPARS from 2000 through the present is still available?

A. Whatever data was put into SPARS at any period is going to still be there.

Q. And it has not been moved or taken to any other location?

MR. BROWN: Asked and answered.

>    A. Whatever information is put in there stays there.
>
>    **Q. And is there today. And is the same true of MIRS?**
>
>    **A. Whatever information is put into MIRS stays there.**

(Defs' Compel Appx. 025-027 (Broadfield 127:7-129:1, emphasis added).) American has not corrected this testimony, but instead appears to have returned the original transcript to the court reporter without signature or changes. (Defs' Compel Appx. 039 (D. Kelly 11/6/09 Letter).)

Second, in its September 8, 2009, response to Yahoo!'s set of document requests that led American to produce MIRS information for other years, American did not identify any limitations in accessing MIRS information from December 2002 to December 2003. Nor did American raise any such issue in the course of meet and confer discussions in September 2009 or October 2009. Even when American produced MIRS information for 2004 and later years, it did not explain the omission of the 2002-2003 MIRS Information. It must have been clear to American by then, however, that the 2002-2003 MIRS information was on back-up tapes.

Third, in responding to Yahoo!'s inquiries regarding the whereabouts of the 2002-2003 MIRS Information, American dribbled out the facts, rather than simply stating that its deposition testimony was wrong and the data in fact was not in MIRS. (Defs' Compel Appx. 032-033 (Stavers email 11/10/09).) Only on November 10, 2009—six days before the close of discovery—did American finally state what it must have known for weeks if not months: the 2002-2003 information is no longer in MIRS. (*Id.*)

Now American would have Yahoo! go without the 2002-2003 MIRS Information, or have to pay for it, when it was *American* that gave incorrect and incomplete information for the past four months about the true status and location of the 2002-2003 information. Allowing

American not to produce the 2002-2003 MIRS Information, or to make Yahoo! pay for it, would reward American's errors and omissions.

The clear relevance of the 2002-2003 MIRS Information to American's allegations and its expert contentions, the lack of other sources for this information, and the importance of seeing organized revenue and passenger count information for the entire purported damages period, all weigh in favor of applying the standard presumption that American, as the producing party, should pay for the production. *See Zubulake v. UBS Warburg LLC,* 217 F.R.D. 309, 317 (S.D.N.Y. 2003) ("The Supreme Court has instructed that 'the presumption is that the responding party must bear the expense of complying with discovery requests. . . .' Any principled approach to electronic evidence must respect this presumption.") The 2002-2003 MIRS Information's existence on back-up tapes does not overcome the presumption, given the known *existence* of this information about revenue from AA.com and OTA sales, its clear *relevance* to the parties' claims and defenses, and the *efficiency* that would come from American's expertise in working with its own data. *See id.* at 322 (listing factors, including these, to assess *if* a court considers requiring the requesting party to pay for restoration from back-up tapes). In any event, American has failed to move for a protective order regarding the 2002-2003 MIRS Information, and thus any assertion of undue burden or expense should be disregarded. *See Multitechnology Servs., L.P. v. Verizon Sw.,* No. 4:02-CV-702-Y, 2004 U.S. Dist. LEXIS 12957, at * 2 (N. D. Tex. July 12, 2004) ("Complaints of undue burden and expense *are properly addressed by motion for protective order* under Federal Rule of Civil Procedure 26(c), including an order conditioning discovery on the requesting party's payment of the costs of discovery.")(emphasis added).

If American will not, or cannot, produce the 2002-2003 MIRS Information by November 23, 2009, then it should be barred from seeking damages from December 19, 2002,

through December 31, 2003.[2] Doing otherwise would allow American, which has unrelentingly pressed Yahoo! to spend hundreds of thousands of dollars to restore information, to benefit from a glaring and inequitable double-standard between the discovery it seeks and the discovery it provides.

## PRAYER

For the foregoing reasons, Yahoo! respectfully requests that the Court enter an order requiring American to produce the 2002-2003 MIRS Information, at American's expense and by November 23, 2009.

---

[2] The proposed pre-trial order is due on December 1, 2009. Yahoo! would work quickly to incorporate information produced on November 23, 2009, into the proposed pre-trial order, but potentially could need to request a short extension of time to complete part of its sections of the pre-trial order in light of the complications American has caused.

Respectfully submitted,

*[signature: Scott Fredricks]*

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
D. Anthony Rodriguez (*pro hac vice*)
Alison M. Tucher (*pro hac vice*)
Brooks M. Beard (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants
YAHOO! INC. and OVERTURE
SERVICES, INC. d/b/a YAHOO!
SEARCH MARKETING

## CERTIFICATE OF CONFERENCE

I certify that counsel for Yahoo! has had numerous conferences regarding the subject of this motion to compel with counsel for American both in-person, over the telephone, and via correspondence. On the morning of Friday, November 13, 2009, Anthony Rodriguez (counsel for Yahoo!) and George A. Nicoud III and Jason Stavers (counsel for American) met in person in San Francisco to discuss the production of 2002-2003 MIRS Information. At that meeting, American stated that it did not believe the 2002-2003 MIRS Information could be produced in 2009, and further stated that American would condition production on Yahoo! paying for it. Accordingly, this matter is presented to the Court for consideration.

_____
Scott A. Fredricks

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Plaintiff's counsel on the 16th day of November 2009 as follows:

| | |
|---|---|
| Dee J. Kelly<br>Dee J. Kelly, Jr.<br>Lars L. Berg<br>KELLY HART & HALLMAN, LLP<br>201 Main Street, Suite 2500<br>Fort Worth, TX 76102 | *Via Hand Delivery* |
| Frederick Brown<br>George A. Nicoud III<br>Jason Stavers<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94104 | *Via Federal Express* |
| Howard S. Hogan<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036 | *Via Federal Express* |

_____
Scott A. Fredricks