American Airlines, Inc. v. Yahoo! Inc. et al

Doc. 207

ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2009 NOV 20 PM 1:18

CLERK OF COURT

AMERICAN AIRLINES, INC.,

    Plaintiff,

-v.-

YAHOO! INC. and OVERTURE SERVICES, INC.
d/b/a YAHOO SEARCH MARKETING,

    Defendants.

No. 4:08CV-626-A

## OPPOSITION OF AMERICAN AIRLINES, INC.
## TO DEFENDANTS' MOTION TO COMPEL

Defendants' motion to compel should be denied because it rests on a false premise. According to Defendants, American is withholding from production data that is available on backup tapes. American is doing no such thing. The data that is the subject of Defendants' motion is *not* available on backup tapes. It is gone, and has been gone since mid-2006 (months before the parties entered into the December 2006 standstill agreement that preceded this suit). The Federal Rules of Civil Procedure impose no obligation on American to produce something it does not have. Defendants' motion to compel should therefore be denied.

### FACTS

Defendants Yahoo! Inc. and Overture Services, Inc. d/b/a Yahoo! Search Marketing (collectively "Yahoo") seek to compel the production of certain revenue data for 2002 and 2003 from American's Management Information Reporting System, known as MIRS. American has produced this data for 2004 through 2008 and the bulk of 2009. Further, to accommodate Yahoo, American organized the data in a unique manner that American does not use in the

course of its business. Declaration of Donald Broadfield Jr., ¶ 3. Specifically, American prepared and produced spreadsheets that break out separately for each flight segment operated by American or American Eagle how much ticket revenue associated with that flight segment was generated by different distribution sources (e.g., online travel agents, traditional "brick-and-mortar" travel agents, AA.com, AA Reservations, and so on).[1] *Id.*

In seeking to produce similar spreadsheets for the years 2002 and 2003, American discovered that in mid-2006, American's Information Technology Department authorized American's third-party information technology services provider to delete from American's Management Information Reporting System ("MIRS") data that was dated 2003 or earlier. Declaration of Kimberley Giese, ¶ 2. American's in-house counsel, who was deposed on American's data retention practices, was unaware of this at the time of his deposition and, as a result, was mistaken when he testified that data was never deleted from MIRS. Declaration of Donald Broadfield Jr., ¶¶ 1-3. Since discovering that 2003 and earlier data had been deleted from MIRS, American has sought to determine whether copies of that data are available on backup tapes or otherwise. American believes that there are no copies of the data. *Id.* at ¶ 4.

## ARGUMENT

The Federal Rules of Civil Procedure do not require American to generate new data in response to a request for production. "Rule 34 does not require a party responding to discovery

---

[1] To limit the amount of immaterial data in the spreadsheets, American reported data for only those flight segments that showed more than 1,000 passengers per year. Because flights are sometimes diverted because of weather or mechanical conditions, American's data includes reports of flight segments such as Chicago O'Hare to Abilene. American does not offer regularly-scheduled nonstop service between Chicago and Abilene, but over the course of a year, a few flights may in fact have flown nonstop from Chicago to Abilene because weather prevented them from landing at DFW.

to create responsive materials, only to produce those in its possession, custody or control." *Marchese v. Sec'y, Dep't of the Interior*, No. 06-cv-01499, 2004 U.S. Dist. LEXIS 20680, *10 (E.D. La. Oct. 12, 2004). *Accord Mon River Towing, Inc. v. Indus. Terminal & Salvage Co.*, No. 06-cv-01499, 2008 U.S. Dist. LEXIS 45369, **3-4 (W.D. Pa. June 10, 2008); *Khyber Techs. Corp. v. Casio, Inc.*, No. 99-cv-12468, 2003 U.S. Dist. LEXIS 12450, **28-29 (D. Mass. Mar. 31, 2003); *Alexander v. FBI*, 194 F.R.D. 305, 310 (D.D.C. 2000); 8A Charles Alan Wright et al., FEDERAL PRACTICE AND PROCEDURE § 2210 (2d ed. 1994) ("[A] party can not be required to permit inspection of documents or things that it does not have and does not control").

Although it is unfortunate that the deposition testimony elicited by Yahoo in July was mistaken, the mistake is not material to the resolution of this motion. American deleted the 2002 and 2003 data well before American first approached Yahoo concerning the practices that are the subject of this action; American did not possess the data when this action was commenced; American did not have the data at the time of the July 2009 deposition; American did not have the data when Yahoo propounded its requests for production in August 2009; and American does not have the data now. American is not required to create data that it does not have. *Washington v. Garrett*, 10 F.3d 1421, 1437 (9th Cir. 1993) (affirming district court order noting that responding party "was not required to create documents to satisfy . . . discovery requests").

As for Yahoo's assertion in its motion papers that the MIRS data is available on backup tapes, Yahoo is wrong, and is on notice that it is wrong. The email cited by Yahoo does *not* say that the MIRS data is on backup tapes; indeed, it expressly states "we [American] do not believe that there is a direct backup of this data." Yahoo Motion to Compel Appdx. 033 (Stavers email of Nov. 6, 2009). What Mr. Stavers' email said is that American had backup tapes of *other* data.

*Id.* That other data is raw ticketing data for 2002 and 2003.[2] Yahoo should know this because when it first asserted that the MIRS data was on backup tapes, American promptly advised: "It is not correct that 'the 2003 revenue/FAUDNC/VAUDNC information is on backup tapes.' As I explained in the email quoted in your letter, it is the raw ticket records that exist, to the best of American's current knowledge, on tape. The difference is significant." [App. 5], (Stavers letter of November 12, 2009 to A. Rodriguez).

Finally, Yahoo has no basis in law or fact for its suggestion that American somehow has some extra discovery burdens because the revenue reported in the 2004 and later spreadsheets already produced by American differs from the revenue figures used by American's expert in calculating American's damages. Indeed, in an effort to manufacture a discovery dispute, Yahoo seems to be deliberately blinding itself to the obvious. In calculating the damages American has suffered, American's damages expert used total passenger revenues for American Airlines and American Eagle. As noted above, and as American previously advised Yahoo, the specially-prepared revenue by distribution channel spreadsheets that American produced for 2004 and later do not report revenues for routes with fewer than 1,000 passengers in a year. Right off the bat, that is one reason for the difference in revenues.

Further, and as American has also explained to Yahoo's counsel, the spreadsheets report the revenue that American is able to segregate by distribution channel – namely, the fares paid by passengers. Total passenger revenue includes other revenues generated by passengers, such as fees paid for in-flight movies, drinks, and meals or excess or checked baggage fees. These

---

[2] American's outside counsel was hopeful that the ticketing information, which they had not seen at the time of Mr. Stavers' email, might assist in responding to Yahoo's requests, but that turned out not be the case when the information was obtained and reviewed.

forms of revenue cannot be segregated by where the passenger purchased his or her ticket. These other passenger-generated revenues were considered by American's expert when calculating damages, but were not included in the revenue-by-channel spreadsheets because American does not track those revenues by channel. American produced the data relied on by its expert, and those records include these other passenger-generated revenues.

## CONCLUSION

For the reasons stated herein, American has complied with its discovery obligations and there is no basis to compel American to create data it does not have or to limit American's claim for damages. American Airlines respectfully requests that the Court deny Yahoo's motion to compel in its entirety.

Respectfully submitted,

*/s/ Dee J. Kelly*

Dee J. Kelly
State Bar No. 11217000
Dee J. Kelly, Jr.
State Bar No. 11217250
Lars L. Berg
State Bar No. 00787072
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, Texas 76102
(817) 332-2500 - phone
(817) 878-9280 - fax

Frederick Brown (admitted *pro hac vice*)
George A. Nicoud III
State Bar No. 15017875
Jason Stavers (admitted *pro hac vice*)
GIBSON DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
(415) 393-8204 – phone
(415) 374-8420 – fax

Howard S. Hogan (admitted *pro hac vice*)
GIBSON DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
(202) 887-3640 – phone
(202) 530-9550 – fax

**ATTORNEYS FOR PLAINTIFF**

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Defendants' counsel, via hand delivery or overnight delivery, on the 20th day of November, 2009:

*Via Hand Delivery*
David F. Chappell
Scott A. Fredricks
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102

*Via Federal Express*
Michael A. Jacobs
Lynn M. Humphreys
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482

Lars L. Berg