ORIGINAL x w/o + orig sealed/revised docs

FILED
U.S. DISTRICT COURT
NORTHERN DIST. OF TX
FT. WORTH DIVISION

2009 NOV 23 PM 1:48

CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| AMERICAN AIRLINES, INC., § <br> § <br> Plaintiff, § <br> § <br> V. § Civil Action No. 4-08-CV-626-A <br> § <br> YAHOO! INC., and § <br> OVERTURE SERVICES, INC. d/b/a § <br> YAHOO! SEARCH MARKETING, § <br> § <br> Defendants. § | |

## DEFENDANTS' UNOPPOSED MOTION TO SEAL DOCUMENTS

# TABLE OF CONTENTS

|   |   | Page |
|---|---|---|
| TABLE OF AUTHORITIES | | iii |
| BACKGROUND | | 1 |
| ARGUMENT | | 3 |
| A. | The Information Involved is Yahoo!'s Confidential and Trade Secret Information or that of Non-Parties, the Disclosure of Which would Cause Injury or Harm to Yahoo! and to those Non-Parties | 4 |
| | 1. Competitive Business Planning Information, Reports, or Analysis and Confidential Consumer Research | 6 |
| | 2. Confidential Internal Marketing Training Materials | 7 |
| | 3. Internal Proprietary Advertisement Review System and Procedures | 7 |
| | 4. Confidential Non-Party Information | 8 |
| B. | Interests in Protecting Confidential and Competitive Trade Secret Information Outweigh Public Interests | 9 |
| PRAYER | | 11 |

# TABLE OF AUTHORITIES

                                                                                                               **Page(s)**

**CASES**

*Baxter Int'l, Inc. v. Abbott Labs.*,
   297 F.3d 544 (7th Cir. 2002) ...................................................................................... 3

*Belo Broadcasting Corp. v. Clark*,
   654 F.2d 423 (5th Cir. 1981) .................................................................................... 10

*Brown & Williamson Tobacco Corp. v. FTC*,
   710 F.2d 1165 (6th Cir. 1983) .................................................................................. 10

*Computer Assocs. Int'l, Inc. v. Altai, Inc.*,
   918 S.W.2d 453 (Tex. 1996) ...................................................................................... 5

*CQ Inc. v. TXU Mining Co. LP*,
   565 F.3d 268 (5th Cir. 2009) ................................................................................. 4, 5

*E. I. du Pont de Nemours Powder Co. v. Masland*,
   244 U.S. 100 (1917) ................................................................................................... 3

*General Universal Sys. v. Lee*,
   379 F.3d 131 (5th Cir. 2004) ..................................................................................... 5

*In re Application of National Broadcasting Co.*,
   653 F.2d 609 (D.C. Cir. 1981) ................................................................................. 10

*In re Bass*,
   113 S.W.3d 735 (Tex. 2003) ...................................................................................... 5

*In re Iowa Freedom of Information Council*,
   724 F.2d 658 (8th Cir. 1983) ........................................................................... 4, 10, 11

*Jadael Inc. v. Elliott*,
   2006 U.S. Dist. LEXIS 71055 (M.D. Fla. Sept. 29, 2006) ...................................... 10

*Nixon v. Warner Communications, Inc.*,
   435 U.S. 589 (1978) ................................................................................................... 3

*SEC v. Van Waeyenberghe*,
   990 F.2d 845 (5th Cir. 1993) ................................................................................ 3, 10

*United States v. Edwards*,
   823 F.2d 111 (5th Cir. 1987) ................................................................................... 10

*Walker Sys. v. Hubbell Inc.*,
   188 F.R.D. 428 (S.D. W. Va. 1999)......................................................................................4, 10


**STATUTES AND RULES**

FED. R. CIV. P. 26(c)(1)..................................................................................................................4


**SECONDARY AUTHORITIES**

RESTATEMENT (FIRST) OF TORTS § 757, comment b.....................................................................5

Plaintiff American Airlines, Inc. ("American") has inadvertently caused to be publicly filed in this Court certain confidential and proprietary documents of the Defendants. By this motion, Defendants Yahoo! Inc. and Overture Services, Inc. d/b/a Yahoo! Search Marketing ("Yahoo!") respectfully request that the Court strike the appendix containing these confidential and proprietary materials and replace them with the items tendered with this motion – a "revised" appendix containing non-confidential materials (to be publicly filed) and a "sealed" appendix containing confidential materials (to be filed under seal). In support thereof, Yahoo! would show the following:

## BACKGROUND

On September 23, 2009, American filed its Motion for Sanctions for Failure to Produce and Preserve Documents. With that motion, American *filed* a "redacted" appendix containing items not designated by any party as confidential (docket item number 101) and submitted *in camera* an unredacted appendix containing documents designated by Yahoo! to be confidential and proprietary.

On October 26, 2009, the Court signed an order striking American's redacted appendix from the record of this action and ordered that the unredacted copy of the appendix submitted by American be filed with a filing date of September 23, 2009. (Doc. No. 123, paras. 7 and 8). On October 27, 2009, the unredacted appendix was publicly filed as docket item number 129.

Yahoo! has since determined that 13 of the 54 items in American's Appendix in Support of Plaintiff's Motion for Sanctions for Failure to Produce and Preserve Documents ("Sanctions Appendix") (Doc. No. 129) contain confidential and proprietary information the public disclosure of which would cause competitive harm to Yahoo! and/or certain of its advertisers.[1]

---

[1] In another order the Court has already granted leave to file 6 of these 13 documents under seal in connection with other filings. *See* Doc. No. 147.

1

Specifically, American's Sanctions Appendix contains (1) competitive business planning information, reports, or analysis and confidential consumer research, (2) confidential internal marketing training materials, (3) materials describing Yahoo!'s internal proprietary advertisement review system and procedures, and (4) confidential non-party information.

These documents and the reasons why they are deserving of protection are described more fully below, as well as in the declarations of Cheryl Dartt (Appx. 16–19), Chris Kemple (Appx. 20–21), and Michael Wehn (Appx. 22–24), which are being filed with this motion to seal. The confidential documents contain information that Yahoo! disclosed to American during discovery pursuant to a confidentiality agreement ("Confidentiality Agreement") entered between the parties. A true and correct copy of this agreement is also submitted with this motion as EXHIBIT A (Appx. 1–15). As required by the Confidentiality Agreement, these documents have been designated by Yahoo! as "CONFIDENTIAL," "HIGHLY CONFIDENTIAL INFORMATION," or "HIGHLY CONFIDENTIAL – OUTSIDE COUNSEL ONLY INFORMATION." (Appx. 2–3.)

Accordingly, Yahoo! respectfully requests that the Court order the Sanctions Appendix (Doc. No. 129) be stricken and replaced with a sanctions appendix containing non-confidential documents (to be publicly filed) and a supplemental sanctions appendix containing the 13 confidential documents described below (to be filed under seal). An original and one copy of each of these proposed appendices are tendered with this motion pursuant to the Court's order of November 9, 2009 (Doc. No. 146).

## ARGUMENT

Though the courts of the United States recognize a general right to inspect and copy public records and documents, this right is not absolute. *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597–98 (1978); *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993). A court may deny public access to judicial records where the court's files might have become a vehicle for improper purposes, such as to "gratify private spite or promote public scandal," or where the judicial records might serve "as sources of business information that might harm a litigant's competitive standing." *Warner Communications*, 435 U.S. at 598.

When determining whether to limit public access to a court record, the court must balance the presumption of public access against the interests favoring secrecy or nondisclosure. *Warner Communications*, 435 U.S. at 599, 602; *Van Waeyenberghe*, 990 F.2d at 848. The balance of factors must be struck "in light of the relevant facts and circumstances of a particular case." *Warner Communications*, 435 U.S. at 599. *See Van Waeyenberghe*, 990 F.2d at 848 & n.4 (declining to adopt a "strong" presumption in favor of right of access, and noting that public access is only one of the interests to be balanced).

Federal courts recognize a particular interest in protecting a business's trade secrets from harmful disclosure. *See, e.g., Warner Communications*, 435 U.S. at 598 (recognizing that courts should not serve as sources of business information that might harm a litigant's competitive standing); *E. I. du Pont de Nemours Powder Co. v. Masland*, 244 U.S. 100, 101 (1917) (discussing legitimate purpose of protecting a litigant's trade secrets from disclosure during course of litigation); *Baxter Int'l, Inc. v. Abbott Labs.*, 297 F.3d 544, 546 (7th Cir. 2002) ("documents, usually a small subset of all discovery, that influence or underpin the judicial decision are open to public inspection *unless they meet the definition of trade secrets* or other

3

categories of bona fide long-term confidentiality" (emphasis added)); *Walker Sys. v. Hubbell Inc.*, 188 F.R.D. 428, 430 (S.D. W. Va. 1999) (granting motion to seal documents containing trade secrets after balancing private and public interests); FED. R. CIV. P. 26(c)(1) (permitting court to issue orders "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way").

For example, the court in *In re Iowa Freedom of Information Council*, 724 F.2d 658, 664 (8th Cir. 1983), considered whether the trial court properly sealed documents that contained a party's marketing and distribution plans. The court noted that there was evidence that the information could have been of substantial use to competitors anxious to learn the party's future business plans. *Id.* Noting that trade secrets are a form of property, the value of which is completely destroyed by disclosure, the appeals court affirmed the trial court's finding that the public revelation of those documents would have done considerable damage to the party's business and property, thereby justifying protection from public disclosure. *Id.*

In sum, federal law favors granting leave to file a document or information under seal where it has been shown that the information constitutes trade secret or other sensitive commercial information, the disclosure of which would cause injury, and where the balance of interests sought to be protected by sealing outweigh public interests in access, if any.

### A. The Information Involved is Yahoo!'s Confidential and Trade Secret Information or that of Non-Parties, the Disclosure of Which would Cause Injury or Harm to Yahoo! and to those Non-Parties

A trade secret is defined as any formula, pattern, device or compilation of information which is used in one's business and presents an opportunity to obtain an advantage over competitors who do not know or use it. RESTATEMENT (FIRST) OF TORTS § 757, comment b.; *CQ*

*Inc. v. TXU Mining Co. LP*, 565 F.3d 268, 274 (5th Cir. 2009) (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996) and the Restatement).

In determining whether something is a trade secret, Texas courts examine six relevant but nonexclusive criteria: (1) the extent to which the information is known outside the business; (2) the extent to which it is known by employees and others involved in the business; (3) the extent of measures taken to safeguard the secrecy of the information; (4) the value of the information to the business and to its competitors; (5) the amount of effort or money expended in developing the information; and (6) the ease or difficulty with which the information could be properly acquired or duplicated by others. *General Universal Sys. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004) (citing *In re Bass*, 113 S.W.3d 735, 739–40 (Tex. 2003)). A party claiming a trade secret "should not be required to satisfy all six factors because trade secrets do not fit neatly into each factor every time," and a determination of whether an item is a trade secret is a contextual inquiry. *Id.* (citing *In re Bass*, 113 S.W.3d at 740).

The highly confidential information contained within the American Sanctions Appendix constitutes Yahoo!'s proprietary, trade secret, and confidential information and in some instances, also contains confidential or trade secret information of non-parties who do business with Yahoo!.

The declarations of Cheryl Dartt, Chris Kemple, and Michael Wehn, contained in the accompanying appendix, establish that the items Yahoo! asks to have sealed are confidential or trade secret information worthy of protection and that public disclosure of this information would cause injury to Yahoo! and to certain non parties, as more fully discussed in the sections below.

### 1. Competitive Business Planning Information, Reports, or Analysis and Confidential Consumer Research

Documents in this category contain competitive business planning information and confidential consumer research that is not generally known outside Yahoo!, and for which even access is controlled within Yahoo!. (Appx. 17, ¶ 4 (Dartt Decl.).) These competitive business analyses and studies were developed and prepared at substantial expense to Yahoo!, are extremely valuable to Yahoo!, and could not be easily or inexpensively acquired or duplicated by Yahoo!'s competitors. (*Id.*) Moreover, this information could be used by Yahoo!'s competitors to understand Yahoo!'s proprietary technology, and Yahoo!'s recent and future confidential business plans and strategies and thus threaten Yahoo!'s competitive position. (*Id.*) As shown in the Declaration of Cheryl Dartt, the following items should be sealed:

(a) A portion of the exhibit at Tab 9 (at R. App. 77 – 87) describes details of Yahoo!'s proprietary algorithm used to determine ad placement, including plans to enhance product functionality in the future. The algorithm details are confidential and not disclosed publicly. The document also contains ad placement trends that are derived from internal data not shared outside the company. (Appx. 18, ¶ 6(A) (Dartt Decl.).)

(b) A portion of the exhibit at Tab 14 (at R. App. 104 – 108) describes the details of many of the detailed data fields collected for each search event and how they are used. This information is not revealed publicly and could give competitors insights into the data Yahoo! strategically gathers for optimization. Some details contained in this exhibit could also allow unscrupulous third-parties to "game" Yahoo!'s serving systems. (Appx. 18, ¶ 6(B) (Dartt Decl.).)

(c) Tab 33 (at R. App. 241 – 242) shows specific advertiser feedback data gathered from customer surveys fielded by Yahoo!. These detailed surveys are time-intensive and expensive to execute, and are conducted by Yahoo! to inform Yahoo!'s confidential and proprietary business priorities and strategies. The detailed survey data is not shared outside the company. (Appx. 18, ¶ 6(C) (Dartt Decl.).)

(d) Tab 36 (at R. App. 254 – 255) contains research developed and conducted by Yahoo! and competitive business strategies for responding to the findings. This highly sensitive information was only shared within a small group of leaders

within Yahoo! that were responsible for executing these search strategies.[2] (Appx. 18, ¶ 6(D) (Dartt Decl.).)

(e) Tab 42 (at R. App. 279 – 282) reports the findings of an internal Yahoo! study developed and conducted by Yahoo! and utilizing Yahoo! data. The study evaluates Yahoo!'s competitive standing and how various search consumers respond to the search interface.[3] (Appx. 18, ¶ 6(E) (Dartt Decl.).)

(f) Tab 43 (at R. App. 283 – 297) contains data that is from a Yahoo! internal research study tying confidential Yahoo! search and click data to external user survey results. This study was fielded by Yahoo! and required substantial effort and expense over 3-4 months to conduct and analyze the results. This analysis is shared only with select groups within Yahoo! and is not distributed outside the company.[4] (Appx. 18, ¶ 6(F) (Dartt Decl.).)

### 2. Confidential Internal Marketing Training Materials

The document identified under Tab 37 of American's Sanctions Appendix is confidential Yahoo! internal marketing training material. (Appx. 21, ¶ 4 (Kemple Decl.).)[5] Specifically, this document contains sales strategies used by the Yahoo! sponsored search sales force that have been developed and refined by Yahoo! over many years. (*Id.*) These strategies are not disclosed outside the company and public disclosure of these strategies would place Yahoo! at a competitive disadvantage relative to its competitors in sponsored search. (*Id.*)

### 3. Internal Proprietary Advertisement Review System and Procedures

Several of the documents in American's Sanctions Appendix contain information on Yahoo!'s internal proprietary advertisement review systems and procedures that could be used

---

[2] This document was included in the collection of items ordered filed under seal on November 9, 2009 (Doc. No. 147).

[3] This document was included in the collection of items ordered filed under seal on November 9, 2009 (Doc. No. 147).

[4] This document was included in the collection of items ordered filed under seal on November 9, 2009 (Doc. No. 147).

[5] Note that the Kemple declaration (Appx. 21, ¶ 4) refers to this document as "Tab 80". That was its designation in the Sealed Appendix in Support of Plaintiff's Memorandum of Law in Opposition to Defendant Yahoo! Inc.'s Motion for Summary Judgment. The Court granted leave for that document to be filed under seal on November 9, 2009. (Doc. No. 147). The document at Tab 36 of American's Sanction Appendix (at R. App. 256 – 259) that is the subject of this motion is the same document.

by advertisers to evade Yahoo!'s efforts to remove and reject non-compliant advertisements. (Appx. 23–24, ¶¶ 4–5 (Wehn Decl.).) Yahoo! would be harmed if these documents, which are treated as confidential by Yahoo!, were made publicly available because this information could be used by Yahoo! Sponsored Search advertisers to determine strategies for evading the review of advertisements that do not comply with Yahoo! advertising policies. (*See* Appx. 23–24 (Wehn Decl.).) This information may also be used to evaluate the limitations of Yahoo!'s advertising review process in identifying non-compliant advertising. (Appx. 23, ¶ 4 (Wehn Decl.).) For example, advertisers have attempted to determine the precise timing of automated review processes used in Yahoo!'s review system in order to display non-compliant advertisements on Yahoo! and remove the advertisements when those automated reviews occur in order to avoid detection. (Appx. 23, ¶ 4 (Wehn Decl.).) Protection of this information is necessary to protect value, integrity, and effectiveness of Yahoo!'s advertisement review system. (*See* Appx. 23–24 (Wehn Decl.).) As shown in the Declaration of Michael Wehn, the following documents should be sealed:

(a) Tab 30 (R. App. 226-234): This document contains confidential information that exposes the training and procedures that Yahoo! has spent significant effort and money to develop. This information may be valuable to Yahoo!'s competitors and could be used to put Yahoo! at a competitive disadvantage if exposed. (Appx. 24, ¶ 5(a) (Wehn Decl.).)

(b) Tab 41 (R. App. 275-278): This document contains confidential information that reflects the timing of Yahoo!'s automated advertisement review process. If revealed this could be used by advertisers to evade Yahoo!'s efforts to remove and reject non-compliant advertisements. (Appx. 24, ¶ 5(b) (Wehn Decl.).)

### 4. Confidential Non-Party Information

Documents in this category reveal confidential Yahoo! customer information the public disclosure of which could jeopardize those companies' competitive advertising activities, strategies and plans. (*See* Appx. 17, ¶ 5 (Dartt Decl.).) The confidential customer information is

8

not generally known beyond the parties to those documents, is valuable to those parties and their competitors, and would be difficult for third-parties to legitimately acquire or duplicate. (Appx. 17, ¶ 5 (Dartt Decl.).) To the extent any of Yahoo!'s advertising customers suffer injury, Yahoo! would similarly suffer, either from loss of business, loss of goodwill, or both. As shown in the Declaration of Cheryl Dartt the following document should be sealed:

> (a) Tab 50 (at R. App. 325) is an email that contains advertising budget and spend data for specific customers. This information is confidential between Yahoo! and each listed client and would reveal data about each listed client's proprietary marketing spend. (Appx. 19, ¶ 6(G) (Dartt Decl.).)
>
> (b) Tabs 51 (at R. App. 326 – 332) and 52 (at R. App. 333 – 352) reveal detailed bid, rank, price-per-click, impression and click information by term for a specific advertiser. This information is known only to Yahoo! and that client, and provides insight into keyword performance that would be competitively valuable. It would be virtually impossible for an outside party to compute or derive this information. (Appx. 19, ¶ 6(H) (Dartt Decl.).)
>
> (c) Tab 53 (at R. App. 353 – 354) discloses click-through-rates and price-per-click data for travel category advertisers. These detailed metrics are not shared outside of Yahoo!. (Appx. 19, ¶ 6(I) (Dartt Decl.).)

\* \* \* \*

Accordingly, the above documents contain confidential or trade secret information, the disclosure of which would cause serious injury by depriving Yahoo! or non-parties of valuable property that they have developed over time and which gives Yahoo! or the non-parties a competitive advantage over their competitors.

**B.  Interests in Protecting Confidential and Competitive Trade Secret Information Outweigh Public Interests**

This suit involves private commercial conduct that does not implicate any important political or governmental issue, and Yahoo!'s proprietary interests in protecting its valuable trade secret information substantially outweighs any perceivable public interest that might exist in access to the information. Notably, the Fifth Circuit has expressly declined to recognize a

"strong presumption" in favor of the public's right of access to court records, and has instead held the presumption of public access "is one of the interests to be weighed." *Van Waeyenberghe*, 990 F.2d at 848 n.4 (citing *Belo Broadcasting Corp. v. Clark*, 654 F.2d 423, 429 (5th Cir.1981)).

When balancing the public interest in access with the interests threatened by disclosure, several courts have permitted documents to be sealed where there is little or no public interest in the issues and where there are strong reasons to protect the secrecy of competitive business information. *See In re Iowa Freedom of Information Council*, 724 F.2d at 664 (finding proprietary interest in trade secrets outweighed public interests where the case involved private commercial conduct and no important governmental or political question); *Jadael Inc. v. Elliott*, 2006 U.S. Dist. LEXIS 71055, at *6 (M.D. Fla. Sept. 29, 2006) (finding that party's interest in protecting trade secrets outweighed public interest where there was no evidence of any actual public interest in the contents of the documents); *Walker Sys. v. Hubbell Inc.*, 188 F.R.D. 428, 430 (S.D. W. Va. 1999) (granting motion to seal documents containing trade secrets after balancing private and public interests).

In contrast, courts that have declined to seal documents have often done so where the subject matter of the documents or information sought to be protected was of special public interest and importance. *See United States v. Edwards*, 823 F.2d 111 (5th Cir. 1987) (finding that press's qualified right of access to criminal trials weighed against sealing criminal proceedings); *In re Application of National Broadcasting Co.*, 653 F.2d 609, 614 (D.C. Cir. 1981) (public interest in conduct of its elected officials); *Van Waeyenberghe*, 990 F.2d at 848 (recognizing public interest in SEC enforcement and compliance with securities laws); *Brown & Williamson Tobacco Corp. v. FTC*, 710 F.2d 1165, 1180 (6th Cir. 1983) (finding that public has

strong interest in administrative record of litigation that involves government agency's response to allegations of corporate error that implicates public health).

As in *In re Iowa Freedom of Information Council*, this case solely involves commercial conduct between two private entities. 724 F.2d at 664 (law favors protecting information where only private commercial interest or damage are involved). Though, as with any law, the law of trademark is important to the public at large, the particular matters Yahoo! seeks to protect do not implicate any public interest in any governmental agency, public official, law enforcement, or other particular issue of public importance. Rather, the subject documents implicate only Yahoo!'s valuable business interests in protecting valuable information from disclosure and misuse by Yahoo!'s competitors. Accordingly, any public interests are substantially outweighed by the competitive and proprietary interests at stake.

## PRAYER

Yahoo! respectfully requests that the Court grant this unopposed motion to seal and enter an order striking American's Appendix in Support of Plaintiff's Motion for Sanctions for Failure to Produce and Preserve Documents (Doc. No. 129) and directing the district clerk's office to replace it with the items tendered with this motion – the "Revised Appendix in Support of Plaintiff's Motion for Sanctions for Failure to Produce and Preserve Documents" (to be publicly filed) and the "Sealed Appendix in Support of Plaintiff's Motion for Sanctions for Failure to Produce and Preserve Documents" containing the 13 confidential documents described above (to be filed under seal).

Dated: November __, 2009

Respectfully submitted,

*[signature: Scott Fredricks]*

David F. Chappell
Texas State Bar No. 04141000
Scott A. Fredricks
Texas State Bar No. 24012657
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
Telephone: (817) 877-2800
Fax: (817) 877-2807

Michael A. Jacobs (*pro hac vice*)
D. Anthony Rodriguez (*pro hac vice*)
Alison M. Tucher (*pro hac vice*)
Brooks M. Beard (*pro hac vice*)
Lynn M. Humphreys (*pro hac vice*)
Daniel P. Muino (*pro hac vice*)
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Telephone: (415) 268-7000
Fax: (415) 268-7522

Attorneys for Defendants YAHOO! INC. and OVERTURE SERVICES, INC. d/b/a YAHOO! SEARCH MARKETING

## CERTIFICATE OF CONFERENCE

Counsel for American and Counsel for Yahoo! have conferred with one another regarding the relief sought in this motion. Lars L. Berg (counsel for American) has confirmed that American does not oppose the sealing of the items listed in this motion.

_____
Scott A. Fredricks

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was served on Plaintiff's counsel on the ___ day of November 2009 as follows:

| | |
|---|---|
| Dee J. Kelly<br>Dee J. Kelly, Jr.<br>Lars L. Berg<br>KELLY HART & HALLMAN, LLP<br>201 Main Street, Suite 2500<br>Fort Worth, TX 76102 | *Via Hand Delivery* |
| Frederick Brown<br>George A. Nicoud III<br>Jason Stavers<br>GIBSON, DUNN & CRUTCHER LLP<br>555 Mission Street, Suite 3000<br>San Francisco, CA 94105 | *Via Federal Express* |
| Howard S. Hogan<br>GIBSON, DUNN & CRUTCHER LLP<br>1050 Connecticut Avenue, N.W.<br>Washington, DC 20036 | *Via Federal Express* |

_____
Scott A. Fredricks

13