ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORTH WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED
NOV 25 2009
CLERK, U.S. DISTRICT COURT
By _____ Deputy

AMERICAN AIRLINES, INC.,

    Plaintiff,

-v.-

YAHOO! INC., and OVERTURE SERVICES, INC.
d/b/a YAHOO! SEARCH MARKETING,

    Defendants.

No. 4-08-8CV-626-A

## PLAINTIFF'S WITNESS LIST FOR NOVEMBER 30 HEARING ON MOTION FOR SANCTIONS

Pursuant to the Court's November 19, 2009 Order, Plaintiff files its Witness List for the November 30 hearing on Plaintiff's motion for sanctions.

| WITNESSES TO BE PRESENTED LIVE ||||
|---|---|---|---|
| **NAME** | **SUMMARY** | **SWORN** | **TESTIFIED** |
| Carmen Arenal | Yahoo's failure to retain, collect and produce responsive materials. Yahoo's receipt of the standstill agreement and failure to preserve relevant information from that time forward. The dates on which Yahoo instructed its employees to retain information related to this litigation. The dates and means by which Yahoo searched for and collected potentially responsive documents and data, including the process and basis for selection of and interview of custodians. Yahoo's failure to produce all responsive documents or search custodial files in accordance with the court's deadline of august 28. Ms. Arenal's declaration and lack of personal knowledge for her statements in that | | |

1

|   |   |   |   |
|---|---|---|---|
|   | declaration. Yahoo's failure to adequately screen its documents before they were produced to American so as to eliminate non-responsive and privileged information, and Yahoo's failure to obey the Court's order to eliminate all non-responsive material from its production. |   |   |
| Kassi Burns | The personnel involved in the review of Yahoo's production and the number of number of hours devoted to the review of Yahoo's produce. The training, policies, procedures, and quality assurance measures used by the personnel that reviewed Yahoo's production. Summarize Yahoo's post-August 28, 2009 production for custodians for whom documents were only produced after August 28, the number of documents produced, the number of responsive and non-responsive documents for each custodian, when the documents were produced, and whether the production occurred before or after the custodian's deposition. Summarize Yahoo's post-August 28, 2009 production, including documents produced for the first time after August 28 for custodians identified in Yahoo's amended Rule 26 disclosures, the number of documents produced, the number of responsive and non-responsive documents for each custodian, the date of the production, and whether the production occurred before or after the custodian's deposition. Summarize Yahoo's post-August 28, 2009 produce for all custodians, the number of documents produced, the date of production, the number of responsive and non-responsive documents for each custodian, the date of production, and whether the production occurred before or after the custodian's deposition. Provide an analysis of Yahoo's |   |   |

|  |  |  |  |
|---|---|---|---|
|  | overproduction, by time period, including the number of documents produced and whether the documents were responsive, non-responsive, junk, or privileged. Identify the custodians identified by Yahoo during the litigation as either being persons with knowledge or for whom documents were being collected and for whom no custodial documents have been produced. |  |  |
| Erica Bramer | Ms. Bramer will testify about her analysis of data produced by Yahoo concerning its Sponsor Results from December 2002 to 2009, the chronology of Yahoo's production of data related to its Sponsor Result advertisements, differences between data sets produced by Yahoo, information that appears to be missing from Yahoo's data production including Page Impression data that would allow American to reconstruct the image of Yahoo search results pages and Ad Impression data that would allow American to determine how many times Yahoo published particular advertisements, advertiser and advertisement text information that is necessary to evaluate and categorize Yahoo Sponsor Results advertisements, IP address and search session data that would allow American to compare the search activities of Yahoo users, and differences between information provided in Yahoo's data and information provided by other sources. |  |  |
| Catherine Cameron | Yahoo's databases, data flows and processes related to search advertising. Yahoo's business practices related to the retention of data, including click data, impressions data, and consumer data. Yahoo's databases, their structure and contents, and their data retention settings. Yahoo's preservation and production of data in connection with this litigation. The identity of other Yahoo employees related to these |  |  |

| | | | |
|---|---|---|---|
| | topics, and Yahoo's documentation related to these topics. The alternatives or various methods Yahoo had available to it to serve, control, capture, and store part of all of the html code or images served to consumers conducting searches on Yahoo's search engine. | | |
| Brandon Leatha | Mr. Leatha will address Yahoo's data systems, its architecture and mechanisms, flows of data within Yahoo's systems. Mr. Leatha will also address the ability of Yahoo to control, capture or preserve data, including all or part of the html code, search engine results pages and Page Impression data that would allow a reconstruction of all or portions of the images of Yahoo search results pages, as well as the Ad Impression data and information that would allow American to determine how many times Yahoo published particular advertisements. Mr. Leatha also will address the ability of Yahoo to preserve the images and advertisements displayed as the result of a search. | | |
| Nam Nguyen | Yahoo's business and technological practices related to the creation and display of search engine results pages and sponsor results. The design and display of sponsor results by Yahoo, and the personnel and processes employed by Yahoo to change them. The ability of Yahoo to retain screenshots or code underlying Yahoo's search engine results page. Yahoo's organizational structure and the identity of employees with responsibilities related to search advertising. Requests from Yahoo to Mr. Nguyen to retain documents and to produce documents in connection with this litigation. | | |
| Dr. Li | Yahoo's databases, data flows and processes related to search advertising. Yahoo's business practices related to the retention of data, including click data, impressions data, and consumer data. | | |

4

| | | | |
|---|---|---|---|
| | Specific databases and tables related to impressions data. Yahoo's preservation and production of data in connection with this litigation. The identity of other Yahoo employees related to these topics, and Yahoo's documentation related to these topics. | | |
| D. Muino | Yahoo's efforts to identify relevant custodians, locate responsive documents and ESI, review for privilege and responsiveness, and produce to American. Yahoo's responses and representations to American about American's concerns about Yahoo's overproduction, failure to produce responsive documents, destruction of documents, as well as Yahoo's efforts to meet those concerns. Yahoo's failure to adequately screen its documents before they were produced to American so as to eliminate non-responsive and privileged information, and Yahoo's failure to obey the Court's order to eliminate all non-responsive material from its production. | | |
| C. Dartt | The business practices of Yahoo's marketplace operations group. Data and documents generated and relied upon by that group. Studies of consumer understanding and behavior, including bucket tests. Metrics analyzed by Yahoo in connection with these studies, and data generated by them. Yahoo's creation and retention of page impressions, page impressions data, ad impressions, and ad impressions data. The identify of other Yahoo employees with responsibility for search advertising data and analysis. Requests from Yahoo to Mr. Nguyen to retain documents and to produce documents in connection with this litigation. | | |

| **WITNESSES TO BE PRESENTED BY DEPOSITION** | | | |
|---|---|---|---|
| T. Mayer | Yahoo's business practices related to its search advertising business, and the processes and documents that are created as part of those processes. His personal knowledge and experience with the design and display of Yahoo's sponsor results. The identities of other Yahoo employees with knowledge of Yahoo's search advertising business and the display of sponsor results. Testing conducted by Yahoo of various options for the display of sponsor results. Requests from Yahoo to Mr. Mayer to retain documents and to produce documents in connection with this litigation. | | |
| L. Cornett | Yahoo's business practices related to the design and display of sponsor results, and the processes and documents that are created as part of those processes. His personal knowledge and experience with the design and display of Yahoo's sponsor results. His personal knowledge of specific changes to the display of sponsor results. The identity of other Yahoo employees with knowledge of the design and display of Yahoo's sponsor results. Testing and research conducted by Yahoo of various options for the display of sponsor results and consumer perceptions of sponsor results. Requests from Yahoo to Mr. Cornett to retain documents and to produce documents in connection with this litigation. | | |
| M. Kronthal | Yahoo's business practices related to research conducted with consumers related to sponsor results. Specific research studies and the data and findings generated by those studies. Yahoo's systems and personnel that support its research. Specific subject | | |

6

| | | | | |
|---|---|---|---|---|
| | matters covered by Yahoo's research, including types of queries, including navigational queries. Yahoo's document and data storage in connection with these research projects. Communications with other Yahoo employees regarding research projects. Requests from Yahoo to Mr. Kronthal to retain documents and to produce documents in connection with this litigation. | | | |
| R. Lange | Yahoo's business practices related to research conducted on the relevance of its search and sponsor results. The systems, personnel and processes employed by Yahoo to analyze relevance and tests done on various configurations of its search engine results page. Documents and data generated and retained by Yahoo in connection with its relevance analysis. Yahoo's capturing of screenshots of its search results page. Requests from Yahoo to Mr. Lange to retain documents and to produce documents in connection with this litigation. | | | |
| R. Ramaswamy | Yahoo's business practices related to consumer research. Specific studies related to consumer perception of paid advertising, and documents and data collected and retained in connection with those studies. Requests from Yahoo to Mr. Ramaswamy to retain documents and to produce documents in connection with this litigation. | | | |
| Bradley King | Yahoo's sales and marketing efforts for search advertising to companies in the travel industry. His documents and knowledge related to these efforts, including those specifically related to American airlines and its competitors. His personal production of documents related to this litigation. His document retention practices while employed at Yahoo. Yahoo's data collection and reporting tools | | | |

| Joshua Grossnickle | Yahoo's research into consumer perceptions and understanding of search advertising. Yahoo's financial analysis and assessment of the value of consumer segments. The findings and data generated in connection with these research projects and analyses | | |

Respectfully submitted,

/s/ Lars L. Berg

Dee J. Kelly
State Bar No. 11217000
Dee J. Kelly, Jr.
State Bar No. 11217250
Lars L. Berg
State Bar No. 00787072
Scott R. Wiehle
State Bar No. 24043991
KELLY HART & HALLMAN LLP
201 Main Street, Suite 2500
Fort Worth, TX 76102
Phone: (817) 332-2500
Fax: (817) 878-9280

Frederick Brown (admitted *pro hac vice*)
Jason Stavers (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
555 Mission Street, Suite 3000
San Francisco, CA 94105
Phone: (415) 393-8200
Fax: (415) 986-5309

Howard S. Hogan (admitted *pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
1050 Connecticut Avenue, N.W.
Washington, D.C. 20036
Phone: (202) 955-8500
Fax: (202) 467-0539

*Attorneys for Plaintiff American Airlines, Inc.*

# CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was delivered on November 25, 2009 to Defendant's counsel, as follows, in accordance with the Federal Rules of Civil Procedure:

David F. Chappell
Scott A. Fredricks
CANTEY HANGER LLP
Cantey Hanger Plaza
600 West Sixth Street, Suite 300
Fort Worth, Texas 76102
(via facsimile and email)

Michael A. Jacobs
Lynn M. Humphreys
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
(via facsimile and email)

/s/ Lars L. Berg
Lars L. Berg